1   Daniel M. Hattis (SBN 232141)
    HATTIS LAW
2   P.O. Box 1645
    Bellevue, WA 98009
3   Telephone: (650) 980-1990
    Email: dan@hattislaw.com
4
    Jason Skaggs (SBN 202190)
5   SKAGGS FAUCETTE LLP
6   430 Lytton Ave 2nd FL
    Palo Alto, CA 94301
7   Telephone: (650) 617-3226
    Email: jason@skaggsfaucette.com
8
9   Attorneys for Plaintiffs and the Proposed Class

10
                    UNITED STATES DISTRICT COURT
11
                   NORTHERN DISTRICT OF CALIFORNIA
12

13
14  DAN ADKINS; JONATHAN BAILEY;          Case No. _____
    REINIER BROKER; JAMES
15  MCLAUGHLIN; NOLA PALMER;              **CLASS ACTION COMPLAINT**
    CHRISTOPHER ROBERTSON;
16  DEREK VILLEGAS; and DALE WYNN,        **JURY TRIAL DEMANDED**
    individually and on behalf of all others
17  similarly situated,

18  Plaintiffs,

19  v.

20  COMCAST CORPORATION,

21  Defendant.

22

23

24

25

26

27

28

                                              CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY.................................................................- 1 -

II.  PARTIES ..................................................................................................- 2 -

III. JURISDICTION AND VENUE ....................................................................- 3 -

IV.  COMMON FACTUAL ALLEGATIONS .......................................................- 3 -

    A.  Comcast Invented the Broadcast TV Fee and Regional Sports Fee to Enable It to Raise Its Monthly Rates While Still Advertising a Lower Price. ...........- 3 -

    B.  Comcast Falsely Advertises a Lower Price for Its Services Than It Will Actually Charge...............................................................................- 5 -
        1.  Misleading Direct Mail Ads....................................................- 5 -
        2.  Misleading Online Ads and Online Order Process...................- 8 -

    C.  During the Order Process, Comcast Staff Systematically Lie to Prospective Customers by Telling Them That the Only Additional Charges Beyond the Quoted Monthly Service Price Will Be Government Fees and Taxes.......- 16 -
        1.  Lies to Prospective Customers by Telesales Agents...............- 16 -
        2.  Lies to Prospective Customers by Comcast Staff at Comcast Retail Stores...................................................................................- 16 -
        3.  Lies to Prospective Customers by Comcast Online Chat Agents. ...... - 17 -

    D.  Comcast's Form Subscriber Agreement Does Not Mention the Broadcast TV Fee or Regional Sports Fee, and to the Contrary, Implies That All Additional Monthly Non-Equipment Fees Are Government-Related. ........................- 20 -

    E.  Misleading Order Summary and Order Confirmation Emails....................- 22 -

    F.  Comcast Commits Billing Fraud By Hiding and Disguising the Broadcast TV Fee and Regional Sports Fee In Customer Bills.................................- 26 -
        1.  Short Version of the Bill Presented on the Comcast Website. ...........- 26 -
        2.  Long Version of the Comcast Bill. ......................................- 29 -

    G.  Comcast Lies to Customers Who Inquire or Complain about the Fees, and Tells Customers the Charges Are Government Fees or Taxes...............- 34 -

    H.  Comcast's Practices Are Fraudulent and Unfair and Are Intended To Mislead Consumers....................................................................................- 37 -

V.   PLAINTIFFS' INDIVIDUAL FACTUAL ALLEGATIONS...............................- 39 -
    A.  Plaintiff Dan Adkins (California Plaintiff) ...................................- 39 -
    B.  Plaintiff Christopher Robinson (California Plaintiff)....................- 41 -
    C.  Plaintiff Jonathan Bailey (Washington Plaintiff) .......................- 44 -
    D.  Plaintiff Reinier Broker (New Jersey Plaintiff) .........................- 47 -
    E.  Plaintiff James McLaughlin (Illinois Plaintiff)...........................- 49 -
    F.  Plaintiff Nola Palmer (Colorado Plaintiff)................................- 51 -
    G.  Plaintiff Derek Villegas (Florida Plaintiff)................................- 52 -
    H.  Plaintiff Dale Wynn (Ohio Plaintiff).......................................- 54 -

VI.  CLASS ACTION ALLEGATIONS ..............................................................- 55 -

VII. COMCAST'S ARBITRATION CLAUSE AND THE CLASS........................- 58 -

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VIII.   CHOICE OF LAW** ................................................................................. **- 60 -**

**CAUSES OF ACTION** ................................................................................... **- 60 -**
    COUNT I – Breach of Contract ........................................................ - 60 -
    COUNT II – Breach of Covenant of Good Faith and Fair Dealing ................. - 61 -
    COUNT III – Unjust Enrichment ...................................................... - 62 -
    COUNT IV – California Business and Professions Code §17200 ("UCL") ...... - 63 -
    COUNT V – California Business and Professions Code §17500 ("FAL") ........ - 64 -
    COUNT VI – California Consumer Legal Remedies Act ("CLRA"). ............... - 65 -
    COUNT VII – Colorado Consumer Protection Act ............................... - 67 -
    COUNT VIII – Florida Deceptive and Unfair Trade Practices Act .................. - 68 -
    COUNT IX – Illinois Consumer Fraud and Deceptive Trade Practices Act ..... - 70 -
    COUNT X – New Jersey Consumer Fraud Act ................................. - 71 -
    COUNT XI – Ohio Consumer Sales Practices Act ........................... - 73 -
    COUNT XII – Washington Consumer Protection Act ("CPA") ...................... - 74 -

**PRAYER FOR RELIEF** ................................................................................. **- 75 -**

**JURY DEMAND** ........................................................................................... **- 76 -**

CLASS ACTION COMPLAINT

1    Plaintiffs, individually and on behalf of all others similarly situated, allege on

2    personal knowledge, investigation of their counsel, and on information and belief, as

3    follows:

### I.    INTRODUCTION AND SUMMARY

4

5    1.    This proposed class action alleges that Comcast Corporation ("Comcast")

6    is engaging in a massive illegal scheme of falsely advertising its cable television service

     plans for much lower prices than it actually charges.  Comcast promises to charge

7    customers a fixed monthly price for the service plans, but in fact Comcast charges a

8    much higher rate for those plans via concealed and deceptive "fees" which Comcast

9    intentionally disguises in both its advertising and in its customer bills.

10   2.    These illegal and deceptive fees, which Comcast calls the "Broadcast TV

11   Fee" and the "Regional Sports Fee," earn Comcast over $1 billion each year, accounting

12   for approximately 15% of Comcast's annual profits.

13   3.    Comcast has admitted these invented fees are actually just price increases

14   for broadcast channels and sports channels in its cable television packages.  But

15   Comcast intentionally does not include the cost of these fees in its advertised or quoted

16   rates for those channel packages, in order to mislead customers into thinking that they

17   will pay less than Comcast will actually charge them.

18   4.    Comcast's fraud pervades the entire life cycle of the customer. First,

19   Comcast conceals and misrepresents the fees in its advertising and in its

20   communications with prospective customers. Second, Comcast commits billing fraud by

21   subtracting the invented fees from the top-line service price in its bills and instead hiding

22   and disguising the charges elsewhere in the bill. Third, to any customers who question

23   Comcast about the bogus charges, Comcast staff and agents explicitly lie by stating that

24   the Broadcast TV Fee and the Regional Sports Fee are government-related fees or

25   taxes over which Comcast has no control.

26   5.    Comcast has repeatedly increased the amounts of the Broadcast TV Fee

27   and the Regional Sports Fee every 6 to 12 months since Comcast first invented them.

28

- 1 -                          CLASS ACTION COMPLAINT

1    Since 2014, Comcast has increased the monthly Broadcast TV Fee from $1.50 to up to
2    $6.50. Since 2015, Comcast has increased the monthly Regional Sports Fee from $1.00
3    to up to $4.50.

4         6.     Comcast applies these fee increases to all customers, even to those in the
5    middle of one-year or two-year contracts at a promised fixed monthly rate. By increasing
6    these fees in the middle of the contract term, Comcast has found a way to secretly and
7    repeatedly increase the monthly price it charges for its channel packages despite its
8    promise to charge a flat rate for one or two years.

9         7.     Each and every plaintiff in this action exercised his or her right to opt out of
10   Comcast's arbitration clause pursuant to the Comcast Agreement for Residential
11   Services. Plaintiffs are bringing this lawsuit on behalf of themselves and the proposed
12   Class to put an end to Comcast's unlawful actions, and to recover the money they have
13   lost as a result of Comcast's contractual breaches and deceptive, unfair, and unlawful
14   conduct alleged in this Complaint.

15                                    **II.    PARTIES**

16        8.     Plaintiff Dan Adkins is an individual residing in Oakland, California.

17        9.     Plaintiff Jonathan Bailey is an individual residing in Covington, Washington.

18        10.    Plaintiff Reinier Broker is an individual residing in Belle Mead, New Jersey.

19        11.    Plaintiff James McLaughlin is an individual residing in Aurora, Illinois.

20        12.    Plaintiff Nola Palmer is an individual residing in Littleton, Colorado.

21        13.    Plaintiff Christopher Robertson is an individual residing in Sacramento,
22   California.

23        14.    Plaintiff Derek Villegas is an individual residing in Port St. Lucie, Florida.

24        15.    Plaintiff Dale Wynn is an individual residing in East Liverpool, Ohio.

25        16.    Mr. Adkins, Mr. Bailey, Mr. Broker, Mr. McLaughlin, Ms. Palmer, Mr.
26   Robertson, Mr. Villegas, and Mr. Wynn are collectively referred to herein as "Plaintiffs."

27        17.    Plaintiffs seek relief in their individual capacities, on behalf of the
28   nationwide Class, and on behalf of the statewide subclasses they represent.

- 2 -                                    CLASS ACTION COMPLAINT

1    18.    Defendant Comcast is a multinational, mass media company

2    headquartered in Philadelphia, Pennsylvania, and incorporated in Pennsylvania. It is the

3    largest broadcasting and cable company in the world by revenue, and it is the largest

4    home television and Internet service provider in the United States.

5    **III.    JURISDICTION AND VENUE**

6    19.    The Court has subject matter jurisdiction over this matter pursuant to 28

7    U.S.C. section 1332(d)(2) as the amount in controversy exceeds $5,000,000 among the

8    proposed nationwide Class, believed to number in the millions, and its constituent

9    subclasses, all of whom are entitled to damages in the form of a full refund of all of the

10    Broadcast TV Fee and the Regional Sports Fee amounts charged to them by Comcast

11    within the applicable statutes of limitations.

12    20.    This Court has personal jurisdiction over Comcast because it is authorized

13    to do business and regularly conducts business in California, and Comcast has

14    marketed, sold and issued cable service plans in California including to Plaintiffs Dan

15    Adkins and Christopher Robertson. Comcast has sufficient minimum contacts with this

16    state to render the exercise of jurisdiction by this Court permissible.

17    21.    Venue is proper under 28 U.S.C. sections 1391(a) and (b) because a

18    substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this

19    District.

20    **IV.    COMMON FACTUAL ALLEGATIONS**

21    **A.    Comcast Invented the Broadcast TV Fee and Regional Sports Fee to
22    Enable It to Raise Its Monthly Rates While Still Advertising a Lower
     Price.**

23    22.    Comcast is the largest television and Internet service provider in the United

24    States, with over 22.5 million cable television service subscribers.  Comcast typically

25    sells its television service "bundled" with Internet and/or telephone service, under the

26    XFINITY brand. Comcast markets its cable television, Internet, and telephone services

27    with standardized, uniform marketing materials to consumers via mass mailings,

28

CLASS ACTION COMPLAINT

1    television commercials, print advertisements, and online advertising.  Consumers buy

2    these service plans over the telephone, on Comcast's website, or in person at one of

3    Comcast's local stores.

4         23.    To attract customers, Comcast prominently advertises a flat monthly rate

5    for a one-year or two-year term for its service plans. Comcast's widespread marketing of

6    flat monthly prices has induced millions of consumers to lock themselves into one or two-

7    year service plan contracts.

8         24.    In January 2014, Comcast began utilizing a shady backdoor way to

9    increase prices to its prospective and current television service subscribers, while

10   continuing to advertise and promise the same flat lower monthly rates for its service

11   plans.  Rather than implementing a top-line price increase for its advertised television

12   service or bundled service plans – which would have been noticed by its prospective and

13   current customers – Comcast instead kept the advertised price the same and hid the

14   price increase in a newly invented and inadequately disclosed "Broadcast TV Fee."

15        25.    Comcast made sure never to define or explain the nature of the deceptively

16   named fee in any of its advertising materials. If the fee was mentioned at all, it was

17   buried in fine print (where it was listed only by name and never defined) in a sentence

18   which included government-related taxes and fees that may be charged.

19        26.    Comcast introduced the Broadcast TV Fee in January 2014 at a rate of

20   $1.50 per month.  Comcast not only charged the fee to new customers, but also added

21   the charge to the bills of existing customers in violation of their contracts which had

22   promised a flat monthly rate for the term of the contract. Emboldened by the success of

23   its scheme, Comcast more than doubled the monthly Broadcast TV Fee to $3.25 within a

24   year. By late 2015, Comcast had increased the fee to $5.00.  Comcast increased the

25   Broadcast TV Fee yet again on October 1, 2016 to $6.50 in many markets.

26        27.    Comcast introduced the Regional Sports Fee in January 2015,

27   approximately one year after it rolled out the Broadcast TV Fee. Comcast charges the

28   Regional Sports Fee to all customers who have a sports channel in their television

CLASS ACTION COMPLAINT

package, contrary to Comcast's promise to those customers to charge the advertised flat rate for the package which did not include fee amount. Like the Broadcast TV Fee, the Regional Sports Fee is inadequately disclosed and deceptively disguised to enable Comcast to repeatedly raise its prices while continuing to advertise and promise its customers a lower rate.  The Regional Sports Fee was introduced at a rate of $1.00 per month.  In just over a year, Comcast tripled the Regional Sports Fee to $3.00.  Comcast increased the Regional Sports Fee yet again on October 1, 2016 to $4.50 in many markets.

**B.** **Comcast Falsely Advertises a Lower Price for Its Services Than It Will Actually Charge.**

28.     In its advertising and during the service sign-up process, Comcast falsely advertises and promises customers a flat monthly rate for service when in fact Comcast intends to, and will, charge the customer a higher rate to provide that service via the concealed Broadcast TV Fee and Regional Sports Fee.

**1.     Misleading Direct Mail Ads.**

29.     For example, Plaintiff Christopher Robertson received the below direct mail advertisement in late 2015 (red box highlight in Figure 2 is added):

CLASS ACTION COMPLAINT

**Figure 1:  Direct Mail Ad – Page 1**



000381
Cvhristopher Robertson Or Our Neighbor At

Sacramento CA



$**89**^{99}  xfinity

XFINITY Triple Play

$99 per month for 12 months

*Act now!*


Now with FASTER download speeds

**Get the
X1 Triple Play** at a
**special holiday price.**

Call today! 1-855-611-9980

Dear Cvhristopher,

This holiday season, we're making a great deal even better. For a limited time, you'll get fast, reliable Internet, incredible entertainment, and home phone — at a lower price. You'll also get X1. It'll change the way you experience TV.



XFINITY® Triple Play
TV, Internet & Voice

$~~99~~ $**89**^{99}

per month for 12 months


The fastest in-home **WiFi**


**HBO®** or **SHOWTIME®**
included for 12 months

Add **X1 DVR™**
service
for $10 more per
month for 12 months

XFINITY gives you more to celebrate.

• Get the **X1 Entertainment Operating System®** — search smarter, get personalized recommendations, even change channels with your voice

• Over 140 channels plus **HBO®** or **SHOWTIME®**

• **XFINITY Internet** — now with download speeds up to 75 Mbps

• **XFINITY Voice** with unlimited nationwide talk and text, plus international calling

• Enjoy the largest On Demand library with the top 100 shows preloaded

• Plus, add **X1 DVR** service for just $10 more per month for 12 months so you can watch and record up to 6 shows at the same time

Hurry! This limited-time holiday offer ends 11/22/15!

Take advantage of this exciting opportunity to switch to the **XFINITY Triple Play** at the reduced price of **just $89.99 per month for 12 months with a 2-year term agreement**. You'll get tons of channels, including HBO® or SHOWTIME® and thousands of XFINITY On Demand™ shows and movies — included at no additional cost. Call **1-855-611-9980** today.

Sincerely,

Your XFINITY Team

P.S.  Ask how you can get a **FREE Samsung Galaxy Tab®** A or
a **$500 Visa® Prepaid Card** when you select a qualifying HD Triple Play.



**CALL NOW! 1-855-611-9980** or visit **xfinity.com**

CLASS ACTION COMPLAINT

**Figure 2: Direct Mail Ad – Page 2**





xfinity
the future of awesome™

# Tech the Halls

Dr. Seuss' How The Grinch Stole Christmas available on the XFINITY TV app

## X1 makes family gatherings a lot more fun.

This holiday, you can have all the entertainment and bandwidth you need for family and friends to have a great time. X1 gives you thousands of On Demand shows and movies. So there's something for everyone. Plus, the top 100 shows are preloaded and ready to watch.

### Like fast Internet?
### Try the fastest.

XFINITY® delivers **the fastest Internet in America** according to Speedtest.net. You get reliably fast Internet speeds so everyone can get online at the same time to stream movies, upload holiday pics, play games and so much more.

SPEEDTEST
by OOKLA
AMERICA'S FASTEST INTERNET

### Say "Frosty" and
### you're all set.

With the voice remote, you can use commands to change channels, search for shows and get recommendations. It's an easy way to find all your holiday favorites.

## Make your holidays even more special with XFINITY.
# CALL NOW! 1-855-611-9980

COMCAST

Restrictions apply. Not available in all areas. Features and programming vary depending on area and level of service. Share capability limited to X1 customers with a DVR-compatible set-top box and XFINITY Voice service. WiFi claims based on September and November 2014 studies by Allion Test Labs, Inc. Actual speeds vary and are not guaranteed. Call for restrictions and complete details, or visit xfinity.com. © 2015 Comcast. All rights reserved. NBCU celebrity endorsement not implied. All networks are divisions of NBCUniversal. ©NBCUniversal Media, LLC. All Rights Reserved.

Offer ends 11/22/15. Restrictions apply. Not available in all areas. Limited to new residential customers. Requires subscription to Starter XF Triple Play with Digital Starter TV, Performance Internet and Unlimited Voice service. 2-year term agreement required. Early termination fee applies. Equipment, installation, taxes and fees, including regulatory recovery fees, Broadcast TV Fee (up to $3.50/mo.), Regional Sports Fee (up to $1.00/mo.) and other applicable charges extra, and subject to change during and after the promo. After 12 months, service charge for the Starter XF Triple Play increases to $114.99/mo. for months 13-24. After promo, or if any service is cancelled or downgraded, regular charges apply. Comcast's service charge for the Starter XF Triple Play is $144.95-$154.95/mo., for HBO® is $19.99/mo., SHOWTIME® is $19.99/mo., HD Technology Fee is $10.00/mo. and for DVR service is $9.95/mo. (pricing subject to change). TV & Internet limited to a single outlet. May not be combined with other offers. TV: XFINITY On Demand selections subject to charge indicated at time of purchase. Availability of top 100 shows varies based on service package. Internet: WiFi claims based on September and November 2014 studies by Allion Test Labs, Inc. Actual speeds vary and are not guaranteed. Voice: $29.95 activation fee applies. Service (including 911/emergency services) may not function after an extended power outage. Visa® Prepaid Card and Samsung Galaxy offers require subscription to qualifying HD Triple Play bundle. 2-year term agreement

30.     The mailer prominently advertises a discounted price of "$89.99 per month for 12 months" which includes XFINITY's "Triple Play" package of TV, Internet, and Voice[1]. Nowhere on the first page of the mailer does Comcast state that in fact the monthly rate for providing service will actually be $94.24 ($4.25 higher) – not $89.99 – due to the invented and automatically applied $3.25 Broadcast TV Fee and $1.00 Regional Sports Fee.  On the second page of the mailer, buried in tiny fine print (which we have marked with a red box in Figure 2 above), is the statement: "Equipment, installation, taxes and fees, including regulatory recovery fees, Broadcast TV (up to $3.50/mo.), Regional Sports Fee (up to $1.00/mo.) and other applicable charges extra, and subject to change during and after the promo."

31.     Comcast intentionally does not explain or define what the Broadcast TV Fee and the Regional Sports Fee are – even in the fine print.  Instead, Comcast deceptively groups these "fees" in the fine print with "taxes and fees, including regulatory recovery fees." A consumer reading the fine print would reasonably assume the Broadcast TV Fee and the Regional Sports Fee relate to government fees or taxes. Comcast also does not state in the fine print that the Broadcast TV Fee and the Regional Sports Fee are automatically applied charges (the Broadcast TV Fee is charged to all customers with television services and the Regional Sports Fee is charged to all customers with a package that includes a sports channel) versus possible charges that may or may not be actually charged.

**2.     Misleading Online Ads and Online Order Process.**

32.     Comcast's online ads and online order process likewise falsely promise customers a lower monthly price for service than what Comcast will actually charge them.

---

[1] This mailer is further misleading in that the "$89.99 per month for 12 months" rate requires a two-year contract where Comcast will significantly increase the rate after the first 12 months; however, this scheme is not the subject of this Complaint.

CLASS ACTION COMPLAINT

1    33.    Figure 3 is a screenshot of service packages advertised on Comcast's

2    website for the Sacramento, California area on January 14, 2016.

3    **Figure 3: Service Package Offer Page From Comcast Website**



4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21    34.    The webpage advertisement specifically and prominently states that the

22    Internet Plus 75 bundle includes "local channels like ABC, NBC & FOX" for the price of

23    $54.99, and even includes the logos for NBC and FOX in the ad.

24    35.    This statement that the package price is $54.99 is false and misleading.

25    The true price of the bundle is $58.24: $54.99 plus the $3.25 automatically applied

26    Broadcast Fee, which is charged to provide the very channels (ABC, NBC, and FOX)

27    that are advertised as being included in the $54.99 monthly price.

28

CLASS ACTION COMPLAINT

36.     There is no asterisk or qualifier next to the advertised $54.99 price.

37.     Far below the advertised price, at the bottom of the promo, there is a small link titled "Pricing & Other Info." If one clicks or hovers on that link, the following dialog box appears:

**Figure 4: "Pricing & Other Info" Dialog Box**



38.     As in the direct mail ad, buried in this fine print is the statement: "Equipment, installation, taxes and fees, including regulatory recovery fees, Broadcast TV Fee (up to $3.50/mo.), Regional Sports Fee (up to $1.00/mo.) and other applicable charges extra, and subject to change during and after the promo."[2]

---

[2] Comcast rapidly and significantly raised the Broadcast TV Fee and Regional Sports Fee in the Sacramento, California area since these screenshots were taken on January 14, 2016. Five months later in July 2016 Comcast increased the Broadcast TV Fee by 54% from $3.25 to $5.00, and tripled the Regional Sports Fee from $1.00 to $3.00. Then, just three months later in October 2016 Comcast increased the fees yet again to $6.50 for the Broadcast TV Fee and $4.50 for the Regional Sports Fee.

CLASS ACTION COMPLAINT

39.     Comcast again intentionally does not define or explain the Broadcast TV Fee and the Regional Sports Fee – even in the fine print – and hides them in a sentence with taxes and regulatory recovery fees. Comcast also does not state in the fine print that the Broadcast TV Fee and the Regional Sports Fee are automatically applied charges.

40.     Comcast's deception extends through the entire online order process.  For example, see the below screenshots of the order process captured on March 6, 2016 for service in the Sacramento, California area. On each page of the process (*e.g.*, page one at Figure 5 below), the advertised price of "$89.99/mo" is prominently displayed at the top. That promised price does not include the then-current $3.25 Broadcast TV Fee or $1.00 Regional Sports Fee.  A "Monthly Total" amount of $89.99 is also displayed prominently on the bottom of the page. There is a tiny question mark next to "Monthly Total"; when one hovers over this question mark, a text box appears stating:

> **This is the base monthly total of all recurring charges for the services you have selected**.  It does not include tax or one-time charges (such as installation or Pay-Per-View fees) that may appear on individual bills.

(Emphasis added.) See Figure 5 below, red box highlight added.

CLASS ACTION COMPLAINT

1

**Figure 5: Online Order Process - Page 1 (Screenshot from March 6, 2016)**



41.     Comcast's statement that "This is the base monthly total of all recurring charges for the services you have selected" is a lie. Comcast intentionally omits the recurring and invented monthly Broadcast TV Fee and Regional Sports Fee from the "Monthly Total" even though those fees are in fact additional "recurring charges for the services you have selected" (then totaling $4.25/month in Sacramento, California) above and beyond the promised flat rate price of $89.99/month.

42.     The final step of the online order process is the order submittal page. See the screenshot (taken on March 6, 2016) at Figure 6 below.

CLASS ACTION COMPLAINT

**Figure 6: Online Order Process – Order Submittal Page (March 6, 2016)**



CLASS ACTION COMPLAINT

43.     The "Monthly Charges" column on the order submittal page (Figure 6 above; red box is added) again prominently states the monthly charge will be "$89.99/mo." There is no asterisk or qualifier next to this promised price. Meanwhile, there is no reference anywhere on the order submittal page to the additional Broadcast TV Fee and Regional Sports Fee which will raise the true cost of the package by $4.25/month.

44.     Even the tiny fine print at the bottom of the page makes no mention whatsoever of the Broadcast TV Fee or Regional Sports Fee. The fine print states only that "Prices do not include taxes and franchise fees" and "Monthly pricing does not include our Regulatory Recovery Fee, which is not a tax or government-required; federal, state, or local taxes and other fees; or other applicable charges (e.g., per-call charges or international calling)."

45.     On the order submittal page screenshot taken on March 6, 2016 in Figure 6 above, there is a small "Pricing & Other Info" hyperlink near the bottom of the page. However, clicking on this link displays the same misleading "Pricing & Other Info" dialog box at Figure 4 above, where the Broadcast TV Fee and the Regional Sports Fee are briefly mentioned in a sentence including taxes and regulatory recovery fees and are not defined or explained.

46.     Sometime after March 6, 2016 Comcast appears to have removed the "Pricing & Other Info" hyperlink from the bottom of the order submittal page, and to have replaced it with a new link labeled "Minimum Term Agreement." See the screenshot taken on September 26, 2016 in Figure 7 below. Clicking on the "Minimum Term Agreement" link opens a small dialog box which discusses Comcast's early termination fee, but makes no mention whatsoever of the Broadcast TV Fee or the Regional Sports Fee. Similarly, the new "Privacy Notice" also makes no mention of the Broadcast TV Fee or the Regional Sports Fee. Meanwhile the tiny fine print at the bottom of the page continues to make no mention of the Broadcast TV Fee or Regional Sports Fee, stating only that "Equipment, installation, taxes and fees, including regulatory recovery fees and

other applicable charges extra."

**Figure 7: Online Order Process – Order Submittal Page (September 26, 2016)**



Congratulations, your credit check was successful.

## Review your order details                                    Print

| | | ONE-TIME CHARGES | MONTHLY CHARGES |
|---|---|---|---|
| DOUBLE PLAY<br>Starter XF Double Play<br>2 year minimum term agreement starting upon installation | | | $79.99/mo |
| Promo | Get X1 DVR™ service for $10/month for 12 months SHOWTIME® included for 24 months Blast!® Pro speeds included for 12 months | | Included |
| TV<br>Edit | 140+ Channels Plan<br>XFINITY On Demand | | Included |
| | X1 Digital Service | | Included |
| | Minimum Term Agreement | | Included |
| | Streampix | | Included |
| | X1 Service Activation | | Included |
| Internet<br>Edit | Blast!® Pro | | Included |
| | Internet Modem Owned | | Included |
| | Blast Pro Internet | | Included |

### Installation

| | ONE-TIME CHARGES | MONTHLY CHARGES |
|---|---|---|
| Self-Install Kit - Get It September 30 to October 1   Edit | $14.99 | |

| | ONE-TIME CHARGES | MONTHLY CHARGES |
|---|---|---|
| Total | $14.99 | $79.99 |

**Account Details**   Edit

Service Address

**Installation**   Edit

**Self-Install Kit**
$14.99 shipping
Get It September 30 to October 1

Shipping Address
Same as service address

**Billing Info**   Edit

**Billing Address**
Same as service address

☐ By checking the box below and clicking on "Submit Your Order" I represent that I am 18 years of age or older, I have read and agree to the Comcast Agreement for Residential Services, and I have read and agree to the terms of the Minimum Term Agreement. I have read and understand the Comcast Privacy Notice.

Back to Account Info        **Submit Your Order**

Restrictions apply. Not available in all areas. Limited to residential customers. Requires subscription to XFINITY Voice Unlimited Saver. Equipment, installation, taxes and fees, including regulatory recovery fees and other applicable charges extra. Pricing subject to change. $29.95 activation fee may apply. Service (including 911/emergency services) may not function after an extended power outage. Call clarity claim based on August 2014 analysis of traditional phone service by Tektronix. 30-Day Money-Back Guarantee applies to one month's recurring service charge and standard installation up to $500. Call for restrictions and complete details. ©2016 Comcast. All rights reserved.

CLASS ACTION COMPLAINT

**C.   During the Order Process, Comcast Staff Systematically Lie to Prospective Customers by Telling Them That the Only Additional Charges Beyond the Quoted Monthly Service Price Will Be Government Fees and Taxes.**

**1.   Lies to Prospective Customers by Telesales Agents.**

47.   In telephone calls with prospective customers, Comcast telesales agents regularly and falsely state that government taxes and fees are the only additional charges the customer will pay above the advertised and quoted monthly service price.

48.   For example, Plaintiff Nola Palmer ordered cable television and Internet service over the phone from a Comcast telesales agent in March 2016. Ms. Palmer was unhappy with her previous cable provider, Centurylink, because fees and charges had been constantly increasing. Ms. Palmer specifically asked the Comcast agent what fees and taxes would be added to the bill above the advertised price. The agent estimated the tax charges, and falsely stated that there would be no additional charges with the sole exception of FCC mandated fees.

**2.   Lies to Prospective Customers by Comcast Staff at Comcast Retail Stores.**

49.   Comcast staff at Comcast retail stores similarly lie to prospective customers that government-related taxes and fees are the only additional charges the customer will pay above the quoted monthly service price.

50.   Plaintiff James McLaughlin signed up for Comcast service in person at a Comcast retail office in Illinois on March 24, 2016.  Mr. McLaughlin selected a package recommended by the Comcast agent at the counter at a promised price of approximately $100.00 per month.  Mr. McLaughlin asked what the total bill would be per month.  The agent told him that Illinois sales tax is about 7%, and that therefore the total would be about $107.00 per month. In fact, Mr. McLaughlin soon learned that his monthly Comcast bills included a previously undisclosed $5.00 Broadcast TV Fee and a $3.00 Regional Sports Fee, in addition to other various taxes and surcharges.

### 3. Lies to Prospective Customers by Comcast Online Chat Agents.

51.     Comcast offers prospective customers the ability to engage in online chats with sales agents to discuss Comcast's advertised service packages and to place their orders. As part of their investigation, Plaintiffs' attorneys Hattis Law engaged in online chats with several Comcast online sales agents, asking what if any additional monthly charges would there be above the advertised package price, and asking what was the Broadcast TV Fee.

52.     Every single chat agent falsely stated that there would be no additional charges above the advertised price except for government taxes. Agents even repeated an identical canned – and false – statement about the amount of taxes to expect:

> *"Taxes would vary depending on your area and the services you will be getting. For double play bundles, it usually ranges between $10 - $20 per month."*

53.     This statement is a lie. Comcast instructs its agents to grossly overstate (via a company-authorized canned response) the amount of taxes that will appear on the monthly bill, in order to condition its customers to expect and accept a significantly higher bill than the advertised price.

54.     In truth, most of the $10 - $20 bill increase above the advertised package price is <u>not</u> due to "taxes" as Comcast falsely states. For example, for service in Sacramento, California, which was the subject of these particular chats, taxes add only $1.50 per month, and government-related fees add only another $1.50 per month – well short of the claimed $10 - $20 in "taxes" on the monthly bill.

55.     Instead, most of the bill increase above the advertised price is due to the bogus $5.00 Broadcast TV Fee and $3.00 Regional Sports Fee, which Comcast names and presents on the bill to look like the taxes or government fees that Comcast has attempted to condition customers to expect.

56.     Further, in every case where Plaintiffs' attorney investigators specifically asked the chat agent "What is the Broadcast TV Fee?", the agent lied, and consistent with Comcast's deceptive scheme, falsely stated that the Broadcast TV Fee was a

CLASS ACTION COMPLAINT

government tax.

57.     Excerpts of two of the chats are below:

**Online Chat No. 1 on 1/16/2016:**

**You:** i am ON the submit order page

**You:** I see it here

**You:** It says $44.99

**You:** I want to make sure there aren't any other fees that aren't listed here

**Jacob:** Yes, that is correct.

**You:** ok great

**Jacob:** Taxes would vary depending on your area and the services you will be getting. For double play bundles, it usually ranges between $10 - $20 per month.

**You:** ok that is just gov't taxes?

**Jacob:** Yes, you are correct.

**You:** ok great

**You:** question

**You:** It says somewhere there are also taxes and fees including broadcast tv fee

**You:** What is that?

**Jacob:** Yes, that is for additional TV Access.

**You:** I don't understand, you said my total cost was $49.99 [sic] plus taxes

**Jacob:** Yes, that is excluding taxes.

**You:** oh so the broadcast tv fee is a tax?

**Jacob:** Yes, however, we do not have the exact on that matter

**You:** Where does the broadcast tv tax go?

**You:** i hadn't heard of that tax before

**Jacob:** I apologize, but my support is limited to www.Xfinity.com and I can only offer you the prices and packages on this website with its corresponding eligibility.

**You:** ok

**You:** so all you know is that it is a tax

**You:** and is part of the taxes

**Jacob:** Yes, you are correct.

**You:** I see

**You:** ok

**You:** But the total amount Xfinity is actually charging me for tv service is $44.99 a month

CLASS ACTION COMPLAINT

**You:** like what the order page says

**You:** the rest is taxes that are paid to gov't?

**Jacob:** Yes, that is correct.

**Online Chat No. 2 on 1/16/2016:**

**You:** I am on the submit order page

**You:** I am looking at the $79.99 a month

**You:** my only question is, is that $79.99 a month my total cost per month

…

**Megan:** The fees that you see are the ones that you are going to be paying.

**Megan:** Taxes would vary depending on your area and the services you will be getting. For double play bundles, it usually ranges between $10 - $20 per month.

…

**Megan:** You will only be able to see the itemized taxes once you receive your first monthly bill.

…

**You:** the only other monthly cost is taxes?

**Megan:** Yes, that is correct! …

…

**You:** I think I clicked on something and its said extra was the taxes and fees including broadcast tv fee

**You:** what is the broadcast tv fee

**Megan:** Let me get that information for you. Would you mind holding a moment as I do that?

**You:** sure

**Megan:** The Broadcast TV Fee is an itemized charge on your bill that is intended to offset a portion of the costs of retransmitting broadcast television signals. Broadcast stations are allowed by the government to charge for their signals, and cable providers like Comcast are required to pay substantial fees in order to carry those signals. In recent years, our cost to retransmit broadcast television signals has more than doubled, and this itemized charge will make it clearer for you to see the factors that are driving price changes.

**You:** Ok I don't quite understand

…

**You:** So is the broadcast tv fee part of the taxes?

**Megan:** Yes, it is since it is not part of the one time fees.

**You:** ok, so broadcast tv fee is not a charge for service from comcast.

CLASS ACTION COMPLAINT

**You:** It's just a tax comcast charges and pays to gov't?

**Megan:** Yes, that is correct.

**You:** I see, so it's just part of the total taxes of $10-20 a month you mentioned

**Megan:** Yes, you got that on point.

> **D.** **Comcast's Form Subscriber Agreement Does Not Mention the Broadcast TV Fee or Regional Sports Fee, and to the Contrary, Implies That All Additional Monthly Non-Equipment Fees Are Government-Related.**

58.     Comcast has a form subscriber agreement for its residential customers which it calls the Comcast Agreement for Residential Services (hereinafter "Residential Services Agreement"). Neither the Broadcast TV Fee nor the Regional Sports Fee is mentioned anywhere in the Residential Services Agreement's twenty-three pages of small type. An example of the Residential Services Agreement (the iteration posted on Comcast's website as of January 14, 2016) is attached hereto as **Exhibit C**.

59.     Comcast crafted the Residential Services Agreement in a way that implies that all monthly non-equipment "fees" are government-related taxes or fees:

> **Charges, Fees, and Taxes You Must Pay.** You agree to pay all charges associated with the Service(s), including, but not limited to, installation/service call charges, monthly service charges, XFINITY Equipment (as defined below) charges, measured and per-call charges, **applicable federal, state, and local taxes and fees** (however designated), regulatory recovery fees for municipal, state and federal government fees or assessments imposed on Comcast, **permitted fees and cost recovery charges**, or any programs in which Comcast participates, including, but not limited to, public, educational, and governmental access, universal service, telecom relay services for the visually/hearing impaired, rights-of-way access, and programs supporting the 911/E911 system and **any fees or payment obligations imposed by governmental or quasi-governmental bodies for the sale, installation, use, or provision of the Service(s)**. YOU WILL BE RESPONSIBLE FOR PAYING ANY GOVERNMENT IMPOSED FEES AND TAXES THAT BECOME APPLICABLE RETROACTIVELY. We will provide you with notice and an effective date of any change in our prices or fees, unless the change in price is related to a change in **governmental or quasi-governmental taxes, fees, or assessments**, in which case we may elect not to provide notice except where required by applicable law.

See **Exhibit C** at ¶ 2(a), emphasis added.

60.     A reasonable consumer who read the Residential Services Agreement would assume that the advertised and stated "Monthly Charges" (*e.g.*, see the Comcast

advertisements and offer language in Figures 1-7 above) are all inclusive with the exception of "governmental or quasi-governmental taxes, fees, or assessments."

61.     Sometimes, when a customer signs up for a fixed term Comcast contract, the customer is emailed or mailed an "Offer" document which states the terms of the offer. The "Offer" document is also posted in a hard-to-find section of the Comcast online customer portal.[3]

62.     The Offer document may make a reference to the Broadcast TV Fee or the Regional Sports Fee.  However the Broadcast TV Fee or Regional Sports Fee is at most mentioned only once[4], several paragraphs into the Terms and Conditions section, where it is grouped together in a sentence with government fees and taxes. Meanwhile, consistent with its standard practice, Comcast provides no definition or explanation of the Broadcast TV Fee or Regional Sports Fee anywhere in the Offer document.

63.     Comcast's intent is to deceive the consumer into believing that the Broadcast TV Fee or Regional Sports Fee is one of the "governmental or quasi-governmental taxes, fees, or assessments" mentioned in Section 2(a) of the Residential Services Agreement (excerpted above), and to prevent its customers from realizing the truth that the fees are simply a deceptive way for Comcast to charge more for its service than it has promised.

---

[3] As of October 12, 2016, in order to access this Offer document on the Comcast customer portal, the customer must: (1) click on the "My Account" link; (2) click on the "Settings" link; (3) click on the "Account, Contact Information, and Legal Terms" link; (4) click on the "Legal agreements" link in the "Legal Information" section; and finally (5) click on the "My Account Terms of Service" link, which will download the document as a PDF.

[4] Sometimes the Broadcast TV Fee or the Regional Sports Fee is not mentioned at all in the Offer document.  For instance, in the Offer document posted in Plaintiff Derek Villegas' online account, only a $3.50 Broadcast TV Fee is mentioned, and a Regional Sports Fee is not mentioned at all.  Yet on his very first bill, Mr. Villegas was charged a $4.50 (not $3.50) Broadcast TV Fee, and a $3.00 (rather than no) Regional Sports Fee. Similarly, in the Offer document posted on Plaintiff Nola Palmer's online account, only a $3.50 Broadcast TV Fee is mentioned, and a Regional Sports Fee is not mentioned at all. Yet Ms. Palmer was charged a $3.00 Regional Sports Fee on her first bill, and on her October 2016 bill Comcast increased the Broadcast TV Fee to $6.50 and the Regional Sports Fee to $4.50.

CLASS ACTION COMPLAINT

**E.    Misleading Order Summary and Order Confirmation Emails.**

64.    Once a consumer orders Comcast service, Comcast may email the consumer an order summary and/or an order confirmation. Comcast deceptively hides or even omits entirely any reference to the additional Broadcast TV Fee and Regional Sports Fee in these emails, despite these fees raising the true price of service above the promised subscription price.

65.    Below at Figure 8 is the "Order Summary" email received by Plaintiff Dan Adkins.

CLASS ACTION COMPLAINT

**Figure 8: Order Summary Email**

From: **Comcast Online Communications** <online.communications@alerts.comcast.net>
Date: Mon, Sep 26, 2016 at 1:35 PM
Subject: Almost Done! Your order is nearly complete
To: ██████████████████████

Important Information from Comcast

# xfinity

Help & Support | My Account

## Hi Dan,

Thank you for choosing Comcast! Your recent order is being reviewed. In the event additional information is required to complete your order, we may contact you at the telephone number provided. Once your order is complete, you will receive a final email confirmation with your order number and a summary of your XFINITY services from Comcast. Please keep in mind that order details are not finalized until you receive your confirmation email.

If you do not receive your confirmation email or a call from us within 24 hours, please call us at 1-877-316-9975 from 9 am to 9 pm local standard time to speak with a customer service representative.

We look forward to completing your order.

| Your Account Details | Your Order Summary |
|---|---|
| **Confirmation Number**<br>1609268059602 | **Service**<br>Starter XF Double Play |
| **Billing Contact Information**<br>Mr. Dan Adkins<br>████████████ | **Monthly Fees**<br>$79.99 |
| | **One-time Fees**<br>$14.99 |
| **Billing Address**<br>Same as Service Address | **Service Address**<br>████████████ |

### Installation

**Self Installation**

We will ship your Self-install kit to:
████████████

Have a question about self-installation?
Please visit our help section
to get started using your services.

Sincerely,
XFINITY Team

**Learn more** about the
Comcast Customer Guarantee.

COMCAST

This is a service-related email. Comcast will occasionally send you service-related emails to inform you of service upgrades or new benefits.

Comcast respects your privacy. For a complete description of our privacy policy, click here.

© 2015 Comcast. All rights reserved. All trademarks are the property of their respective owners.

Comcast Cable, One Comcast Center, 1701 JFK Boulevard, Philadelphia, PA 19103
Attn: Email Communications

CLASS ACTION COMPLAINT

66.     The order summary states total "Monthly Fees" for Mr. Adkin's service of $79.99, consistent with Comcast's prior advertisements and promises to Mr. Adkins. This is a lie. In fact Comcast will also charge Mr. Adkins monthly for an additional Broadcast TV Fee of $5.00 and a Regional Sports Fee of $3.00 to provide the very television channels promised by Comcast as included in the $79.99 flat rate. Comcast deceptively and intentionally omits these bogus fees from the promised "Monthly Fees" amount in the order summary email.

67.     Below at Figure 9 is the order confirmation email received by Plaintiff Nola Palmer on March 4, 2016, the same day she placed her order with Comcast via telephone (red box highlight is added):

CLASS ACTION COMPLAINT

## Figure 9: Order Confirmation Email



CLASS ACTION COMPLAINT

1   68.   This order confirmation email makes no mention of the Broadcast TV Fee

2   or the Regional Sports Fee which Ms. Palmer is being charged – not even in the fine

3   print at the bottom of the email.  The "summary of your order" estimates a total charge

4   on the first bill of $151.78, comprised of $139.84 in "Monthly Package, Service and

5   Equipment Fees" plus $11.94 in "Taxes, Surcharges and Fees." The "Taxes, Surcharges

6   and Fees" (highlighted in the red box in Figure 9 above) are not broken out but in fact

7   include the cost of the concealed Broadcast TV Fee and Regional Sports Fee.

8   **F.   Comcast Commits Billing Fraud By Hiding and Disguising the**
    **Broadcast TV Fee and Regional Sports Fee In Customer Bills.**

9

10   69.   Comcast intentionally hides and disguises the Broadcast TV Fee and the

11   Regional Sports Fee in the short version of the monthly bill presented to customers

12   online, and in the full version of the bill mailed to customers and/or available for

13   download by customers.

14   **1.   Short Version of the Bill Presented on the Comcast Website.**

15   70.   By default, Comcast displays a short summary version of the bill to its

16   customers when they log into the Comcast customer web portal.

17   71.   Prior to early October 2016, the short version of the bill displayed on the

18   customer portal hid the Broadcast TV Fee and the Regional Sports Fee, *e.g.*, under a

19   section titled "Taxes & Fees."  The screenshot at Figure 10 was taken on October 4,

20   2016 of the short version of a customer bill (red box highlight is added).

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

**Figure 10: Comcast Bill – Default Short Version on Website (10/4/2016)**



72.    A reasonable consumer would assume that the section titled "Recurring Charges" would include all recurring service charges, including those for providing the broadcast TV channels which are in every television package.  The consumer would be wrong. The $81.98 price is in fact $5.00 less than Comcast is charging this customer to provide the TV channels which were promised to the customer. Comcast has deceptively subtracted this $5.00 from the "Recurring Charges" total and hidden it in the "Taxes & Fees" section in the form of a $5.00 Broadcast TV Fee.

CLASS ACTION COMPLAINT

73.     There is a drop-down arrow next to the "Taxes and Fees" section. If the customer clicks on that arrow (as was done prior to taking the screenshot in Figure 10), then a list of taxes and fees appears, which includes the Broadcast TV Fee (highlighted in the red box in Figure 10). (This particular customer does not subscribe to a package with sports channels and is thus not being charged the Regional Sports Fee.)

74.     Comcast has intentionally hidden the Broadcast TV Fee by grouping it with true government-related fees and taxes such as the FCC Regulatory Fee, Franchise Fees, Local Taxes, and State Sales Tax. Comcast provides no definition for the deceptively named and hidden Broadcast TV Fee.

75.     Later in October 2016, Comcast updated the customer portal website, and now displays even less information in the default short version of the bill, with no mention of the Broadcast TV Fee or the Regional Sports fee whatsoever. The following screenshot at Figure 11 was taken on October 14, 2016 of the short version of the same October bill of the same customer:

CLASS ACTION COMPLAINT

**Figure 11: Comcast Bill – Default Short Version on Website (10/14/2016)**



76.     This new short version of the bill (at Figure 11 above) is now the default view of the bill displayed to customers when they log into their Comcast account and click on the large "View Billing" button displayed on the welcome screen or when they click on the "Billing" tab in the menu bar.  By removing most of the billing details from this new short version of the customer bill, Comcast attempts to hide and prevent the customer from noticing the deceptive Broadcast TV Fee and Regional Sports Fee.

**2.      Long Version of the Comcast Bill.**

77.     Below at Figure 12 is the long version of Plaintiff Nola Palmer's first

CLASS ACTION COMPLAINT

1  monthly bill, which Ms. Palmer downloaded from the Comcast website (red box highlight
2  added).[5]

3  **Figure 12: Comcast Long Version of Bill – Page 1**



_____
5 This long version of Comcast's bill, which is not the default version displayed to customers in the online customer portal, can be downloaded by the customer as a PDF from the portal.

CLASS ACTION COMPLAINT

**Figure 13: Comcast Long Version of Bill – Page 2**

![comcast]

**Service Details**

| | |
|---|---|
| Account Number | ▮▮▮▮▮▮▮ |
| Billing Date | 03/10/16 |
| Total Amount Due | $151.78 |
| Payment Due By | 04/04/16 |
| | Page 2 of 4 |

**Contact us:** @ www.xfinity.com 📞 1-800-XFINITY (1-800-934-6489)

**XFINITY Bundled Services**

| | | |
|---|---|---|
| Starter Triple Play | 03/10 - 04/09 | 139.95 |
| Includes Digital Starter, TMC, Digital Converter With Access to On Demand Programming, Blast! Pro Internet and XFINITY Voice Unlimited | | |
| Bundle Discount | | -39.96 |
| **Total XFINITY Bundled Services** | | **$99.99** |

**Additional XFINITY TV Services**

| | | |
|---|---|---|
| Anyroom DVR | 03/10 - 04/09 | 9.95 |
| Service Discount | | -9.95 |
| Additional Outlet | 03/10 - 04/09 | 29.85 |
| Digital Converter | | |
| Qty 3 @ $9.95 each | | |
| HD Technology Fee | 03/10 - 04/09 | 10.00 |
| Service Discount | | -10.00 |
| **Total Additional XFINITY TV Services** | | **$29.85** |

**Additional XFINITY Internet Services**

| | | |
|---|---|---|
| Wireless Gateway | 03/10 - 04/09 | 10.00 |
| **Total Additional XFINITY Internet Services** | | **$10.00** |

**Additional XFINITY Voice Services**

For Telephone Number(s): ▮▮▮▮▮▮

For closed captioning concerns and other accessibility issues affecting customers with disabilities, call 855-270-0379, go online for a live chat at www.comcastsupport.com/accessibility or email accessibility @ comcast.com or write to Comcast 1701 John F Kennedy Blvd., Phila. PA 19103-2838.  Attn: K. Wilkinson, or fax: 1-888-612-7402

**Additional XFINITY Voice Services, cont.**

View Voice Detail at www.xfinity.com/viewbill

| | | |
|---|---|---|
| **Total Additional XFINITY Voice Services** | | **$0.00** |

**Other Charges & Credits**

| | | |
|---|---|---|
| Install Fee - Video | 03/10 | 29.99 |
| Service Discount | 03/10 | -29.99 |
| Install Fee - Internet | 03/10 | 30.00 |
| Service Discount | 03/10 | -30.00 |
| Install Fee - Voice | 03/10 | 30.00 |
| Service Discount | 03/10 | -30.00 |
| Service Activation | 03/10 | 29.95 |
| Service Discount | 03/10 | -29.95 |
| Activate Existing | 03/10 | 105.00 |
| Qty 3 @ $35.00 each | | |
| Service Discount | 03/10 | -105.00 |
| Qty 3 @ $35.00 each | | |
| Universal Connectivity Charge | | 0.77 |
| Regulatory Recovery Fees | | 0.58 |
| Broadcast TV Fee | | 5.00 |
| Regional Sports Fee | | 3.00 |
| **Total Other Charges & Credits** | | **$9.35** |

CLASS ACTION COMPLAINT

**Figure 14: Comcast Long Version of Bill – Page 3**



78.    The top-line "XFINITY Bundled Services" price of $99.99 on page one of the bill (Figure 12 above) is identical to the price promised to Ms. Palmer when she signed up for service. This price of $99.99 is repeated on page two (Figure 13 above) as the "Total XFINITY Bundled Services" price. A reasonable consumer would believe that this "Total XFINITY Bundled Services" price is the actual <u>total</u> price for the bundled services, including the broadcast TV channels which are in every TV package offered by Comcast, and including the sports channels which are in the premium package selected by Ms. Palmer.

CLASS ACTION COMPLAINT

79.     Yet, the "Total XFINITY Bundled Services" price of $99.99 is a lie. The $99.99 price is in fact $8.00 less than Comcast is truly charging Ms. Palmer to provide those bundled TV channels. Comcast has deceptively subtracted this $8.00 from the Bundled Services "Total" and has hidden it in the "Other Charges & Credits" section in the form of a $5.00 Broadcast TV Fee and $3.00 Regional Sports Fee.[6]

80.     Comcast intentionally hides the Broadcast TV Fee and the Regional Sports Fee in the "Other Charges & Credits" section, often among other truly government-related fees such as the Universal Connectivity Charge and the Regulatory Recovery Fees charge. (See Figure 13 above.) But in contrast to those fees, the deceptively named Broadcast TV Fee and Regional Sports Fee are completely made-up fees charged to provide the very channels Comcast has promised are already included in the "Total INFINITY Bundled Services" price.

81.     In an attempt to insulate itself from liability for its fraud, Comcast inserts deceptively crafted definitions of the Broadcast TV Fee and Regional Sports Fee at the bottom of the full versions of its bills (see Figure 14 above).[7] Comcast intentionally defines the fees in a technical and misleading way that makes them appear to relate to costs imposed on Comcast by the government. Comcast defines the Broadcast TV Fee as follows: "The Broadcast TV fee recovers a portion of the costs of retransmitting television broadcast signals." Comcast defines the Regional Sports Fee as follows: "Regional Sports Fee recovers a portion of the costs to transmit certain regional sports networks."

82.     In contrast, immediately above these intentionally confusing and deceptive definitions of the Broadcast TV Fee and Regional Sports Fee on the bill, Comcast clearly

---

[6] Starting on Ms. Palmer's October 2016 bill, not even one year into her two-year contract which promised a fixed monthly service price, Comcast increased the Broadcast TV Fee to $6.50 and increased the Regional Sports Fee to $4.50.

[7] Notably, Comcast never provides a definition or explanation of the Broadcast TV Fee or the Regional Sports Fee in its advertising to prospective customers. If the fees are mentioned in Comcast's advertising at all, it is only by name in the fine print where they are grouped with government-related fees and taxes and not defined.

CLASS ACTION COMPLAINT

1   defines the Regulatory Recovery Fee as follows: "The Regulatory Recovery Fee is

2   neither government mandated nor a tax, but is assessed by Comcast to recover the

3   costs of certain federal, state and local impositions related to voice services." See Figure

4   14 above.

5       83.    Notably, Comcast's definitions of the Broadcast TV Fee and the Regional

6   Sports Fee (unlike its definition of the Regulatory Recovery Fee immediately preceding

7   them) do not contain language stating they are not government mandated nor a tax.

8   They also do not contain language making clear that the fees are not to recover

9   government imposed costs (unlike the Regulatory Recovery Fee).

10      84.    Meanwhile, by using the technical phrase "recovers a portion of the cost of

11  retransmitting television signals," Comcast implies the Broadcast TV Fee may be related

12  to a government or FCC imposed cost on Comcast for signal transmission, instead of

13  disclosing the true rationale that Comcast charges the fee to reimburse itself for its

14  contractual payments to ABC, NBC, CBS, and FOX. Similarly, in describing the Regional

15  Sports Fee with the technical phrase "recovers a portion of the costs to transmit certain

16  regional sports networks," Comcast falsely implies the fee is to cover some regional or

17  local government transmission fee imposed on Comcast.

18      85.    Comcast is intentionally deceiving its customers, and committing massive

19  billing fraud, by hiding and misrepresenting the bogus Broadcast TV Fee and Regional

20  Sports Fee in its bills in order to avoid being caught raising prices on its customers and

21  breaching its agreements with them.

22      **G.    Comcast Lies to Customers Who Inquire or Complain about the Fees
        and Tells Customers the Charges Are Government Fees or Taxes.**

23

24      86.    Some customers notice the hidden fees on their bills and call Comcast to

25  inquire or complain about the Broadcast TV Fee and the Regional Sports Fee. The

26  standard response of Comcast staff or agents is to lie and tell customers that the fees

27  are government-related fees or taxes.  Comcast staff or agents also uniformly refuse to

28  remove the fees from the bill, telling customers that everyone with television service

1    must pay the Broadcast TV Fee, and that everyone with a sports channel in their

2    package must pay the Regional Sports Fee.

3         87.    When Plaintiff Nola Palmer called Comcast to complain about the

4    Broadcast TV Fee and the Regional Sports Fee, she was told that the fees were

5    mandated government taxes and that the money is used for public education. When

6    Plaintiff Reinier Broker complained in an online chat with a Comcast customer service

7    agent about the Broadcast TV Fee, he was told it was mandated by the government.

8    When Plaintiff Christopher Robertson asked a Comcast online chat agent about the

9    Broadcast TV Fee, he was told it was a "Government approved charge." When Plaintiff

10   Jonathan Bailey called Comcast to complain about the Broadcast TV Fee, he was told it

11   was required by the FCC in order to carry broadcast channels.

12        88.    Other Comcast customers have posted on Comcast's official online "Help

13   & Support Forums" that they were told by Comcast staff that the Broadcast TV Fee and

14   the Regional Sports Fee are taxes or government fees:

15       "I called comcast today to complain about the extra [Broadcast TV Fee and
         Regional Sports Fee] charges that are added to the bill. I was told that it was a
16       tax. IT IS NOT A TAX, it is a fee charged by Comcast. They are charging us an
17       extra $8 per month, without giving us any additional services. I believe we have a
         class action lawsuit waiting to happen."[8]
18
19       "Upon review of my Comcast bills I called today, Sunday, to find out why I was
         being charged for a $3 Broadcast TV fee and a $1 Regional Sports Fee. These
20       charges appeared in my June and July bills under the section "Other Charges &
         Credits" and I wanted to get a better understanding of what and why these
21       charges appeared all of a sudden and if they can be removed.  As an aside, I
         don't watch sports. The call center agent explained they were state and
22       government taxes and could not be removed.  I asked her why they didn't appear
         in the "Taxes, Surcharges, and Fees" section and she corrected herself and
23       stated that they are not State fees but that they are government fees that
         Comcast had been approved to charge customers."[9]
24
25        89.    In the process of investigating this case, Plaintiffs' attorney Daniel Hattis

26   spoke with dozens of Comcast customers who likewise called or contacted Comcast to

27   [8] http://forums.xfinity.com/t5/Billing/Broadcast-TV-Fee/td-p/2671674

28   [9] http://forums.xfinity.com/t5/Billing/broadcast-tv-fee/td-p/2457405

CLASS ACTION COMPLAINT

complain about the Broadcast TV Fee and the Regional Sports Fee and were told by

Comcast staff that the charges were government-related fees or taxes.

90.     Attorney Hattis, who is a Comcast customer, had a similar experience of

being falsely told by a Comcast online customer service agent that the Broadcast TV

Fee was a government mandated fee or tax. The online chat with the Comcast agent is

excerpted below:

**Online Chat on 1/17/2016:**

**DANIEL_>** I have question about what is the broadcast tv fee on my bill
**…**

**Cris>** Since you are subscribed to bundle that includes cable service, Broadcast TV Fee is included as an itemized charge on your bill that is intended to offset a portion of the costs of retransmitting broadcast television signals.

**Cris>** Broadcast stations are allowed by the government to charge for their signals, and cable providers like Comcast are required to pay substantial fees in order to carry those signals.

**DANIEL_>** i don't understand. When I signed up I was told the price for service was $49.99 … and that the only other cost was government taxes

**DANIEL_>** So comcast is actually charging monthly service cost of $49.99 + $3.25 broadcast fee? I don't understand

**DANIEL_>** So service is NOT actually $49.99 a month that I was promised?

**Cris>** The Broadcast TV Fee represents only a portion of our broadcast retransmission costs which is raise by broadcasters to the government and is being approved. For having cable service, there will be fees included, Daniel. This applies to all cable service providers including AT&T U-verse, Charter, Time Warner Cable and Verizon FiOS.

**Cris>** The Broadcast TV Fee represents only a portion of our broadcast retransmission costs

**DANIEL_>** Where does that fee go. You did not advertise that fee. The rep promised me no extra fees, that only would be taxes.

**DANIEL_>** You advertised $49.99

**Cris>** Since this fee is also a government mandated charge, Comcast and all cable service providers has no control over this fee.

**DANIEL_>** oh ok

**DANIEL_>** So this is a tax, that Comcast does not keep?

**Cris>** Thank you so much for your understanding

**DANIEL_>** This $3.25 just goes to the government?

CLASS ACTION COMPLAINT

**Cris>** Yes, that is correct. It will be submitted to the government as well.

### H.   Comcast's Practices Are Fraudulent and Unfair and Are Intended To Mislead Consumers.

91.     Comcast perpetrates this scheme in order to charge its customers more money for its service packages while advertising and promising a lower price. This massive fraud pervades and is reinforced throughout the entire life cycle of the customer. First, Comcast intentionally hides and misrepresents the fees in its advertising and in its communications with prospective customers.  Second, Comcast commits billing fraud by subtracting the invented fees from the top-line service price in its bills (*e.g.*, from the "Total XFINITY Bundled Price") and instead hiding and disguising the charges in the "Other Charges & Credits" section of the bill. Third, to those customers who question the bogus charges, Comcast lies by stating that the charges are government-related fees or taxes over which it has no control.

92.     Comcast regularly increases the Broadcast TV Fee and the Regional Sports Fee in the middle of customers' existing flat-rate one-year or two-year contracts. Comcast utilizes the fees as a backdoor way to repeatedly and secretly increase its prices to its customers, in breach of its fixed-rate contracts with them. For example, in the middle of Plaintiff Christopher Robertson's one-year contract at the promised flat rate of $49.99, Comcast increased the Broadcast TV Fee from $3.25 to $5.00. Similarly, not even half way through Plaintiff Nola Palmer's two-year contract, Comcast increased the Broadcast TV Fee from $5.00 to $6.50 and increased the Regional Sports Fee from $3.00 to $4.50.

93.     Since Comcast introduced the Broadcast TV Fee in 2014, it has raised the fee over 400%, from $1.50 to $6.50.  Since Comcast introduced the Regional Sports Fee in 2015, it has raised the fee 450%, from $1.00 to $4.50.  Comcast continues to brazenly and repeatedly increase these fees, most recently in October 2016.

94.     The FCC has identified these fees by "MVPDs" (Multichannel Video Programming Distributors, such as Comcast) as potentially deceptive, stating the

CLASS ACTION COMPLAINT

1   following and seeking public comment:

2       Some MVPDs have added various video-related fees to monthly billing
        statements. **Such fees include, for instance, a broadcast fee to partially**
3       **recoup retransmission consent fees charged by local broadcast stations**
        **and a sports fee to defray the cost of sports programming. Some MVPDs**
4       **may raise subscribers' total monthly bills using these fees without raising**
        **the advertised package prices.** We seek comment on the competitive strategy
5       associated with adding video-related fees as opposed to raising monthly
        subscription prices… Do such fees enable MVPDs to better attract new
6       subscribers and retain existing subscribers? **Are consumers less responsive to**
        **a $1 video-related fee than they are to a $1 increase in the price of video**
7       **services?**

8       (*See* FCC Public Notice, 30 FCC Rcd 7114, released on July 2, 2015, *available* at
9       https://www.fcc.gov/ecfs/filing/60001090312; emphasis added.)

10          95.     Consumer advocates and journalists have criticized the Broadcast TV Fee

11   scheme.

12          96.     Consumerist.com, a website published by a subsidiary of Consumer

13   Reports, upon first learning of Comcast's Broadcast TV Fee in late 2013, stated: "[S]ince

14   this is a fee tacked on above the bill, the company may still be able to advertise the

15   monthly rate without the fee. So this is an attempt to jack up your bill without being

16   transparent about the total costs to potential subscribers."[10] Consumerist's prediction

17   was of course borne out.

18          97.     One journalist called the Broadcast TV fee "maddening because of the way

19   it's being conducted… [B]y tacking on the additional cost below the bill's main charges,

20   the company is able to jack up prices without having to advertise that anything has

21   changed."[11]

22          98.     Another journalist stated that Comcast's charging a Broadcast TV Fee is

23   "like The Cheesecake Factory listing a piece of cheesecake for $5.99 then adding a

24   _____

25   [10] Morran, Chris, "Comcast Wants To Be Hated Even More, Adding $1.50 'Broadcast TV
     Fee'", Consumerist, November 25, 2013 (*available* at
26   https://consumerist.com/2013/11/25/comcast-wants-to-be-hated-even-more-adding-1-
     50-broadcast-tv-fee/).

27   [11] Duryee, Tricia, "Why Comcast Just Added a $1.50 'Broadcast TV Fee' to Your
     Monthly Bill", Geekwire, July 23, 2014 (*available at*
28   http://www.geekwire.com/2014/comcast-just-added-1-50-broadcast-tv-fee-bill).

CLASS ACTION COMPLAINT

1    $1.50 sugar surcharge when you get your bill."[12]

2        99.    Comcast will continue deceiving and cheating its customers with this

3    Broadcast TV Fee and Regional Sports Fee scheme until it is forced by law to stop. The

4    scheme is far too profitable. Plaintiffs estimate that Comcast earns over $1 billion per

5    year from these bogus fees, equal to approximately 15% of Comcast's total annual

6    profits.

7                    **V.    PLAINTIFFS' INDIVIDUAL FACTUAL ALLEGATIONS**

8        **A.    Plaintiff Dan Adkins**
             (California Plaintiff)
9

10       100.    After moving to a new home in Oakland, California, Plaintiff Dan Adkins

11   went online to Comcast's website on September 26, 2016 to review Comcast's service

12   package offerings. Mr. Adkins desired to sign up for a package with television and high

13   speed Internet which would work with his TiVo video recorder device.  After researching

14   and pricing Comcast's various advertised offerings, Mr. Adkins decided to sign up for

15   two-year contract for Comcast's Starter XF Double Play package, which promised 140

16   channels of television and high speed Blast! Pro Internet for an advertised monthly price

17   of $79.99 for the first 12 months and $89.99 for the second 12 months. Based on

18   Comcast's representations on its website, including the "Monthly Total" amount of

19   $79.99 prominently displayed throughout the order process, Mr. Adkins placed his order

20   for the Starter XF Double Play package. At no time prior to or in placing his order was

21   Mr. Adkins aware Comcast would charge him an additional monthly Broadcast TV Fee

22   and a Regional Sports Fee on top of the $79.99 promised price for his service.

23       101.    After placing his order, Mr. Adkins received an "Order Summary" email

24   from Comcast. See Figure 8 above. Consistent with Comcast's advertising and

25   promises, the order summary showed that the total "Monthly Fees" for his package

26

27   ───────────────────
     [12] Kline, Daniel, "The Truth Behind Comcast's $1.50 Retransmission Fee", The Motley
28   Fool, July 25, 2014 (*available at* http://www.fool.com/investing/general/2014/07/25/the-
     truth-behind-comcasts-150-retransmission-fee.aspx).

CLASS ACTION COMPLAINT

1   would be $79.99 per month.

2   102.   Mr. Adkins received his first bill on October 6, 2016. Mr. Adkins was

3   surprised to see that his bill was $127.97, much higher than the $79.99 in "Monthly

4   Fees" he had been promised. Mr. Adkins noticed that Comcast was charging him a

5   previously undisclosed $5.00 Broadcast TV Fee and $3.00 Regional Sports Fee. Mr.

6   Adkins also noticed that Comcast was charging him an additional $15.00 for Blast! Pro

7   Internet, contrary to Comcast's promise to him that it was included in his service

8   package.

9   103.   Upset by these excess charges, Mr. Adkins wrote and mailed a letter to

10  Comcast on October 7, 2016 asking that Comcast remove the Broadcast TV Fee,

11  Regional Sports Fee, and the Blast! Pro Internet charges from his bill. He also asked that

12  Comcast give him a $2.50 monthly credit for using a CableCARD in his own device

13  pursuant to Comcast policy, and questioned whether he had been double charged for

14  the self-install kit.

15  104.   Later on October 7, 2016, Mr. Adkins opted out of Comcast's arbitration

16  clause on Comcast's "Arbitration Opt Out" webpage.

17  105.   Mr. Adkins has also since learned that Comcast intends to increase his

18  $79.99 base rate (which does not include the Broadcast TV Fee or the Regional Sports

19  Fee) for services in months 13-24 to $99.99 per month, rather than to the $89.99 per

20  month that Comcast promised him when he placed his order.

21  106.   On October 8, 2016 Plaintiffs' counsel faxed and emailed a letter to

22  Comcast on behalf of Mr. Adkins and Plaintiff Jonathan Bailey to Comcast Senior Vice

23  President Thomas R. Nathan demanding, among other things, that Comcast stop its

24  deceptive practices and return all money paid by Comcast customers for the Broadcast

25  TV Fee and Regional Sports Fee. A Comcast litigation paralegal acknowledged receipt

26  of the October 8, 2016 letter by an email reply on October 10, 2016. Plaintiffs' counsel

27  also mailed a notice letter to Comcast by certified mail return receipt on October 10,

28  2016.  Comcast has not responded to the letters.

CLASS ACTION COMPLAINT

107.    Mr. Adkins materially relied upon Comcast's misrepresentations and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr. Adkins to suffer harm, injury in fact, and lost money or property.

**B.    Plaintiff Christopher Robinson**
(California Plaintiff)

108.    A few years prior to November 2015, Plaintiff Christopher Robertson had television and Internet service with Comcast. He cancelled his service after being frustrated with various extra charges on his bill each month and his having to repeatedly call or online chat with Comcast customer service representatives to get them removed.

109.    Mr. Robertson switched from Comcast to DirecTV for television and to AT&T for Internet and phone service. Towards the end of 2015, AT&T was going to increase the monthly service rate from approximately $40.00 per month to approximately $55.00 per month.  Meanwhile, Mr. Robertson did not watch much television and decided he did not need his DirecTV subscription.

110.    In October 2015, Mr. Robertson received a direct mail flyer from Comcast advertising current "deals" offered by Comcast for Internet and television.

111.    After receiving the flyer, Mr. Robertson went to Comcast's website and began researching Comcast and its service offerings. On Comcast's website, Mr. Robertson read various statements in which Comcast said it had made improvements including in customer service. Mr. Robertson priced out various Comcast offerings available to him, and determined that the advertised price for a bundle package of Internet plus basic TV at $49.99 was cheaper than the price for high speed internet alone.

112.    On or about November 9, 2015, Mr. Robertson returned to the Comcast website.  He initiated an online chat with a Comcast agent, and told the agent he was interested in the Internet Plus 25 plan. Mr. Robertson asked the agent what the total monthly bill would be, and told the agent he wanted to make sure other fees would not be regularly added to the bill like in his last experience with Comcast. The agent assured

CLASS ACTION COMPLAINT

1    Mr. Robertson there would be no extra charges with the exception of government fees

2    and taxes, and stated that the monthly total during the one-year contract would be the

3    $49.99 advertised price plus approximately $10.00 in various taxes and government

4    fees, for a total of approximately $60.00. Relying on the representations of the Comcast

5    representative, Mr. Robertson placed the order for service. At no time prior to or in

6    placing his order was Mr. Robertson aware he would be charged an additional

7    Broadcast TV Fee or any other fee not related to taxes or government charges.

8        113.   Mr. Robertson received his first bill on or about November 14, 2015. He

9    was surprised to see that the bill was $73.94, much higher than promised. Upon further

10   examination of the bill, Mr. Robertson saw a $6.00 Video Transfer Fee, a $6.00 CHSI

11   Transfer Fee, and a $3.25 Broadcast TV Fee.

12       114.   Mr. Robertson initiated an online chat on Comcast's website with a

13   customer service agent, and he asked that the fees be removed from his bill.  The chat

14   agent said he could remove the Video Transfer Fee and CHSI Transfer Fee, but that he

15   could not remove the Broadcast TV Fee because that was a fee all customers had to

16   pay. The agent said he was unable to explain the Broadcast TV Fee, and that he could

17   not remove it.

18       115.   On December 2, 2015, Mr. Robertson opted out of Comcast's arbitration

19   clause on Comcast's "Arbitration Opt Out" webpage.

20       116.   On December 24, 2015, Plaintiffs' counsel mailed a letter on behalf of Mr.

21   Robertson to Comcast demanding that Comcast end its unlawful scheme and return all

22   money Comcast customers paid for the Broadcast TV Fee and Regional Sports Fee.

23   See **Exhibit A**.

24       117.   On February 25, 2016, Comcast Senior Vice President Thomas R. Nathan

25   mailed a response letter refusing to change Comcast practices or refund any money.

26   See **Exhibit B**.

27       118.   On March 19, 2016 Mr. Robertson initiated another online chat with a

28   customer service agent.  The agent immediately "escalated" his chat to another

CLASS ACTION COMPLAINT

1    representative, before even beginning a conversation with him, presumably because Mr.

2    Robertson's account had been flagged by Comcast after Comcast received the demand

3    letter sent on his behalf.  Based on information and belief, the next agent he was

4    transferred to was a more senior and knowledgeable representative than the typical

5    agent.

6            119.    Mr. Robertson asked the agent to remove the Broadcast TV Fee charges

7    from his bills.

8            120.    The agent stated that the Broadcast TV Fee was a "Government approved

9    charge implemented by Comcast to all cable service subscribers."

10           121.    Mr. Robertson complained to the agent that he was not told about the

11   charge, and that "I signed a 1 year agreement to pay a specific amount for a specific

12   service from Comcast, that is the amount I should be paying each month." He stated that

13   "Comcast told me one price, then charged me another."

14           122.    The agent responded that the "Broadcast TV Fee is part of the fees for

15   having cable service which is on top of the service price you currently have."

16           123.    The agent repeated a version of the Comcast canned line that Comcast

17   intentionally chose not to add the amount of the Broadcast TV Fee ($3.25) to the base

18   service price in order to increase transparency regarding its pricing: "[I]nstead of adding

19   it on the price of the service, it is added as [an] additional fee or as an itemized charge

20   [that] will make it clearer for you to see the factors that are driving price changes."

21           124.    The agent refused to remove the Broadcast TV Fee charges from Mr.

22   Robertson's bill, stating "it cannot be refunded … since you have agreed to sign up for

23   the package with us."

24           125.    In July 2016, with 4 months still remaining on his 12 month contract at the

25   promised flat rate of $49.99, Mr. Robertson's total monthly bill increased from $61.03 to

26   $67.41. Starting that month, Comcast increased the Broadcast TV Fee charge on Mr.

27   Robertson's bill from $3.25 to $5.00. In addition, Comcast added a five dollar fee for an

28   Internet "Speed Increase", apparently removing a supposed "Service Discount" of $5.00

CLASS ACTION COMPLAINT

he was previously receiving.

126.    After further examining his bills in late September 2016, Mr. Robertson realized that since his subscription started, he had been charged $10.00 each month for an Internet "Speed Increase" fee (but with a $5.00 "Service Discount" from November 2015 through June 2016, after which he was charged the full $10.00), which Mr. Robertson never approved and which is not mentioned in the "Offer" document posted to his online account.

127.    Mr. Robertson materially relied upon Comcast's misrepresentations and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr. Robertson to suffer harm, injury in fact, and lost money or property.

**C.     Plaintiff Jonathan Bailey**
(Washington Plaintiff)

128.    Prior to July 2016, Plaintiff John Bailey had Internet service with Comcast for approximately $53.00 per month and TV service with Dish Network for approximately $50.00 per month.

129.    In July 2016, Mr. Bailey noticed an unexplained charge on his Comcast account for a Limited Basic Converter.

130.    On July 21, 2016, Mr. Bailey called Comcast to inquire about the charge. After the agent confirmed that Mr. Bailey did not have television service and that he owned his own modem, the agent told him the charge was a mistake and removed the charge from the bill.

131.    The agent then offered to add television to Mr. Bailey's service plan, including about 25 channels and HBO or Showtime, for only $10.00 more per month than he was then paying for Internet only. Mr. Bailey declined the offer, because the package did not include ESPN, and he did not need or want HBO or Showtime. He was happy with Dish Network and had the ability to place his $50.00 per month Dish service on "pause" mode for three months during the football off-season to save money.

132.    After the call with the Comcast agent, Mr. Bailey began researching his

CLASS ACTION COMPLAINT

1 television options. Mr. Bailey determined that while the plan offered by the agent did not

2 include ESPN, he could instead subscribe to month-to-month SlingTV streaming service

3 for $20.00 per month which included ESPN.  Between the two services, Comcast and

4 SlingTV, he would pay $30.00 per month for local channels and ESPN, and even less if

5 he suspended SlingTV service during the football off-season, which would meet his

6 needs and be cheaper than his current Dish subscription.

7 133.   On July 23, 2016, Mr. Bailey called Comcast and asked for the $10.00 TV

8 package to be added to his current Internet plan, as the previous agent had offered. The

9 agent told him there was no such plan, and that the best the agent could do was offer a

10 plan for $20.00 more per month. Mr. Bailey then asked to be transferred to the customer

11 retention department.  After Mr. Bailey explained the situation to the customer retention

12 agent, the agent told Mr. Bailey that the agent could indeed offer him the television plan

13 for $10.00 more per month.

14 134.   The agent confirmed a total monthly price of approximately $63.00 per

15 month with a one-year commitment. Relying on these representations of the Comcast

16 agent, Mr. Bailey placed the order for the service plan with the agent. At no time prior to

17 or in placing his order was Mr. Bailey aware that he would be required to pay an extra

18 $5.00 per month in the form of the Broadcast TV Fee.

19 135.   Upon receiving his first bill on or about August 23, 2016, Mr. Bailey noticed

20 there was a $10.16 charge for a Broadcast TV Fee. Mr. Bailey called Comcast to inquire

21 about the charge, and was told by a customer service agent that the Broadcast TV Fee

22 is charged to all Comcast TV customers due to the FCC requiring Comcast to carry the

23 broadcast TV channels. The agent told Mr. Bailey the fee would usually be $5.00 per

24 month, and that "it's a fee we all have to pay."

25 136.   Mr. Bailey explained to the agent that his television package was primarily

26 made up of just the broadcast TV channels, and that Comcast had promised him he

27 would receive those channels by paying only $10.00 more than his previous rate for

28 Internet-only service.  Mr. Bailey pointed out that the additional $5.00 Broadcast TV Fee

CLASS ACTION COMPLAINT

1   charge represented a 50% premium over the agreed upon rate. The agent told Mr.

2   Bailey there was nothing she could do.  Mr. Bailey asked to speak to a supervisor. The

3   agent transferred Mr. Bailey to a supervisor, but the supervisor could not hear him

4   speaking and disconnected the call.

5           137.   Mr. Bailey then called back and reached a new agent and immediately

6   asked to be transferred to another supervisor. The agent told him he could not transfer

7   Mr. Bailey unless he understood why. Mr. Bailey told the agent about his previous

8   conversation with the other agent. The new agent told Mr. Bailey he could not remove

9   the Broadcast TV Fee charge either. Mr. Bailey again asked to be transferred to a

10  supervisor, and the agent told him he could transfer him, but that not even the supervisor

11  could remove the charge. Mr. Bailey then asked to be transferred to the customer

12  retention department, which Mr. Bailey thought would have more power to remove the

13  fee from his bills.

14          138.   The agent transferred Mr. Bailey to the customer retention department. Mr.

15  Bailey explained the situation to the customer retention agent, and told the agent that the

16  Broadcast TV Fee was never disclosed to him prior to his signing up for service. Mr.

17  Bailey demanded that the Broadcast TV Fee be removed from his bill. The agent refused

18  to remove the charge, stating that "everyone" had to pay the fee. The agent also refused

19  to institute a $5.00 credit on Mr. Bailey's account in some other way.

20          139.   Mr. Bailey asked the agent whether he could cancel the new service and

21  go back to his prior Internet-only rate. The agent told him no, he could not go back,

22  because that package was no longer available. Given Comcast's refusal to allow Mr.

23  Bailey to return to his original Internet-only rate, and given that the only other broadband

24  Internet service available to him from another provider was slower DSL service, Mr.

25  Bailey reluctantly remained with Comcast.

26          140.   On August 23, 2016, Mr. Bailey opted out of Comcast's arbitration clause

27  on Comcast's "Arbitration Opt Out" webpage.

28          141.   In October 2016 Plaintiffs' counsel sent letters to Comcast on behalf of Mr.

CLASS ACTION COMPLAINT

1  Bailey and Plaintiff Dan Adkins to Comcast as described in Paragraph 106 above.

2  Comcast has not responded to the letters.

3      142.   Mr. Bailey materially relied upon Comcast's misrepresentations and

4  omissions, which in conjunction with Comcast's acts and practices alleged herein

5  caused Mr. Bailey to suffer harm, injury in fact, and lost money or property.

6      **D.   Plaintiff Reinier Broker**
        (New Jersey Plaintiff)

7

8      143.   In early June 2016, Plaintiff Reinier Broker, who had recently moved to

9  New Jersey, went online to Comcast's website to research getting high speed Internet.

10  Comcast was the only cable provider to his new address.

11     144.   Mr. Broker initiated an online chat session with a Comcast agent to learn

12  more about Comcast's service plan offerings.  From the chat and based on his review of

13  the advertised service packages on Comcast's website, Mr. Broker determined that it

14  would be more expensive to subscribe to high speed Internet by itself, versus

15  subscribing to a "bundle" package which also included television.

16     145.   A few days later, on June 11, 2016, Mr. Broker returned to Comcast's

17  website and ordered the Internet Pro Plus package, which included both television and

18  high speed Internet, for an advertised and promised price of $54.99. In ordering the

19  service, Mr. Broker relied on Comcast's representation that the monthly service fee

20  would be $54.99 plus taxes. Mr. Broker was not informed he would be charged a $5.00

21  Broadcast TV Fee in addition to the monthly service price of $54.99.

22     146.   After placing his order, Mr. Broker received an email "Order Summary"

23  from Comcast stating that his monthly fee would be $54.99, and that there would be

24  one-time fees of $9.95.

25     147.   Mr. Broker received his first Comcast bill on or around June 17, 2016.  He

26  was surprised to see a $5.00 Broadcast TV Fee listed in the "Other Charges & Credits"

27  section of the bill. Mr. Broker read the cryptic Comcast definition of the Broadcast TV

28  Fee at the bottom of his bill ("The Broadcast TV Fee recovers a portion of the costs of

CLASS ACTION COMPLAINT

1 | retransmitting television broadcast signals"), but he did not understand it.

2 | 148. On or about June 24, 2016, Mr. Broker went to Comcast's website and

3 | initiated an online chat with a customer service agent. Mr. Broker asked the agent about

4 | the fee. The agent told Mr. Broker the Broadcast TV Fee was a "mandated" fee. After

5 | continuing to chat with the agent and not getting an adequate explanation of the fee and

6 | being unable to get the agent to remove the charge, Mr. Broker asked to chat with the

7 | agent's manager. The manager similarly responded that the Broadcast TV Fee was

8 | charged to all Comcast customers. The manager offered to refund the fee for the first

9 | month only, and told Mr. Broker if he wanted to discuss the fee further he should contact

10 | customer service by telephone instead.

11 | 149. In early July Mr. Broker called Comcast customer service as directed by

12 | the chat manager, and asked the telephone agent for an explanation of the Broadcast

13 | TV Fee and demanded that it be removed from his bill. The telephone agent told him

14 | that all cable companies have to charge this Broadcast TV Fee. Mr. Broker responded

15 | that this was false and that his former cable company did not charge the fee. After about

16 | twenty minutes of talking in circles with the agent, Mr. Broker asked to speak with the

17 | agent's manager, and was told the manager would call him back. When the manager

18 | called back, Mr. Broker was boarding an airplane and was unable to answer.

19 | 150. On July 13, 2016, Mr. Broker opted out of Comcast's arbitration clause on

20 | Comcast's "Arbitration Opt Out" webpage.

21 | 151. Mr. Broker called the manager back a few days later regarding the

22 | Broadcast TV Fee. Mr. Broker told the manager that the fee was not disclosed to him

23 | prior to his receiving the first bill. The manager claimed that the fee was disclosed to him.

24 | The manager also argued that the order confirmation email he received, which stated his

25 | "Monthly Fees" would total $54.99, was only an "estimate." Mr. Broker read the order

26 | confirmation email back to the manager and refuted the manager's assertion, pointing

27 | out nowhere did the email say this price was an "estimate." Mr. Broker demanded that

28 | the manager tell him exactly when was the Broadcast TV Fee disclosed to him. The

CLASS ACTION COMPLAINT

manager responded that Mr. Broker was told about the fee on June 24, 2016 during his prior online chat. Mr. Broker asked if the manager agreed the fee was not disclosed to him before the service began. The manager responded that the fee "should have been disclosed." Mr. Broker then asked whether their conversation was being recorded, and asked for a copy. The manager responded that the conversation was indeed being recorded, but that Comcast would not give Mr. Broker a copy.

152.    On July 25, 2016, Plaintiffs' counsel faxed a demand letter on behalf of Mr. Broker to Comcast Senior Vice President Thomas Nathan demanding that Comcast stop its deceptive practices and return all money paid by Comcast customers for the Broadcast TV Fee and the Regional Sports Fee. Plaintiffs' counsel also emailed the letter on July 25, 2016 to a litigation paralegal at Comcast.  Mr. Nathan responded in a letter dated August 31, 2016 that Comcast denied Mr. Broker's allegations because "the Company does disclose the Broadcast TV fee in all its advertising."

153.    Mr. Broker materially relied upon Comcast's misrepresentations and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr. Broker to suffer harm, injury in fact, and lost money or property.

**E.    Plaintiff James McLaughlin**
(Illinois Plaintiff)

154.    Plaintiff James McLaughlin moved into a new home in Aurora, Illinois in 2016.

155.    On March 24, 2016, Mr. McLaughlin visited a Comcast XFINITY store in Bolingbrook, Illinois to inquire about getting television and Internet service.

156.    He asked the agent at the counter about Comcast's deals for Internet and television service, including HBO.  The agent suggested a $99.99 monthly package which included TV and Internet.

157.    Mr. McLaughlin asked the agent how much Comcast would charge him each month in total.  The agent responded that the monthly total would be approximately $107.00 given the $99.99 package price and Illinois' 7% sales tax.

158. Relying on these representations of the Comcast agent, Mr. McLaughlin placed the order for the service package.

159. Two days later, on March 26, 2016, Mr. McLaughlin received his first Comcast bill. The bill was $132.04, much higher than he expected. He noticed that Comcast had charged him a previously undisclosed $5.00 Broadcast TV Fee and a $3.00 Regional Sports Fee.

160. Mr. McLaughlin called Comcast to ask about these extra charges on his bill. He asked the customer service agent to remove the Broadcast TV Fee and the Regional Sports Fee from his bill. The agent responded that that Broadcast TV Fee and Regional Sports Fee could not be removed. While speaking to the agent, Mr. McLaughlin also found out for the first time that he had been signed up for a two-year contract. The agent also told him his monthly bill would increase after 12 months into the two-year contract; this similarly was new information for him.

161. On or about March 28, 2016, Mr. McLaughlin opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

162. On April 6, 2016, Plaintiffs' counsel faxed a demand letter on behalf of Mr. McLaughlin and several other Comcast customers to Comcast Senior Vice President Thomas R. Nathan reiterating the demands previously made in the December 24, 2015 demand notice sent on behalf of Plaintiff Christopher Robertson that Comcast stop its deceptive practices and return all money paid by Comcast customers for the Broadcast TV Fee and Regional Sports Fee. Plaintiffs' counsel also mailed the demand letter on April 7, 2016 via USPS electronic return receipt. USPS records show that the Comcast received the demand letter on April 13, 2016. Comcast did not respond to the April 2016 demand letter.

163. In September 2016, Mr. McLaughlin moved to a neighboring home and was required by Comcast to enter into a new contract at the new address to replace his existing two-year contract. Comcast continues to charge Mr. McLaughlin for the Broadcast TV Fee and Regional Sports Fee.

CLASS ACTION COMPLAINT

164.    Mr. McLaughlin materially relied upon Comcast's misrepresentations and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr. McLaughlin to suffer harm, injury in fact, and lost money or property.

**F.    Plaintiff Nola Palmer**
(Colorado Plaintiff)

165.    Until March 2016, Nola Palmer subscribed to Century Link for Internet and phone service, but she was dissatisfied with Century Link because her monthly bill kept increasing and various fees had been added to the bill.

166.    On or about March 4, 2016, Ms. Palmer called Comcast to inquire about what deals Comcast was offering. The agent told her that Comcast could offer her Internet, cable television, phone services, and equipment for a flat rate of $139.84 per month ($99.99 for service, plus $29.85 for additional outlets and $10.00 for a wireless router) for a two-year term.  Wary because of her Century Link experience, Ms. Palmer asked the agent what specific taxes, fees and other charges would be added to the bill above the promised $139.84 price. The agent told her the only additional charges would be taxes and FCC mandated fees which would total $11.94 per month. Relying on these representations of the Comcast agent, Ms. Palmer placed the order for the Starter Triple Play package with a two-year contract. At no time prior to or in placing her order was Ms. Palmer aware she would be charged a Broadcast TV Fee or a Regional Sports Fee.

167.    Ms. Palmer received an email from Comcast titled "Confirmation Email" later that day.  See Figure 9 above. This order confirmation email makes no mention of the Broadcast TV Fee and Regional Sports Fee which are being charged to Ms. Palmer. The "summary of your order" section estimates a total charge on the first bill of $151.78, comprised of $139.84 in "Monthly Package, Service and Equipment Fees" plus $11.94 in "Taxes, Surcharges and Fees" which are not broken out.

168.    Ms. Palmer received her first Comcast bill on or around March 10, 2016. She was surprised to see a $5.00 Broadcast TV Fee and a $3.00 Regional Sports Fee in the "Other Charges & Credits" section. See Figure 13 above.

1   169.   Annoyed, Ms. Palmer called Comcast's customer service line. She

2   demanded an explanation for the Broadcast TV Fee and the Regional Sports Fee.  The

3   agent told her repeatedly that these were government fees or taxes. The agent further

4   embellished this lie by adding that the fees went to public education.

5   170.   Comcast's lie to Ms. Palmer that the Broadcast TV Fee and the Regional

6   Sports Fee were government fees or taxes, like the initial lie of the telephone agent who

7   told her the bill would be $11.94 higher than the advertised price due to taxes and FCC

8   fees, is part of Comcast's scheme to condition its customers to accept higher prices

9   while making them falsely believe that the price increases are due to government fees

10   and taxes beyond Comcast's control.

11   171.   On March 16, 2016, Ms. Palmer opted out of Comcast's arbitration clause

12   on Comcast's "Arbitration Opt Out" webpage.

13   172.   In April 2016 Plaintiffs' counsel sent a demand letter to Comcast on behalf

14   of Ms. Palmer and several other Comcast customers as described in Paragraph 162

15   above. Comcast did not respond to the demand letter.

16   173.   Upon receiving her October 3, 2016 bill, Ms. Palmer was upset to discover

17   that Comcast had increased the monthly Broadcast TV Fee and Regional Sports Fee

18   charges, effectively again increasing her monthly service price despite Comcast's

19   promise to charge her a flat service rate of $99.99 for two years. Only seven months into

20   her two-year contract, Comcast had increased the Broadcast TV Fee from $5.00 to

21   $6.50, and the Regional Sports Fee from $3.00 to $4.50.

22   174.   Ms. Palmer materially relied upon Comcast's misrepresentations and

23   omissions, which in conjunction with Comcast's acts and practices alleged herein

24   caused Ms. Palmer to suffer harm, injury in fact, and lost money or property.

25   **G.   Plaintiff Derek Villegas**
        (Florida Plaintiff)

26

27   175.   Prior to February 2016, Plaintiff Derek Villegas received television service

28   from Dish Network, and Internet and phone service from Comcast.

CLASS ACTION COMPLAINT

176.   Frustrated with Dish's rising rates, Mr. Villegas called Comcast on February 11, 2016 to inquire about adding television to his Comcast services to replace his Dish satellite television service.  As a Comcast customer, Mr. Villegas had often received mailers from Comcast offering discounted "bundle" packages.

177.   The Comcast agent he spoke with recommended a package with Internet, TV and phone service for a quoted price of $147.88 per month plus taxes for a two-year term.  The quoted price included equipment and outlet charges.  At no time prior to or in placing his order was Mr. Villegas aware he would be charged a monthly Broadcast TV Fee and a Regional Sports Fee.

178.   On February 21, 2016, Mr. Villegas received his first Comcast bill.  He was surprised to see he was charged a previously undisclosed $4.50 Broadcast TV fee and a $3.00 Regional Sports fee.

179.   On March 2, 2016, Mr. Villegas called Comcast to complain about the Broadcast TV Fee and Regional Sports Fee. The agent he spoke to told him that there was nothing the agent could do.  Mr. Villegas asked the agent what the Broadcast TV Fee was for, and the agent told him the fantastical story that Comcast charges the fee so that if Comcast has a dispute with one of the broadcasters, Comcast would use those funds to keep the channel active for everyone instead of turning the channel off.  The agent told him that the Regional Sports Fee was a fee for sports in Mr. Villegas' area.

180.   Mr. Villegas asked the agent whether he could expect other price increases, and the agent told him that after 12 months his monthly bill would increase. This was also new information to Mr. Villegas, who had previously understood that he had contracted for a fixed, flat monthly price of $147.88 for two years.

181.   Later on March 2, 2016, Mr. Villegas opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

182.   In April 2016 Plaintiffs' counsel sent a demand letter to Comcast on behalf of Mr. Villegas and several other Comcast customers as described in Paragraph 162 above. Comcast did not respond to the demand letter.

CLASS ACTION COMPLAINT

183.   Mr. Villegas materially relied upon Comcast's misrepresentations and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr. Villegas to suffer harm, injury in fact, and lost money or property.

**H.   Plaintiff Dale Wynn**
(Ohio Plaintiff)

184.   Prior to January 2016, Plaintiff Dale Wynn had Business Internet provided by Comcast for his home office, and had home television service provided by a satellite service provider.

185.   In January 2016, Mr. Wynn checked Comcast's website for rates on its consumer bundled service plans. In late January 2016, Mr. Wynn called Comcast to discuss whether he could switch his service from Business Internet to consumer Internet and television. After discussing his options with a Comcast agent, the agent recommended an Internet and TV package for $79.99 plus equipment fees.  The agent quoted a flat rate plus taxes, and told Mr. Wynn that the only additional fee would be an installation fee. Relying on these representations of the Comcast agent, Mr. Wynn placed his order with the agent. At no time prior to or in placing his order was Mr. Wynn aware he would be charged a monthly Broadcast TV Fee and a Regional Sports Fee.

186.   When Mr. Wynn received his January 24, 2016 bill, he was surprised to see a $4.85 Broadcast TV Fee and a $3.00 Regional Sports Fee.

187.   On February 17, 2016, Mr. Wynn opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

188.   In April 2016 Plaintiffs' counsel sent a demand letter to Comcast on behalf of Mr. Wynn and several other Comcast customers as described in Paragraph 162 above. Comcast did not respond to the demand letter.

189.   Mr. Wynn materially relied upon Comcast's misrepresentations and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr. Wynn to suffer harm, injury in fact, and lost money or property.

CLASS ACTION COMPLAINT

1

## VI.   CLASS ACTION ALLEGATIONS

2      190.   Plaintiffs bring this class-action lawsuit on behalf of themselves and the

3  proposed members of the "Class" pursuant to Rule 23(b) of the Federal Rules of Civil

4  Procedure. Moreover, pursuant to Rule 23(c)(5) of the Federal Rules of Civil Procedure,

5  Plaintiffs bring this class action on behalf of several subclasses as follows: (1) the

6  "California subclass," with Plaintiffs Adkins and Robertson as its class representatives;

7  (2) the "Colorado subclass," with Plaintiff Palmer as its class representative; (3) the

8  "Florida subclass," with Plaintiff Villegas as its class representative; (4) the "Illinois

9  subclass," with Plaintiff McLaughlin as its class representative; (5) the "New Jersey

10  subclass," with Plaintiff Broker as its class representative; (6) the "Ohio subclass," with

11  Plaintiff Wynn as its class representative; and (7) the "Washington subclass," with

12  Plaintiff Bailey as its class representative.

13      191.   Plaintiffs seeks certification of the following Class:

14
15  **All persons in the United States whom Comcast has charged a "Broadcast TV Fee" and/or a "Regional Sports Fee" within the applicable statute of limitations.**

16      192.   Plaintiffs also seek certification of the following subclasses: the "California

17  subclass," to include all Class members who received Comcast service in California; the

18  "Colorado subclass," to include all Class members who received Comcast service in

19  Colorado; the "Florida subclass," to include all Class members who received Comcast

20  service in Florida; the "Illinois subclass," to include all Class members who received

21  Comcast service in Illinois; the "New Jersey subclass," to include all Class members who

22  received Comcast service in New Jersey; "the Ohio subclass," to include all Class

23  members who received Comcast service in Ohio; and "the Washington subclass," to

24  include all Class members who received Comcast service in the state of Washington.

25      193.   Specifically excluded from the Class are Comcast and any entities in which

26  Comcast has a controlling interest, Comcast's agents and employees, the judge to

27  whom this action is assigned, members of the judge's staff, and the judge's immediate

28  family.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

194.   **Numerosity.**  Plaintiffs do not know the exact number of Class members but believe that the Class comprises millions of consumers throughout the United States. As such, Class members are so numerous that joinder of all members is impracticable.

195.   **Commonality and predominance.**  Well-defined, nearly identical legal or factual questions affect all Class members.  These questions predominate over questions that might affect individual Class members.  These common questions include, but are not limited to, the following:

a.     Whether Comcast falsely advertised its cable television service (whether sold alone or "bundled" with Internet and/or phone service) at flat monthly rates while in fact intending to charge more than promised via a Broadcast TV Fee and/or a Regional Sports Fee;

b.     Whether Comcast's representations to Plaintiffs and the Class regarding the monthly price to be charged were objectively material;

c.     Whether Plaintiffs and the Class relied on these promised flat monthly rates in contracting with Comcast for services;

d.     Whether Comcast adequately disclosed and described its Broadcast TV Fee and Regional Sports Fee to Plaintiffs and the Class;

e.     Whether Comcast's representations and descriptions of the Broadcast TV Fee and the Regional Sports Fee in its customer bills were deceptive;

f.     Whether Comcast breached its Residential Services Agreement and/or other agreements with Plaintiffs and the Class by charging the Broadcast TV Fee and the Regional Sports Fee;

g.     Whether Comcast breached its contractual obligations to Plaintiffs and the Class by increasing the Broadcast TV Fee and the Regional Sports Fee in the middle of fixed rate customer contracts;

h.     Whether Comcast gave adequate notice to Plaintiffs and the Class when it increased the amount of the Broadcast TV Fee and the Regional Sports Fee charged to them;

CLASS ACTION COMPLAINT

1          i.      Whether Comcast wrongfully took possession of and has since

2   retained monies belonging to Plaintiffs and the Class;

3          j.      Whether Comcast had a policy of instructing and/or encouraging its

4   staff and agents to make misleading or false statements to consumers regarding the

5   nature and purpose of the Broadcast TV Fee and the Regional Sports Fee;

6          k.      Whether Comcast acted inconsistently with the reasonable

7   expectations of Plaintiffs and the Class;

8          l.      Whether Comcast breached the implied covenant of good faith and

9   fair dealing as to Plaintiffs and the Class;

10         m.      Whether Comcast failed to disclose objectively material information

11  to Plaintiffs and the Class regarding the true monthly price to be charged;

12         n.      Whether Comcast failed to disclose objectively material information

13  to Plaintiffs and the Class regarding the Broadcast TV Fee and the Regional Sports Fee;

14         o.      Whether Comcast's representations and omissions had a tendency

15  to deceive consumers;

16         p.      Whether Comcast's Residential Service Agreement and/or other

17  agreements with its customers contain unconscionable terms;

18         q.      Whether Comcast's Residential Service Agreement and/or other

19  agreements with its customers contain illusory terms;

20         r.      Whether Comcast was unjustly enriched;

21         s.      Whether Comcast's conduct alleged herein violated state consumer

22  protection laws relevant to the Class and subclass members;

23         t.      Whether Comcast and the Class have sustained monetary loss and

24  the proper measure of that loss;

25         u.      Whether Plaintiffs and the Class are entitled to damages and/or

26  restitution; and

27         v.      Whether Comcast should be enjoined from further engaging in the

28  misconduct alleged herein.

CLASS ACTION COMPLAINT

1   196.   **Typicality.**  Plaintiffs' claims are typical of Class members' claims.

2   Plaintiffs and the Class members all sustained injury as a direct result of Comcast's

3   practice of advertising and promising a low, flat monthly rate while instead charging a

4   much higher rate through the use of hidden and deceptive fees.

5   197.   **Adequacy.**  Plaintiffs will fairly and adequately protect Class members'

6   interests.  Plaintiffs have no interests antagonistic to Class members' interests, and

7   Plaintiffs have retained counsel who has considerable experience and success in

8   prosecuting complex class action and consumer protection cases.

9   198.   **Superiority.**  A class action is the superior method for fairly and efficiently

10   adjudicating this controversy for the following reasons without limitation:

11   a.   Class members' claims are relatively small compared to the burden

12   and expense required to litigate their claims individually, so it would be impracticable for

13   Class members to seek individual redress for Comcast's illegal and deceptive conduct;

14   b.   Even if Class members could afford individual litigation, the court

15   system could not.  Individual litigation creates the potential for inconsistent or

16   contradictory judgments and increases the delay and expense to all parties and to the

17   court system.  By contrast, a class action presents far fewer management difficulties and

18   provides the benefits of single adjudication, economy of scale, and comprehensive

19   supervision by a single court; and

20   c.   Plaintiffs anticipate no unusual difficulties in managing this class

21   action.

22   **VII.   COMCAST'S ARBITRATION CLAUSE AND THE CLASS**

23   199.   Paragraph 13 of the Comcast Residential Services Agreement purports to

24   contain a binding arbitration provision ("Arbitration Clause"). See **Exhibit C**. Each and

25   every plaintiff opted out of the Arbitration Clause within Comcast's 30-day deadline

26   pursuant to the procedure described in Paragraph 13(c) of the Residential Services

27   Agreement. Meanwhile, the filing of this lawsuit stays the 30-day deadline to opt out of

28   the Arbitration Clause by current and future Comcast customers (*i.e.*, Class members)

CLASS ACTION COMPLAINT

1   whose 30-day opt-out period pursuant to a new or renewal contract has not yet expired.

2       200.   Plaintiffs' position is that the Arbitration Clause is substantively

3   unconscionable, illusory, and unenforceable, and also that the Class members were not

4   informed of and/or did not give their assent to the Residential Services Agreement and

5   its Arbitration Clause.

6       201.   But even assuming that the Arbitration Clause is enforceable against the

7   Class members who did not opt out (which Plaintiffs do not concede), the terms of the

8   Arbitration Clause itself do not prohibit those Class members from being part of this

9   class action lawsuit or from filing claims in a class action lawsuit.

10      202.   Prior to March 23, 2016, the Residential Services Agreement posted on

11  Comcast's website stated that arbitration was elective, and not required:  "If you have a

12  Dispute (as defined below) with Comcast that cannot be resolved through an informal

13  dispute resolution with Comcast, you or Comcast may elect to arbitrate that Dispute in

14  accordance with the terms of this Arbitration Provision rather than litigate the Dispute in

15  court." *Id.* at ¶ 13(a). The Arbitration Clause also did not include class action claims in

16  the definition of a "Dispute" that may be subject to arbitration. *Id.* at ¶ 13(b).

17      203.   On March 23, 2016 Comcast posted on its website an updated Residential

18  Services Agreement with a new arbitration clause which had been modified to address

19  these specific issues (the "New Arbitration Clause"). An example of the updated

20  Residential Services Agreement with the New Arbitration Clause (the iteration posted on

21  Comcast's website as of May 16, 2016) is attached hereto as **Exhibit D**.  On information

22  and belief, Comcast made these changes to the arbitration clause in direct response to

23  Plaintiff Christopher Robertson's demand letter dated December 24, 2015, once

24  Comcast realized Mr. Robertson had opted out of the Arbitration Clause and that

25  Comcast now faced class action exposure under the Arbitration Clause.

26      204.   Comcast's New Arbitration Clause now specified that arbitration is

27  mandatory (rather than elective). See **Exhibit D** at ¶ 13(a). The New Arbitration Clause

28  also explicitly stated, for the first time, that disputes subject to arbitration now included

1    "claims that are currently the subject of purported class action litigation in which you are

2    not a member of a certified class." *Id.* at ¶ 13(b)(4).

3        205.   Comcast made no effort whatsoever to notify or obtain the consent of its

4    existing customers to the terms of the New Arbitration Clause.

5                            **VIII.   CHOICE OF LAW**

6        206.   The laws of the states in which each Plaintiff and each Class member

7    received service from Comcast apply.

8                            **CAUSES OF ACTION**

9                                **COUNT I**
                             **Breach of Contract**
10
                    (On Behalf of All Plaintiffs and the Class)
11
         207.   Plaintiffs reallege and incorporate by reference every allegation set forth in
12
     the preceding paragraphs as though alleged in this Count.

13
         208.   Comcast entered into valid contractual agreements with Plaintiffs and all
14
     Class members.

15
         209.   The essential terms of Comcast's contracts with Plaintiffs and the Class
16
     members included Comcast's obligation to provide services at the monthly promised rate
17
     for the contract's duration.

18
         210.   Plaintiffs and all Class members gave consideration that was fair and
19
     reasonable, and have performed all conditions, covenants, and promises required to be
20
     performed under their contracts with Comcast.

21
         211.   Comcast has breached its contracts with Plaintiffs and the Class members
22
     by charging more than it promised via an inadequately disclosed and invented Broadcast
23
     TV Fee and/or Regional Sports Fee which Comcast intentionally hides and disguises in
24
     both its advertising and in its customer bills.

25
         212.   Comcast has also breached its contracts with Plaintiffs and the Class
26
     members by increasing the amount of these fees to effectively raise the monthly service
27
     price in the middle of customer contracts despite having promised a lower fixed monthly

28

CLASS ACTION COMPLAINT

1  service rate.

2      213.   Comcast's contractual breaches are ongoing.  Absent an order from the

3  Court ordering Comcast to perform as it is required under its contracts with Plaintiffs and

4  the Class members, Comcast will continue to breach its contracts to the detriment of the

5  Class.

6                              **COUNT II**
                **Breach of the Covenant of Good Faith and Fair Dealing**

7                    (On Behalf of All Plaintiffs and the Class)

8      214.   Plaintiffs reallege and incorporate by reference every allegation set forth in

9  the preceding paragraphs as though alleged in this Count.

10     215.   A covenant of good faith and fair dealing is implied in every contract,

11  including Comcast's contracts with Plaintiffs and the Class members.

12     216.   The material terms of Comcast's contracts with Plaintiffs and the Class

13  members include Comcast's obligation to provide services at the promised monthly rate

14  for the contract's duration.

15     217.   Where a contract vests one party with discretion, the duty of good faith and

16  fair dealing applies, and the party exercising the discretion must do so in a manner that

17  satisfies the objectively reasonable expectations of the other party.  A party may not

18  perform an agreement in a manner that would frustrate the basic purpose of the

19  agreement and/or deprive the other party of its rights and benefits under the agreement.

20     218.   It was objectionably reasonable under the circumstances, based on

21  Comcast's misrepresentations and omissions, for Plaintiffs and the Class to expect that

22  Comcast's advertised and promised monthly service price was price Comcast would

23  actually charge them for their service.

24     219.   It was objectionably reasonable under the circumstances for Plaintiffs and

25  the Class to expect that Comcast would not hide price increases in the form of deceptive

26  and inadequately disclosed charges which Comcast called the Broadcast TV Fee and

27  the Regional Sports Fee.

28

CLASS ACTION COMPLAINT

1    220.   It was objectionably reasonable under the circumstances for Plaintiffs and

2  the Class to expect Comcast would not increase its service price via increases in said

3  fees in the middle of a term contract contrary to its promise to charge a fixed monthly

4  rate.

5    221.   Comcast has abused any and all power it has to impose the prices charged

6  to Plaintiffs and the Class.  Moreover, Comcast's conduct alleged herein is inconsistent

7  with the reasonable expectations of Plaintiffs and the Class, and is inconsistent with

8  what an objectively reasonable consumer would have expected under the

9  circumstances.

10    222.   Comcast has acted in a manner that frustrates a basic purpose of its

11  contracts with Plaintiffs and the Class, and has deprived Plaintiffs and the Class of

12  benefits and rights that they are entitled to under their contracts with Comcast.

13    223.   Plaintiffs and all Class members gave consideration that was fair and

14  reasonable, and have performed all conditions, covenants, and promises required under

15  their contracts with Comcast.

16    224.   By reason of Comcast's breach of the implied covenant of good faith and

17  fair dealing, Plaintiffs and all Class members suffered damages, in an amount to be

18  proven at trial.

19    225.   Comcast's breaches of the implied covenant of good faith and fair dealing

20  are ongoing.  Injunctive relief is required to prevent Comcast from further breaching the

21  implied covenant to the detriment of the Class.

22                        **COUNT III**
23                     **Unjust Enrichment**

              (On Behalf of All Plaintiffs and the Class)

24    226.   Plaintiffs reallege and incorporate by reference every allegation set forth in

25  the preceding paragraphs as though alleged in this Count.

26    227.   Comcast has been knowingly enriched, at the expense of Plaintiffs and the

27  Class, as a result of its misconduct alleged herein.  Such enrichment includes the

28

CLASS ACTION COMPLAINT

1    substantial revenues that Comcast has received from Plaintiffs and the Class for the

2    inadequately disclosed and deceptive Broadcast TV Fees and Regional Sports Fees that

3    Comcast charged them, over and above what Comcast should have charged them.

4         228.   Plaintiffs' and the Class members' detriment, and Comcast's enrichment,

5    are traceable to, and resulted directly and proximately from, the misconduct challenged

6    in this Complaint.

7         229.   It would be inequitable for, and good conscience militates against

8    permitting, Comcast to retain the amounts that it received as a result of the

9    misconducted alleged herein.

10        230.   Plaintiffs and the Class are entitled to restitution of, disgorgement of,

11   and/or the imposition of a constructive trust upon, all amounts obtained by Comcast as a

12   result of its misconduct alleged herein.

13                          **COUNT IV**
            **Violations of California's Unfair Competition Law**
14       **California Business and Professions Code §17200 *et seq.***

15          (On Behalf of Plaintiffs Christopher Robertson and Dan Adkins
                       and the California Subclass)

16        231.   Plaintiffs reallege and incorporate by reference every allegation set forth in
17
     the preceding paragraphs as though alleged in this Count.
18
          232.   Comcast's practices, misrepresentations, and omissions alleged herein
19
     constitute unlawful, unfair, or fraudulent business practices in violation of California
20
     Business and Professions Code §17200 *et seq*.
21
          233.   The misrepresentations and omissions by Comcast alleged herein were
22
     the type of representations and omissions that are regularly considered to be material,
23
     *i.e.*, a reasonable person would attach importance to them and would be induced to act
24
     on the information in making purchase decisions.
25
          234.   California Plaintiffs Christopher Robertson and Dan Adkins and each of the
26
     California subclass members reasonably relied upon Comcast's material
27
     misrepresentations and omissions in purchasing their service contracts.
28

CLASS ACTION COMPLAINT

1    235.   As a result of the foregoing, the California Plaintiffs Christopher Robertson

2    and Dan Adkins and each California subclass member have been injured and have lost

3    money or property and are entitled to restitution and injunctive relief.

4    236.   Unless restrained by this Court, Comcast will continue to engage in unfair,

5    deceptive, and unlawful conduct, as alleged above, in violation of California Business

6    and Professions Code §17200 et. seq.

7
### COUNT V
### Violations of California Business and Professions Code §17500 *et seq.* ("FAL")

8
(On Behalf of Plaintiffs Christopher Robertson and Dan Adkins
9
and the California Subclass)

10   237.   Plaintiffs reallege and incorporate by reference every allegation set forth in

11   the preceding paragraphs as though alleged in this Count.

12   238.   Comcast has committed acts of untrue and misleading advertising, as

13   defined by California Business and Professions Code §17500 ("False Advertising Law"

14   or "FAL"), by engaging in the acts and practices described herein with the intent to

15   induce consumers to purchase its service plans.

16   239.   Comcast's misrepresentations and omissions deceive or have a tendency

17   to deceive the general public.

18   240.   The misrepresentations and omissions by Comcast alleged herein were

19   the type of representations and omissions that are regularly considered to be material,

20   i.e, a reasonable person would attached importance to them and would be induced to

21   act on the information in making purchase decisions.

22   241.   California Plaintiffs Christopher Robertson and Dan Adkins and each of the

23   California subclass members reasonably relied on Comcast's false advertising in

24   purchasing their service contracts.

25   242.   As a result of the foregoing, the California Plaintiffs and the members of the

26   California subclass have been injured and have lost money or property and are entitled

27   to restitution and injunctive relief.

28   243.   Unless restrained by this Court, Comcast will continue to engage in untrue

1   and misleading advertising, as alleged above, in violation of California Business and

2   Professions Code §17500 *et seq.*

3   **COUNT VI**
    **Violations of California's Consumer Legal Remedies Act ("CLRA")**
4   **California Civil Code §1750 *et seq.***

5   (On Behalf of Plaintiffs Christopher Robertson and Dan Adkins
    and the California Subclass)

6
    244.   Plaintiffs reallege and incorporate by reference every allegation set forth in
7
    the preceding paragraphs as though alleged in this Count.
8
    245.   Comcast is a "person," as defined by California Civil Code §1761(c).
9
    246.   California Plaintiffs Christopher Robertson and Dan Adkins, and each of
10
    the California subclass members, are "consumers," as defined by California Civil Code
11
    §1761(d).
12
    247.   The service plans marketed and sold by Comcast constitute "goods" and
13
    "services" as defined by California Civil Code §1761(a) and (b).
14
    248.   The California Plaintiffs' and the California subclass members' purchases
15
    of Comcast's services constitute "transactions," as defined by California Civil Code
16
    §1761(e).
17
    249.   Venue is proper under California Civil Code §1780(d) because a
18
    substantial portion of the transactions at issue occurred in this county.  Plaintiffs'
19
    declarations establishing that this Court has proper venue for this action are attached
20
    hereto as **Exhibit E**.
21
    250.   Comcast intentionally misled consumers to believe it would charge
22
    consumers an advertised and promised flat monthly rate for television services, but in
23
    fact Comcast charged a much higher rate via an inadequately disclosed and deceptive
24
    Broadcast TV Fee and Regional Sports Fee.  Comcast intentionally deceived consumers
25
    by hiding and disguising said fees in its advertising and also in its customer bills.
26
    Comcast staff also lied to customers who questioned the bogus charges by explicitly
27
    stating that the charges were government-related fees or taxes over which Comcast had
28

CLASS ACTION COMPLAINT

1   no control.

2        251.   Comcast's misrepresentations, active concealment, and failures to disclose

3   violated the CLRA in ways including, but not limited to, the following:

4            a.     Comcast misrepresented that its service plans had characteristics,

5   benefits, or uses that they did not have (Cal. Civ. Code §1770(a)(5));

6            b.     Comcast advertised its services with an intent not to sell them as

7   advertised (Cal. Civ. Code §1770(a)(9));

8            c.     Comcast made false or misleading statements of fact concerning

9   reasons for, existence of, or amounts of price reductions (Cal. Civ. Code §1770(a)(13));

10            d.     Comcast misrepresented that its service plans conferred rights,

11   remedies or obligations that they did not have (Cal. Civ. Code §1770(a)(14));

12            e.     Comcast misrepresented that its service plans were supplied in

13   accordance with previous representations when they were not (Cal. Civ. Code

14   §1770(a)(16)); and

15            f.     Comcast inserted unconscionable provisions in its customer

16   contracts (Cal. Civ. Code § 1770(a)(19)).

17        252.   Comcast's misrepresentations and nondisclosures regarding its service

18   plans were material to the California Plaintiffs and members of the California subclass

19   because a reasonable person would have considered them important in deciding

20   whether to purchase Comcast's service plans, and because Comcast had a duty to

21   disclose the truth.

22        253.   The California Plaintiffs and the California subclass members reasonably

23   relied upon Comcast's material misrepresentations and nondisclosures, and had they

24   known the truth, they would have acted differently.

25        254.   As a direct and proximate result of Comcast's material misrepresentations

26   and nondisclosures, the California Plaintiffs and the California subclass members have

27   suffered monetary damages and been irreparably harmed.

28        255.   On behalf of the California subclass, the California Plaintiffs seek injunctive

1  relief in the form of an order enjoining Comcast from making such material

2  misrepresentations and omissions.

3      256.    In accordance with California Civil Code §1782(a), on December 24, 2015,

4  Plaintiffs' counsel served Comcast with notice of its CLRA violations on behalf of Plaintiff

5  Christopher Robertson by certified mail, return receipt requested.  A true and correct

6  copy of that notice is attached as **Exhibit A**.  Comcast Senior Vice President Thomas R.

7  Nathan responded to the CLRA notice letter in a letter to Plaintiffs' counsel dated

8  February 25, 2016 in which Comcast denied liability and refused to provide any of the

9  requested relief whatsoever. A true and correct copy of Mr. Nathan's response letter is

10  attached hereto as **Exhibit B**.

11      257.    On October 11, 2016, Plaintiffs' counsel served Comcast Senior Vice

12  President Nathan with a second notice of Comcast's CLRA violations on behalf of both

13  Plaintiff Christopher Robertson and Plaintiff Dan Adkins by certified mail, return receipt

14  requested.

15      258.    The California Plaintiffs reserve the right to amend this Complaint to

16  request actual damages, punitive damages, and attorneys' fees and costs pursuant to

17  Sections 1780 and 1782(b) of the CLRA.

18  **COUNT VII**
**Violations of Colorado's Consumer Protection Act**
19  **Colo. Rev. Stat. §§ 6-1-101 through 6-1-115**

20  (On Behalf of Plaintiff Nola Palmer and the Colorado Subclass)

21      259.    Plaintiffs reallege and incorporate by reference every allegation set forth in

22  the preceding paragraphs as though alleged in this Count.

23      260.    Colorado's Consumer Protection Act prohibits "deceptive trade practices."

24      261.    Comcast engaged in "deceptive trade practices" including, but not limited

25  to, the following:

26          a.    Comcast misrepresented that its service plans had characteristics,

27  benefits, or uses that they did not have (Colo. Rev. Stat. §6-1-105 (1)(e));

28          b.    Comcast advertised its services with an intent not to sell them as

CLASS ACTION COMPLAINT

1  advertised (Colo. Rev. Stat. §6-1-105 (1)(i));

2              c.     Comcast made false and/or misleading statements of fact

3  concerning the price of its services (Colo. Rev. Stat. §6-1-105 (1)(l));

4              d.     Comcast employed "bait and switch" advertising of its services and

5  the promised terms (Colo. Rev. Stat. §6-1-105 (1)(n)); and

6              e.     Comcast intentionally failed to disclose material information

7  concerning the price of its services so as to induce consumers to enter into contracts for

8  those services (Colo. Rev. Stat. §6-1-105 (1)(u)).

9      262.  Comcast engaged in these deceptive trade practices in the course of

10  Comcast's business.

11     263.  Comcast's deceptive practices significantly impact the public as actual or

12  potential consumers of Comcast's services.

13     264.  The Colorado Plaintiff Nola Palmer and each of the Colorado subclass

14  members relied upon Comcast's material misrepresentations and nondisclosures, and

15  had they known the truth, they would have acted differently.

16     265.  The Colorado Plaintiff and Colorado subclass have suffered injury in fact

17  and lost money or property as a result of Comcast's conduct.

18     266.  On behalf of the Colorado subclass, the Colorado Plaintiff seeks an order

19  enjoining Comcast from engaging in such deceptive trade practices. The Colorado

20  Plaintiff also seeks damages from Comcast, including but not limited to the refund of all

21  money paid by the Colorado Plaintiff and the Colorado subclass members for the

22  Broadcast TV Fee and the Regional Sports Fee, and/or restitutionary disgorgement of

23  profits.  The Colorado Plaintiff also seeks an award of attorneys' fees and costs.

24                          **COUNT VIII**
                **Violations of Florida's Deceptive and Unfair Trade Practices Act**
25                      **Florida Statutes §501.201 *et seq.***

26          (On Behalf of Plaintiff Derek Villegas and the Florida Subclass)

27     267.  Plaintiffs reallege and incorporate by reference every allegation set forth in

28  the preceding paragraphs as though alleged in this Count.

CLASS ACTION COMPLAINT

1       268.   Section 501.204 of the Florida Statutes prohibits "unfair," "deceptive" or

2  "unconscionable" acts or practices.

3       269.   Comcast's acts and practices of charging more than it promised for its

4  services as described herein were patently "unfair." These practices were unfair because

5  they offend established public policy and are immoral, unethical, oppressive,

6  unscrupulous, or substantially injurious to consumers.

7       270.   Comcast's material misrepresentations as to its monthly pricing, active

8  concealment and/or failure to disclose its extra fees, and purposeful attempts to mislead

9  consumers as to the nature and purpose of said fees were "deceptive."  They were

10  deceptive in that they were likely to deceive consumers acting reasonably in the same

11  circumstances.

12       271.   Comcast's practices of misrepresenting the price of its services, concealing

13  additional fees, and lying about those fees to consumers were "unconscionable."  They

14  were unconscionable because Comcast abused its position of superior power and its

15  acts were so unfair and oppressive as to shock the conscience and offend public policy.

16       272.   Florida Plaintiff Derek Villegas and the Florida subclass members relied

17  upon Comcast's material misrepresentations and nondisclosures, and had they known

18  the truth, they would have acted differently.

19       273.   As a direct and proximate result of Comcast's material misrepresentations

20  and nondisclosures, the Florida Plaintiff and the Florida subclass members have

21  suffered injury in fact and lost money or property.

22       274.   On behalf of the Florida subclass, the Florida Plaintiff seeks an order

23  enjoining Comcast from engaging in such unfair, deceptive, or unconscionable practices.

24  The Florida Plaintiff also seeks damages from Comcast, including but not limited to the

25  refund of all money paid by the Florida Plaintiff and the Florida subclass members for the

26  Broadcast TV Fee and the Regional Sports Fee, and/or restitutionary disgorgement of

27  profits. The Florida Plaintiff also seeks an award of attorneys' fees and costs.

28

## COUNT IX
### Violations of Illinois Consumer Fraud ("CFA")
### and Deceptive Trade Practices Act ("UDTPA")
### 815 Ill. Comp. Stat. §§ 505/1-12 *et seq.*, and §§ 510/2.

(On Behalf of Plaintiff James McLaughlin and the Illinois Subclass)

275.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

276.    The Illinois Consumer Fraud and Deceptive Practices Act prohibits "unfair" or "deceptive" practices.

277.    Comcast is a "person," as defined by Ill. Comp. Stat. §505/1(c).

278.    Illinois Plaintiff James McLaughlin and the members of the Illinois subclass are "consumers," as defined by Ill. Comp. Stat. §505/1(e).

279.    Comcast engaged in unfair practices by misrepresenting its prices, charging more than it promised for its services, hiding the extra charges as deceptive fees on its customer bills, and lying to consumers who questioned the nature of the charges.

280.    These practices are also unfair insofar as they offend established public policy and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

281.    Comcast's trade practices were also deceptive.  Comcast's material and intentional misrepresentations as to its pricing, active concealment and/or failure to disclose its extra fees, and purposeful attempts to mislead consumers as to the nature of said fees were "deceptive."  They were deceptive insofar as they were likely to deceive consumers acting reasonably in the same circumstances.

282.    Comcast intended that the Illinois Plaintiff and each member of the Illinois subclass rely on its deceptive acts and practices, which occurred in the course of conduct involving trade or commerce.

283.    Comcast engaged in the following deceptive trade practices pursuant to 815 ILCS 510/2:

CLASS ACTION COMPLAINT

1          a.     Comcast intentionally misrepresented that its service plans had

2    characteristics, benefits, or uses that they did not have (815 ILCS 510/2(a)(5));

3          b.     Comcast purposely misrepresented that its service plans had been

4    supplied in accordance with its previous representations when they were not (815 ILCS

5    510/2(a)(9));

6          c.     Comcast made false or misleading statements of fact concerning

7    the reasons for, existence of, or amounts of price reductions (815 ILCS 510/2(a)(11));

8    and

9          d.     Comcast engaged in other conduct which similarly created a

10   likelihood of confusion or misunderstanding (815 ILCS 510/2(a)(12)).

11        284.   The Illinois Plaintiff and the Illinois subclass members relied upon

12   Comcast's material misrepresentations and nondisclosures, and had they known the

13   truth, they would have acted differently.

14        285.   As a direct and proximate result of Comcast's material misrepresentations

15   and nondisclosures, the Illinois Plaintiff and the Illinois subclass members have suffered

16   injury in fact and lost money or property.

17        286.   On behalf of the Illinois subclass, the Illinois Plaintiff seeks an order

18   enjoining Comcast from engaging in such unfair, deceptive, or unconscionable practices.

19   The Illinois Plaintiff also seeks damages from Comcast, including but not limited to the

20   refund of all money paid by the Illinois Plaintiff and the Illinois subclass members for the

21   Broadcast TV Fee and the Regional Sports Fee, and/or restitutionary disgorgement of

22   profits. The Illinois Plaintiff also seeks an award of attorneys' fees and costs.

23                              **COUNT X**
                **Violations of New Jersey's Consumer Fraud Act**
24                      **N.J. Stat. Ann. §56:8-1 *et seq.***

25        (On Behalf of Plaintiff Reinier Broker and the New Jersey Subclass)

26        287.   Plaintiffs reallege and incorporate by reference every allegation set forth in

27   the preceding paragraphs as though alleged in this Count.

28        288.   N.J. Stat. Ann. §56:8-1 *et seq.* ("NJCFA") prohibits as "unlawful" any

CLASS ACTION COMPLAINT

1  deceptive, fraudulent, or unconscionable commercial acts or knowing omissions in

2  connection with the sale or advertisement of merchandise or services.

3  289.   Comcast's practices described and alleged herein constitute unlawful

4  commercial acts and/or knowing omissions in violation of the NJCFA, including, but not

5  limited to the following:

6  a.   Comcast used and employed unconscionable practices, deception,

7  fraud, misrepresentation, and knowing concealment or omission of material facts, in

8  connection with the sale or advertisement of its service plans (N.J. Stat. Ann. §56:8-2);

9  and

10  b.   Comcast advertised its service plans as part of a plan or scheme not

11  to sell the service plans at the advertised price (N.J. Stat. Ann. §56:8-2.2).

12  290.   Comcast's practices of misrepresenting the price of its services, concealing

13  additional fees, and lying about those fees to consumers were "unconscionable."  They

14  were unconscionable because Comcast abused its position of superior power and its

15  acts were so unfair and oppressive as to shock the conscience and offend public policy.

16  291.   New Jersey Plaintiff Reinier Broker and the New Jersey subclass members

17  relied upon Comcast's material misrepresentations and omissions, and had they known

18  the truth, they would have acted differently.

19  292.   As a direct and proximate result of Comcast's material misrepresentations

20  and omissions, the New Jersey Plaintiff and the New Jersey subclass members have

21  suffered injury in fact and lost money or property.

22  293.   On behalf of the New Jersey subclass, the New Jersey Plaintiff seeks an

23  order enjoining Comcast from engaging in such unlawful, deceptive, or unconscionable

24  practices. The New Jersey Plaintiff also seeks damages from Comcast, including but not

25  limited to the refund of all money paid by the New Jersey Plaintiff and the New Jersey

26  subclass members for the Broadcast TV Fee and the Regional Sports Fee, and/or

27  restitutionary disgorgement of profits. The New Jersey Plaintiff also seeks an award of

28  attorneys' fees and costs.

CLASS ACTION COMPLAINT

**COUNT XI**
**Violations of Ohio's Consumer Sales Practices Act**
**Ohio Rev Code §§1345.01 *et seq.***

(On Behalf of Plaintiff Dale Wynn and the Ohio Subclass)

294.   Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

295.   The Ohio Consumer Sales Practices Act, found in Ohio Rev. Code §1345.01 *et seq.*, prohibits "deceptive" and/or "unfair" sales practices.

296.   Comcast is a "supplier," as defined by Ohio Rev. Code §1345.01(C).

297.   The Ohio Plaintiff Dale Wynn and members of the Ohio subclass are "consumers," as defined by Ohio Rev. Code §1345.01(D).

298.   Comcast advertised and made solicitations to sell its service plans to Ohio consumers.

299.   Comcast engaged in "deceptive" or "unfair" sales practices including, but not limited to, the following:

a.   Comcast intentionally misrepresented that its service plans had characteristics, benefits, or uses that they did not have (Ohio Rev. Code §1345.02(1));

b.   Comcast purposely misrepresented that its service plans had been supplied in accordance with its previous representations when they were not (Ohio Rev. Code §1345.02(5)); and

c.   Comcast misled consumers into believing that their purchase of Comcast's service contracts involved specific price advantages that did not exist or that Comcast exaggerated (Ohio Rev. Code §1345.02(8)).

300.   The Ohio Plaintiff and each member of the Ohio subclass saw, heard or were aware of Comcast's misrepresentations regarding its pricing, and relied upon those representations, when they decided to enter into service contracts with Comcast.

301.   As a direct and proximate result of Comcast's material misrepresentations and nondisclosures, the Ohio Plaintiff and the Ohio subclass members have suffered

CLASS ACTION COMPLAINT

1  injury in fact and lost money or property.

2  302.   On behalf of the Ohio subclass, the Ohio Plaintiff seeks an order enjoining

3  Comcast from engaging in such unfair and deceptive practices. The Ohio Plaintiff also

4  seeks damages from Comcast, including but not limited to the refund of all money paid

5  by the Ohio Plaintiff and the Ohio subclass members for the Broadcast TV Fee and the

6  Regional Sports Fee, and/or restitutionary disgorgement of profits. The Ohio Plaintiff also

7  seeks an award of attorneys' fees and costs, along with an award of treble and/or

8  punitive damages.

9  **COUNT XII**
   **Violations of Washington Consumer Protection Act ("CPA")**
10 **RCW §§19.86 *et seq.***

11  (On Behalf of Plaintiff Jonathan Bailey and the Washington Subclass)

12  303.   Plaintiffs reallege and incorporate by reference every allegation set forth in

13  the preceding paragraphs as though alleged in this Count.

14  304.   The Washington Consumer Protection Act, RCW §§19.86 *et seq.* ("CPA")

15  broadly prohibits unfair methods of competition and unfair or deceptive acts or practices.

16  305.   At all relevant times, Comcast engaged in "trade" and/or "commerce within

17  the meaning of RCW §19.86.010.

18  306.   As set forth above, Comcast engaged in unfair and deceptive practices by

19  misrepresenting its prices, charging more than it promised for its services, hiding the

20  extra charges as deceptive fees in its customer bills, and/or lying to consumers who

21  questioned the nature of the charges.

22  307.   These practices and Comcast's material and intentional misrepresentations

23  were unfair or deceptive in violation of the CPA and had and continue to have an impact

24  on the public interest, including by deceiving the public and causing injury to Washington

25  subclass members.

26  308.   Washington Plaintiff Jonathan Bailey and each of the Washington subclass

27  members relied upon Comcast's material misrepresentations and nondisclosures, and

28  had they known the truth, they would have acted differently.

CLASS ACTION COMPLAINT

1    309.   As a direct and proximate result of Comcast's material misrepresentations

2  and nondisclosures, the Washington Plaintiff and the Washington subclass members

3  have suffered injury in fact and lost money or property.

4    310.   On behalf of the Washington subclass, the Washington Plaintiff seeks an

5  order enjoining Comcast from engaging in such unfair, deceptive, or unconscionable

6  practices. The Washington Plaintiff also seeks damages from Comcast, including but not

7  limited to the refund of all money paid by the Washington Plaintiff and the Washington

8  subclass members for the Broadcast TV Fee and Regional Sports Fee, and/or

9  restitutionary disgorgement of profits, and treble damages. The Washington Plaintiff also

10  seeks an award of attorneys' fees and costs.

11                                    **PRAYER FOR RELIEF**

12           On behalf of themselves and the Class, Plaintiffs request that the Court order

13  relief and enter judgment against Comcast as follows:

14    1.   An order certifying the proposed Class and subclasses and appointing

15  Plaintiffs and their counsel to represent the Class and subclasses;

16    2.   An order that Comcast is permanently enjoined from its misconduct as

17  alleged;

18    3.   A judgment awarding Plaintiffs and Class members restitution, including,

19  without limitation, restitutionary disgorgement of all profits and unjust enrichment that

20  Comcast obtained as a result of its misconduct as alleged;

21    4.   A judgment awarding Plaintiffs and Class members actual damages;

22    5.   A judgment awarding Plaintiffs and Class members punitive, exemplary

23  and/or treble damages;

24    6.   Pre-judgment and post-judgment interest;

25    7.   Attorneys' fees, expenses, and the costs of this action; and

26    8.   All other and further relief as this Court deems necessary, just and proper.

27

28

CLASS ACTION COMPLAINT

1

## JURY DEMAND

2

Plaintiffs demand a trial by jury on all issues so triable.

3

Dated: October 15, 2016          Respectfully submitted,

4

5

By: _____

6

                                         Daniel M. Hattis

7

Daniel M. Hattis (SBN 232141)
HATTIS LAW
P.O. Box 1645
Bellevue, WA 98009
Telephone: (650) 980-1990
Email: dan@hattislaw.com

8

9

10

Jason Skaggs (SBN 202190)
SKAGGS FAUCETTE LLP
430 Lytton Ave 2nd FL
Palo Alto, CA 94301
Telephone: (650) 617-3226
Email: jason@skaggsfaucette.com

11

12

13

14

Attorneys for Plaintiffs and the Proposed Class

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT