Daniel M. Hattis (SBN 232141)
HATTIS LAW
P.O. Box 1645
Bellevue, WA 98009
Telephone: (650) 980-1990
Email: dan@hattislaw.com

Jason Skaggs (SBN 202190)
SKAGGS FAUCETTE LLP
430 Lytton Ave 2nd FL
Palo Alto, CA 94301
Telephone: (650) 617-3226
Email: jason@skaggsfaucette.com

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN ADKINS; JONATHAN BAILEY; REINIER BROKER; JAMES MCLAUGHLIN; NOLA PALMER; CHRISTOPHER ROBERTSON; DEREK VILLEGAS; and DALE WYNN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COMCAST CORPORATION, <br><br> Defendant. | Case No. 4:16-CV-05969 <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY ................................................................. - 1 -

II. PARTIES ................................................................................................ - 2 -

III. JURISDICTION AND VENUE ......................................................... - 3 -

IV. COMMON FACTUAL ALLEGATIONS ............................................. - 4 -

    A. Comcast Invented the Broadcast TV Fee and Regional Sports Fee To Enable It To Raise Its Monthly Rates While Still Advertising a Lower Price. .......... - 4 -

    B. Comcast Falsely Advertises a Lower Price For Its Services Than It Will Actually Charge. ............................................................................... - 5 -
        1. Misleading Direct Mail Ads. .................................................... - 5 -
        2. Misleading Online Ads and Online Order Process. ..................... - 8 -

    C. During the Order Process, Comcast Staff Systematically Lie To Prospective Customers By Telling Them That the Only Additional Charges Beyond the Quoted Monthly Service Price Will Be Taxes and Government Fees. ...... - 16 -
        1. Lies To Prospective Customers By Telesales Agents. .............. - 16 -
        2. Lies To Prospective Customers By Comcast Staff At Comcast Retail Stores. ................................................................................ - 16 -
        3. Lies To Prospective Customers By Comcast Online Chat Agents. ..... - 17 -

    D. Comcast's Form Subscriber Agreement Does Not Mention the Broadcast TV Fee or Regional Sports Fee, and To the Contrary, Implies That All Additional Monthly Non-Equipment Fees Are Government-Related. ...................... - 20 -

    E. The Customer "Offer" Document, Which Comcast Sometimes Emails To Customers, Hides the Fees and Often Omits and/or Understates the Amount Of the Fees That Will Actually Be Charged. ......................................... - 21 -

    F. Misleading Order Summary and Order Confirmation Emails. ................. - 23 -

    G. Comcast Commits Billing Fraud By Hiding Service Price Increases In the Form Of the Broadcast TV Fee and Regional Sports Fee In Customer Bills. ................................................................................................ - 27 -
        1. Short Version Of the Bill Presented On the Comcast Website. ......... - 27 -
        2. Long Version Of the Comcast Bill. .......................................... - 30 -

    H. Comcast Admits It Is Raising Prices For Its Service Plans By Increasing These Fees, While Comcast Simultaneously and Preposterously Asserts That Comcast Increases the Fee Prices Instead Of Its Advertised Plan Prices In Order To Be More "Transparent" To Its Customers About Its Pricing. .... - 36 -

    I. Comcast Utilizes the Fees to Regularly and Systematically Increase Its Service Prices In the Middle of Promised Fixed-Rate Contracts With Its Customers, Breaching Its Agreements With Them. ................................ - 38 -

    J. When Customers Complain To Comcast About Price Increases In the Middle Of Their Fixed-Rate Contracts, Comcast Insists It Has the Right To Increase Its Service Prices At Any Time Via Increases In the Broadcast TV Fee and Regional Sports Fee. .......................................................................... - 39 -

    K. Comcast Lies To Customers Who Inquire or Complain About the Fees By Telling Them the Charges Are Taxes or Government Fees. ................... - 36 -

L.  Comcast's Practices Are Fraudulent and Unfair and Are Intended To Mislead Consumers.................................................................................. - 46 -

**V.  PLAINTIFFS' INDIVIDUAL FACTUAL ALLEGATIONS................................. - 48 -**
A.  Plaintiff Dan Adkins (California Plaintiff) ..................................... - 48 -
B.  Plaintiff Christopher Robinson (California Plaintiff).......................... - 50 -
C.  Plaintiff Jonathan Bailey (Washington Plaintiff) ............................ - 53 -
D.  Plaintiff Reinier Broker (New Jersey Plaintiff) .............................. - 56 -
E.  Plaintiff James McLaughlin (Illinois Plaintiff)................................ - 58 -
F.  Plaintiff Nola Palmer (Colorado Plaintiff)..................................... - 60 -
G.  Plaintiff Derek Villegas (Florida Plaintiff)..................................... - 62 -
H.  Plaintiff Dale Wynn (Ohio Plaintiff)............................................. - 63 -

**VI.  CLASS ACTION ALLEGATIONS ............................................. - 64 -**

**VII.  COMCAST'S ARBITRATION CLAUSE AND THE CLASS....................... - 68 -**

**VIII.  CHOICE OF LAW ....................................................... - 69 -**

**CAUSES OF ACTION .......................................................... - 70 -**
COUNT I – Breach of Contract ........................................... - 70 -
COUNT II – Breach of Covenant of Good Faith and Fair Dealing.................. - 71 -
COUNT III – Unjust Enrichment ........................................... - 72 -
COUNT IV – California Business and Professions Code §17200 ("UCL") ...... - 73 -
COUNT V – California Business and Professions Code §17500 ("FAL")........ - 74 -
COUNT VI – California Consumer Legal Remedies Act ("CLRA"). ................ - 75 -
COUNT VII – Colorado Consumer Protection Act............................. - 77 -
COUNT VIII – Florida Deceptive and Unfair Trade Practices Act ................... - 79 -
COUNT IX – Illinois Consumer Fraud and Deceptive Trade Practices Act ..... - 80 -
COUNT X – New Jersey Consumer Fraud Act ............................... - 82 -
COUNT XI – Ohio Consumer Sales Practices Act ........................... - 83 -
COUNT XII – Washington Consumer Protection Act ("CPA") ........................ - 84 -

**PRAYER FOR RELIEF.......................................................... - 85 -**

**JURY DEMAND................................................................ - 86 -**

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

Plaintiffs, individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of their counsel, and on information and belief, as follows:

## I. <u>INTRODUCTION AND SUMMARY</u>

1.     This proposed class action alleges that Comcast Corporation ("Comcast") is engaging in a massive illegal scheme of falsely advertising its cable television service plans for much lower prices than it actually charges.  Comcast promises to charge customers a fixed monthly price for the service plans, but in fact Comcast charges a much higher rate for those plans via concealed and deceptive "fees" which Comcast intentionally disguises in both its advertising and in its customer bills.

2.     These illegal and deceptive fees, which Comcast calls the "Broadcast TV Fee" and the "Regional Sports Fee" (the "Fees") add as much as $12 per month to customers' cable bills in many markets.  These Fees earn Comcast over $1 billion each year, accounting for approximately 15% of Comcast's annual profits.

3.     Comcast has admitted these invented Fees are actually just price increases to reimburse itself for its contractual payments to ABC, NBC, CBS, FOX, and sports networks to carry and transmit their video content.

4.     But paying television networks for video content and transmission rights is a basic cost of doing business for a cable company, and any such charges should be <u>included</u> in Comcast's advertised and stated price for television service plans, rather than being deceptively <u>excluded</u>.

5.     These invented Fees are a deceptive way for Comcast to double-charge for channels that Comcast has already promised are included with the basic service price.

6.     Comcast has repeatedly increased the amounts of the Broadcast TV Fee and the Regional Sports Fee every 6 to 12 months since Comcast first invented them. Since 2014, Comcast has increased the monthly Broadcast TV Fee from $1.50 to up to $7.00. Since 2015, Comcast has increased the monthly Regional Sports Fee from $1.00

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

1    to up to $5.00.

2          7.      Comcast applies these fee increases to all customers, even to those in the

3    middle of one-year or two-year contracts at a promised locked-in monthly rate.  Despite

4    having promised fixed promotional rates to induce customers to lock themselves into one

5    or two-year contracts, Comcast utilizes these hidden Fees to repeatedly, and covertly,

6    increase its prices at its whim on its trapped customers during their contract term in

7    breach of Comcast's agreements with them.

8          8.      Comcast's fraud pervades the entire life cycle of the customer. First,

9    Comcast conceals and misrepresents the Fees in its advertising and in its

10   communications with prospective customers. Second, Comcast commits billing fraud by

11   subtracting the invented Fees from the top-line service price in its bills and instead hiding

12   and disguising the charges elsewhere in the bill. Third, to any customers who question

13   Comcast about the charges and the resulting price increase of their services, Comcast

14   staff and agents: (1) insist the promised fixed promotional service rate in the customer's

15   contract is still being honored because only the "fees" have increased, and/or (2)

16   explicitly lie by stating that the Broadcast TV Fee and the Regional Sports Fee are taxes

17   or government-related fees over which Comcast has no control.

18         9.      Each and every plaintiff in this action exercised his or her right to opt out of

19   Comcast's arbitration clause pursuant to the Comcast Agreement for Residential

20   Services. Plaintiffs are bringing this lawsuit on behalf of themselves and the proposed

21   Class to put an end to Comcast's unlawful actions, and to recover the money they have

22   lost as a result of Comcast's contractual breaches and deceptive, unfair, and unlawful

23   conduct alleged in this Complaint.

24                              II.    **PARTIES**

25         10.    Plaintiff Dan Adkins is an individual residing in Oakland, California.

26         11.    Plaintiff Jonathan Bailey is an individual residing in Covington, Washington.

27         12.    Plaintiff Reinier Broker is an individual residing in Belle Mead, New Jersey.

28         13.    Plaintiff James McLaughlin is an individual residing in Aurora, Illinois.

FIRST AMENDED CLASS ACTION COMPLAINT
                                           CASE NO. 4:16-CV-05969

1    14.    Plaintiff Nola Palmer is an individual residing in Littleton, Colorado.

2    15.    Plaintiff Christopher Robertson is an individual residing in Sacramento,

3    California.

4    16.    Plaintiff Derek Villegas is an individual residing in Port St. Lucie, Florida.

5    17.    Plaintiff Dale Wynn is an individual residing in East Liverpool, Ohio.

6    18.    Mr. Adkins, Mr. Bailey, Mr. Broker, Mr. McLaughlin, Ms. Palmer, Mr.

7    Robertson, Mr. Villegas, and Mr. Wynn are collectively referred to herein as "Plaintiffs."

8    19.    Plaintiffs seek relief in their individual capacities, on behalf of the

9    nationwide Class, and on behalf of the statewide subclasses they represent.

10    20.    Defendant Comcast is a multinational, mass media company

11    headquartered in Philadelphia, Pennsylvania, and incorporated in Pennsylvania. It is the

12    largest broadcasting and cable company in the world by revenue, and it is the largest

13    home television and Internet service provider in the United States.

14    ### III.    JURISDICTION AND VENUE

15    21.    The Court has subject matter jurisdiction over this matter pursuant to 28

16    U.S.C. section 1332(d)(2) as the amount in controversy exceeds $5,000,000 among the

17    proposed nationwide Class, believed to number in the millions, and its constituent

18    subclasses, all of whom are entitled to damages in the form of a full refund of all of the

19    Broadcast TV Fee and the Regional Sports Fee amounts charged to them by Comcast

20    within the applicable statutes of limitations.

21    22.    This Court has personal jurisdiction over Comcast because it is authorized

22    to do business and regularly conducts business in California, and Comcast has

23    marketed, sold and issued cable service plans in California including to Plaintiffs Dan

24    Adkins and Christopher Robertson. Comcast has sufficient minimum contacts with this

25    state to render the exercise of jurisdiction by this Court permissible.

26    23.    Venue is proper under 28 U.S.C. sections 1391(a) and (b) because a

27    substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this

28    District.

## IV.   COMMON FACTUAL ALLEGATIONS

**A.   Comcast Invented the Broadcast TV Fee and Regional Sports Fee To Enable It To Raise Its Monthly Rates While Still Advertising a Lower Price.**

24.     Comcast is the largest television and Internet service provider in the United States, with over 22.5 million cable television service subscribers.  Comcast typically sells its television service "bundled" with Internet and/or telephone service, under the XFINITY brand. Comcast markets its cable television, Internet, and telephone services with standardized, uniform marketing materials to consumers via mass mailings, television commercials, print advertisements, and online advertising.  Consumers buy these service plans over the telephone, on Comcast's website, or in person at one of Comcast's local stores.

25.     To attract customers, Comcast prominently advertises a flat monthly rate for a one-year or two-year term for its service plans. Comcast's widespread marketing of promotional fixed pricing for term contracts has induced millions of consumers to lock themselves into one or two-year service plan contracts.

26.     In January 2014, Comcast began utilizing a shady backdoor way to increase prices to its prospective and current television service subscribers, while continuing to advertise and promise the same flat lower monthly rates for its service plans.  Rather than implementing a top-line price increase for its advertised television service or bundled service plans – which would have been noticed by its prospective and current customers – Comcast instead kept the advertised price the same and hid the price increase in a newly invented and inadequately disclosed "Broadcast TV Fee."

27.     Comcast made sure never to define or explain the nature of the deceptively named fee in any of its advertising materials. If the fee was mentioned at all, it was buried in fine print (where it was listed only by name and never defined) in a sentence which included taxes and government-related fees that may be charged.

28.     Comcast introduced the Broadcast TV Fee in January 2014 at a rate of

$1.50 per month.  Emboldened by the success of its scheme, Comcast more than doubled the monthly Broadcast TV Fee to $3.25 within a year. By late 2015, Comcast had increased the fee to $5.00.  Comcast has been rolling out further increases in the Broadcast TV Fee to as high as $7.00 since October 1, 2016.[1]

29.     Comcast introduced the Regional Sports Fee in January 2015, approximately one year after it rolled out the Broadcast TV Fee. Comcast charges the Regional Sports Fee to all customers who have a "Digital Starter" cable package or above (i.e., most Comcast cable TV subscribers), contrary to Comcast's promise to those customers to charge the advertised flat rate for the package which did not include the fee. Like the Broadcast TV Fee, the Regional Sports Fee is inadequately disclosed and deceptively disguised to enable Comcast to repeatedly raise its prices while continuing to advertise and promise its customers a lower rate.  The Regional Sports Fee was introduced at a rate of $1.00 per month.  In just over a year, Comcast tripled the Regional Sports Fee to $3.00.  Comcast has been rolling out further increases in the Regional Sports Fee to as high as $5.00 since October 1, 2016 in many markets.

**B.     Comcast Falsely Advertises a Lower Price For Its Services Than It Will Actually Charge.**

30.     In its advertising and during the service sign-up process, Comcast falsely advertises and promises customers a flat monthly rate for service when in fact Comcast intends to, and will, charge the customer a higher rate to provide that service via the concealed Fees.

**1.     Misleading Direct Mail Ads.**

31.     For example, Plaintiff Christopher Robertson received the below direct mail advertisement in late 2015 (red box highlight in Figure 2 is added):

---

[1] See Brodkin, Jon,"Comcast raises controversial 'Broadcast TV' and 'Sports' fees $48 per year," Ars Technica, December 12, 2016, *available at* http://arstechnica.com/information-technology/2016/12/comcast-raises-controversial-broadcast-tv-and-sports-fees-48-per-year/.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

**Figure 1: Direct Mail Ad – Page 1**



000381
Cvhristopher Robertson Or Our Neighbor At

████████████

Sacramento CA ████████████

||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||



Get the
**X1 Triple Play** at a
**special holiday price.**



Dear Cvhristopher,

This holiday season, we're making a great deal even better. For a limited time, you'll get fast, reliable Internet, incredible entertainment, and home phone — at a lower price. You'll also get X1. It'll change the way you experience TV.







XFINITY® Triple Play
TV, Internet & Voice

The fastest in-home WiFi

**HBO®** or **SHOWTIME®** included for 12 months

Add **X1 DVR™** service for $10 more per month for 12 months

**XFINITY gives you more to celebrate.**

- Get the **X1 Entertainment Operating System®** — search smarter, get personalized recommendations, even change channels with your voice
- Over 140 channels plus **HBO®** or **SHOWTIME®**
- **XFINITY Internet** — now with download speeds up to 75 Mbps

- **XFINITY Voice** with unlimited nationwide talk and text, plus international calling
- Enjoy the largest On Demand library with the top 100 shows preloaded
- Plus, add **X1 DVR** service for just $10 more per month for 12 months so you can watch and record up to 6 shows at the same time

**Hurry! This limited-time holiday offer ends 11/22/15!**

Take advantage of this exciting opportunity to switch to the **XFINITY Triple Play** at the reduced price of **just $89.99 per month for 12 months with a 2-year term agreement**. You'll get tons of channels, including HBO® or SHOWTIME® and thousands of XFINITY On Demand™ shows and movies — included at no additional cost. Call 1-855-611-9980 today.

Sincerely,

Your XFINITY Team

P.S. Ask how you can get a **FREE Samsung Galaxy Tab® A** or a **$500 Visa® Prepaid Card** when you select a qualifying HD Triple Play.




**CALL NOW! 1-855-611-9980** or visit **xfinity.com**

**Figure 2: Direct Mail Ad – Page 2**



FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

32.     The mailer prominently advertises a discounted price of "$89.99 per month for 12 months" which includes XFINITY's "Triple Play" package of TV, Internet, and Voice.[2] Nowhere on the first page of the mailer does Comcast state that in fact the monthly rate for providing service will actually be $94.24 ($4.25 higher) – not $89.99 – due to the invented and automatically applied $3.25 Broadcast TV Fee and $1.00 Regional Sports Fee.

33.     There is no asterisk or qualifier next to the giant "$89.99" advertised price.

34.     In an attempt to insulate itself from liability for its fraud, on the second page of the mailer, buried in tiny fine print (marked with a red box in Figure 2 above), Comcast states: "Equipment, installation, taxes and fees, including regulatory recovery fees, Broadcast TV (up to $3.50/mo.), Regional Sports Fee (up to $1.00/mo.) and other applicable charges extra, and subject to change during and after the promo."

35.     Comcast intentionally does not explain or define what the Broadcast TV Fee and the Regional Sports Fee are – even in the fine print. Instead, Comcast deceptively groups these "fees" in the fine print with "taxes and fees, including regulatory recovery fees." A consumer reading the fine print would reasonably assume the Broadcast TV Fee and the Regional Sports Fee relate to government fees or taxes. Comcast also does not state in the fine print that the Broadcast TV Fee and the Regional Sports Fee are automatically applied charges (the Broadcast TV Fee is charged to all customers with television services and the Regional Sports Fee is charged to all customers with the Digital Starter package or greater) versus possible charges that may or may not be actually charged.

### 2.     Misleading Online Ads and Online Order Process.

36.     Comcast's online ads and online order process likewise falsely promise customers a lower monthly price for service than what Comcast will actually charge

---

[2] This mailer is further misleading in that the "$89.99 per month for 12 months" rate requires a two-year contract where Comcast will significantly increase the rate after the first 12 months; however, this scheme is not the subject of this Complaint.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

1  them.

2        37.     Figure 3 is a screenshot of service packages advertised on Comcast's

3  website for the Sacramento, California area on January 14, 2016.

4  **Figure 3: Service Package Offer Page From Comcast Website**



22        38.     The webpage advertisement specifically and prominently states that the

23  Internet Plus 75 bundle includes "local channels like ABC, NBC & FOX" for the price of

24  $54.99, and even includes the logos for NBC and FOX in the ad.

25        39.     This statement that the package price is $54.99 is false and misleading.

26  The true price of the bundle is $58.24: $54.99 plus the $3.25 automatically applied

27  Broadcast Fee, which is charged to provide the very channels (ABC, NBC, and FOX)

28  that are advertised as being included in the $54.99 monthly price.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

1    40.    There is no asterisk or qualifier next to the advertised $54.99 price.

2    41.    In an attempt to insulate itself from liability for its fraud, far below the

3 advertised price at the bottom of the promo Comcast inserts a small link titled "Pricing &

4 Other Info." If one clicks or hovers on that link, the following dialog box appears:

5 **Figure 4: "Pricing & Other Info" Dialog Box**



21    42.    As in the direct mail ad, buried in this fine print is the statement:

22 "Equipment, installation, taxes and fees, including regulatory recovery fees, Broadcast

23 TV Fee (up to $3.50/mo.), Regional Sports Fee (up to $1.00/mo.) and other applicable

24 charges extra, and subject to change during and after the promo."[3]

---

[3] Comcast rapidly and significantly raised the Broadcast TV Fee and Regional Sports
Fee in the Sacramento, California area since these screenshots were taken on January
14, 2016. Five months later in July 2016 Comcast increased the Broadcast TV Fee by
54% from $3.25 to $5.00, and tripled the Regional Sports Fee from $1.00 to $3.00.
Then, just three months later in October 2016 Comcast increased the fees yet again to
$6.50 for the Broadcast TV Fee and $4.50 for the Regional Sports Fee.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

43.     Comcast again intentionally does not define or explain the Broadcast TV Fee and the Regional Sports Fee – even in the fine print – and hides them in a sentence with taxes and regulatory recovery fees. Comcast also does not state in the fine print that the Broadcast TV Fee and the Regional Sports Fee are automatically applied charges.

44.     A reasonable consumer would expect that the advertised price for the service was the actual price for the service.  A reasonable consumer would not think that the only way to learn the actual price for receiving the promised channels, despite a prominently advertised monthly price in giant font with no asterisk or qualifier whatsoever, is to click on a small link titled "Pricing & Other Info" located below the giant "Add to cart" button.

45.     Further, the Fee amounts Comcast hides in the "Pricing & Other Info" dialog box are often incorrect and understate the true amount of the Fees in effect as of the date of the advertisement.  For instance, when Comcast customer Michael Jobling purchased service from Comcast via the online order process on October 7, 2016, the "Pricing & Other Info" dialog box stated that "Offer ends 12/31/16" and that the Broadcast TV Fee would be "up to $5/mo." and the Regional Sports Fee would be "up to $3/mo."  However, contrary to Comcast's representations, on Mr. Jobling's first bill which he received in October 2016, Comcast charged him a Broadcast TV Fee of $6.50 (not $5.00), and a Regional Sports Fee of $4.50 (not $3.00).

46.     Comcast's deception extends through the entire online order process.  For example, see the below screenshots of the order process captured on March 6, 2016 for service in the Sacramento, California area. On each page of the process (*e.g.*, page one at Figure 5 below), the advertised price of "$89.99/mo" is prominently displayed at the top. That promised price does not include the then-current $3.25 Broadcast TV Fee or $1.00 Regional Sports Fee.  A "Monthly Total" amount of $89.99 is also displayed prominently on the bottom of the page. There is a tiny question mark next to "Monthly Total"; when one hovers over this question mark, a text box appears stating:

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

**This is the base monthly total of all recurring charges for the services you have selected**.  It does not include tax or one-time charges (such as installation or Pay-Per-View fees) that may appear on individual bills.

(Emphasis added.) See Figure 5 below, red box highlight added.

**Figure 5: Online Order Process - Page 1 (Screenshot from March 6, 2016)**



47.     Comcast's statement that "This is the base monthly total of all recurring charges for the services you have selected" is a lie.

48.     Comcast intentionally omits the recurring and invented monthly Broadcast TV Fee and Regional Sports Fee from the "Monthly Total" even though those fees are in fact additional "recurring charges for the services you have selected" (then totaling $4.25/month in Sacramento, California) above and beyond the promised flat rate price of $89.99/month.

49.     The final step of the online order process is the order submittal page. See the screenshot (taken on March 6, 2016) at Figure 6 below.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

**Figure 6: Online Order Process – Order Submittal Page (March 6, 2016)**

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

50.     The "Monthly Charges" column on the order submittal page (Figure 6 above; red box is added) again prominently states the monthly charge will be "$89.99/mo." There is no asterisk or qualifier next to this promised price. Meanwhile, there is no reference anywhere on the order submittal page to the additional Broadcast TV Fee and Regional Sports Fee which will raise the true cost of the package by $4.25/month.

51.     Even the tiny fine print at the bottom of the page makes no mention whatsoever of the Broadcast TV Fee or Regional Sports Fee. The fine print states only that "Prices do not include taxes and franchise fees" and "Monthly pricing does not include our Regulatory Recovery Fee, which is not a tax or government-required; federal, state, or local taxes and other fees; or other applicable charges (e.g., per-call charges or international calling)."

52.     On the order submittal page screenshot taken on March 6, 2016 in Figure 6 above, there is a small "Pricing & Other Info" hyperlink near the bottom of the page. However, clicking on this link displays the same misleading "Pricing & Other Info" dialog box at Figure 4 above, where the Broadcast TV Fee and the Regional Sports Fee are briefly mentioned in a sentence including taxes and regulatory recovery fees and are not defined or explained.

53.     Sometime after March 6, 2016 Comcast appears to have removed the "Pricing & Other Info" hyperlink from the bottom of the order submittal page, and to have replaced it with a new link labeled "Minimum Term Agreement." See the screenshot taken on September 26, 2016 in Figure 7 below. Clicking on the "Minimum Term Agreement" link opens a small dialog box which discusses Comcast's early termination fee, but makes no mention whatsoever of the Broadcast TV Fee or the Regional Sports Fee.  Similarly, the new "Privacy Notice" also makes no mention of the Broadcast TV Fee or the Regional Sports Fee. Meanwhile the tiny fine print at the bottom of the page continues to make no mention of the Broadcast TV Fee or Regional Sports Fee, stating only that "Equipment, installation, taxes and fees, including regulatory recovery fees and

1 other applicable charges extra."

2 **Figure 7: Online Order Process – Order Submittal Page (September 26, 2016)**

Congratulations, your credit check was successful.

Review your order details                                    Print

|  | | ONE-TIME CHARGES | MONTHLY CHARGES |
|---|---|---|---|
| DOUBLE PLAY **Starter XF Double Play** 2 year minimum term agreement starting upon installation | | | $79.99/mo |
| Promo | Get X1 DVR™ service for $10/month for 12 months SHOWTIME® included for 24 months Blast!® Pro speeds included for 12 months | | Included |
| TV Edit | **140+ Channels Plan** XFINITY On Demand | | Included |
| | X1 Digital Service | | Included |
| | Minimum Term Agreement | | Included |
| | Streampix | | Included |
| | X1 Service Activation | | Included |
| Internet Edit | **Blast!® Pro** | | Included |
| | Internet Modem Owned | | Included |
| | Blast Pro Internet | | Included |

Installation

| Self-Install Kit - Get It September 30 to October 1  Edit | $14.99 | |

| | ONE-TIME CHARGES | MONTHLY CHARGES |
|---|---|---|
| Total | $14.99 | $79.99 |

□ By checking the box below and clicking on "Submit Your Order" I represent that I am 18 years of age or older, I have read and agree to the Comcast Agreement for Residential Services, and I have read and agree to the terms of the Minimum Term Agreement. I have read and understand the Comcast Privacy Notice.

Back to Account Info                          **Submit Your Order**

Restrictions apply. Not available in all areas. Limited to residential customers. Requires subscription to XFINITY Voice Unlimited Saver. Equipment, installation, taxes and fees, including regulatory recovery fees and other applicable charges extra. Pricing subject to change. $39.95 activation fee may apply. Service (including 911/emergency services) may not function after an extended power outage. Call clarity claim based on August 2014 analysis of traditional phone service by Tektronix. 30-Day Money-Back Guarantee applies to one month's recurring service charge and standard installation up to $500. Call for restrictions and complete details. ©2016 Comcast. All rights reserved.

**Account Details**    Edit

Service Address

**Installation**    Edit

**Self-Install Kit**
$14.99 shipping
Get It September 30 to October 1

Shipping Address
Same as service address

**Billing Info**    Edit

**Billing Address**
Same as service address

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

**C.** **During the Order Process, Comcast Staff Systematically Lie To Prospective Customers By Telling Them That the Only Additional Charges Beyond the Quoted Monthly Service Price Will Be Taxes and Government Fees.**

**1.** **Lies To Prospective Customers By Telesales Agents.**

54.     In telephone calls with prospective customers, Comcast telesales agents regularly and falsely state that taxes and government fees are the only additional charges the customer will pay above the advertised and quoted monthly service price.

55.     For example, Plaintiff Nola Palmer ordered cable television and Internet service over the phone from a Comcast telesales agent in March 2016. Ms. Palmer was unhappy with her previous cable provider, Centurylink, because fees and charges had been constantly increasing. Ms. Palmer specifically asked the Comcast agent what fees and taxes would be added to the bill above the advertised price. The agent estimated the tax charges, and falsely stated that there would be no additional charges with the sole exception of FCC mandated fees.

**2.** **Lies To Prospective Customers By Comcast Staff At Comcast Retail Stores.**

56.     Comcast staff at Comcast retail stores similarly lie to prospective customers that taxes and government-related fees are the only additional charges the customer will pay above the quoted monthly service price.

57.     Plaintiff James McLaughlin signed up for Comcast service in person at a Comcast retail office in Illinois on March 24, 2016.  Mr. McLaughlin selected a package recommended by the Comcast agent at the counter at a promised price of approximately $100.00 per month.  Mr. McLaughlin asked what the total bill would be per month.  The agent told him that Illinois sales tax is about 7%, and that therefore the total would be about $107.00 per month. In fact, Mr. McLaughlin soon learned that his monthly Comcast bills included a previously undisclosed $5.00 Broadcast TV Fee and a $3.00 Regional Sports Fee, in addition to other various taxes and surcharges.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

### 3. Lies To Prospective Customers By Comcast Online Chat Agents.

58. Comcast offers prospective customers the ability to engage in online chats with sales agents to discuss Comcast's advertised service packages and to place their orders.

59. Comcast chat agents regularly tell prospective customers that there will be no additional charges for their chosen service package above the advertised price with the sole exception of government taxes.

60. For example, when Comcast customer Robert Summey of Jacksonville, Florida asked an online chat agent during the online order process what his total monthly bill would be for his chosen service package, the agent promised him it would be $109.99, with the only additional charge being taxes. In fact, Mr. Summey's actual monthly bill was $12.00 higher than promised due to the undisclosed Broadcast TV Fee and Regional Sports Fee.

61. For example, when Comcast customer Joe Loomis of Moss Beach, California asked an online chat agent during the online order process what his total monthly bill would be for his chosen service package, the agent promised him it would be $79.99 per month, with the only additional charge being taxes. In fact, Mr. Loomis' actual monthly bill was $8.00 higher than promised due to the undisclosed Broadcast TV Fee and Regional Sports Fee.

62. As part of their investigation, Plaintiffs' attorneys Hattis Law engaged in online chats with several Comcast online sales agents, asking what if any additional monthly charges would there be above the advertised package price, and asking what was the Broadcast TV Fee.

63. Every single chat agent falsely stated that there would be no additional charges above the advertised price except for government taxes. Agents even repeated an identical canned – and false – statement about the amount of taxes to expect:

> *"Taxes would vary depending on your area and the services you will be getting. For double play bundles, it usually ranges between $10 - $20 per month."*

64. This Comcast official canned statement is a lie.

65. Comcast instructs its agents to grossly overstate the amount of taxes that will appear on the monthly bill, in order to condition its customers to expect and accept a significantly higher bill than the advertised price.

66. In truth, most of the $10 - $20 bill increase above the advertised package price is not due to "taxes" as Comcast falsely states.

67. For example, for service in Sacramento, California, which was the subject of these particular chats, taxes add only $1.50 per month – a small fraction of the claimed $10 - $20 in "taxes" on the monthly bill.

68. Instead, most of the bill increase above the advertised price is due to the hidden $7.00 Broadcast TV Fee and $5.00 Regional Sports Fee, which Comcast names and presents on the bill to look like the very taxes or government fees that Comcast is conditioning its customers to expect.

69. Further, in every case where Plaintiffs' attorney investigators specifically asked the chat agent "What is the Broadcast TV Fee?", the agent lied, and consistent with Comcast's deceptive scheme, falsely stated that the Broadcast TV Fee was a government tax.

70. Excerpts of two of the chats are below:

**Online Chat No. 1 on 1/16/2016 (emphasis added):**

**You:** i am ON the submit order page

**You:** I see it here

**You:** It says $44.99

**You:** I want to make sure there aren't any other fees that aren't listed here

**Jacob:** Yes, that is correct.

**You:** ok great

**Jacob:** Taxes would vary depending on your area and the services you will be getting. For double play bundles, it usually ranges between $10 - $20 per month.

**You:** ok that is just gov't taxes?

**Jacob:** Yes, you are correct.

**You:** ok great

**You:** question

**You:** It says somewhere there are also taxes and fees including broadcast tv fee

**You:** What is that?

**Jacob:** Yes, that is for additional TV Access.

**You:** I don't understand, you said my total cost was $[44.99] plus taxes

**Jacob:** Yes, that is excluding taxes.

**You:** <u>oh so the broadcast tv fee is a tax?</u>

**Jacob:** <u>Yes</u>, however, we do not have the exact on that matter

**You:** Where does the broadcast tv tax go?

**You:** i hadn't heard of that tax before

**Jacob:** I apologize, but my support is limited to www.Xfinity.com and I can only offer you the prices and packages on this website with its corresponding eligibility.

**You:** ok

**You:** so all you know is that it is a tax

**You:** and is part of the taxes

**Jacob:** Yes, you are correct.

**You:** I see

**You:** ok

**You:** <u>But the total amount Xfinity is actually charging me for tv service is $44.99 a month</u>

**You:** <u>like what the order page says</u>

**You:** <u>the rest is taxes that are paid to gov't?</u>

**Jacob:** <u>Yes, that is correct.</u>

**Online Chat No. 2 on 1/16/2016 (emphasis added):**

**You:** I am on the submit order page

**You:** I am looking at the $79.99 a month

**You:** my only question is, is that $79.99 a month my total cost per month

…

**Megan:** The fees that you see are the ones that you are going to be paying.

**Megan:** <u>Taxes would vary depending on your area and the services you will be getting. For double play bundles, it usually ranges between $10 - $20 per month.</u>

…

**Megan:** You will only be able to see the itemized taxes once you receive your first monthly bill.

…

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

**You:** <u>the only other monthly cost is taxes</u>?

**Megan:** <u>Yes, that is correct!</u> …

…

**You:** I think I clicked on something and its said extra was the taxes and fees including broadcast tv fee

**You:** what is the broadcast tv fee

**Megan:** Let me get that information for you. Would you mind holding a moment as I do that?

**You:** sure

**Megan:** The Broadcast TV Fee is an itemized charge on your bill that is intended to offset a portion of the costs of retransmitting broadcast television signals. Broadcast stations are allowed by the government to charge for their signals, and cable providers like Comcast are required to pay substantial fees in order to carry those signals. In recent years, our cost to retransmit broadcast television signals has more than doubled, and this itemized charge will make it clearer for you to see the factors that are driving price changes.

**You:** Ok I don't quite understand

…

**You:** <u>So is the broadcast tv fee part of the taxes?</u>

**Megan:** <u>Yes, it is since it is not part of the one time fees</u>.

**You:** <u>ok, so broadcast tv fee is not a charge for service from comcast</u>.

**You:** <u>It's just a tax comcast charges and pays to gov't?</u>

**Megan:** <u>Yes, that is correct</u>.

**You:** <u>I see, so it's just part of the total taxes of $10-20 a month you mentioned</u>

**Megan:** <u>Yes, you got that on point</u>.

**D.** **<u>Comcast's Form Subscriber Agreement Does Not Mention the Broadcast TV Fee or Regional Sports Fee, and To the Contrary, Implies That All Additional Monthly Non-Equipment Fees Are Government-Related.</u>**

71.    Comcast has a form subscriber agreement for its residential customers which it calls the Comcast Agreement for Residential Services (hereinafter "Residential Services Agreement"). Neither the Broadcast TV Fee nor the Regional Sports Fee is mentioned anywhere in the Residential Services Agreement's twenty-three pages of small type. An example of the Residential Services Agreement (the iteration posted on Comcast's website as of January 14, 2016) is attached hereto as **Exhibit A**.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

72. Comcast crafted the Residential Services Agreement in a way that implies that all monthly non-equipment "fees" are government-related taxes or fees:

> **Charges, Fees, and Taxes You Must Pay.** You agree to pay all charges associated with the Service(s), including, but not limited to, installation/service call charges, monthly service charges, XFINITY Equipment (as defined below) charges, measured and per-call charges, **applicable federal, state, and local taxes and fees** (however designated), regulatory recovery fees for municipal, state and federal government fees or assessments imposed on Comcast, **permitted fees and cost recovery charges**, or any programs in which Comcast participates, including, but not limited to, public, educational, and governmental access, universal service, telecom relay services for the visually/hearing impaired, rights-of-way access, and programs supporting the 911/E911 system and **any fees or payment obligations imposed by governmental or quasi-governmental bodies for the sale, installation, use, or provision of the Service(s)**. YOU WILL BE RESPONSIBLE FOR PAYING ANY GOVERNMENT IMPOSED FEES AND TAXES THAT BECOME APPLICABLE RETROACTIVELY. We will provide you with notice and an effective date of any change in our prices or fees, unless the change in price is related to a change in **governmental or quasi-governmental taxes, fees, or assessments**, in which case we may elect not to provide notice except where required by applicable law.

See **Exhibit A** at ¶ 2(a), emphasis added.

73. A reasonable consumer who read the Residential Services Agreement would assume that the advertised and stated "Monthly Charges" (*e.g.*, see the Comcast advertisements and offer language in Figures 1-7 above) are all inclusive with the exception of "governmental or quasi-governmental taxes, fees, or assessments." Comcast's intent is to deceive the consumer into believing that the Broadcast TV Fee and Regional Sports Fee are "governmental or quasi-governmental taxes, fees, or assessments" mentioned in Section 2(a) of the Residential Services Agreement (excerpted above), and to prevent its customers from realizing the truth that the fees are simply a deceptive way for Comcast to charge more for its service than it has promised.

**E.     The Customer "Offer" Document, Which Comcast Sometimes Emails To Customers, Hides the Fees and Often Omits and/or Understates the Amount of the Fees That Will Actually Be Charged.**

74. Sometimes, when a customer signs up for a fixed term Comcast contract, the customer is emailed an "Offer" document which states the terms of the offer. The Offer document is posted online in a hard-to-find section of the Comcast customer

1 portal.[4]

2     75.    In bold text at the top of the Offer document, Comcast states the promised

3 fixed monthly price and term for the service, with no asterisk or qualifier, and with no

4 mention of the automatic additional Broadcast TV Fee and/or Regional Sports Fee.

5     76.    Deep into the document, several paragraphs into the Terms and

6 Conditions section, is the only mention (if at all) of the Broadcast TV Fee or Regional

7 Sports Fee.  There, it is grouped together in a single sentence combined with taxes and

8 government-related fees. Meanwhile, consistent with its standard practice, Comcast

9 provides no definition or explanation of the Broadcast TV Fee or Regional Sports Fee

10 anywhere in the Offer document

11     77.    The Offer document often omits any mention of the automatic Regional

12 Sports Fee charge whatsoever, and the document commonly understates the amounts

13 of the Broadcast TV Fee and Regional Sports Fee that are currently in effect and to be

14 charged.

15     78.    For example, the Offer document posted in Plaintiff Nola Palmer's online

16 account mentions a Broadcast TV Fee of "up to $3.50/mo.," and makes no mention

17 whatsoever of the existence of the Regional Sports Fee.  Yet on her very first bill, Ms.

18 Palmer was charged a $5.00 (not $3.50) Broadcast TV Fee, and a $3.00 (rather than no)

19 Regional Sports Fee.

20     79.    For example, the Offer document posted in Plaintiff Derek Villegas' online

21 account mentions a Broadcast TV Fee of "up to $3.50/mo.," and makes no mention

22 whatsoever of the existence of the Regional Sports Fee.  Yet on his very first bill, Mr.

23 Villegas was charged a $4.50 (not $3.50) Broadcast TV Fee, and a $3.00 (rather than

24 no) Regional Sports Fee.

25   [4] As of October 12, 2016, in order to access this Offer document on the Comcast

26 customer portal, the customer must: (1) click on the "My Account" link; (2) click on the "Settings" link; (3) click on the "Account, Contact Information, and Legal Terms" link; (4)

27 click on the "Legal agreements" link in the "Legal Information" section; and finally (5) click on the "My Account Terms of Service" link, which will download the document as a

28 PDF.

  FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

**F.    Misleading Order Summary and Order Confirmation Emails.**

80.    Once a consumer orders Comcast service, Comcast may email the consumer an order summary and/or an order confirmation. Comcast deceptively hides or even omits entirely any reference to the additional Broadcast TV Fee and Regional Sports Fee in these emails, despite these fees raising the true price of service above the promised monthly subscription price.

81.    Below at Figure 8 is the "Order Summary" email received by Plaintiff Dan Adkins.

**Figure 8: Order Summary Email**

From: **Comcast Online Communications** <online.communications@alerts.comcast.net>
Date: Mon, Sep 26, 2016 at 1:35 PM
Subject: Almost Done! Your order is nearly complete
To: ██████████████████████

Important Information from Comcast

# xfinity

Help & Support | My Account

## Hi Dan,

Thank you for choosing Comcast! Your recent order is being reviewed. In the event additional information is required to complete your order, we may contact you at the telephone number provided. Once your order is complete, you will receive a final email confirmation with your order number and a summary of your XFINITY services from Comcast. Please keep in mind that order details are not finalized until you receive your confirmation email.

If you do not receive your confirmation email or a call from us within 24 hours, please call us at 1-877-316-9975 from 9 am to 9 pm local standard time to speak with a customer service representative.

We look forward to completing your order.

| Your Account Details | Your Order Summary |
|---|---|
| **Confirmation Number** 1609268059602 | **Service** Starter XF Double Play |
| **Billing Contact Information** Mr. Dan Adkins ██████████████ | **Monthly Fees** $79.99 |
| | **One-time Fees** $14.99 |
| **Billing Address** Same as Service Address | **Service Address** ██████████████ |

### Installation

#### Self Installation

We will ship your Self-install kit to: ██████████████

Have a question about self-installation?
Please visit our help section to get started using your services.

Sincerely,
XFINITY Team

**Learn more** about the Comcast Customer Guarantee.

COMCAST

This is a service-related email. Comcast will occasionally send you service-related emails to inform you of service upgrades or new benefits.

Comcast respects your privacy. For a complete description of our privacy policy, click here.

© 2015 Comcast. All rights reserved. All trademarks are the property of their respective owners.

Comcast Cable, One Comcast Center, 1701 JFK Boulevard, Philadelphia, PA 19103
Attn: Email Communications

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

82.     The order summary states total "Monthly Fees" for Mr. Adkin's service of $79.99, consistent with Comcast's prior advertisements and promises to Mr. Adkins.

83.     This is a lie.

84.     In fact Comcast will also charge Mr. Adkins monthly for an additional Broadcast TV Fee of $5.00 and a Regional Sports Fee of $3.00 to provide the very television channels Comcast promised were already included in the $79.99 flat rate. Comcast deceptively and intentionally omits these invented fees from the promised "Monthly Fees" amount in the order summary email.

85.     Below at Figure 9 is the order confirmation email received by Plaintiff Nola Palmer on March 4, 2016, the same day she placed her order with a Comcast agent via telephone (red box highlight is added):

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

## Figure 9: Order Confirmation Email



FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

86. This order confirmation email makes no mention of the Broadcast TV Fee or the Regional Sports Fee which Ms. Palmer is being charged – not even in the fine print at the bottom of the email. The "summary of your order" estimates a total charge on the first bill of $151.78, comprised of $139.84 in "Monthly Package, Service and Equipment Fees" plus $11.94 in "Taxes, Surcharges and Fees." The "Taxes, Surcharges and Fees" (highlighted in the red box in Figure 9 above) are not broken out but in fact include the cost of the concealed Broadcast TV Fee and Regional Sports Fee.

**G.** **Comcast Commits Billing Fraud By Hiding Service Price Increases In the Form Of the Broadcast TV Fee and Regional Sports Fee In Customer Bills.**

87. Comcast intentionally hides and disguises the Broadcast TV Fee and the Regional Sports Fee in the short version of the monthly bill presented to customers online, and in the full version of the bill mailed to customers and/or available for download by customers.

**1. Short Version Of the Bill Presented On the Comcast Website.**

88. By default, Comcast displays a short summary version of the bill to its customers when they log into the Comcast customer web portal.

89. Prior to early October 2016, the short version of the bill displayed on the customer portal hid the Broadcast TV Fee and the Regional Sports Fee, *e.g.*, under a section titled "Taxes & Fees." The screenshot at Figure 10 was taken on October 4, 2016 of the short version of a customer bill (red box highlight is added).

**Figure 10: Comcast Bill – Default Short Version on Website (10/4/2016)**



90.     A reasonable consumer would assume that the section titled "Recurring Charges" would include all recurring service charges, including those for providing the broadcast TV channels which are in every television package.

91.     The consumer would be wrong. The $81.98 price is in fact $5.00 less than Comcast is charging this customer to provide the TV channels which were promised to the customer. Comcast has deceptively subtracted this $5.00 from the "Recurring Charges" total and hidden it in the "Taxes & Fees" section in the form of a $5.00

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

Broadcast TV Fee.

92.     There is a drop-down arrow next to the "Taxes and Fees" section. If the customer clicks on that arrow (as was done prior to taking the screenshot in Figure 10), then a list of taxes and fees appears, which includes the Broadcast TV Fee (highlighted in the red box in Figure 10). (This particular customer does not subscribe to a package which is charged the Regional Sports Fee.)

93.     Comcast has intentionally hidden the Broadcast TV Fee by grouping it with true government-related fees and taxes such as the FCC Regulatory Fee, Franchise Fees, Local Taxes, and State Sales Tax. Comcast provides no definition for the deceptively named and hidden Broadcast TV Fee.

94.     Later in October 2016, Comcast updated the customer portal website, and now displays even less information in the default short version of the bill, with no mention of the Broadcast TV Fee or the Regional Sports fee whatsoever. The following screenshot at Figure 11 was taken on October 14, 2016 of the short version of the same October bill of the same customer:

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

**Figure 11: Comcast Bill – Default Short Version on Website (10/14/2016)**



95.    This new short version of the bill (at Figure 11 above) is now the default view of the bill displayed to customers when they log into their Comcast account and click on the large "View Billing" button displayed on the welcome screen or when they click on the "Billing" tab in the menu bar.  By removing most of the billing details from this new short version of the customer bill, Comcast attempts to hide and prevent the customer from noticing the deceptive Broadcast TV Fee and Regional Sports Fee.

**2.    Long Version Of the Comcast Bill.**

96.    Below at Figure 12 is the long version of Plaintiff Nola Palmer's first

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

monthly bill, which Ms. Palmer downloaded from the Comcast website (red box highlight added).[5]

**Figure 12: Comcast Long Version of Bill – Page 1**



FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

---

[5] This long version of Comcast's bill, which is not the default version displayed to customers in the online customer portal, can be downloaded by the customer as a PDF from the portal.

**Figure 13: Comcast Long Version of Bill – Page 2**



**comcast.**

**Service Details**

| Account Number | ▓▓▓▓▓▓▓ |
|---|---|
| Billing Date | 03/10/16 |
| Total Amount Due | $151.78 |
| Payment Due By | 04/04/16 |
| | Page 2 of 4 |

Contact us: @ www.xfinity.com  📞 1-800-XFINITY (1-800-934-6489)

**XFINITY Bundled Services**

| | | |
|---|---|---|
| Starter Triple Play | 03/10 - 04/09 | 139.95 |
| Includes Digital Starter, TMC, Digital Converter With Access to On Demand Programming, Blast! Pro Internet and XFINITY Voice Unlimited | | |
| Bundle Discount | | -39.96 |
| **Total XFINITY Bundled Services** | | **$99.99** |

**Additional XFINITY TV Services**

| | | |
|---|---|---|
| Anyroom DVR | 03/10 - 04/09 | 9.95 |
| Service Discount | | -9.95 |
| Additional Outlet | 03/10 - 04/09 | 29.85 |
| Digital Converter | | |
| Qty 3 @ $9.95 each | | |
| HD Technology Fee | 03/10 - 04/09 | 10.00 |
| Service Discount | | -10.00 |
| **Total Additional XFINITY TV Services** | | **$29.85** |

**Additional XFINITY Internet Services**

| | | |
|---|---|---|
| Wireless Gateway | 03/10 - 04/09 | 10.00 |
| **Total Additional XFINITY Internet Services** | | **$10.00** |

**Additional XFINITY Voice Services**

For Telephone Number(s): ▓▓▓▓▓

For closed captioning concerns and other accessibility issues affecting customers with disabilities, call 855-270-0379, go online for a live chat at www.comcastsupport.com/accessibility or email accessibility @ comcast.com or write to Comcast 1701 John F Kennedy Blvd., Phila. PA 19103-2838. Attn: K. Wilkinson, or fax: 1-888-612-7402

**Additional XFINITY Voice Services, cont.**

View Voice Detail at www.xfinity.com/viewbill

| **Total Additional XFINITY Voice Services** | | **$0.00** |
|---|---|---|

**Other Charges & Credits**

| | | |
|---|---|---|
| Install Fee - Video | 03/10 | 29.99 |
| Service Discount | 03/10 | -29.99 |
| Install Fee - Internet | 03/10 | 30.00 |
| Service Discount | 03/10 | -30.00 |
| Install Fee - Voice | 03/10 | 30.00 |
| Service Discount | 03/10 | -30.00 |
| Service Activation | 03/10 | 29.95 |
| Service Discount | 03/10 | -29.95 |
| Activate Existing | 03/10 | 105.00 |
| Qty 3 @ $35.00 each | | |
| Service Discount | 03/10 | -105.00 |
| Qty 3 @ $35.00 each | | |
| Universal Connectivity Charge | | 0.77 |
| Regulatory Recovery Fees | | 0.58 |
| Broadcast TV Fee | | 5.00 |
| Regional Sports Fee | | 3.00 |
| **Total Other Charges & Credits** | | **$9.35** |

- 32 -     FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

**Figure 14: Comcast Long Version of Bill – Page 3**



97.     The top-line "XFINITY Bundled Services" price of $99.99 on page one of the bill (Figure 12 above) is identical to the price promised to Ms. Palmer when she signed up for service. This price of $99.99 is repeated on page two (Figure 13 above) as the "Total XFINITY Bundled Services" price.

98.     A reasonable consumer would believe that this "Total XFINITY Bundled Services" price is the actual <u>total</u> price for the bundled services, including the broadcast TV channels which are in every TV package offered by Comcast, and including the sports channels which are in the premium package selected by Ms. Palmer.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

99.  The "Total XFINITY Bundled Services" price of $99.99 is a lie.

100.  The $99.99 price is in fact $8.00 less than Comcast is truly charging Ms. Palmer to provide those bundled TV channels. Comcast has deceptively subtracted this $8.00 from the Bundled Services "Total" and has hidden it in the "Other Charges & Credits" section in the form of a $5.00 Broadcast TV Fee and $3.00 Regional Sports Fee.[6]

101.  Comcast intentionally hides the Broadcast TV Fee and the Regional Sports Fee in the "Other Charges & Credits" section, often among other truly government-related fees such as the Universal Connectivity Charge and the Regulatory Recovery Fees charge. (See Figure 13 above.) But in contrast to those fees, the deceptively named Broadcast TV Fee and Regional Sports Fee are completely made-up fees charged to provide the very channels Comcast has promised are already included in the "Total INFINITY Bundled Services" price.

102.  In an attempt to insulate itself from liability for its fraud, Comcast inserts deceptively crafted definitions of the Broadcast TV Fee and Regional Sports Fee at the bottom of the full versions of its bills (see Figure 14 above).[7]

103.  Comcast intentionally defines the fees in a technical and misleading way that makes them appear to relate to costs imposed on Comcast by the government. Comcast defines the Broadcast TV Fee as follows: "The Broadcast TV fee recovers a portion of the costs of retransmitting television broadcast signals." Comcast defines the Regional Sports Fee as follows: "Regional Sports Fee recovers a portion of the costs to transmit certain regional sports networks."

---

[6] Starting on Ms. Palmer's October 2016 bill, only a few months into her two-year contract which promised a locked-in monthly service price, Comcast increased the Broadcast TV Fee to $6.50 (from $5.00) and increased the Regional Sports Fee to $4.50 (from $3.00).

[7] Notably, Comcast never provides a definition or explanation of the Broadcast TV Fee or the Regional Sports Fee in its advertising to prospective customers. If the fees are mentioned in Comcast's advertising at all, it is only by name in the fine print where they are not defined, and where they are grouped with taxes and government-related fees.

1        104.   In contrast, immediately above these intentionally confusing and deceptive

2 definitions of the Broadcast TV Fee and Regional Sports Fee, Comcast clearly defines

3 the Regulatory Recovery Fee as follows: "The Regulatory Recovery Fee is neither

4 government mandated nor a tax, but is assessed by Comcast to recover the costs of

5 certain federal, state and local impositions related to voice services." See Figure 14

6 above.

7        105.   Notably, Comcast's definitions of the Broadcast TV Fee and the Regional

8 Sports Fee (unlike Comcast's definition of the Regulatory Recovery Fee immediately

9 preceding them) do not contain language stating they are <u>not</u> government mandated nor

10 a tax. They also do not contain language making clear that the fees are <u>not</u> to recover

11 government imposed costs.

12        106.   Meanwhile, by using the technical phrase "recovers a portion of the cost of

13 retransmitting television signals," Comcast falsely implies the Broadcast TV Fee may be

14 related to a government or FCC imposed cost on Comcast for signal transmission,

15 instead of disclosing the truth that Comcast charges the fee to reimburse itself for its

16 contractual payments to ABC, NBC, CBS, and FOX.

17        107.   Similarly, in describing the Regional Sports Fee with the technical phrase

18 "recovers a portion of the costs to transmit certain regional sports networks," Comcast

19 falsely implies the fee is to cover regional or local government transmission fees

20 imposed on Comcast, rather than disclosing the truth that Comcast charges the fee to

21 reimburse itself for its contractual payments to sports content providers.

22        108.   Comcast is intentionally deceiving its customers, and committing massive

23 billing fraud, by hiding price increases via the hidden and deceptive Broadcast TV Fee

24 and Regional Sports Fee in its bills in order to avoid being caught raising prices on its

25 customers' service plans and breaching its agreements with them.

26

27

28

**H.    Comcast Admits It Is Raising Prices for Its Service Plans By Increasing These Fees, While Comcast Simultaneously and Preposterously Asserts That Comcast Increases the Fee Prices Instead Of Its Advertised Plan Prices In Order To Be More "Transparent" To Its Customers About Its Pricing.**

109.    Comcast acknowledges that it utilizes the Fees to raise prices for the same channels it has previously promised were already included in the advertised service price.

110.    In December 2016, Comcast announced it would be increasing its prices an average of 3.8% in early 2017, largely in the form of an increased Broadcast TV Fee and Regional Sports Fee.[8]   Comcast spokesperson Jenni Moyer stated, "Unfortunately, the costs we are charged to carry popular networks continue to increase significantly, especially broadcast television and sports programming, which are the largest drivers of increases in price adjustments." (Emphasis added.)

111.    But paying television networks for video content and transmission rights is a basic cost of doing business for a cable company, and any such charges should be included in Comcast's advertised and stated price for television service plans which include those channels, rather than being deceptively excluded and hidden in the form of the invented Broadcast TV Fee and Regional Sports Fee.

112.    Comcast invented these Fees in order to be able to double-charge for channels that Comcast has already promised are included in the basic service price.

113.    Comcast preposterously defends this backdoor method of raising its prices by claiming these hidden Fees actually increase price transparency to the consumer. Comcast spokesman Steve Kipp stated Comcast presents price increases in the form of a Broadcast TV Fee "separate line item to be more transparent about the factors that drive price changes."[9]

---

[8] *See* Swan, Phillip, TV Predictions, "Comcast Confirms 3.8% Price Increase in 2017," December 9, 2016, *available at* http://tvpredictions.com/comcast120916.htm.

[9] *See* Duryee, Tricia, GeekWire, "Why Comcast just added a $1.50 'Broadcast TV Fee' to your monthly bill," July 23, 2014, *available at* http://www.geekwire.com/2014/comcast-

114.    When Plaintiff Christopher Robertson asked why he was being charged the Broadcast TV Fee, a Comcast agent repeated a version of the Comcast standard canned response (emphasis added):

> [I]nstead of adding it on the price of the service, it is added as additional fee or as an itemized charge will make it clearer for you to see the factors that are driving price changes.

115.    More recently, in direct response to this lawsuit, Comcast stated, "We have been working to make it easier for customers to understand what they're paying for, which is why we list the Broadcast TV and Regional Sports fee separately on the bill and include disclaimers about them in our advertising."[10]

116.    This "transparency" rationale (and defense) put forward by Comcast is preposterous and nonsensical. If Comcast truly desired to increase transparency and explain why its prices were increasing, it would first need to honestly disclose that its prices were increasing in the first place. In the interest of the purported goal of transparency, Comcast then could break out the separate costs comprising the honestly advertised total service price.  For example: Total service price of $157.00; comprised of an $8.00 Broadcast TV Fee to pay for broadcast channels like ABC, CBS, FOX, and NBC; a $7.00 charge for ESPN; a $1.00 charge for CNN; etc.  To be truly transparent, Comcast would also need to clearly explain what the Broadcast TV Fee and Regional Sports Fee actually were, rather than refusing to clearly define them and falsely implying, or outright lying to customers, that the Fees are taxes or government-related.

117.    DSL Reports stated: "[I]t's so amusing to see Comcast tell Geekwire that the fee is Comcast's way of being 'transparent'… Nothing quite says 'transparency' like sneaking a fee onto your bill that distorts the advertised price. Programming hikes are a

---

just-added-1-50-broadcast-tv-fee-bill/.

[10] *See* Brodkin, Jon, "Comcast customers sue over fees that push price above advertised rate," Ars Technica, October 19, 2016, *available at* http://arstechnica.com/tech-policy/2016/10/comcast-accused-of-falsely-promising-low-prices-hiding-bogus-fees/.

cost of doing business, and should be included in your overall bill."[11]

**I.** **Comcast Utilizes the Fees To Regularly and Systematically Increase Its Service Prices In The Middle of Promised Fixed-Rate Contracts With Its Customers, Breaching Its Agreements With Them.**

118.    Comcast has induced millions of consumers to enter into one or two-year service contracts by promising them a "locked-in" promotional rate which will not increase during the term of the contract.

119.    Pursuant to their contract with Comcast, the customers cannot terminate their minimum term service agreement without paying a significant termination fee.

120.    Meanwhile, Comcast utilizes its invented Broadcast TV Fee and Regional Sports Fee to repeatedly and secretly raise its prices on these trapped customers, in breach of Comcast's material promise to not increase its service prices during the contract term.

121.    On its website, Comcast falsely represents that it will not increase service prices for customers who have services subject to minimum term (typically one or two-year) fixed rate agreements:

> If you're currently receiving services on a promotional basis, under a minimum term agreement associated with a specific rate, or in the guaranteed period of one of our SurePrice™ plans, the prices for those specific services will not be affected during the applicable period.[12]

122.    This statement, or a substantially similar statement, also typically accompanies schedules of rate increases provided by Comcast to local government cable franchise authorities and to customers.

123.    Comcast's statement that Comcast will not increase prices for services that are currently subject to a minimum term contract is a lie.

124.    Comcast promises customers in minimum term contracts that broadcast

---

[11] *See* Bode, Karl, "Comcast: Sneaky 'Broadcast TV Fee' Is Just Us Being Transparent," DSL Reports, August 8, 2014, *available at* https://www.dslreports.com/shownews/Comcast-Sneaky-Broadcast-TV-Fee-Is-Just-Us-Being-Transparent-130001.

[12] *See* http://www.xfinity.com/questions.

television channels (such as ABC, CBS, NBC and FOX) and regional sports channels are included as part of their basic service price which is subject to the promised promotional locked-in rate.

125.    Yet Comcast regularly and repeatedly increases the price for these channels by increasing the Broadcast TV Fee and the Regional Sports Fee in the middle of the minimum term contract, in breach of its agreements with its customers.

126.    For example, in the middle of Plaintiff Christopher Robertson's one-year contract, Comcast increased the monthly Broadcast TV Fee from $3.25 to $5.00.

127.    For example, only a few months into Plaintiff Nola Palmer's two-year contract, Comcast increased the monthly Broadcast TV Fee from $5.00 to $6.50 and increased the monthly Regional Sports Fee from $3.00 to $4.50.

128.    For example, only a few months into Plaintiff Derek Villegas' two-year contract, Comcast increased the Broadcast TV Fee from $4.50 to $5.25 and increased the Regional Sports Fee from $3.00 to $5.00.

**J.**      **When Customers Complain To Comcast About Price Increases In the Middle Of Their Fixed-Rate Contracts, Comcast Insists It Has the Right To Increase Its Service Prices At Any Time Via Increases In the Broadcast TV Fee and Regional Sports Fee.**

129.    When customers notice that their monthly Comcast bill has increased in the middle their purportedly price-locked contract, they often contact Comcast to complain.

130.    A standard response by Comcast is to insist that the promised locked-in promotional price for their service has remained the same, but that the Fees, which are not subject to the lock-in, have increased.

131.    This response is nonsensical in that the Fees are just another way Comcast is charging for the same broadcast and sports channels it previously promised were included in the locked-in rate for the service package.

132.    For example:

**Comcast online chat with customer Mike Jobling of Aurora, Colorado**

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

**(emphasis added).**

**You:** trying to figure out why there are additional charge[s] listed as broadcast tv fee and sports fee in addition to the charge for those channels said to be included in the bundle price?

…

**Alex:** As we continue to make investments in our products and services, we periodically need to adjust rates due to increases in programming, business and technology enhancement costs.

**You:** <u>So my guaranteed rate for two years can change at any time</u>?

**Alex:** <u>The guaranteed rate of the bundle will not change. However, applicable fees may change</u>.

133. For example:

**Posted official Comcast response to customer asking about price increases in the middle of his two-year agreement (emphasis added):**

Hello KMcGarvey,
<u>You[r] 24 month agreement will not increase</u>, so your package price will remain the same. <u>However, you will notice an increase on your statement for the services/fees that are not included in your agreement.</u> After reviewing your account, it shows that the following factors of your monthly subscription will be effected:
Broadcast TV Fee will increase to $5.00
Regional Sports Network Fee will increase to $3.00

*See* post dated December 16, 2015, on the Comcast online Help & Support Forum *available at*: http://forums.xfinity.com/t5/Customer-Service/Question-regarding-new-rates-effective-in-January/td-p/2658968.

134. For example, when Comcast customer Zalman Zitron of Denver, Colorado, called Comcast to complain his bill had increased from the locked-in price Comcast promised him for his two-year contract, a Comcast agent told him that his promotional pricing had remained the same, but that the fees had increased. The agent unabashedly told Mr. Zitron that Comcast could and would increase the Broadcast TV and the Regional Sports Fee at any time during the contract despite the promise of a two-year locked-in rate.

135. For example, in response to several written complaints from Comcast customer Joseph Loomis of Moss Beach, California, regarding his being charged the previously undisclosed Broadcast TV Fee and Regional Sports Fee, a member of

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

Comcast's "Executive Customer Relations" staff called Mr. Loomis and unabashedly told him that Comcast was free to add new fees to his bill after the first three months of his promised fixed-price two-year contract term.

**K.    Comcast Lies To Customers Who Inquire or Complain About the Fees By Telling Them the Charges Are Taxes or Government Fees.**

136.    The other typical response by Comcast to customer complaints about the Broadcast TV Fee and Regional Sports Fee is to lie and tell customers that the Fees are taxes or government-related.

137.    For example, when Plaintiff Nola Palmer called Comcast to complain about the Broadcast TV Fee and the Regional Sports Fee, she was told that the fees were mandated government taxes and that the money is used for public education.

138.    For example, when Plaintiff Reinier Broker complained in an online chat with a Comcast customer service agent about the Broadcast TV Fee, he was told it was mandated by the government.

139.    For example, when Plaintiff Christopher Robertson asked a Comcast online chat agent about the Broadcast TV Fee, he was told it was a "Government approved charge."

140.    For example, when Plaintiff Jonathan Bailey called Comcast to complain about the Broadcast TV Fee, he was told it was required by the FCC in order to carry broadcast channels.

141.    For example, when Comcast customer Tom Dunn of Colorado Springs, Colorado, complained to a Comcast online chat agent about an increase in the Fees in the middle of his two-year contract, the agent told him that Comcast had no control over the Fees, and that if he wanted further information about the fee increases he needed to contact the FCC.

142.    For example, when Comcast customer Mike Jobling of Aurora, Colorado, complained to Comcast about the surprise Fees which increased his bill above his promised locked-in rate, he was repeatedly told by both telephone agents and online

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

chat agents that the Fees were taxes and/or government fees which Comcast did not keep and which were outside of Comcast's control.

143. Comcast customer service agents can be adamant that the Broadcast TV Fee and Regional Sports Fee are taxes or government-related fees, even when directly challenged by the customer.

144. For example, when Comcast customer Nermin Suljic of Humble, Texas, complained to two different chat agents about the Fees (one in the billing department, the other in the customer retention department), both agents stated the Broadcast TV Fee and Regional Sports Fee were taxes or government fees. Even after Mr. Suljic insisted that he knew the Fees were not taxes or government fees and told the customer retention agent that there was currently a class action lawsuit against Comcast for the deceptive Fees, the Comcast agent still refused to back down from his false statement that the Fees were imposed by the government. An excerpt of the online chat is below:

**<u>Online Chat with Comcast customer Nermin Suljic on October 19, 2016 (emphasis added):</u>**

***Chat with agent in the billing department:***

**Nermin:** My Issue: My Bill is $6.67 more this month than it was last month. I don't understand why?
...

**Lalremruata:** I can see that your package remain the same with Dual play for Tv and cable. <u>Your package monthly cost is $99.98 + taxes/mo.</u> After comparing your last 2 bills, <u>the only component that has increased is the taxes. I can see that the Broadcast TV Fee, Regional Sports Fee and State Cost Recovery Charge</u> has increased.

**Lalremruata:** So, your bill has increased by approximately $7.00.

**Nermin:** <u>But the broadcast tv fee and regional sports fee are not taxes</u>

**Lalremruata:** Your package and package cost remain the same.

**Nermin:** I don't agree with the fee increases
...

**Lalremruata:** Comcast is committed to improving our customer's entertainment experience. As we continue to make investments in our products and services, we periodically need to adjust prices due to increases in programming, business and technology enhancement costs.

**Lalremruata:** Increases in broadcast retransmission costs are impacting all cable

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

and satellite providers, and in turn various providers are looking at and implementing different ways to help offset these costs.

**Nermin:** then you should increase the price of your services, not tack on fees to customers who are already under contract

…

**Nermin:** my question is, given that I am under contract and I don't agree with these fee increases, will Comcast let me out of my contract without penalty and I will go ahead and cancel my service

**Lalremruata:** I am sorry to learn that you wish to cancel your services due to the increase in these fees.

**Nermin:** Comcast can't just keep raising fees as they please

**Lalremruata:** I will connect your to our sales team to check on that. And see if they can give you the best deal for your contract term so your prices do not get increase.

***Transferred to chat agent in the customer retention department:***

**Rinkal:** Hello. This is Rinkal. You have reached in Transition Department and we appreciate you are giving us a chance to resolve your concern today.

**Nermin:** my bill this month has gone up by aprox. $7 and it turns out that it is comcast fees (not taxes) that have gone up

**Nermin:** I don't agree with the fee increase and I was asking if I could be allowed to break my contract and cancel the service given that there has been a price increase that I don't agree with

…

**Rinkal:** <u>As I can see here $5 has been charged for</u> broadcast fee which is not comcast fee

…

**Nermin:** broa[d]cast fee is a Comcast fee

**Nermin:** it's not a government tax

**Rinkal:** <u>If customer is using the cable services so this is the mandate charges to pay the government</u>.

**Nermin:** #6: Broadcast TV Fee This might sound like some sort of mandatory fee put on your bill by a state or federal regulator, but in fact, it is just a way for Comcast to raise prices while pretending not to raise prices. It is a $5 increase on whatever TV or bundle price the consumer is paying. Comcast began adding this fee — initially only $1.50 — to consumers' bills late in 2013. Nominally, the fee is to recoup costs associated with networks' carriage contracts. Except, of course, that's what you're paying for when you pay for cable TV anyway. So it's a sneaky way to make that money.[13]

---

[13] Mr. Suljic copied and pasted this statement from an article on Consumerist.com.  *See* Cox, Kate, "The Consumerist Guide To Understanding Your Comcast Bill," Consumerist, February 1, 2016, *available at* https://consumerist.com/2016/02/01/the-consumerist-

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

**Rinkal:** <u>I would like to tell you Nermin broadcast fee is not comcast fee it is government fees</u>.

**Nermin:** that is fals

**Nermin:** false

**Nermin:** <u>there is currently a class action lawsuit against Comcast for charging bogus "Broadcast TV Fee" and "Regional Sports Fee"</u>

**Rinkal:** <u>Nermin, "Broadcast TV Fee" and "Regional Sports Fee" these charges are the government tax charges</u>

**Rinkal:** However we are not authorize to make correction in that.

**Rinkal:** And these are service charges, which you need to pay for using the service.

**Nermin:** http://www.hattislaw.com/cases/lawsuitagainstcomcastforrippingoffcustomerswithbogusbroadcasttvfee/

**Nermin:** Look, I know that it is a made up Comcast fee which I have been paying for a while now. Now Comcast is getting greedy and doubling the fees. Therefore, I would like to be let out of my contract so I can cancel my service. I don't agree with these charges and I don't agree with the way Comcast conducts business.

**Nermin:** If your costs are going up, you need to increase your prices. Not do the sneaky "fee" increases which are not government taxes!

**Rinkal:** I really apologies for inconvenience caused to you.

**Rinkal:** <u>However I share all correct information with you about the charges</u>

145.  Other Comcast customers have posted on Comcast's official online "Help & Support Forums" that they were told by Comcast staff that the Broadcast TV Fee and the Regional Sports Fee are taxes or government fees:

Posted June 11, 2016:
"I called comcast today to complain about the extra [Broadcast TV Fee and Regional Sports Fee] charges that are added to the bill. I was told that it was a tax. IT IS NOT A TAX, it is a fee charged by Comcast. They are charging us an extra $8 per month, without giving us any additional services. I believe we have a class action lawsuit waiting to happen."[14]

Posted July 19, 2015:
"Upon review of my Comcast bills I called today, Sunday, to find out why I was being charged for a $3 Broadcast TV fee and a $1 Regional Sports Fee. These charges appeared in my June and July bills under the section "Other Charges &

---

guide-to-understanding-your-comcast-bill/.

[14] http://forums.xfinity.com/t5/Billing/Broadcast-TV-Fee/td-p/2671674

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

Credits" and I wanted to get a better understanding of what and why these charges appeared all of a sudden and if they can be removed. As an aside, I don't watch sports. The call center agent explained they were state and government taxes and could not be removed. I asked her why they didn't appear in the "Taxes, Surcharges, and Fees" section and she corrected herself and stated that they are not State fees but that they are government fees that Comcast had been approved to charge customers."[15]

146.    In the process of investigating this case, Plaintiffs' attorney Daniel Hattis spoke with dozens of Comcast customers who likewise called or contacted Comcast to complain about the Broadcast TV Fee and the Regional Sports Fee and were falsely told by Comcast staff that the charges were taxes or government-related fees.

147.    Attorney Hattis, who is a Comcast customer, had a similar experience of being falsely told by a Comcast online customer service agent that the Broadcast TV Fee was a tax or government-related fee, in an online chat excerpted below:

**Online Chat on 1/17/2016 (emphasis added):**

**Daniel:** I have question about what is the broadcast tv fee on my bill

**…**

**Cris:** Since you are subscribed to bundle that includes cable service, Broadcast TV Fee is included as an itemized charge on your bill that is intended to offset a portion of the costs of retransmitting broadcast television signals.

**Cris:** Broadcast stations are allowed by the government to charge for their signals, and cable providers like Comcast are required to pay substantial fees in order to carry those signals.

**Daniel:** i don't understand. When I signed up I was told the price for service was $49.99 … and that the only other cost was government taxes

**Daniel:** So comcast is actually charging monthly service cost of $49.99 + $3.25 broadcast fee? I don't understand

**Daniel:** So service is NOT actually $49.99 a month that I was promised?

**Cris:** The Broadcast TV Fee represents only a portion of our broadcast retransmission costs which is raise by broadcasters to the government and is being approved. For having cable service, there will be fees included, Daniel. This applies to all cable service providers including AT&T U-verse, Charter, Time Warner Cable and Verizon FiOS.

**Cris:** The Broadcast TV Fee represents only a portion of our broadcast retransmission costs

---

[15] http://forums.xfinity.com/t5/Billing/broadcast-tv-fee/td-p/2457405

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

**Daniel:** Where does that fee go. You did not advertise that fee. The rep promised me no extra fees, that only would be taxes.

**Daniel:** You advertised $49.99

**Cris:** Since this fee is also a government mandated charge, Comcast and all cable service providers has no control over this fee.

**Daniel:** oh ok

**Daniel:** So this is a tax, that Comcast does not keep?

**Cris:** Thank you so much for your understanding

**Daniel:** This $3.25 just goes to the government?

**Cris:** Yes, that is correct. It will be submitted to the government as well.

**L.** **Comcast's Practices Are Fraudulent and Unfair and Are Intended To Mislead Consumers.**

148.     Comcast perpetrates this scheme in order to deceptively charge its existing customers more money for its service plans than Comcast promised them it would charge.  Meanwhile, Comcast continues to hook and trap new customers into one or two-year contracts, with the intent of charging them more than promised and then continuing to increase its prices in the middle of the promised fixed-rate term via the deceptive and hidden Fees.

149.     The FCC has identified these fees by "MVPDs" (Multichannel Video Programming Distributors, such as Comcast) as potentially deceptive, stating the following and seeking public comment:

> Some MVPDs have added various video-related fees to monthly billing statements. **Such fees include, for instance, a broadcast fee to partially recoup retransmission consent fees charged by local broadcast stations and a sports fee to defray the cost of sports programming. Some MVPDs may raise subscribers' total monthly bills using these fees without raising the advertised package prices.** We seek comment on the competitive strategy associated with adding video-related fees as opposed to raising monthly subscription prices… Do such fees enable MVPDs to better attract new subscribers and retain existing subscribers? **Are consumers less responsive to a $1 video-related fee than they are to a $1 increase in the price of video services?**

*See* FCC Public Notice, 30 FCC Rcd 7114, released on July 2, 2015, *available* at https://www.fcc.gov/ecfs/filing/60001090312; emphasis added.

150.     Consumer advocates and journalists have criticized the Broadcast TV Fee

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

scheme.

151.    Consumerist.com, a website published by a subsidiary of Consumer Reports, upon first learning of Comcast's Broadcast TV Fee in late 2013, stated: "[S]ince this is a fee tacked on above the bill, the company may still be able to advertise the monthly rate without the fee. So this is an attempt to jack up your bill without being transparent about the total costs to potential subscribers."[16] Consumerist's prediction was of course borne out.

152.    One journalist called the Broadcast TV fee "maddening because of the way it's being conducted… [B]y tacking on the additional cost below the bill's main charges, the company is able to jack up prices without having to advertise that anything has changed."[17]

153.    Another journalist stated that Comcast's charging a Broadcast TV Fee is "like The Cheesecake Factory listing a piece of cheesecake for $5.99 then adding a $1.50 sugar surcharge when you get your bill."[18]

154.    Comcast's false promises, misrepresentations, and failure to disclose the Broadcast TV Fee and Regional Sports Fee are material to reasonable consumers, and are unfair and done in bad faith.

155.    Comcast's misrepresentations and practices injured and caused Plaintiffs and Class members to lose money or property in that they paid more for their Comcast service plans than they were promised and otherwise should have paid.

156.    Comcast will continue deceiving and cheating its customers with its

---

[16] Morran, Chris, "Comcast Wants To Be Hated Even More, Adding $1.50 'Broadcast TV Fee'", Consumerist, November 25, 2013, *available* at https://consumerist.com/2013/11/25/comcast-wants-to-be-hated-even-more-adding-1-50-broadcast-tv-fee/.

[17] Duryee, Tricia, "Why Comcast Just Added a $1.50 'Broadcast TV Fee' to Your Monthly Bill", Geekwire, July 23, 2014, *available at* http://www.geekwire.com/2014/comcast-just-added-1-50-broadcast-tv-fee-bill.

[18] Kline, Daniel, "The Truth Behind Comcast's $1.50 Retransmission Fee", The Motley Fool, July 25, 2014, *available at* http://www.fool.com/investing/general/2014/07/25/the-truth-behind-comcasts-150-retransmission-fee.aspx.

Broadcast TV Fee and Regional Sports Fee scheme until it is forced by law to stop. The scheme is far too profitable. Plaintiffs estimate that Comcast earns over $1 billion per year from these hidden fees, equal to approximately 15% of Comcast's total annual profits.[19]

## V. PLAINTIFFS' INDIVIDUAL FACTUAL ALLEGATIONS

### A. Plaintiff Dan Adkins
(California Plaintiff)

157.    After moving to a new home in Oakland, California, Plaintiff Dan Adkins went online to Comcast's website on September 26, 2016 to review Comcast's service package offerings. Mr. Adkins desired to sign up for a package with television and high speed Internet which would work with his TiVo video recorder device.  After researching and pricing Comcast's various advertised offerings, Mr. Adkins decided to sign up for two-year contract for Comcast's Starter XF Double Play package, which promised 140 channels of television and high speed Blast! Pro Internet for an advertised monthly price of $79.99 for the first 12 months and $89.99 for the second 12 months. Based on Comcast's representations on its website, including the "Monthly Total" amount of $79.99 prominently displayed throughout the order process, Mr. Adkins placed his order for the Starter XF Double Play package. At no time prior to or in placing his order was Mr. Adkins aware Comcast would charge him an additional monthly Broadcast TV Fee and a Regional Sports Fee on top of the $79.99 promised price for his service.

158.    After placing his order, Mr. Adkins received an "Order Summary" email from Comcast. See Figure 8 above. Consistent with Comcast's advertising and

---

[19] Prior to the filing of this lawsuit, it appeared Comcast was preparing to expand the hidden fee scheme to its pricing for voice (telephone) services.  On its billing support webpages, Comcast referenced a new $2 charge to be effective January 1, 2017 called the "Voice Technology Fee."  The new fee would be charged on top of the promised and advertised rate for voice services.  However, immediately after this lawsuit was filed, Comcast scrubbed all reference to the new fee from its website.  *See* Bode, Karl, "Comcast's Latest Sneaky Fee: $2/Month 'Voice Technology Fee'", DSL Reports, October 19, 2016, *available at* http://www.dslreports.com/shownews/Comcasts-Latest-Sneaky-Fee-2Month-Voice-Technology-Fee-138130.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

1    promises, the order summary showed that the total "Monthly Fees" for his package

2    would be $79.99 per month.

3         159.   Mr. Adkins received his first bill on October 6, 2016. Mr. Adkins was

4    surprised to see that his bill was $127.97, much higher than the $79.99 in "Monthly

5    Fees" he had been promised. Mr. Adkins noticed that Comcast was charging him a

6    previously undisclosed $5.00 Broadcast TV Fee and $3.00 Regional Sports Fee. Mr.

7    Adkins also noticed that Comcast was charging him an additional $15.00 for Blast! Pro

8    Internet, contrary to Comcast's promise to him that it was included in his service

9    package.

10        160.   Upset by these excess charges, Mr. Adkins wrote and mailed a letter to

11   Comcast on October 7, 2016 asking that Comcast remove the Broadcast TV Fee,

12   Regional Sports Fee, and the Blast! Pro Internet charges from his bill. He also asked that

13   Comcast give him a $2.50 monthly credit for using a CableCARD in his own device

14   pursuant to Comcast policy, and questioned whether he had been double charged for

15   the self-install kit.

16        161.   Later on October 7, 2016, Mr. Adkins opted out of Comcast's arbitration

17   clause on Comcast's "Arbitration Opt Out" webpage.

18        162.   Mr. Adkins has also since learned that Comcast intends to increase his

19   $79.99 base rate (which does not include the Broadcast TV Fee or the Regional Sports

20   Fee) for services in months 13-24 to $99.99 per month, rather than to the $89.99 per

21   month that Comcast promised him when he placed his order.

22        163.   On October 8, 2016 Plaintiffs' counsel faxed and emailed a letter to

23   Comcast on behalf of Mr. Adkins and Plaintiff Jonathan Bailey to Comcast Senior Vice

24   President Thomas R. Nathan demanding, among other things, that Comcast stop its

25   deceptive practices and return all money paid by Comcast customers for the Broadcast

26   TV Fee and Regional Sports Fee. A Comcast litigation paralegal acknowledged receipt

27   of the October 8, 2016 letter by an email reply on October 10, 2016. Plaintiffs' counsel

28   also mailed a notice letter to Comcast by certified mail return receipt on October 10,

2016. Comcast has not responded to the letters.

164. On December 30, 2016, Mr. Adkins called Comcast to again complain about the excess $15.00 Comcast was charging him each month for Blast! Pro Internet. Comcast agreed to remove and reimburse him for the Blast! Pro Internet charges. However, Comcast continues to charge Mr. Adkins the monthly Broadcast TV Fee and Regional Sports Fee.

165. Mr. Adkins materially relied upon Comcast's misrepresentations and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr. Adkins to suffer harm, injury in fact, and lost money or property.

**B.** **Plaintiff Christopher Robinson**
(California Plaintiff)

166. A few years prior to November 2015, Plaintiff Christopher Robertson had television and Internet service with Comcast. He cancelled his service after being frustrated with various extra charges on his bill each month and his having to repeatedly call or online chat with Comcast customer service representatives to get them removed.

167. Mr. Robertson switched from Comcast to DirecTV for television and to AT&T for Internet and phone service. Towards the end of 2015, AT&T was going to increase the monthly service rate from approximately $40.00 per month to approximately $55.00 per month. Meanwhile, Mr. Robertson did not watch much television and decided he did not need his DirecTV subscription.

168. In October 2015, Mr. Robertson received a direct mail flyer from Comcast advertising current "deals" offered by Comcast for Internet and television.

169. After receiving the flyer, Mr. Robertson went to Comcast's website and began researching Comcast and its service offerings. On Comcast's website, Mr. Robertson read various statements in which Comcast said it had made improvements including in customer service. Mr. Robertson priced out various Comcast offerings available to him, and determined that the advertised price for a bundle package of Internet plus basic TV at $49.99 was cheaper than the price for high speed internet

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

alone.

170. On or about November 9, 2015, Mr. Robertson returned to the Comcast website. He initiated an online chat with a Comcast agent, and told the agent he was interested in the Internet Plus 25 plan. Mr. Robertson asked the agent what the total monthly bill would be, and told the agent he wanted to make sure other fees would not be regularly added to the bill like in his last experience with Comcast. The agent assured Mr. Robertson there would be no extra charges with the exception of government fees and taxes, and stated that the monthly total during the one-year contract would be the $49.99 advertised price plus approximately $10.00 in various taxes and government fees, for a total of approximately $60.00. Relying on the representations of the Comcast representative, Mr. Robertson placed the order for service. At no time prior to or in placing his order was Mr. Robertson aware he would be charged an additional Broadcast TV Fee or any other fee not related to taxes or government fees.

171. Mr. Robertson received his first bill on or about November 14, 2015. He was surprised to see that the bill was $73.94, much higher than Comcast had promised. Upon further examination of the bill, Mr. Robertson saw a $6.00 Video Transfer Fee, a $6.00 CHSI Transfer Fee, and a $3.25 Broadcast TV Fee.

172. Mr. Robertson initiated an online chat on Comcast's website with a customer service agent, and he asked that the fees be removed from his bill. The chat agent said he could remove the Video Transfer Fee and CHSI Transfer Fee, but that he could not remove the Broadcast TV Fee because that was a fee all customers had to pay. The agent said he was unable to explain the Broadcast TV Fee, and that he could not remove it.

173. On December 2, 2015, Mr. Robertson opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

174. On December 24, 2015, Plaintiffs' counsel mailed a letter on behalf of Mr. Robertson to Comcast demanding that Comcast end its unlawful scheme and return all money Comcast customers paid for the Broadcast TV Fee and Regional Sports Fee.

See **Exhibit B**.

175.    On February 25, 2016, Comcast Senior Vice President Thomas R. Nathan mailed a response letter refusing to change Comcast practices or refund any money. See **Exhibit C**.

176.    On March 19, 2016 Mr. Robertson initiated another online chat with a Comcast customer service agent.  The agent immediately "escalated" his chat to another representative, before even beginning a conversation with him, presumably because Mr. Robertson's account had been flagged by Comcast after Comcast received the demand letter sent on his behalf.  Based on information and belief, the next agent he was transferred to was a more senior and knowledgeable representative than the typical agent.

177.    Mr. Robertson asked the agent to remove the Broadcast TV Fee charges from his bills.

178.    The agent stated that the Broadcast TV Fee was a "Government approved charge implemented by Comcast to all cable service subscribers."

179.    Mr. Robertson complained to the agent that he was not told about the charge, and that "I signed a 1 year agreement to pay a specific amount for a specific service from Comcast, that is the amount I should be paying each month." He stated that "Comcast told me one price, then charged me another."

180.    The agent responded that the "Broadcast TV Fee is part of the fees for having cable service which is on top of the service price you currently have."

181.    The agent then repeated a version of the Comcast canned line that Comcast intentionally chose not to add the amount of the Broadcast TV Fee ($3.25) to the base service price in order to increase transparency regarding its pricing: "[I]nstead of adding it on the price of the service, it is added as [an] additional fee or as an itemized charge [that] will make it clearer for you to see the factors that are driving price changes."

182.    The agent refused to remove the Broadcast TV Fee charges from Mr.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

Robertson's bill, stating "it cannot be refunded … since you have agreed to sign up for the package with us."

183.    In July 2016, with 4 months still remaining on his 12 month contract at the promised flat rate of $49.99, Mr. Robertson's total monthly bill increased from $61.03 to $67.41. Starting that month, Comcast increased the Broadcast TV Fee charge on Mr. Robertson's bill from $3.25 to $5.00. In addition, Comcast added a five dollar fee for an Internet "Speed Increase", apparently removing a supposed "Service Discount" of $5.00 he was previously receiving.

184.    After further examining his bills in late September 2016, Mr. Robertson realized that since his subscription started, he had been charged $10.00 each month for an Internet "Speed Increase" fee (but with a $5.00 "Service Discount" from November 2015 through June 2016, after which he was charged the full $10.00), which Mr. Robertson never approved and which is not mentioned in the "Offer" document posted to his online account.

185.    Mr. Robertson materially relied upon Comcast's misrepresentations and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr. Robertson to suffer harm, injury in fact, and lost money or property.

**C.    Plaintiff Jonathan Bailey**
(Washington Plaintiff)

186.    Prior to July 2016, Plaintiff John Bailey had Internet service with Comcast for approximately $53.00 per month and TV service with Dish Network for approximately $50.00 per month.

187.    In July 2016, Mr. Bailey noticed an unexplained charge on his Comcast account for a Limited Basic Converter.

188.    On July 21, 2016, Mr. Bailey called Comcast to inquire about the charge. After the agent confirmed that Mr. Bailey did not have television service and that he owned his own modem, the agent told him the charge was a mistake and removed it from the bill.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

1    189.    The agent then offered to add television to Mr. Bailey's service plan,

2    including approximately 25 channels and HBO or Showtime, for only $10.00 more per

3    month than he was then paying for Internet only. Mr. Bailey declined the offer, because

4    the package did not include ESPN, and he did not need or want HBO or Showtime. He

5    was happy with Dish Network and had the ability to place his $50.00 per month Dish

6    service on "pause" mode for three months during the football off-season to save money.

7        190.    After the call with the Comcast agent, Mr. Bailey began researching his

8    television options. Mr. Bailey determined that while the plan offered by the agent did not

9    include ESPN, he could instead subscribe to month-to-month SlingTV streaming service

10   for $20.00 per month which included ESPN.  Between the two services, Comcast and

11   SlingTV, he would pay $30.00 per month for local channels and ESPN, and even less if

12   he suspended SlingTV service during the football off-season, which would meet his

13   needs and be cheaper than his current Dish subscription.

14       191.    On July 23, 2016, Mr. Bailey called Comcast and asked for the $10.00 TV

15   package to be added to his current Internet plan, as the previous agent had offered. The

16   agent told him there was no such plan, and that the best the agent could do was offer a

17   plan for $20.00 more per month. Mr. Bailey then asked to be transferred to the customer

18   retention department.  After Mr. Bailey explained the situation to the customer retention

19   agent, the agent told Mr. Bailey that the agent could indeed offer him the television plan

20   for $10.00 more per month.

21       192.    The agent confirmed a total monthly price of approximately $63.00 per

22   month with a one-year commitment. Relying on these representations of the Comcast

23   agent, Mr. Bailey placed the order for the service plan with the agent. At no time prior to

24   or in placing his order was Mr. Bailey aware that he would be required to pay an extra

25   $5.00 per month in the form of the Broadcast TV Fee.

26       193.    Upon receiving his first bill on or about August 23, 2016, Mr. Bailey noticed

27   there was a $10.16 charge for a Broadcast TV Fee. Mr. Bailey called Comcast to inquire

28   about the charge, and was told by a customer service agent that the Broadcast TV Fee

is charged to all Comcast TV customers due to the FCC requiring Comcast to carry the broadcast TV channels. The agent told Mr. Bailey the fee would usually be $5.00 per month, and that "it's a fee we all have to pay."

194. Mr. Bailey explained to the agent that his television package was primarily made up of just the broadcast TV channels, and that Comcast had promised him he would receive those channels by paying only $10.00 more than his previous rate for Internet-only service.

195. Mr. Bailey pointed out that the additional $5.00 Broadcast TV Fee charge represented a 50% premium over the agreed upon rate.

196. The agent told Mr. Bailey there was nothing she could do. Mr. Bailey asked to speak to a supervisor. The agent transferred Mr. Bailey to a supervisor, but the supervisor could not hear him speaking and disconnected the call.

197. Mr. Bailey then called back and reached a new agent and immediately asked to be transferred to another supervisor. The agent told him he could not transfer Mr. Bailey unless he understood why. Mr. Bailey told the agent about his previous conversation with the other agent. The new agent told Mr. Bailey he could not remove the Broadcast TV Fee charge either. Mr. Bailey again asked to be transferred to a supervisor, and the agent told him he could transfer him, but that not even the supervisor could remove the charge. Mr. Bailey then asked to be transferred to the customer retention department, which Mr. Bailey thought would have more power to remove the fee from his bills.

198. The agent transferred Mr. Bailey to the customer retention department. Mr. Bailey explained the situation to the customer retention agent, and told the agent that the Broadcast TV Fee was never disclosed to him prior to his signing up for service. Mr. Bailey demanded that the Broadcast TV Fee be removed from his bill. The agent refused to remove the charge, stating that "everyone" had to pay the fee. The agent also refused to institute a monthly $5.00 credit on Mr. Bailey's account in some other way.

199. Mr. Bailey asked the agent whether he could cancel the new service and

go back to his prior Internet-only rate. The agent told him no, he could not go back, because that package was no longer available. Given Comcast's refusal to allow Mr. Bailey to return to his original Internet-only rate, and given that the only other broadband Internet service available to him from another provider was slower DSL service, Mr. Bailey reluctantly remained with Comcast.

200. On August 23, 2016, Mr. Bailey opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

201. In October 2016 Plaintiffs' counsel sent letters to Comcast on behalf of Mr. Bailey and Plaintiff Dan Adkins to Comcast as described in above. Comcast has not responded to the letters.

202. Mr. Bailey materially relied upon Comcast's misrepresentations and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr. Bailey to suffer harm, injury in fact, and lost money or property.

**D.** **Plaintiff Reinier Broker**
(New Jersey Plaintiff)

203. In early June 2016, Plaintiff Reinier Broker, who had recently moved to New Jersey, went online to Comcast's website to research getting high speed Internet. Comcast was the only cable provider to his new address.

204. Mr. Broker initiated an online chat session with a Comcast agent to learn more about Comcast's service plan offerings. From the chat and based on his review of the advertised prices for service packages on Comcast's website, Mr. Broker determined that it would be more expensive to subscribe to high speed Internet by itself, versus subscribing to a "bundle" package which also included television.

205. A few days later, on June 11, 2016, Mr. Broker returned to Comcast's website and ordered the Internet Pro Plus package, which included both television and high speed Internet, for an advertised and promised price of $54.99. In ordering the service, Mr. Broker relied on Comcast's representation that the monthly service fee would be $54.99 plus taxes. Mr. Broker was not informed he would be charged a $5.00

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

Broadcast TV Fee in addition to the monthly service price of $54.99.

206.     After placing his order, Mr. Broker received an email "Order Summary" from Comcast stating that his monthly fee would be $54.99, and that there would be one-time fees of $9.95.

207.     Mr. Broker received his first Comcast bill on or around June 17, 2016.  He was surprised to see a $5.00 Broadcast TV Fee listed in the "Other Charges & Credits" section of the bill. Mr. Broker read the cryptic Comcast definition of the Broadcast TV Fee at the bottom of his bill ("The Broadcast TV Fee recovers a portion of the costs of retransmitting television broadcast signals"), but he did not understand it.

208.     On or about June 24, 2016, Mr. Broker went to Comcast's website and initiated an online chat with a customer service agent. Mr. Broker asked the agent about the fee.  The agent told Mr. Broker the Broadcast TV Fee was a "mandated" fee.  After continuing to chat with the agent and not getting an adequate explanation of the fee and being unable to get the agent to remove the charge, Mr. Broker asked to chat with the agent's manager. The manager similarly responded that the Broadcast TV Fee was charged to all Comcast customers. The manager offered to refund the fee for the first month only, and told Mr. Broker if he wanted to discuss the fee further he should contact customer service by telephone instead.

209.     In early July Mr. Broker called Comcast customer service as directed by the chat manager, and asked the telephone agent for an explanation of the Broadcast TV Fee and demanded that it be removed from his bill. The telephone agent told him that all cable companies have to charge this Broadcast TV Fee.  Mr. Broker responded that this was false and that his former cable company did not charge the fee. After about twenty minutes of talking in circles with the agent, Mr. Broker asked to speak with the agent's manager, and was told the manager would call him back.  When the manager called back, Mr. Broker was boarding an airplane and was unable to answer.

210.     On July 13, 2016, Mr. Broker opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

1    211.   Mr. Broker called the manager back a few days later regarding the

2    Broadcast TV Fee. Mr. Broker told the manager that the fee was not disclosed to him

3    prior to his receiving the first bill. The manager claimed that the fee was disclosed to him.

4    The manager also argued that the order confirmation email he received, which stated his

5    "Monthly Fees" would total $54.99, was only an "estimate." Mr. Broker read the order

6    confirmation email back to the manager and refuted the manager's assertion, pointing

7    out nowhere did the email say this price was an "estimate." Mr. Broker demanded that

8    the manager tell him exactly when was the Broadcast TV Fee disclosed to him. The

9    manager responded that Mr. Broker was told about the fee on June 24, 2016 during his

10   prior online chat.

11   212.   Mr. Broker asked the manager if he agreed that the fee was not disclosed

12   to Mr. Broker before his service began. The manager responded that the fee "should

13   have been disclosed." Mr. Broker then asked whether their conversation was being

14   recorded, and asked for a copy. The manager responded that the conversation was

15   indeed being recorded, but that Comcast would not give Mr. Broker a copy.

16   213.   On July 25, 2016, Plaintiffs' counsel faxed a demand letter on behalf of Mr.

17   Broker to Comcast Senior Vice President Thomas Nathan demanding that Comcast stop

18   its deceptive practices and return all money paid by Comcast customers for the

19   Broadcast TV Fee and the Regional Sports Fee. Plaintiffs' counsel also emailed the

20   letter on July 25, 2016 to a litigation paralegal at Comcast.  Mr. Nathan responded in a

21   letter dated August 31, 2016 that Comcast denied Mr. Broker's allegations because "the

22   Company does disclose the Broadcast TV fee in all its advertising."

23   214.   Mr. Broker materially relied upon Comcast's misrepresentations and

24   omissions, which in conjunction with Comcast's acts and practices alleged herein

25   caused Mr. Broker to suffer harm, injury in fact, and lost money or property.

26   **E.    Plaintiff James McLaughlin**
          (Illinois Plaintiff)

27

28   215.   Plaintiff James McLaughlin moved into a new home in Aurora, Illinois in

2016.

216.    On March 24, 2016, Mr. McLaughlin visited a Comcast XFINITY store in Bolingbrook, Illinois to inquire about getting television and Internet service.

217.    He asked the agent at the counter about Comcast's deals for Internet and television service, including HBO.  The agent suggested a $99.99 monthly package which included television and Internet.

218.    Mr. McLaughlin asked the agent how much Comcast would charge him each month in total.  The agent responded that the monthly total would be approximately $107.00 given the $99.99 package price and Illinois' 7% sales tax.

219.    Relying on these representations of the Comcast agent, Mr. McLaughlin placed the order for the service package.

220.    Two days later, on March 26, 2016, Mr. McLaughlin received his first Comcast bill. The bill was $132.04, much higher than he expected. He noticed that Comcast had charged him a previously undisclosed $5.00 Broadcast TV Fee and $3.00 Regional Sports Fee.

221.    Mr. McLaughlin called Comcast to ask about these extra charges on his bill. He asked the customer service agent to remove the Broadcast TV Fee and the Regional Sports Fee from his bill. The agent responded that that Broadcast TV Fee and Regional Sports Fee could not be removed. While speaking to the agent, Mr. McLaughlin also found out for the first time that Comcast had signed him up for a two-year contract. The agent also told him his monthly bill would increase after 12 months into the two-year contract; this similarly was new information for him.

222.    On or about March 28, 2016, Mr. McLaughlin opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

223.    On April 6, 2016, Plaintiffs' counsel faxed a demand letter on behalf of Mr. McLaughlin and several other Comcast customers to Comcast Senior Vice President Thomas R. Nathan reiterating the demands previously made in the December 24, 2015 demand notice sent on behalf of Plaintiff Christopher Robertson that Comcast stop its

deceptive practices and return all money paid by Comcast customers for the Broadcast TV Fee and Regional Sports Fee. Plaintiffs' counsel also mailed the demand letter on April 7, 2016 via USPS electronic return receipt. USPS records show that the Comcast received the demand letter on April 13, 2016. Comcast did not respond to the April 2016 demand letter.

224. In September 2016, Mr. McLaughlin moved to a neighboring home and was required by Comcast to enter into a new contract at the new address to replace his existing two-year contract. Comcast continues to charge Mr. McLaughlin for the Broadcast TV Fee and Regional Sports Fee.

225. Mr. McLaughlin materially relied upon Comcast's misrepresentations and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr. McLaughlin to suffer harm, injury in fact, and lost money or property.

F. **Plaintiff Nola Palmer**
(Colorado Plaintiff)

226. Until March 2016, Nola Palmer subscribed to Century Link for Internet and phone service, but she was dissatisfied with Century Link because her monthly bill kept increasing and various fees had been added to the bill.

227. On or about March 4, 2016, Ms. Palmer called Comcast to inquire about what deals Comcast was offering. The agent told her that Comcast could offer her Internet, cable television, phone services, and equipment for a flat rate of $139.84 per month ($99.99 for service, plus $29.85 for additional outlets and $10.00 for a wireless router) for a two-year term.

228. Wary because of her Century Link experience, Ms. Palmer asked the agent what specific taxes, fees and other charges would be added to the bill above the promised $139.84 price. The agent told her the only additional charges would be taxes and FCC mandated fees which would total $11.94 per month.

229. Relying on these representations of the Comcast agent, Ms. Palmer placed the order for the Starter Triple Play package with a two-year contract. At no time prior to

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

or in placing her order was Ms. Palmer aware she would be charged a Broadcast TV Fee or a Regional Sports Fee.

230. Ms. Palmer received an email from Comcast titled "Confirmation Email" later that day. See Figure 9 above. This order confirmation email makes no mention of the Broadcast TV Fee and Regional Sports Fee which are being charged to Ms. Palmer. The "summary of your order" section estimates a total charge on the first bill of $151.78, comprised of $139.84 in "Monthly Package, Service and Equipment Fees" plus $11.94 in "Taxes, Surcharges and Fees" which are not broken out.

231. Ms. Palmer received her first Comcast bill on or around March 10, 2016. She was surprised to see a $5.00 Broadcast TV Fee and a $3.00 Regional Sports Fee in the "Other Charges & Credits" section. See Figure 13 above.

232. Annoyed, Ms. Palmer called Comcast's customer service line. She demanded an explanation for the Broadcast TV Fee and the Regional Sports Fee. The agent told her repeatedly that these were government fees or taxes. The agent further embellished this lie by adding that the fees went to public education.

233. Comcast's lie to Ms. Palmer that the Broadcast TV Fee and the Regional Sports Fee were government fees or taxes, like the initial lie of the telephone agent who told her the bill would be $11.94 higher than the advertised price due to taxes and FCC fees, is part of Comcast's scheme to condition its customers to accept higher prices while making them falsely believe that the price increases are due to government fees and taxes beyond Comcast's control.

234. On March 16, 2016, Ms. Palmer opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

235. In April 2016 Plaintiffs' counsel sent a demand letter to Comcast on behalf of Ms. Palmer and several other Comcast customers as described above. Comcast did not respond to the demand letter.

236. Upon receiving her October 3, 2016 bill, Ms. Palmer was upset to discover that Comcast had increased the monthly Broadcast TV Fee and Regional Sports Fee

charges, effectively again increasing her monthly service price despite Comcast's promise to charge her a flat service rate of $99.99 for two years. Only seven months into her two-year contract, Comcast had increased the Broadcast TV Fee from $5.00 to $6.50, and the Regional Sports Fee from $3.00 to $4.50.

237.    Ms. Palmer materially relied upon Comcast's misrepresentations and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Ms. Palmer to suffer harm, injury in fact, and lost money or property.

G.    **Plaintiff Derek Villegas**
(Florida Plaintiff)

238.    Prior to February 2016, Plaintiff Derek Villegas received television service from Dish Network, and Internet and phone service from Comcast.

239.    Frustrated with Dish's rising rates, Mr. Villegas called Comcast on February 11, 2016 to inquire about adding television to his Comcast services to replace his Dish satellite television service.  As a Comcast customer, Mr. Villegas had often received mailers from Comcast offering discounted "bundle" packages.

240.    The Comcast agent he spoke with recommended a package with Internet, TV and phone service for a quoted price of $147.88 per month plus taxes for a two-year term.  The quoted price included equipment and outlet charges.  At no time prior to or in placing his order was Mr. Villegas aware he would be charged a monthly Broadcast TV Fee and a Regional Sports Fee.

241.    On February 21, 2016, Mr. Villegas received his first Comcast bill.  He was surprised to see he was charged a previously undisclosed $4.50 Broadcast TV fee and a $3.00 Regional Sports fee.

242.    On March 2, 2016, Mr. Villegas called Comcast to complain about the Broadcast TV Fee and Regional Sports Fee. The agent he spoke to told him that there was nothing the agent could do.

243.    Mr. Villegas asked the agent what the Broadcast TV Fee was for, and the agent told him the fantastical story that Comcast charges the fee so that if Comcast has

a dispute with one of the broadcasters, Comcast would use those funds to keep the channel active for everyone instead of turning the channel off. The agent told him that the Regional Sports Fee was a fee for sports in Mr. Villegas' area.

244. Mr. Villegas asked the agent whether he could expect other price increases, and the agent told him that after 12 months his monthly bill would increase. This was also new information to Mr. Villegas, who had previously understood that he had contracted for a locked-in price of $147.88 for two years.

245. Later on March 2, 2016, Mr. Villegas opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

246. In April 2016 Plaintiffs' counsel sent a demand letter to Comcast on behalf of Mr. Villegas and several other Comcast customers as described above. Comcast did not respond to the demand letter.

247. In December 2016, Mr. Villegas was surprised and upset to discover that Comcast had increased his purportedly locked-in contract rate yet again by another $3.00 via increases in the Broadcast TV Fee and Regional Sports Fee.

248. Mr. Villegas materially relied upon Comcast's misrepresentations and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr. Villegas to suffer harm, injury in fact, and lost money or property.

**H.** **Plaintiff Dale Wynn**
(Ohio Plaintiff)

249. Prior to January 2016, Plaintiff Dale Wynn had Business Internet provided by Comcast for his home office, and had home television service provided by a satellite service provider.

250. In January 2016, Mr. Wynn checked Comcast's website for rates on its consumer bundled service plans. In late January 2016, Mr. Wynn called Comcast to discuss whether he could switch his service from Business Internet to consumer Internet and television.

251. After Mr. Wynn discussed his service plan options with a Comcast agent,

the agent recommended an Internet and TV package for $79.99 plus equipment fees. The agent quoted a flat rate plus taxes, and told Mr. Wynn that the only additional fee would be an installation fee. Relying on these representations of the Comcast agent, Mr. Wynn placed his order with the agent. At no time prior to or in placing his order was Mr. Wynn aware he would be charged a monthly Broadcast TV Fee and a Regional Sports Fee.

252. When Mr. Wynn received his January 24, 2016 bill, he was surprised to see a $4.85 Broadcast TV Fee and a $3.00 Regional Sports Fee.

253. On February 17, 2016, Mr. Wynn opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

254. In April 2016 Plaintiffs' counsel sent a demand letter to Comcast on behalf of Mr. Wynn and several other Comcast customers as described in above. Comcast did not respond to the demand letter.

255. Mr. Wynn materially relied upon Comcast's misrepresentations and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr. Wynn to suffer harm, injury in fact, and lost money or property.

## VI.  CLASS ACTION ALLEGATIONS

256. Plaintiffs bring this class-action lawsuit on behalf of themselves and the proposed members of the "Class" pursuant to Rule 23(b) of the Federal Rules of Civil Procedure. Moreover, pursuant to Rule 23(c)(5) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of several subclasses as follows: (1) the "California subclass," with Plaintiffs Adkins and Robertson as its class representatives; (2) the "Colorado subclass," with Plaintiff Palmer as its class representative; (3) the "Florida subclass," with Plaintiff Villegas as its class representative; (4) the "Illinois subclass," with Plaintiff McLaughlin as its class representative; (5) the "New Jersey subclass," with Plaintiff Broker as its class representative; (6) the "Ohio subclass," with Plaintiff Wynn as its class representative; and (7) the "Washington subclass," with

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

1    Plaintiff Bailey as its class representative.

2         257.    Plaintiffs seeks certification of the following Class:

3         **All persons in the United States whom Comcast has charged a "Broadcast**
     **TV Fee" and/or a "Regional Sports Fee" within the applicable statute of**
4    **limitations.**

5         258.    Plaintiffs also seek certification of the following subclasses: the "California

6    subclass," to include all Class members who received Comcast service in California; the

7    "Colorado subclass," to include all Class members who received Comcast service in

8    Colorado; the "Florida subclass," to include all Class members who received Comcast

9    service in Florida; the "Illinois subclass," to include all Class members who received

10   Comcast service in Illinois; the "New Jersey subclass," to include all Class members who

11   received Comcast service in New Jersey; "the Ohio subclass," to include all Class

12   members who received Comcast service in Ohio; and "the Washington subclass," to

13   include all Class members who received Comcast service in the state of Washington.

14        259.    Specifically excluded from the Class are Comcast and any entities in which

15   Comcast has a controlling interest, Comcast's agents and employees, the judge to

16   whom this action is assigned, members of the judge's staff, and the judge's immediate

17   family.

18        260.    ***Numerosity.***  Plaintiffs do not know the exact number of Class members

19   but believe that the Class comprises millions of consumers throughout the United States.

20   As such, Class members are so numerous that joinder of all members is impracticable.

21        261.    ***Commonality and predominance.***  Well-defined, nearly identical legal or

22   factual questions affect all Class members.  These questions predominate over

23   questions that might affect individual Class members.  These common questions

24   include, but are not limited to, the following:

25             a.    Whether Comcast falsely advertised its cable television service

26   (whether sold alone or "bundled" with Internet and/or phone service) at flat monthly rates

27   while in fact intending to charge more than promised via a Broadcast TV Fee and/or a

28   Regional Sports Fee;

FIRST AMENDED CLASS ACTION COMPLAINT
                                          CASE NO. 4:16-CV-05969

b.      Whether Comcast's representations to Plaintiffs and the Class regarding the monthly price to be charged were objectively material;

c.      Whether Plaintiffs and the Class relied on these promised flat monthly rates in contracting with Comcast for services;

d.      Whether Comcast adequately disclosed and described its Broadcast TV Fee and Regional Sports Fee to Plaintiffs and the Class;

e.      Whether Comcast's representations and descriptions of the Broadcast TV Fee and the Regional Sports Fee in its customer bills were deceptive;

f.      Whether Comcast breached its Residential Services Agreement and/or other agreements with Plaintiffs and the Class by charging the Broadcast TV Fee and the Regional Sports Fee;

g.      Whether Comcast breached its contractual obligations to Plaintiffs and the Class by increasing the Broadcast TV Fee and the Regional Sports Fee in the middle of minimum term fixed rate customer contracts;

h.      Whether Comcast gave adequate notice to Plaintiffs and the Class when it increased the amount of the Broadcast TV Fee and the Regional Sports Fee charged to them;

i.      Whether Comcast wrongfully took possession of and has since retained monies belonging to Plaintiffs and the Class;

j.      Whether Comcast had a policy of instructing and/or encouraging its staff and agents to make misleading or false statements to consumers regarding the nature and purpose of the Broadcast TV Fee and the Regional Sports Fee;

k.      Whether Comcast acted inconsistently with the reasonable expectations of Plaintiffs and the Class;

l.      Whether Comcast breached the implied covenant of good faith and fair dealing as to Plaintiffs and the Class;

m.      Whether Comcast failed to disclose objectively material information to Plaintiffs and the Class regarding the true monthly price to be charged for its service

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

plans;

n. Whether Comcast failed to disclose objectively material information to Plaintiffs and the Class regarding the Broadcast TV Fee and the Regional Sports Fee;

o. Whether Comcast's representations and omissions had a tendency to deceive consumers;

p. Whether Comcast's Residential Service Agreement and/or other agreements with its customers contain unconscionable terms;

q. Whether Comcast's Residential Service Agreement and/or other agreements with its customers contain illusory terms;

r. Whether Comcast was unjustly enriched;

s. Whether Comcast's conduct alleged herein violated state consumer protection laws relevant to the Class and subclass members;

t. Whether Comcast and the Class have sustained monetary loss and the proper measure of that loss;

u. Whether Plaintiffs and the Class are entitled to damages and/or restitution; and

v. Whether Comcast should be enjoined from further engaging in the misconduct alleged herein.

262. **_Typicality._** Plaintiffs' claims are typical of Class members' claims. Plaintiffs and Class members all sustained injury as a direct result of Comcast's practice of advertising and promising a low, flat monthly rate while instead charging a much higher rate through the use of hidden and deceptive fees.

263. **_Adequacy._** Plaintiffs will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests, and Plaintiffs have retained counsel who has considerable experience and success in prosecuting complex class action and consumer protection cases.

264. **_Superiority._** A class action is the superior method for fairly and efficiently adjudicating this controversy for the following reasons without limitation:

a.     Class members' claims are relatively small compared to the burden and expense required to litigate their claims individually, so it would be impracticable for Class members to seek individual redress for Comcast's illegal and deceptive conduct;

b.     Even if Class members could afford individual litigation, the court system could not.  Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court; and

c.     Plaintiffs anticipate no unusual difficulties in managing this class action.

## VII.     COMCAST'S ARBITRATION CLAUSE AND THE CLASS

265.   Paragraph 13 of the Comcast Residential Services Agreement purports to contain a binding arbitration provision ("Arbitration Clause"). See **Exhibit A**. Each and every plaintiff opted out of the Arbitration Clause within Comcast's 30-day deadline pursuant to the procedure described in Paragraph 13(c) of the Residential Services Agreement.

266.   Meanwhile, the filing of this lawsuit stays the 30-day deadline to opt out of the Arbitration Clause by current and future Comcast customers (*i.e.*, Class members) whose 30-day opt-out period pursuant to a new or renewal contract has not yet expired.

267.   Plaintiffs' position is that the Arbitration Clause is substantively unconscionable, illusory, and unenforceable, and also that Class members were not informed of and/or did not give their assent to the Residential Services Agreement and its Arbitration Clause.

268.   But even assuming that the Arbitration Clause is enforceable against Class members who did not opt out (which Plaintiffs do not concede), the terms of the Arbitration Clause itself do not prohibit those Class members from being part of this class action lawsuit or from filing claims in a class action lawsuit.

269.   Prior to March 23, 2016, the Residential Services Agreement posted on Comcast's website stated that arbitration was elective, and not required:  "If you have a Dispute (as defined below) with Comcast that cannot be resolved through an informal dispute resolution with Comcast, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court." *Id.* at ¶ 13(a). The Arbitration Clause also did not include class action claims in the definition of a "Dispute" that may be subject to arbitration. *Id.* at ¶ 13(b).

270.   On March 23, 2016 Comcast posted on its website an updated Residential Services Agreement with a new arbitration clause which had been modified to address these specific issues (the "New Arbitration Clause"). An example of the updated Residential Services Agreement with the New Arbitration Clause (the iteration posted on Comcast's website as of May 16, 2016) is attached hereto as **Exhibit D**.

271.   On information and belief, Comcast made these changes to the arbitration clause in direct response to Plaintiff Christopher Robertson's demand letter dated December 24, 2015, once Comcast realized Mr. Robertson had opted out of the Arbitration Clause and that Comcast now faced class action exposure under the Arbitration Clause.

272.   Comcast's New Arbitration Clause now specified that arbitration is mandatory (rather than elective). See **Exhibit D** at ¶ 13(a). The New Arbitration Clause also explicitly stated, for the first time, that disputes subject to arbitration now included "claims that are currently the subject of purported class action litigation in which you are not a member of a certified class." *Id.* at ¶ 13(b)(4).

273.   Comcast made no effort whatsoever to notify or obtain the consent of its existing customers to the terms of the New Arbitration Clause.

## VIII.   <u>CHOICE OF LAW</u>

274.   The laws of the states in which each Plaintiff and each Class member received service from Comcast apply.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

(On Behalf of All Plaintiffs and the Class)

275.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

276.    Comcast entered into valid contractual agreements with Plaintiffs and all Class members.

277.    The essential terms of Comcast's contracts with Plaintiffs and Class members included Comcast's obligation to provide services at the monthly promised rate for the contract's duration.

278.    Plaintiffs and all Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their contracts with Comcast.

279.    Comcast has breached its contracts with Plaintiffs and Class members by charging more than it promised via an inadequately disclosed and invented Broadcast TV Fee and/or Regional Sports Fee which Comcast intentionally hides and disguises in both its advertising and in its customer bills.

280.    Comcast has also breached its contracts with Plaintiffs and Class members by increasing the amount of these Fees to effectively raise the monthly service price in the middle of customer contracts despite having promised a lower fixed monthly service rate.

281.    Comcast's contractual breaches are ongoing.  Absent an order from the Court ordering Comcast to perform as it is required under its contracts with Plaintiffs and Class members, Comcast will continue to breach its contracts to the detriment of the Class.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

## COUNT II
## Breach of the Covenant of Good Faith and Fair Dealing

(On Behalf of All Plaintiffs and the Class)

282.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

283.    A covenant of good faith and fair dealing is implied in every contract, including Comcast's contracts with Plaintiffs and Class members.

284.    The material terms of Comcast's contracts with Plaintiffs and Class members include Comcast's obligation to provide services at the promised monthly rate for the contract's duration.

285.    Where a contract vests one party with discretion, the duty of good faith and fair dealing applies, and the party exercising the discretion must do so in a manner that satisfies the objectively reasonable expectations of the other party.  A party may not perform an agreement in a manner that would frustrate the basic purpose of the agreement and/or deprive the other party of its rights and benefits under the agreement.

286.    It was objectionably reasonable under the circumstances, based on Comcast's misrepresentations and omissions, for Plaintiffs and the Class to expect that Comcast's advertised and promised monthly service price was price Comcast would actually charge them for their service.

287.    It was objectionably reasonable under the circumstances for Plaintiffs and the Class to expect that Comcast would not hide price increases in the form of deceptive and inadequately disclosed charges which Comcast called the Broadcast TV Fee and the Regional Sports Fee.

288.    It was objectionably reasonable under the circumstances for Plaintiffs and the Class to expect Comcast would not increase its service price via increases in said Fees in the middle of a minimum term contract contrary to its promise to charge a fixed monthly rate.

289.    Comcast has abused any and all power it has to impose the prices charged

to Plaintiffs and the Class.  Moreover, Comcast's conduct alleged herein is inconsistent with the reasonable expectations of Plaintiffs and the Class, and is inconsistent with what an objectively reasonable consumer would have expected under the circumstances.

290.    Comcast has acted in a manner that frustrates a basic purpose of its contracts with Plaintiffs and the Class, and has deprived Plaintiffs and the Class of benefits and rights that they are entitled to under their contracts with Comcast.

291.    Plaintiffs and all Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required under their contracts with Comcast.

292.    By reason of Comcast's breach of the implied covenant of good faith and fair dealing, Plaintiffs and all Class members suffered damages, in an amount to be proven at trial.

293.    Comcast's breaches of the implied covenant of good faith and fair dealing are ongoing.  Injunctive relief is required to prevent Comcast from further breaching the implied covenant to the detriment of the Class.

## COUNT III
## Unjust Enrichment

(On Behalf of All Plaintiffs and the Class)

294.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

295.    Comcast has been knowingly enriched, at the expense of Plaintiffs and the Class, as a result of its misconduct alleged herein.  Such enrichment includes the substantial revenues that Comcast has received from Plaintiffs and the Class for the inadequately disclosed and deceptive Broadcast TV Fees and Regional Sports Fees that Comcast charged them, over and above what Comcast should have charged them.

296.    Plaintiffs' and Class members' detriment, and Comcast's enrichment, are traceable to, and resulted directly and proximately from, the misconduct challenged in

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

this Complaint.

297.   It would be inequitable for, and good conscience militates against permitting, Comcast to retain the amounts that it received as a result of the misconducted alleged herein.

298.   Plaintiffs and the Class are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all amounts obtained by Comcast as a result of its misconduct alleged herein.

## COUNT IV
### Violations of California's Unfair Competition Law
### California Business and Professions Code §17200 *et seq.*

(On Behalf of Plaintiffs Christopher Robertson and Dan Adkins
and the California Subclass)

299.   Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

300.   Comcast's practices, misrepresentations, and omissions alleged herein constitute unlawful, unfair, or fraudulent business practices in violation of California Business and Professions Code §17200 *et seq*.

301.   The misrepresentations and omissions by Comcast alleged herein were the type of representations and omissions that are regularly considered to be material, *i.e.*, a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

302.   California Plaintiffs Christopher Robertson and Dan Adkins and each of the California subclass members reasonably relied upon Comcast's material misrepresentations and omissions in purchasing their service contracts.

303.   As a result of the foregoing, the California Plaintiffs Christopher Robertson and Dan Adkins and each California subclass member have been injured and have lost money or property and are entitled to restitution and injunctive relief.

304.   Unless restrained by this Court, Comcast will continue to engage in unfair, deceptive, and unlawful conduct, as alleged above, in violation of California Business

and Professions Code §17200 *et. seq.*

**COUNT V**
**Violations of California Business and Professions Code §17500 *et seq.* ("FAL")**

(On Behalf of Plaintiffs Christopher Robertson and Dan Adkins
and the California Subclass)

305.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

306.    Comcast has committed acts of untrue and misleading advertising, as defined by California Business and Professions Code §17500 ("False Advertising Law" or "FAL"), by engaging in the acts and practices described herein with the intent to induce consumers to purchase its service plans.

307.    Comcast's misrepresentations and omissions deceive or have a tendency to deceive the general public.

308.    The misrepresentations and omissions by Comcast alleged herein were the type of representations and omissions that are regularly considered to be material, i.e, a reasonable person would attached importance to them and would be induced to act on the information in making purchase decisions.

309.    California Plaintiffs Christopher Robertson and Dan Adkins and each of the California subclass members reasonably relied on Comcast's false advertising in purchasing their service contracts.

310.    As a result of the foregoing, the California Plaintiffs and the members of the California subclass have been injured and have lost money or property and are entitled to restitution and injunctive relief.

311.    Unless restrained by this Court, Comcast will continue to engage in untrue and misleading advertising, as alleged above, in violation of California Business and Professions Code §17500 *et seq.*

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

**COUNT VI**
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**California Civil Code §1750 *et seq.***

(On Behalf of Plaintiffs Christopher Robertson and Dan Adkins
and the California Subclass)

312.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

313.    Comcast is a "person," as defined by California Civil Code §1761(c).

314.    California Plaintiffs Christopher Robertson and Dan Adkins, and each of the California subclass members, are "consumers," as defined by California Civil Code §1761(d).

315.    The service plans marketed and sold by Comcast constitute "goods" and "services" as defined by California Civil Code §1761(a) and (b).

316.    The California Plaintiffs' and the California subclass members' purchases of Comcast's services constitute "transactions," as defined by California Civil Code §1761(e).

317.    Venue is proper under California Civil Code §1780(d) because a substantial portion of the transactions at issue occurred in this county.  Plaintiffs' declarations establishing that this Court has proper venue for this action, which were filed with the original Complaint, are re-attached hereto as **Exhibit E**.

318.    Comcast intentionally misled consumers to believe it would charge consumers an advertised and promised flat monthly rate for television services, but in fact Comcast charged a much higher rate via an inadequately disclosed and deceptive Broadcast TV Fee and Regional Sports Fee.  Comcast intentionally deceived consumers by hiding and disguising said fees in its advertising and also in its customer bills. Comcast staff also lied to customers who questioned the charges by explicitly stating that the charges were taxes or government-related fees over which Comcast had no control.

319.    Comcast's misrepresentations, active concealment, and failures to disclose

violated the CLRA in ways including, but not limited to, the following:

a. Comcast misrepresented that its service plans had characteristics, benefits, or uses that they did not have (Cal. Civ. Code §1770(a)(5));

b. Comcast advertised its services with an intent not to sell them as advertised (Cal. Civ. Code §1770(a)(9));

c. Comcast made false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions (Cal. Civ. Code §1770(a)(13));

d. Comcast misrepresented that its service plans conferred rights, remedies or obligations that they did not have (Cal. Civ. Code §1770(a)(14));

e. Comcast misrepresented that its service plans were supplied in accordance with previous representations when they were not (Cal. Civ. Code §1770(a)(16)); and

f. Comcast inserted unconscionable provisions in its customer contracts (Cal. Civ. Code § 1770(a)(19)).

320. Comcast's misrepresentations and nondisclosures regarding its service plans were material to the California Plaintiffs and members of the California subclass because a reasonable person would have considered them important in deciding whether to purchase Comcast's service plans, and because Comcast had a duty to disclose the truth.

321. The California Plaintiffs and the California subclass members reasonably relied upon Comcast's material misrepresentations and nondisclosures, and had they known the truth, they would have acted differently.

322. As a direct and proximate result of Comcast's material misrepresentations and nondisclosures, the California Plaintiffs and the California subclass members have suffered monetary damages and been irreparably harmed.

323. On behalf of the California subclass, the California Plaintiffs seek injunctive relief in the form of an order enjoining Comcast from making such material misrepresentations and omissions.

324. In accordance with California Civil Code §1782(a), on December 24, 2015, Plaintiffs' counsel served Comcast with notice of its CLRA violations on behalf of Plaintiff Christopher Robertson by certified mail, return receipt requested. *See* **Exhibit B**. Comcast Senior Vice President Thomas R. Nathan responded to the CLRA notice demand letter in a letter to Plaintiffs' counsel dated February 25, 2016 in which Comcast denied liability and refused to provide any of the requested relief whatsoever. *See* **Exhibit C**.

325. On October 8, 2016, Plaintiffs' counsel emailed to Comcast paralegal Claudia Salcedo a second CLRA notice demand letter addressed to Mr. Nathan. This second notice of Comcast's CLRA violations was sent on behalf of both Plaintiff Christopher Robertson and Plaintiff Dan Adkins. A true and correct copy of the letter is attached as **Exhibit F**. Ms. Salcedo acknowledged receipt of the notice in a reply email on October 10, 2016. A true and correct copy of Ms. Salcedo's acknowledgment email is attached hereto as **Exhibit G**.

326. Comcast did not respond to the second CLRA notice letter except to acknowledge its receipt.

327. Comcast has failed to provide appropriate relief for its CLRA violations within 30 days of its receipt of Plaintiffs' demand notices. Accordingly, pursuant to Cal. Civ. Code §§1780 and 1782(b), Plaintiffs Christopher Robertson and Dan Adkins are entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

**COUNT VII**
**Violations of Colorado's Consumer Protection Act**
**Colo. Rev. Stat. §§ 6-1-101 through 6-1-115**

(On Behalf of Plaintiff Nola Palmer and the Colorado Subclass)

328. Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

329. Colorado's Consumer Protection Act prohibits "deceptive trade practices."

330. Comcast engaged in "deceptive trade practices" including, but not limited

to, the following:

        a.      Comcast misrepresented that its service plans had characteristics, benefits, or uses that they did not have (Colo. Rev. Stat. §6-1-105 (1)(e));

        b.      Comcast advertised its services with an intent not to sell them as advertised (Colo. Rev. Stat. §6-1-105 (1)(i));

        c.      Comcast made false and/or misleading statements of fact concerning the price of its services (Colo. Rev. Stat. §6-1-105 (1)(l));

        d.      Comcast employed "bait and switch" advertising of its services and the promised terms (Colo. Rev. Stat. §6-1-105 (1)(n)); and

        e.      Comcast intentionally failed to disclose material information concerning the price of its services so as to induce consumers to enter into contracts for those services (Colo. Rev. Stat. §6-1-105 (1)(u)).

331.   Comcast engaged in these deceptive trade practices in the course of Comcast's business.

332.   Comcast's deceptive practices significantly impact the public as actual or potential consumers of Comcast's services.

333.   The Colorado Plaintiff Nola Palmer and each of the Colorado subclass members relied upon Comcast's material misrepresentations and nondisclosures, and had they known the truth, they would have acted differently.

334.   The Colorado Plaintiff and Colorado subclass have suffered injury in fact and lost money or property as a result of Comcast's conduct.

335.   On behalf of the Colorado subclass, the Colorado Plaintiff seeks an order enjoining Comcast from engaging in such deceptive trade practices. The Colorado Plaintiff also seeks damages from Comcast, including but not limited to the refund of all money paid by the Colorado Plaintiff and the Colorado subclass members for the Broadcast TV Fee and the Regional Sports Fee, and/or restitutionary disgorgement of profits.  The Colorado Plaintiff also seeks an award of attorneys' fees and costs.

## COUNT VIII
## Violations of Florida's Deceptive and Unfair Trade Practices Act
## Florida Statutes §501.201 *et seq.*

(On Behalf of Plaintiff Derek Villegas and the Florida Subclass)

336.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

337.    Section 501.204 of the Florida Statutes prohibits "unfair," "deceptive" or "unconscionable" acts or practices.

338.    Comcast's acts and practices of charging more than it promised for its services as described herein were patently "unfair." These practices were unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

339.    Comcast's material misrepresentations as to its monthly pricing, active concealment and/or failure to disclose its extra fees, and purposeful attempts to mislead consumers as to the nature and purpose of said fees were "deceptive."  They were deceptive in that they were likely to deceive consumers acting reasonably in the same circumstances.

340.    Comcast's practices of misrepresenting the price of its services, concealing additional fees, and lying about those fees to consumers were "unconscionable."  They were unconscionable because Comcast abused its position of superior power and its acts were so unfair and oppressive as to shock the conscience and offend public policy.

341.    Florida Plaintiff Derek Villegas and the Florida subclass members relied upon Comcast's material misrepresentations and nondisclosures, and had they known the truth, they would have acted differently.

342.    As a direct and proximate result of Comcast's material misrepresentations and nondisclosures, the Florida Plaintiff and the Florida subclass members have suffered injury in fact and lost money or property.

343.    On behalf of the Florida subclass, the Florida Plaintiff seeks an order

enjoining Comcast from engaging in such unfair, deceptive, or unconscionable practices. The Florida Plaintiff also seeks damages from Comcast, including but not limited to the refund of all money paid by the Florida Plaintiff and the Florida subclass members for the Broadcast TV Fee and the Regional Sports Fee, and/or restitutionary disgorgement of profits. The Florida Plaintiff also seeks an award of attorneys' fees and costs.

## COUNT IX
### Violations of Illinois Consumer Fraud ("CFA") and Deceptive Trade Practices Act ("UDTPA") 815 Ill. Comp. Stat. §§ 505/1-12 *et seq.*, and §§ 510/2.

(On Behalf of Plaintiff James McLaughlin and the Illinois Subclass)

344.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

345.    The Illinois Consumer Fraud and Deceptive Practices Act prohibits "unfair" or "deceptive" practices.

346.    Comcast is a "person," as defined by Ill. Comp. Stat. §505/1(c).

347.    Illinois Plaintiff James McLaughlin and the members of the Illinois subclass are "consumers," as defined by Ill. Comp. Stat. §505/1(e).

348.    Comcast engaged in unfair practices by misrepresenting its prices, charging more than it promised for its services, hiding the extra charges as deceptive fees on its customer bills, and lying to consumers who questioned the nature of the charges.

349.    These practices are also unfair insofar as they offend established public policy and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

350.    Comcast's trade practices were also deceptive.  Comcast's material and intentional misrepresentations as to its pricing, active concealment and/or failure to disclose its extra fees, and purposeful attempts to mislead consumers as to the nature of said fees were "deceptive."  They were deceptive insofar as they were likely to deceive consumers acting reasonably in the same circumstances.

1  351.  Comcast intended that the Illinois Plaintiff and each member of the Illinois

2  subclass rely on its deceptive acts and practices, which occurred in the course of

3  conduct involving trade or commerce.

4  352.  Comcast engaged in the following deceptive trade practices pursuant to

5  815 ILCS 510/2:

6  a.  Comcast intentionally misrepresented that its service plans had

7  characteristics, benefits, or uses that they did not have (815 ILCS 510/2(a)(5));

8  b.  Comcast purposely misrepresented that its service plans had been

9  supplied in accordance with its previous representations when they were not (815 ILCS

10  510/2(a)(9));

11  c.  Comcast made false or misleading statements of fact concerning

12  the reasons for, existence of, or amounts of price reductions (815 ILCS 510/2(a)(11));

13  and

14  d.  Comcast engaged in other conduct which similarly created a

15  likelihood of confusion or misunderstanding (815 ILCS 510/2(a)(12)).

16  353.  The Illinois Plaintiff and the Illinois subclass members relied upon

17  Comcast's material misrepresentations and nondisclosures, and had they known the

18  truth, they would have acted differently.

19  354.  As a direct and proximate result of Comcast's material misrepresentations

20  and nondisclosures, the Illinois Plaintiff and the Illinois subclass members have suffered

21  injury in fact and lost money or property.

22  355.  On behalf of the Illinois subclass, the Illinois Plaintiff seeks an order

23  enjoining Comcast from engaging in such unfair, deceptive, or unconscionable practices.

24  The Illinois Plaintiff also seeks damages from Comcast, including but not limited to the

25  refund of all money paid by the Illinois Plaintiff and the Illinois subclass members for the

26  Broadcast TV Fee and the Regional Sports Fee, and/or restitutionary disgorgement of

27  profits. The Illinois Plaintiff also seeks an award of attorneys' fees and costs.

28

## COUNT X
## Violations of New Jersey's Consumer Fraud Act
## N.J. Stat. Ann. §56:8-1 *et seq.*

(On Behalf of Plaintiff Reinier Broker and the New Jersey Subclass)

356.   Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

357.   N.J. Stat. Ann. §56:8-1 *et seq.* ("NJCFA") prohibits as "unlawful" any deceptive, fraudulent, or unconscionable commercial acts or knowing omissions in connection with the sale or advertisement of merchandise or services.

358.   Comcast's practices described and alleged herein constitute unlawful commercial acts and/or knowing omissions in violation of the NJCFA, including, but not limited to the following:

a.      Comcast used and employed unconscionable practices, deception, fraud, misrepresentation, and knowing concealment or omission of material facts, in connection with the sale or advertisement of its service plans (N.J. Stat. Ann. §56:8-2); and

b.      Comcast advertised its service plans as part of a plan or scheme not to sell the service plans at the advertised price (N.J. Stat. Ann. §56:8-2.2).

359.   Comcast's practices of misrepresenting the price of its services, concealing additional fees, and lying about those fees to consumers were "unconscionable."  They were unconscionable because Comcast abused its position of superior power and its acts were so unfair and oppressive as to shock the conscience and offend public policy.

360.   New Jersey Plaintiff Reinier Broker and the New Jersey subclass members relied upon Comcast's material misrepresentations and omissions, and had they known the truth, they would have acted differently.

361.   As a direct and proximate result of Comcast's material misrepresentations and omissions, the New Jersey Plaintiff and the New Jersey subclass members have suffered injury in fact and lost money or property.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

362. On behalf of the New Jersey subclass, the New Jersey Plaintiff seeks an order enjoining Comcast from engaging in such unlawful, deceptive, or unconscionable practices. The New Jersey Plaintiff also seeks damages from Comcast, including but not limited to the refund of all money paid by the New Jersey Plaintiff and the New Jersey subclass members for the Broadcast TV Fee and the Regional Sports Fee, and/or restitutionary disgorgement of profits. The New Jersey Plaintiff also seeks an award of attorneys' fees and costs.

## COUNT XI
### Violations of Ohio's Consumer Sales Practices Act
### Ohio Rev Code §§1345.01 *et seq.*

(On Behalf of Plaintiff Dale Wynn and the Ohio Subclass)

363. Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

364. The Ohio Consumer Sales Practices Act, found in Ohio Rev. Code §1345.01 *et seq.*, prohibits "deceptive" and/or "unfair" sales practices.

365. Comcast is a "supplier," as defined by Ohio Rev. Code §1345.01(C).

366. The Ohio Plaintiff Dale Wynn and members of the Ohio subclass are "consumers," as defined by Ohio Rev. Code §1345.01(D).

367. Comcast advertised and made solicitations to sell its service plans to Ohio consumers.

368. Comcast engaged in "deceptive" or "unfair" sales practices including, but not limited to, the following:

a. Comcast intentionally misrepresented that its service plans had characteristics, benefits, or uses that they did not have (Ohio Rev. Code §1345.02(1));

b. Comcast purposely misrepresented that its service plans had been supplied in accordance with its previous representations when they were not (Ohio Rev. Code §1345.02(5)); and

c. Comcast misled consumers into believing that their purchase of Comcast's service contracts involved specific price advantages that did not exist or that

Comcast exaggerated (Ohio Rev. Code §1345.02(8)).

369.    The Ohio Plaintiff and each member of the Ohio subclass saw, heard or were aware of Comcast's misrepresentations regarding its pricing, and relied upon those representations, when they decided to enter into service contracts with Comcast.

370.    As a direct and proximate result of Comcast's material misrepresentations and nondisclosures, the Ohio Plaintiff and the Ohio subclass members have suffered injury in fact and lost money or property.

371.    On behalf of the Ohio subclass, the Ohio Plaintiff seeks an order enjoining Comcast from engaging in such unfair and deceptive practices. The Ohio Plaintiff also seeks damages from Comcast, including but not limited to the refund of all money paid by the Ohio Plaintiff and the Ohio subclass members for the Broadcast TV Fee and the Regional Sports Fee, and/or restitutionary disgorgement of profits. The Ohio Plaintiff also seeks an award of attorneys' fees and costs, along with an award of treble and/or punitive damages.

## COUNT XII
## Violations of Washington Consumer Protection Act ("CPA")
## RCW §§19.86 *et seq.*

(On Behalf of Plaintiff Jonathan Bailey and the Washington Subclass)

372.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

373.    The Washington Consumer Protection Act, RCW §§19.86 *et seq.* ("CPA") broadly prohibits unfair methods of competition and unfair or deceptive acts or practices.

374.    At all relevant times, Comcast engaged in "trade" and/or "commerce within the meaning of RCW §19.86.010.

375.    As set forth above, Comcast engaged in unfair and deceptive practices by misrepresenting its prices, charging more than it promised for its services, hiding the extra charges as deceptive fees in its customer bills, and/or lying to consumers who questioned the nature of the charges.

376.    These practices and Comcast's material and intentional misrepresentations

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969

were unfair or deceptive in violation of the CPA and had and continue to have an impact on the public interest, including by deceiving the public and causing injury to Washington subclass members.

377.    Washington Plaintiff Jonathan Bailey and each of the Washington subclass members relied upon Comcast's material misrepresentations and nondisclosures, and had they known the truth, they would have acted differently.

378.    As a direct and proximate result of Comcast's material misrepresentations and nondisclosures, the Washington Plaintiff and the Washington subclass members have suffered injury in fact and lost money or property.

379.    On behalf of the Washington subclass, the Washington Plaintiff seeks an order enjoining Comcast from engaging in such unfair, deceptive, or unconscionable practices. The Washington Plaintiff also seeks damages from Comcast, including but not limited to the refund of all money paid by the Washington Plaintiff and the Washington subclass members for the Broadcast TV Fee and Regional Sports Fee, and/or restitutionary disgorgement of profits, and treble damages. The Washington Plaintiff also seeks an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

On behalf of themselves and the Class, Plaintiffs request that the Court order relief and enter judgment against Comcast as follows:

1.    An order certifying the proposed Class and subclasses and appointing Plaintiffs and their counsel to represent the Class and subclasses;

2.    An order that Comcast is permanently enjoined from its misconduct as alleged;

3.    A judgment awarding Plaintiffs and Class members restitution, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Comcast obtained as a result of its misconduct as alleged;

4.    A judgment awarding Plaintiffs and Class members actual damages;

5.    A judgment awarding Plaintiffs and Class members punitive, exemplary

1  and/or treble damages;

2       6.     Pre-judgment and post-judgment interest;

3       7.     Attorneys' fees, expenses, and the costs of this action; and

4       8.     All other and further relief as this Court deems necessary, just and proper.

5

6                         **JURY DEMAND**

7  Plaintiffs demand a trial by jury on all issues so triable.

8

9  Dated: December 31, 2016    Respectfully submitted,

10  By: _____
         Daniel M. Hattis

11

12  Daniel M. Hattis (SBN 232141)
HATTIS LAW

13  P.O. Box 1645
Bellevue, WA 98009

14  Telephone: (650) 980-1990
Email: dan@hattislaw.com

15

16  Jason Skaggs (SBN 202190)
SKAGGS FAUCETTE LLP

17  430 Lytton Ave 2nd FL
Palo Alto, CA 94301

18  Telephone: (650) 617-3226
Email: jason@skaggsfaucette.com

19  Attorneys for Plaintiffs and the Proposed Class

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05969