Daniel M. Hattis (SBN 232141)
HATTIS LAW
P.O. Box 1645
Bellevue, WA 98009
Telephone: (650) 980-1990
Facsimile: (425) 412-7171
Email: dan@hattislaw.com

Jason Skaggs (SBN 202190)
SKAGGS FAUCETTE LLP
430 Lytton Ave 2nd FL
Palo Alto, CA 94301
Telephone: (650) 617-3226
Email: jason@skaggsfaucette.com

Tony J. Tanke (SBN 74054)
LAW OFFICES OF TONY J. TANKE
2050 Lyndell Terrace, Suite 240
Davis, CA 95616
Telephone: (530) 758-4530
Email: appeals@tankelaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN ADKINS and CHRISTOPHER ROBERTSON, | Case No. 3:16-cv-05969-VC |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| v. | |
| COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS, LLC, | |
| Defendants. | |

1

**TABLE OF CONTENTS**

I.     INTRODUCTION AND SUMMARY ......................................................- 1 -

II.    PARTIES.................................................................................................- 2 -

III.   JURISDICTION AND VENUE ............................................................- 2 -

IV.    PLAINTIFF DAVID ADKINS.............................................................- 4 -

V.     PLAINTIFF CHRISTOPHER ROBERTSON....................................- 12 -

VI.    COMCAST'S NATIONWIDE SCHEME AND PLAINTIFFS' DEMAND
       FOR PUBLIC INJUNCTIVE RELIEF ON BEHALF OF CALIFORNIA
       CONSUMERS ......................................................................................- 18 -

       A.   Misleading Advertising. ...............................................................- 20 -

       B.   False and Misleading Statements by Comcast Sales Agents ................- 21 -

       C.   Comcast Lies To Customers Who Inquire or Complain About the Broadcast TV
            Fee or the Regional Sports Fee By Telling Them the Charges Are Taxes or
            Government Fees..........................................................................- 23 -

       D.   Comcast's Form Contracts Do Not Adequately Disclose The Fees To Its
            Customers .................................................................................- 24 -

       E.   Comcast Also Breaches Its Agreements With Its Customers by Increasing the
            Broadcast TV Fee and Regional Sports Fee in the Middle of "Guaranteed"
            Fixed-Rate Contracts....................................................................- 26 -

       F.   Comcast's Bait-and-Switch Scheme Is Central to Its Marketing Plan and Accounts
            for an Increasingly Large Part of Comcast's Total Revenues and Profits ...........- 27 -

VII.   CHOICE OF LAW ..............................................................................- 27 -

CAUSES OF ACTION .....................................................................................- 27 -

COUNT I – Breach of Contract..........................................................................- 27 -

COUNT II – Breach of the Covenant of Good Faith and Fair Dealing ..................- 28 -

COUNT III – Intentional Misrepresentation .......................................................- 30 -

COUNT IV – California Business and Professions Code § 17200 ("UCL").........- 31 -

COUNT V – California Business and Professions Code § 17500 ("FAL").........- 32 -

COUNT VI – California Consumer Legal Remedies Act ("CLRA").................- 33 -

COUNT VII – Injunctive Relief.........................................................................- 36 -

COUNT VIII – Declaratory Relief......................................................................- 37 -

PRAYER FOR RELIEF ...................................................................................- 38 -

JURY DEMAND...............................................................................................- 39 -

Plaintiffs allege on personal knowledge, investigation of their counsel, and on information and belief, as follows:

## I.  INTRODUCTION AND SUMMARY

1.     This lawsuit and public injunctive relief action is about a massive bait-and-switch scheme perpetrated by Comcast Corporation and Comcast Cable Communications, LLC (collectively, "Comcast") on Plaintiffs and on Comcast's over two million other California cable television subscribers, whereby Comcast falsely advertises its cable television service packages for much lower prices than it actually charges.

2.     Comcast's advertising, and its sales staff, misled Plaintiffs, and continue to mislead California consumers, into falsely believing that the advertised price for Comcast's service packages is the actual price consumers will pay except for equipment charges and bona fide taxes and government fees.

3.     However, Comcast intentionally chooses to exclude from the advertised price of its service packages certain invented fees (the Broadcast TV Fee and the Regional Sports Fee, collectively, the "Fees"). Yet the Fees are discretionary disguised double-charges for the channels that Comcast has promised are *already included* in the lower advertised package price (e.g., ABC, CBS, NBC, FOX, and local sports channels).

4.     Comcast *never* qualifies the advertised price with an asterisk or other adjacent marker, and the hidden disclosures that Comcast makes about the Fees are not only inadequate, but are themselves deceptive. Comcast's disclaimers are designed to mislead consumers into falsely believing the Fees are taxes or government-related charges over which Comcast has no control.

5.     Comcast doubles down on this deception through its practice of lying to customers who ask or complain about the Fees, explicitly telling them that the Fees are taxes or government-related charges rather than a way to simply double-charge Comcast's customers.

6.     Comcast perpetrates this scheme to hook and trap new customers into one-year or two-year contracts at "guaranteed" fixed rates with significant early termination penalties, with the intent of charging the customers more than promised via the deceptive and hidden Fees.

THIRD AMENDED COMPLAINT
CASE NO. 3:16-CV-05969-VC

7.      Even worse, a few months into customers' purported fixed-price contracts, Comcast raises its prices *even higher* on these trapped customers via the backdoor method of increasing the Fees, breaching Comcast's agreements with them.

8.      Comcast has increased the Fees by 800% since they were first introduced in 2014, and the Fees now add as much as $12 per month to customer cable bills, costing California consumers over $200 million per year.

9.      Plaintiffs bring this lawsuit on behalf of themselves and for the benefit of millions of other California consumers to put an end to Comcast's unlawful actions and to stop Comcast from charging the Fees to customers who are currently under Minimum Term Agreement contracts which were procured via the misconduct alleged in this Complaint.

## II.      PARTIES

10.      Plaintiff Dan Adkins is an individual residing in Oakland, California.

11.      Plaintiff Christopher Robertson is an individual residing in Sacramento, California.

12.      Defendant Comcast Corporation is a multinational, mass media company headquartered in Philadelphia, Pennsylvania, and incorporated in Pennsylvania. It is the largest broadcasting and cable company in the world by revenue, and it is the largest home television and Internet service provider in the United States.

13.      Defendant Comcast Cable Communications, LLC  ("Comcast Cable"), according to Comcast Corporation's 2015 Form 10-K, is a "100% owned cable holding company subsidiary" of Comcast Corporation. Comcast Cable is headquartered in Philadelphia, Pennsylvania, and incorporated in Delaware.

14.      Comcast markets its cable services under the XFINITY brand name.

## III.      JURISDICTION AND VENUE

15.      The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds $75,000 and the matter is between citizens of different states.

16.      This Court has personal jurisdiction over Comcast Cable because: (1) Comcast Cable is authorized to do business and regularly conducts business in California; (2) Comcast

THIRD AMENDED COMPLAINT
CASE NO. 3:16-CV-05969-VC

Cable has marketed, sold and issued cable service plans in California including to Plaintiffs, and (3) Comcast Cable has entered into contracts with Plaintiffs and other California consumers regarding their cable service plans. Comcast Cable has sufficient minimum contacts with this state to render the exercise of jurisdiction by this Court permissible.

17.     This Court has personal jurisdiction over Comcast Corporation because Comcast Corporation has entered into contracts with Plaintiffs and California consumers regarding their cable service plans. Attached at **Exhibit A** is the Comcast Agreement for Residential Services (the "Subscriber Agreement") posted on Comcast's website as of May 16, 2016. The very first sentences of the Subscriber Agreement explicitly state that Comcast Corporation is a party to the contract:

> ABOUT THIS AGREEMENT, OUR SERVICES, AND YOUR RIGHTS. XFINITY® Service(s) will be provided to you ("you," "your," or "Customer") on the terms and conditions set forth in this Agreement for Residential Services (the "Agreement") and applicable law by the operating company subsidiary of **Comcast Corporation** that (i) owns and/or operates the cable television system in your area and/or (ii) the subsidiary that is the XFINITY Digital Voice service provider or Unlimited Select and Local Select service provider **("Comcast," "we," "us," or "our"). For purposes of this Agreement, "affiliate" means any entity that controls, is controlled by or is under common control with Comcast Corporation.**

**Exhibit A**, p. 1 (emphasis added).

18.     The terms "Comcast" and "affiliate" are then used throughout the Subscriber Agreement.

19.     This Court also has personal jurisdiction over Comcast Corporation because Comcast Corporation executives are responsible for business aspects of Comcast cable operations. For example, David N. Watson is simultaneously President and CEO of Comcast Cable and Senior Executive Vice President of Comcast Corporation.  Comcast's official biography of Mr. Watson on the Comcast corporate website states: "David N. Watson serves as President and Chief Executive Officer, Comcast Cable *and* Senior Executive Vice President, Comcast Corporation. *In this role, he is responsible for all business aspects of the Company's cable operations*" (emphasis added). See Comcast Corporation's website at http://corporate.comcast.com/news-information/leadership-overview/david-n-watson, a print-out

of which is attached as **Exhibit B**. Further evidence of Comcast Corporation's involvement in business aspects of Comcast cable operations include Comcast's responses to Plaintiffs' counsel Daniel Hattis' cease and desist letters: Comcast's responses were written on Comcast Corporation letterhead (e.g. the footer of the letterhead states the address for Comcast Corporation and references the web address www.comcastcorporation.com), and the responses referenced actions of "Comcast" or "the company" and made no reference to Comcast Cable. E.g., **Exhibit C**. Finally, when Plaintiffs' counsel Daniel Hattis emailed Comcast Corporation's counsel Seamus Duffy on November 28, 2016 and asked, "Could you please get back to me re: who are the entities who are the proper defendant(s) in the case," Mr. Duffy responded by email "Hey Dan, if you are just naming the parent Comcast CORP you should be fine. People sometimes name the operating entity, which I believe is Comcast Cable Communications LLC, but in my experience we don't make an issue between the two so you are fine with CORP." See **Exhibit D**.

20.    Venue is proper under 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

### IV.    PLAINTIFF DAVID ADKINS

21.    After moving to a new home in Oakland, California, Plaintiff Dan Adkins went online to Comcast's website on September 26, 2016 to research Comcast's service package offerings. Mr. Adkins wanted to sign up for a package with television and high speed Internet that would work with his TiVo video recorder device.

22.    Based on a review of Comcast's offerings, Mr. Adkins narrowed his choice to two packages: Comcast's Starter Double Play package at $69.99 per month versus the Starter Double Play with "Blast" (i.e. faster Internet) at $79.99 per month.

23.    On the offer page for the packages, Mr. Adkins noticed that next to the prominently advertised package prices there was small print which stated "per month for 12 mo. With 2-year agreement." However, there was no asterisk or qualifier next to the advertised prices, and nothing on the page stated what the price would be in months 13-24.  This made Mr. Adkins wary, because it was not clear what he would be charged after the first year.

24.    Mr. Adkins then noticed a small text link below the "Add to Cart" button for each package labeled "Pricing & Other Info." Mr. Adkins clicked on the "Pricing & Other Info." link, and a pop-up dialog box then appeared containing over 20 lines of small print. The "Pricing & Other Info." text was identical for both packages, and buried in this fine print was the information he was looking for, i.e. what the price would be for months 13-24. The tiny text stated that for both the $69.99 and the $79.99 packages, the price for months 13-24 would be $89.99.

25.    Based on these representations, Mr. Adkins decided on the $79.99 Starter Double Play with Blast Internet.

26.    Mr. Adkins also decided to take screenshots of the offer page and of nearly every page of the order process as he viewed them that day on September 26, 2016, to make sure he had documentation of Comcast's offer to him and so he could refute any possible later surprise charges that were inconsistent with what Comcast had promised him.

27.    Mr. Adkins took a screenshot of the offer page which advertised the Starter Double Play packages.  The screenshot of the offer page taken by Mr. Adkins is attached as **Exhibit E**. There was no asterisk or other qualifier next to the prices; the only small print was the reference to the price being for the first 12 months.  The ad stated that the prices included "140 Channels" of TV, and that the packages included "24/7 Sports coverage on all major networks." In making his decision to proceed with his purchase, Mr. Adkins relied on these representations that the $79.99 price for the Starter Double Play with Blast was the total monthly cost for those channels, including the major broadcast TV channels, plus Blast Internet. Mr. Adkins then took a screenshot of the pop-up dialog box which appeared after he clicked on the "Pricing & Other Info." link. See **Exhibit F**.

28.    Mr. Adkins then clicked on the prominent blue "Add to cart" button. Mr. Adkins then viewed the "TV Options" page. The screenshot taken by Mr. Adkins of the TV Options page is attached as **Exhibit G**.  Mr. Adkins viewed the "My Order Summary" box on the right side of the page which listed the various "Options" that were "Included" at no extra charge, "One-time Charges" of $14.99, and the "Monthly Total" of $79.99. Based on these representations, Mr. Adkins understood that the $79.99 "Monthly Total" price was the total amount Comcast would

charge him for television and Internet service with the exception of taxes and government-related fees (Mr. Adkins did not require any additional television equipment and already had his own modem). Mr. Adkins did not want the included X1 Digital Service receiver for his television, because he wanted to choose a cable card instead for his TiVo. However, there was no option for him to choose a cable card on the page. The page made no mention of the Broadcast TV Fee or the Regional Sports Fee.

29. Mr. Adkins then clicked on the blue "Next" button. He then viewed the "Internet Options" page.  The screenshot taken by Mr. Adkins of the Internet Options page is attached as **Exhibit H**. The identical "My Order Summary" box was on the right side. Mr. Adkins accepted the default option to "use my own equipment" for no charge because he owned his own modem. The page made no mention of the Broadcast TV Fee or the Regional Sports Fee.

30. Mr. Adkins then clicked on the blue "Next" button. He then viewed a page with installation options.  The screenshot taken by Mr. Adkins of the installation options page is attached as **Exhibit I**. He accepted the default option of self installation and standard shipping for the self-install kit. Mr. Adkins observed the identical "My Order Summary" box on the right side as compared to the two previous pages. The page made no mention of the Broadcast TV Fee or the Regional Sports Fee.

31. On each page displaying the "My Order Summary" (see **Exhibits G-I**), Comcast displayed to Mr. Adkins a prominent blue question mark next to the "Monthly Total" amount. Upon hovering over the question mark, a text box appeared stating:

> **This is the base monthly total of all recurring charges for the services you have selected**. It does not include tax or one-time charges (such as installation or Pay-Per-View fees) that may appear on individual bills.

(Emphasis added.) Mr. Adkins viewed and relied upon this language and statement that the "Monthly Total" price of $79.99 was going to be the total recurring monthly discretionary charges by Comcast for the services it was providing. Although Mr. Adkins did not take a screenshot of this language, an example of how this text box is displayed when the consumer hovers over the prominent blue question mark is provided in **Exhibit J** (which contains screenshots taken March 6, 2016 of a page in the online order process for service in the

Sacramento, California area, red highlight added).

32.     Mr. Adkins then clicked on the blue "Next" button on the installation page, which brought him to an account info page where he entered in his personal information and his payment information. These pages made no mention of the Broadcast TV Fee or the Regional Sports Fee.

33.     After entering and confirming his personal information and payment information, Mr. Adkins was brought to the order submittal page. The screenshot taken by Mr. Adkins of the order submittal page is attached as **Exhibit K**. The order submittal page contained yet another list of all the services and items included in the package, and at the bottom showed a "Total" of "Monthly Charges" of $79.99. As always, there was no asterisk or qualifier regarding this total monthly price. Mr. Adkins observed and read the fine print at the bottom of the page which stated: "Equipment, installation, taxes and fees, including regulatory recovery fees and other applicable charges extra." This fine print, like the rest of the page and all the other pages of the online order process, made no mention of the Broadcast TV Fee or the Regional Sports Fee.

34.     Mr. Adkins observed some small text above the large blue "Submit Your Order" button, with a check box which stated that by checking the small box he represented "I have read and agree to the Comcast Agreement for Residential Services" and "agree to the terms of the Minimum Term Agreement." Mr. Adkins clicked on the link for the Comcast Agreement for Residential Services, which displayed the Subscriber Agreement with 23 pages of small type. Mr. Adkins took a screenshot of the agreement, and quickly scanned the agreement, specifically looking to see if there was an arbitration clause and if it was possible to opt out of the arbitration clause. Meanwhile, the 23 page Subscriber Agreement made no mention of the Broadcast TV Fee or the Regional Sports Fee.

35.     Mr. Adkins then returned to the order submittal page, and clicked on the link labeled "Minimum Term Agreement." A pop up window of text then appeared, which Mr. Adkins took a screenshot of (the screenshot is attached as **Exhibit L**).  The text was not of the actual Minimum Term Agreement; instead, it simply mentioned the existence of an early termination fee

and stated that a Minimum Term Agreement would later be emailed or mailed to the customer. The *entirety* of the displayed text is as follows (italics are added):

> **Minimum Term Agreement**. The offer you selected requires a minimum term agreement and is subject to an early termination fee if all XFINITY services are cancelled during the agreement term. *A copy of the agreement will be sent to the mail or email address you provided*. You have the option to cancel the minimum term agreement within 30 days of the date the services under the offer are installed/activated without incurring an early termination fee. If you wish to cancel the agreement, you must contact Comcast by calling 1-800-XFINITY. If you cancel the agreement during the 30 day period, the charges for your remaining services may increase to the non-term contract rate. If you do not cancel the minimum term agreement within the 30 day period, the terms of the minimum term agreement will automatically apply.

36.     Thus, despite Comcast requiring Mr. Adkins to check the box on the order submittal page that "I have read and agree to the terms of the Minimum Term Agreement," it was *impossible* for him to actually do so, because as the pop-up box states, the actual (two-page) Minimum Term Agreement document would not be sent to him until later - if it was ever sent at all. Therefore, Mr. Adkins did not, and could not have possibly agreed to the Comcast Minimum Term Agreement prior to submitting his order online.

37.     Mr. Adkins then submitted his order by clicking on the blue "Submit Your Order" button at the bottom of the page.

38.     Relying on Comcast's representations and promises to him in its website advertising and throughout the online purchase process, Mr. Adkins reasonably expected and believed that his total monthly bill for his television and Internet service for months 1-12 would be $79.99 plus taxes and government-related fees, and he understood that his total monthly bill for months 13-24 would be $89.99 plus taxes and government-related fees. Mr. Adkins had agreed to commit himself to a 2-year contract, with a significant early termination fee, in reliance on Comcast's promise of a guaranteed and predictable lower price for his service during those two years.

39.     Later that day, on September 26, 2016, Mr. Adkins received an "Order Summary" email from Comcast stating his order was being reviewed and that the order would not be finalized until he received a confirmation email. This Order Summary email is attached as

**Exhibit M**. The Order Summary stated his "Monthly Fees" would be $79.99 and "One-time Fees" would be $14.99. The email did not mention the Broadcast TV or Regional Sports Fee, even in the fine print at the bottom of the email.

40.    Mr. Adkins then opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

41.    On September 28, 2016, two days after placing his order online, Mr. Adkins called Comcast customer service to ask about two concerns: (1) he wanted his service to start on Saturday October 1, 2016 (the date he would be moving into his new home), but he never received the "confirmation email" that the September 26, 2016 "Order Summary" email told him would be forthcoming; and (2) he wanted a cable card for his TiVo instead of the cable box. The first agent he spoke to was unable to help him, so he called a second time. The second Comcast agent asked him to confirm that "the order was placed for a Double Play Starter XF at $79.99, you own your own modem, and requested self installation kit, correct?" Mr. Adkins confirmed this was correct. The agent was able to process the order after confirming the prior tenant had terminated service, and told Mr. Adkins that Mr. Adkins could switch the box for a cable card at a local Comcast service center.

42.    Mr. Adkins never received an order confirmation email.

43.    Mr. Adkins never received the Minimum Term Agreement document by email or mail.

44.    Mr. Adkins received his first bill on October 6, 2016.  See **Exhibit N**. Mr. Adkins noticed that Comcast was charging him a $5.00 Broadcast TV Fee and a $3.00 Regional Sports Fee, which were listed in the "Other charges and credits" section and which he thought may possibly be additional discretionary charges rather than government-related taxes or fees, contrary to Comcast's promise to him that Comcast's discretionary monthly service charges would total $79.99. Mr. Adkins also noticed that Comcast was charging him an additional $15.00 for Blast Pro Internet, contrary to Comcast's repeated promises to him on the web offer page and throughout the order process that Blast Pro Internet was "Included" for no additional charge (in

1    fact, Comcast had called the $79.99 package he selected "Starter Double Play with Blast!"). See

2    Mr. Adkins' screenshots of the offer page and the online order process at **Exhibits E-I, K**).

3          45.    Upset by these extra charges, Mr. Adkins wrote a letter to Comcast, which he

4    mailed on October 7, 2016, asking that Comcast remove the Broadcast TV Fee, Regional Sports

5    Fee, and the Blast Pro Internet monthly charges. See **Exhibit O**. Mr. Adkins included print-outs

6    of the screenshots he had taken of the order process showing that Comcast had promised him that

7    Blast Pro Internet was included in his plan at no additional charge. He also asked that Comcast

8    give him a $2.50 monthly credit for using a cable card in his own device pursuant to Comcast

9    policy, and questioned whether he had been double charged for the self-install kit. Mr. Adkins

10   wrote and mailed this letter prior to his first communication with Plaintiffs' counsel.

11         46.    Later on October 7, 2016, in the process of searching the Internet to learn more

12   about the Broadcast TV Fee and the Regional Sports Fee, Mr. Adkins visited an online

13   investigation webpage regarding the Fees on the website of Plaintiffs' counsel Hattis Law. After

14   corresponding with attorney Hattis, Mr. Adkins opted out of the Comcast's arbitration agreement

15   a second time, this time taking a screenshot so that he had documentary evidence of his opt-out.

16         47.    Mr. Adkins then learned that there may be a purported Minimum Term Agreement

17   assigned to him. Mr. Adkins managed to find and access the document in the Comcast customer

18   web portal.[1] Mr. Adkins reviewed and downloaded the Minimum Term Agreement, which had

19   never previously been emailed or mailed to him, and to which he had never agreed. See **Exhibit P**

20   for a copy of the Minimum Term Agreement document.

21         48.    In prominent bold, boxed text at the top of the Minimum Term Agreement,

22   Comcast listed the price for his service as: "$79.99 per month for months 1-12 and $99.99 per

23   month for months 13-24." This stated rate of $99.99 per month for months 13-24 was **$10 higher**

24   than the price Comcast had previously promised in the fine print on the "Pricing & Other Info."

25

26   ―――――――――――――――――
     [1] Finding and accessing the Minimum Term Agreement document in the customer web portal is a
27   complicated multistep process, as follows: (1) click on the "My Account" link; (2) click on the
     "Settings" link; (3) click on the "Account, Contact Information, and Legal Terms" link; (4) click
28   on the "Legal agreements" link in the "Legal Information" section; and finally (5) click on the
     "My Account Terms of Service" link, which will download the document as a PDF.

THIRD AMENDED COMPLAINT
CASE NO. 3:16-CV-05969-VC

- 10 -

pop-up dialog box (which was the only place the price for months 13-24 had previously been disclosed). See the screenshot taken by Mr. Adkins at **Exhibit F**.

49.     Mr. Adkins also found, in paragraph 4 of the Minimum Term Agreement, a sentence regarding the "taxes and fees" that may be charged to him "including" the "Broadcast TV Fee" and "Regional Sports Fee." The Fees were misleadingly labeled as part of "taxes and fees" and grouped in a single sentence with government-related fees such as "taxes" and "regulatory recovery fees," such that a reasonable consumer would assume they were government-related fees over which Comcast had no control. **In fact, Comcast has itself insisted and argued to the U.S. Senate that the phrase "taxes and fees" is intended to mean, and is properly interpreted by consumers to mean, government-mandated taxes or regulatory fees**.[2] But Mr. Adkins had by now learned the truth – that these Fees were discretionary, bogus double charges by Comcast for the same channels Comcast had already promised him were included in the advertised package price.

50.     Mr. Adkins was meanwhile not aware of the existence of a purported 30-day Money-Back Guarantee by Comcast, and this option was never presented to him in any of his communications with Comcast regarding his complaints. But regardless, he intended to stand on the contract and to demand that Comcast honor the terms it had promised him.

51.     On October 8, 2016 Plaintiffs' counsel faxed and emailed a letter to Comcast on behalf of Mr. Adkins to Comcast Senior Vice President Thomas R. Nathan demanding, among other things, that Comcast stop its deceptive practices and return all money paid by Comcast customers for the Broadcast TV Fee and Regional Sports Fee. See **Exhibit Q**. A Comcast litigation paralegal acknowledged receipt of the October 8, 2016 letter by an email reply on

---

[2] Comcast is on record with the U.S. Senate stating that the phrase "Taxes and fees" has a clear meaning to consumers of government taxes and regulatory assessments over which Comcast has no control. Comcast told the U.S. Senate that the "Taxes, Surcharges, & Fees" section of the customer bill was "dedicated to government-mandated taxes or regulatory fees. … *This is a clear distinction between those charges that are discretionary and those that are pursuant to taxes and regulatory assessments*." S. Hrg. 114-409 at p. 190 (July 23, 2016, emphasis added). Since then, Comcast has renamed the "Taxes, Surcharges, & Fees" section of the bill to simply "Taxes and fees."

1  October 10, 2016. Plaintiffs' counsel also mailed a notice letter to Comcast by certified mail

2  return receipt on October 10, 2016.  Comcast did not respond to the letters.

3      52.    On December 30, 2016, Mr. Adkins called Comcast to again complain about the

4  excess $15.00 Comcast was charging him each month for Blast Pro Internet. Comcast finally

5  agreed to remove and reimburse him for the Blast Pro Internet double-charges.

6      53.    On or about March 1, 2017, Mr. Adkins received his March 2017 Comcast bill.

7  See **Exhibit R**. On the top right side of page 3 of the bill was a notice that effective July 1, 2017

8  (which would be month 9 of his 24 month contract) Comcast was raising the monthly Broadcast

9  TV Fee from $5.00 to $7.00 and the Regional Sports Fee from $3.00 to $5.00. Mr. Adkins never

10  agreed to these double-charges for the channels in his service package in the first place. Further,

11  the main reason Mr. Adkins agreed to a two-year contract (despite the existence of a large early

12  termination fee) was in reliance on Comcast's promise of a guaranteed and predictable lower

13  price for his service for those two years. Now, 9 months into his 24 month fixed-rate contract,

14  Comcast was utilizing the Fees as a sneaky, backdoor way to increase its rates at its whim, in

15  breach of Comcast's agreement with him.

16      54.    Mr. Adkins materially relied upon Comcast's promises, misrepresentations, and

17  omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr.

18  Adkins to suffer harm, injury in fact, and lost money or property.

19              **V.    PLAINTIFF CHRISTOPHER ROBERTSON**

20      55.    Prior to November 2015, Plaintiff Christopher Robertson, a resident of

21  Sacramento, California, subscribed to DirecTV for television and AT&T for Internet and phone

22  service. Towards the end of 2015, he learned that AT&T was going to increase the monthly

23  service rate from approximately $40.00 per month to approximately $55.00 per month.

24  Meanwhile, Mr. Robertson did not watch much television and decided he did not need his

25  DirecTV subscription.

26      56.    In October 2015, Mr. Robertson received a direct mail advertisement from

27  Comcast promoting a currently "Triple Play" "deal" with TV, Internet and phone service. A copy

28  of this flyer is attached as **Exhibit S**.

57.     The first page of the flyer prominently advertised a price of "$89.99 per month for 12 months" for a "Triple Play" package of TV, Internet, and Voice, which was purportedly discounted from a strike-through price of $99.00. There was no asterisk or qualifier next to the giant "$89.99" advertised price, and there was no mention of the Broadcast TV Fee or the Regional Sports Fee on the page. The first page of the mailer stated that the $89.99 price included "Over 140 channels" and listed bullets with other features that were included in the package. There was no fine print anywhere on the first page of the mailer, which featured in the footer Comcast's phone number in huge font to "CALL NOW!" Mr. Robertson ignored the second page of the mailer, which did not appear to have any information about the pricing or details regarding the service. Mr. Robertson did not notice or read the fine print which was *only* on the second page and which was not referenced by the first page.

58.     The mailer piqued Mr. Robertson's interest in what other offers were available from Comcast. Mr. Robertson went to Comcast's website and began researching Comcast's service offerings. On Comcast's website, Mr. Robertson read various statements in which Comcast said it had made improvements including in customer service. Mr. Robertson priced out various Comcast offerings available to him, and determined that the advertised price for a bundle package of Internet plus basic TV at $49.99 was cheaper than the price for high speed internet alone.

59.     On or about November 9, 2015, Mr. Robertson returned to the Comcast website. Mr. Robertson selected the $49.99 Internet Plus 25 Plan on an offer web page, and proceeded to go through the online purchase process. The package included only a few television channels (primarily the broadcast TV channels ABC, CBS, NBC and FOX which Comcast indicated were included in the $49.99 plan price), along with broadband Internet.

60.     The web pages Mr. Robertson viewed during the online purchase process were substantially similar in format, style, and content to the pages viewed by Plaintiff Dan Akins (see **Exhibits E-K**), differing primarily in the prices and the specific included features.

61.     On the offer page for the Internet Plus 25 Plan (similar in format to the offer page at **Exhibit E**), Mr. Robertson observed the prominently advertised $49.99 price, which was

1   offered pursuant to a 1-year agreement. Mr. Robertson did not notice, or have any reason to

2   search for and click on - given there was no asterisk or other qualifier next to the $49.99

3   advertised price - the small "Pricing & Other Info." text link that was below the "Add to Cart"

4   button.

5          62.    On each page of the online purchase process, Comcast prominently displayed to

6   Mr. Robertson the $49.99 price as the "Monthly Total."  Next to this "Monthly Total" amount

7   was a prominent blue question mark which caused to display the following representation viewed

8   by Mr. Robertson: "This is the base monthly total of all recurring charges for the services you

9   have selected. It does not include tax or one-time charges (such as installation or Pay-Per-View

10  fees) that may appear on individual bills."

11         63.    Based on these representations, Mr. Robertson understood that the $49.99

12  "Monthly Total" price was the total amount Comcast would charge him for television and

13  Internet service with the exception of taxes and government fees (Mr. Robertson did not require

14  any additional television equipment and already had his own modem).

15         64.    Mr. Robertson went through most of the online process. Prior to submitting the

16  order, he entered into an online chat with a Comcast agent by clicking on an online chat dialog

17  box which popped up on one of the purchase process pages.

18         65.    Mr. Robertson told the chat agent he was interested in the Internet Plus 25 plan.

19  Mr. Robertson asked the agent what the total monthly bill would be for the $49.99 plan, and told

20  the agent he wanted to confirm other fees would not be later added to the bill. The agent assured

21  Mr. Robertson there would be no extra charges with the exception of taxes and government fees.

22  The agent did not mention the existence of the Broadcast TV Fee, and Mr. Robertson was never

23  informed about the Broadcast TV Fee during the online order process.

24         66.    Relying on the representations of the Comcast agent, as well as on his

25  understanding of Comcast's representations in its flyer and online as described above, Mr.

26  Robertson placed the order for service. Mr. Robertson either placed the order himself via the

27  online order submittal webpage after speaking with the chat agent, or the chat agent placed the

28  order for him.

THIRD AMENDED COMPLAINT
CASE NO. 3:16-CV-05969-VC

67.     Based on Comcast's representations and promises to him in its flyer, on its website, and by the Comcast chat agent, Mr. Robertson reasonably expected and believed that the total monthly bill for his television and Internet service for 12 months would be $49.99 plus approximately $10 in taxes and government fees. In reality, contrary to the chat agent's representations to him, the monthly taxes and government fees (labeled as "Taxes and fees" on the Comcast bill) amounted to less than $3.00. Meanwhile, the monthly charge for the Broadcast TV fee (which was a discretionary, bogus double charge for the same broadcast channels Comcast had already promised him were included in the advertised package price) was $3.25 – higher than all of the true "Taxes and fees" combined. For example, see Mr. Robertson's March 2016 bill attached as **Exhibit T**.

68.     Meanwhile, Mr. Robertson had agreed to commit himself to a one-year contract, with a significant early termination fee, in reliance on Comcast's promise of a guaranteed fixed lower price for his service for those twelve months.

69.     Mr. Robertson never received a Minimum Term Agreement document via email or mail, and never agreed to its terms.

70.     Mr. Robertson received his first bill on or about November 14, 2015. He was surprised to see that the bill was $73.94, much higher than Comcast had promised. Upon further examination of the bill, Mr. Robertson saw a $6.00 Video Transfer Fee, a $6.00 CHSI Transfer Fee, and a $3.25 Broadcast TV Fee.

71.     Mr. Robertson initiated an online chat on Comcast's website with a customer service agent, and he asked that these fees be removed from his bill. The chat agent said he could remove the Video Transfer Fee and CHSI Transfer Fee. The agent apologized that nobody had told Mr. Robertson about the Broadcast TV Fee, but told him that it was impossible to waive the fee because it was a fee all customers had to pay. The agent was unable to explain or define what the Broadcast TV Fee was.

72.     On December 2, 2015, Mr. Robertson opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

1      73.    Mr. Robertson intended to stand on the contract and to demand that Comcast

2    honor the terms it had promised him.

3      74.    On December 24, 2015, Plaintiffs' counsel mailed a letter on behalf of Mr.

4    Robertson to Comcast demanding that Comcast end its unlawful scheme and return all money

5    Comcast customers paid for the Broadcast TV Fee and Regional Sports Fee. See **Exhibit U**.

6      75.    On February 25, 2016, Comcast Senior Vice President Thomas R. Nathan mailed a

7    response letter refusing to change Comcast practices or refund any money. See **Exhibit C**.

8      76.    On March 19, 2016 Mr. Robertson initiated another online chat with a Comcast

9    customer service agent. Mr. Robertson asked the agent to remove the Broadcast TV Fee charges

10    from his bills.

11      77.    The agent stated that the Broadcast TV Fee was a "Government approved charge

12    implemented by Comcast to all cable service subscribers."

13      78.    Mr. Robertson complained to the agent that he had not been told about the charge,

14    and that "I signed a 1 year agreement to pay a specific amount for a specific service from

15    Comcast, that is the amount I should be paying each month." He stated that "Comcast told me one

16    price, then charged me another."

17      79.    The agent responded that the "Broadcast TV Fee is part of the fees for having

18    cable service which is on top of the service price you currently have."

19      80.    The agent refused to remove the Broadcast TV Fee charges from Mr. Robertson's

20    bill, stating "it cannot be refunded … since you have agreed to sign up for the package with us."

21      81.    In February 2016 Mr. Robertson received his February 8, 2016 bill. On page 2 of

22    the bill in small print was a notice that effective July 1, 2016, Comcast would be raising the

23    Broadcast TV Fee from $3.25 to $5.00. See **Exhibit V**.

24      82.    On Mr. Robertson's May 8, 2016 bill, Comcast appended a "Products and Services

25    Price List" which stated that "Starting on July 1, 2016 the following XFINITY services and fees

26    will be changing." The list showed that the Broadcast TV Fee would be increasing on 7/1/2016 to

27    $5.00. Yet contrary to the stated upcoming increase, a statement at the bottom of the page

28    declared: "If you're currently receiving services on a promotional basis, under a minimum term

THIRD AMENDED COMPLAINT
CASE NO. 3:16-CV-05969-VC

agreement associated with a specific rate, or in the guaranteed period of one of our SurePrice plans, the prices for those specific services will not be affected during the applicable period." See Mr. Robertson's May 8, 2016 bill at **Exhibit W**.

83.     Starting on Mr. Robertson's July 8, 2016 bill, Comcast did in fact increase the Broadcast TV Fee charge on Mr. Robertson's bill from $3.25 to $5.00.

84.     Mr. Robertson never agreed to this double-charge for the broadcast channels – which comprised nearly all of the few channels included in his package – in the first place. Further, Mr. Robertson agreed to a one-year contract, despite the existence of a significant early termination fee, in reliance on Comcast's promise of a guaranteed and fixed lower price for his service during those twelve months. Yet now, with 4 months still remaining on his 12 month contract, Comcast was utilizing the Broadcast TV Fee as a sneaky, backdoor way to increase its rates in breach of Comcast's agreement with him.

85.     Mr. Robertson also noticed on his July 2016 bill that Comcast had added a five dollar fee for an Internet "Speed Increase," apparently removing a supposed "Service Discount" of $5.00 he was previously receiving. After further examining his bills in late September 2016, Mr. Robertson realized that since his subscription started, he had been charged $10.00 each month for an Internet "Speed Increase" fee (but with a $5.00 "Service Discount" from November 2015 through June 2016, after which he was charged the full $10.00), which Mr. Robertson never approved.

86.     Also in September 2016, Mr. Robertson learned of the existence of a Minimum Term Agreement document, which Mr. Robertson was able to access in the Comcast customer web portal. Mr. Robertson reviewed and downloaded the Minimum Term Agreement, which had never previously been emailed or mailed to him, and to which he had never agreed. See **Exhibit X** for a copy of the Minimum Term Agreement document.

87.     In prominent bold text at the top of the Minimum Term Agreement, Comcast listed the price for his service as: "$49.99 per month." The Minimum Term Agreement made no reference to the extra Internet "Speed Increase" fee he had been charged since the beginning of his contract. Mr. Robertson read the sentence in paragraph 4 of the Minimum Term Agreement

about the "taxes and fees" that may be charged to him "including" the "Broadcast TV Fee." The

Fee was misleadingly grouped in a single sentence with government-related fees such as "taxes"

and the "regulatory recovery fee" such that a reasonable consumer would assume that the

Broadcast TV Fee was a government-related fee over which Comcast had no control. But Mr.

Robertson had by now learned the truth – that the Broadcast TV Fee was a discretionary, bogus

double charge by Comcast for the same channels Comcast had already promised him were

included in the advertised package price, and which Comcast would utilize to increase his

package price even higher in the middle of his one year, purportedly fixed-price agreement.

88.     Soon after Mr. Robertson's one-year contract with Comcast expired at the end of

2016, Mr. Robertson terminated his service with Comcast.

89.     Mr. Robertson, materially relied upon Comcast's promises, misrepresentations,

and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr.

Robertson to suffer harm, injury in fact, and lost money or property.

## VI.    COMCAST'S NATIONWIDE SCHEME AND PLAINTIFFS' DEMAND FOR PUBLIC INJUNCTIVE RELIEF ON BEHALF OF CALIFORNIA CONSUMERS

90.     The experiences of Plaintiffs Dan Adkins and Christopher Robertson are typical of

millions of Californians and tens of millions of consumers throughout the United States, who

since 2014 have been victims of Comcast's nationwide bait-and-switch scheme of charging more

for its services than Comcast advertised and promised them it would charge.

91.     Plaintiffs bring this lawsuit on behalf of themselves, and also for injunctive relief

for the benefit of millions of other California consumers. If successful, the lawsuit will also likely

benefit consumers and Comcast customers nationwide, as Comcast's practices which are the

subject of this Complaint are uniform and standard throughout the country.

92.     Starting in January 2014, Comcast began perpetrating a scheme by which it

excluded some of its programming charges (i.e., some of the amounts it paid to broadcast

television networks like ABC, CBS, NBC and FOX) from its advertised sticker price. Comcast

disguised these programming charges in the form of a mysteriously named "Broadcast TV Fee"

that was designed to appear as – and was buried in the fine print together with – government-

related charges. In January 2015, Comcast expanded this scheme by introducing the "Regional Sports Fee" in order to similarly disguise programming price increases for local sports channels (which, like the broadcast channels, were already promised as being included in the lower advertised "sticker price" for the channel package). Comcast charges the Broadcast TV Fee to *all* Comcast cable television subscribers. Comcast charges the Regional Sports Fee to Comcast cable subscribers with the Digital Starter Package or above.

93.     On July 23, 2016, Comcast's Senior Vice President Tom Karinshak admitted to the Senate Subcommittee which is currently investigating the Fees that: (1) prior to January 1, 2014 the programming fees represented by the current Broadcast TV Fee and Regional Sports Fee had been *included* in the advertised and billed "sticker price"; and (2) starting in 2014 Comcast "decided" to exclude some video programming charges from the sticker price in the form of these new Fees and to instead now bill them as separate line items "***as opposed to simply raising our sticker price.***" See S. Hrg. 114-409, pp. 35, 54, emphasis added.[3]

94.     Comcast perpetrates this massive bait-and-switch scheme, which affects all of its over 2 million California video subscribers, in order to increase demand for its services and to increase its profits. Comcast tricks customers into thinking they will pay the lower advertised "sticker price," rather than the significantly higher price they will actually be charged. The Fees now add as much as $12.00 per month to California customer bills, often accounting for more than 10% of the subscriber's total bill.

---

[3] Senate Hearing on Customer Service and Billing Practices in the Cable and Satellite Industry, June 23, 2016, available at https://www.gpo.gov/fdsys/pkg/CHRG-114shrg21423/content-detail.html. Also see Comcast Senior Vice President Tom Karinshak's testimony at p. 35, excerpted below (emphasis added):

> **Senator McCaskill**:  Now, what I want to make sure I understand here is that this has been a decision, I believe by all of you—raise your hand if you did not—that you would take—OK, DISH did not. You did not put any RSN [Regional Sports Network] or broadcast surcharge fees in. OK. So DISH decided not to do this, but the rest of *you decided that you were going to take something that was in the basic programming fee for buying your service, and you were going to put it in another place on the bill and call it something else.* I would ask you, can you tell me why all of you decided—*isn't it true that all of these were previously in your video charges*?
> **Mr. Karinshak**. *Yes, Senator.*

*Id.* at 35 (emphasis added).

**A.** **Misleading Advertising.**

95.     In its website advertising and online order process, Comcast *never* includes an asterisk or qualifier next to the prominently displayed price for its service packages which could put the consumer on notice that the sticker price does not include additional programming charges which are hidden in the form of the automatically billed Fees. E.g. see **Exhibits E-K**. On each page of the online order process, Comcast prominently displays the advertised price as the "Monthly Total," despite that total not including the cost of the Broadcast TV Fee and the Regional Sports Fee. *Id.*

96.     Comcast displays a prominent blue question mark next to the "Monthly Total" amount; when one hovers over the question mark, a text box appears stating:

> **This is the base monthly total of all recurring charges for the services you have selected**. It does not include tax or one-time charges (such as installation or Pay-Per-View fees) that may appear on individual bills.

See **Exhibit J**. But the stated "base monthly total" does not include the cost of the Broadcast TV Fee and the Regional Sports Fee, which are in fact recurring double-charges for ABC, NBC, CBS, FOX and local sports channels *which Comcast has already advertised and promised are included in the lower package price*. E.g., see the offer page screenshot taken by Mr. Adkins at **Exhibit E** (the $79.99 price is advertised as including "140 Channels" of TV and "24/7 Sports coverage on all major networks," despite the $79.99 price not including the additional $8.00 - a 10% increase - for the automatically charged Broadcast TV Fee and Regional Sports Fee to provide that very same programming.

97.     Comcast makes the same misrepresentations and omissions in its other forms of advertising such as direct mail. As reflected in the advertising flyer mailed to Mr. Robertson, Comcast likewise never includes an asterisk or qualifier next to the prominently advertised price for its service packages, and buries its unreferenced disclaimers in tiny fine print in a location consumers are unlikely to notice.

98.     Meanwhile, Comcast's hidden advertising disclaimers, in the event they are seen by consumers, are themselves misleading. The disclaimers are designed to falsely imply that the Fees are government-imposed charges. For example, buried in the fine print on page 2 of the flyer

sent to Mr. Robertson is the following sentence: "Equipment, installation, *taxes and fees, including* regulatory recovery fees, Broadcast TV Fee (up to $3.50/mo.), Regional Sports Fee (up to $1.00/mo.) and other applicable charges extra …" (emphasis added). See **Exhibit S**.

99.     A reasonable consumer would assume the phrase "*taxes and fees*" which explicitly "include[s]" the strange and undefined terms "Broadcast TV Fee" and "Regional Sports Fee," refers to taxes and government fees outside of Comcast's control. ***In fact, Comcast is on the record as stating that the phrase "Taxes and fees" has a clear meaning to consumers of government taxes and regulatory assessments***. Comcast told the U.S. Senate that the "Taxes, Surcharges, & Fees" section of the customer bill was "dedicated to government-mandated taxes or regulatory fees. … *This is a clear distinction between those charges that are discretionary and those that are pursuant to taxes and regulatory assessments*." S. Hrg. 114-409 at p. 190 (July 23, 2016, emphasis added). Since then, Comcast has renamed the "Taxes, Surcharges, & Fees" section of the bill to simply "**Taxes and fees**." E.g. see **Exhibits R, T, W.** It is thus eminently reasonable – and consistent with Comcast's own stated intent – that the phrase "taxes and fees" is interpreted by consumers as referring only to taxes and government-related fees (as opposed to discretionary, double-charges for channels already promised as included in the advertised package price).

100.     Comcast's representations on its website and in its advertising are false, because it charges more than it promises it will charge, via the deceptive Broadcast TV Fee and Regional Sports Fee.

### B.     False and Misleading Statements by Comcast Sales Agents.

101.     Comcast sales agents - including telesales agents, online chat agents, and in-store sales staff - universally do not disclose or mention the existence of the Broadcast TV Fee and the Regional Sports Fee to prospective customers. Further, when they quote customers the total order price, the agents falsely say that the stated price is the total price "*plus taxes*" or "*plus taxes and fees*." (As discussed *supra* at ¶ 99, a reasonable consumer, as Comcast has itself affirmed and intends, would interpret the phrase "taxes and fees" to mean government-related charges.)

102.    Mr. Robertson's experience with an online chat agent was typical. He was promised that there would be no extra charges above the advertised and promised $49.99 package price except for taxes and government fees, and the agent did not mention the existence of the Broadcast TV Fee. See ¶ 65 *supra*.

103.    In the course of investigating this case, Plaintiffs' counsel received hundreds of complaints from upset Comcast customers who, like Mr. Robertson, placed their orders in reliance on statements by Comcast sales agents that the quoted price was the total cost plus taxes and government-related fees, and who were not informed by the sales agents of the existence of the Broadcast TV Fee and the Regional Sports Fee.

104.    For example, when John Bailey, a Comcast customer from Covington, Washington, spoke with a Comcast telesales agent on July 23, 2016 to upgrade his Internet-only plan to a Double Play plan with Internet plus television, the agent falsely promised him the total price would be the advertised package price "plus taxes," and the agent did not mention the additional $5.00 Broadcast TV Fee.[4] For example, when Comcast customer Robert Summey of Jacksonville, Florida asked an online chat sales agent on November 25, 2016 what his total monthly bill would be, the agent falsely promised him it would be $109.99 "plus taxes," and the agent did not mention the additional $12.00 in the form of the Broadcast TV Fee and the Regional Sports Fee. For example, when Nola Palmer of Littleton, Colorado, specifically asked a Comcast telesales agent in March 2016 what additional charges would be added to the bill above the advertised price, the agent estimated taxes and falsely stated that the only additional charges would be FCC-mandated fees. For example, when James McLaughlin of Aurora, Illinois signed up for Comcast in person at a Comcast service center on March 24, 2016 and asked the agent behind the counter what his total bill would be per month, the agent falsely stated the only additional charge above the advertised package price would be taxes.

105.    Plaintiff Robertson's experience, and the experience of these other named Comcast customers, are typical of the experiences of most Comcast customers and prospective customers.

---

[4] Plaintiffs are in possession of the official Comcast audio recording of this call.

THIRD AMENDED COMPLAINT
CASE NO. 3:16-CV-05969-VC

1   Through the discovery process in this case, Plaintiffs will obtain further evidence showing that

2   Comcast has a uniform, standard policy of directing or encouraging its sales agents to deceptively

3   state that the advertised price plus equipment charges is the total monthly price plus "taxes" or

4   "taxes and fees," and that Comcast policy is for sales agents to not mention or disclose the

5   Broadcast TV Fee or the Regional Sports Fee.

**C.** **Comcast Lies To Customers Who Inquire or Complain About the Broadcast TV Fee or the Regional Sports Fee By Telling Them the Charges Are Taxes or Government Fees.**

8   106.   When customers contact Comcast to ask or complain about the Fees, Comcast

9   doubles down on its deception through its practice of lying to customers by saying that the Fees

10   are taxes or government-imposed charges over which Comcast has no control.

11   107.   For example, when Plaintiff Robertson contacted a Comcast chat agent to

12   complain about the Broadcast TV Fee, the agent told him the Broadcast TV Fee was a

13   "Government approved charge implemented by Comcast to all cable subscribers."

14   108.   For example, Comcast customers have posted on Comcast's official online "Help

15   & Support Forums" that they were told by Comcast agents that the Broadcast TV Fee and the

16   Regional Sports Fee are taxes or government fees:

> Posted on Comcast's Website on June 11, 2016:
> I called comcast today to complain about the extra [Broadcast TV Fee and Regional Sports Fee] charges that are added to the bill. I was told that it was a tax. IT IS NOT A TAX, it is a fee charged by Comcast. They are charging us an extra $8 per month, without giving us any additional services. I believe we have a class action lawsuit waiting to happen.[5]

> Posted on Comcast's Website on July 19, 2015:
> Upon review of my Comcast bills I called today, Sunday, to find out why I was being charged for a $3 Broadcast TV fee and a $1 Regional Sports Fee. These charges appeared in my June and July bills under the section "Other Charges & Credits" and I wanted to get a better understanding of what and why these charges appeared all of a sudden and if they can be removed. As an aside, I don't watch sports. The call center agent explained they were state and government taxes and could not be removed. I asked her why they didn't appear in the "Taxes, Surcharges, and Fees" section and she corrected herself and stated that they are not State fees but that they are government fees that Comcast had been approved to

---

[5] http://forums.xfinity.com/t5/Billing/Broadcast-TV-Fee/td-p/2671674

1    charge customers.[6]

2    109.    In the process of investigating this case, Plaintiff's counsel received complaints

3    from dozens of Comcast customers who similarly contacted Comcast to complain about the

4    Broadcast TV Fee and the Regional Sports Fee and were falsely told by Comcast that the Fees

5    were taxes, FCC fees, or some other form of government-imposed charge.

6    110.    For example, when Comcast customer Jonathan Bailey of Covington, Washington,

7    spoke to a "customer loyalty department" telephone agent on August 23, 2016 and demanded that

8    Comcast remove the previously undisclosed $5.00 Broadcast TV Fee from his bill, the agent

9    responded, "There's no way we can remove the fee, it's from the state." When Mr. Bailey asked

10   the agent to give him a $5.00 monthly credit instead, the agent refused, stating, "Well, we can't

11   credit you $5.00 a month for a fee that is a state tax."[7]

12   111.    Plaintiff Robertson's experience, and the experience of these other Comcast

13   customers, are typical. Through the discovery process in this case, Plaintiffs will obtain further

14   evidence showing that: (1) Comcast has a policy of encouraging and/or condoning its customer

15   service agents to lie to customers who complain about the Fees by telling them the Fees are taxes

16   or government-related; and/or (2) even Comcast's own staff and agents are confused by

17   Comcast's official and internal explanations of the Fees such that they interpret and relay to

18   customers that the Fees are government-imposed.

19   **D.    Comcast's Form Contracts Do Not Adequately Disclose The Fees To Its**
        **Customers.**

20

21   112.    Comcast's form Subscriber Agreement does not mention the Broadcast TV Fee or

22   Regional Sports Fee anywhere in its 23 pages of small type.

23   113.    Section 2(a) of the Subscriber Agreement, which concerns the "Charges, Fees, and

24   Taxes You Must Pay," is larded from top to bottom with references to government-imposed

25   taxes, fees, and programs, and implies that all additional monthly non-equipment fees are

26   government-related:

27   _____

     [6] http://forums.xfinity.com/t5/Billing/broadcast-tv-fee/td-p/2457405

28   [7] Plaintiffs are in possession of the official Comcast audio recording of this call.

**Charges, Fees, and Taxes You Must Pay.** You agree to pay all charges associated with the Service(s), including, but not limited to, installation/service call charges, monthly service charges, XFINITY Equipment (as defined below) charges, measured and per call charges, applicable federal, state, and local taxes and fees (however designated), regulatory recovery fees for municipal, state and federal government fees or assessments imposed on Comcast, permitted fees and cost recovery charges, or any programs in which Comcast participates, including, but not limited to, public, educational, and governmental access, universal service, telecom relay services for the visually/hearing impaired, rights-of-way access, and programs supporting the 911/E911 system and any fees or payment obligations imposed by governmental or quasi-governmental bodies for the sale, installation, use, or provision of the Service(s). YOU WILL BE RESPONSIBLE FOR PAYING ANY GOVERNMENT IMPOSED FEES AND TAXES THAT BECOME APPLICABLE RETROACTIVELY. We will provide you with notice and an effective date of any change in our prices or fees, unless the change in price is related to a change in governmental or quasi-governmental taxes, fees, or assessments, in which case we may elect not to provide notice except where required by applicable law. Not all fees apply to all Service(s).

**Exhibit A**, Section 2(a).

114.    Comcast's separate Minimum Term Agreement document also does not adequately disclose the Fees. Meanwhile, in many cases – such as in the cases of both Plaintiffs – Comcast does not email or mail the Minimum Term Agreement to the customer and does not get customer consent to its terms. See ¶¶ 43, 69, *supra*.

115.    In bold, boxed text at the top of the Minimum Term Agreement, Comcast prominently displays the guaranteed monthly price for the contract term, *with no asterisk or qualifier*. E.g., see the Minimum Term Agreement for Mr. Adkins at **Exhibit P**.

116.    Comcast only mentions the Broadcast TV Fee and the Regional Sports Fee in a single disclaimer sentence in the Minimum Term Agreement which states that they are part of "taxes and fees":

Equipment, installation, **taxes and fees, including** Broadcast TV Fee (currently up to $5.00/mo.), Regional Sports Fee (currently up to $3.00/mo.) and if XFINITY Digital Voice is included, regulatory recovery fees and other applicable charges (e.g. per-call or international charges) are extra, such charges and fees are subject to change during and after the term of this Agreement.

*Id.* (emphasis added).

117.    As discussed *supra* at ¶ 99, a reasonable consumer, as Comcast intends and has itself affirmed on the record to the U.S. Senate, would interpret the phrase "taxes and fees" to mean government-related charges.

**E.      Comcast Also Breaches Its Agreements With Its Customers by Increasing the Broadcast TV Fee and Regional Sports Fee in the Middle of "Guaranteed" Fixed-Rate Contracts.**

118.    Comcast has induced millions of consumers to enter into one-year or two-year service contracts by promising them a "locked-in" and "guaranteed" low promotional rate which will not increase during the term of the contract. Pursuant to their contracts with Comcast, the customers cannot terminate their minimum term service agreement without paying a significant early "termination fee." For example, the Minimum Term Agreement for Plaintiff Adkins specifies a $230.00 termination fee, which is slowly reduced over time. See **Exhibit P** at ¶ 5.

119.    In breach of these promises, Comcast has a systematic policy of increasing the Broadcast TV Fee and the Regional Sports Fee in the middle of "guaranteed" fixed rate customer contracts as a backdoor way to repeatedly raise its prices on these trapped customers.

120.    For example, in month 8 of Mr. Robertson's 12-month purportedly fixed-rate contract, Comcast raised his Broadcast TV Fee from $3.25 to $5.00. See ¶¶ 81-84 *supra*. For example, in month 9 of Mr. Adkins' 24-month purportedly fixed-rate contract, Comcast will raise his charges for the Broadcast TV Fee from $5.00 to $7.00 and the Regional Sports Fee from $3.00 to $5.00. See ¶ 53.

121.    Comcast customers like Mr. Adkins and Mr. Robertson agreed to long-term contracts, with significant early termination penalties, in reliance on Comcast's promise of a guaranteed and fixed lower price for their service during the term of the contract. These mid-contract price increases are and were impossible to foresee by Plaintiffs and Comcast's customers, and no reasonable consumer would have expected them. Comcast's mid-contract increases of its prices via the Fees – at its whim – are in breach of its agreements with its customers and are in violation of its duty of good faith and fair dealing.

F.    **Comcast's Bait-and-Switch Scheme Is Central to Its Marketing Plan and Accounts for an Increasingly Large Part of Comcast's Total Revenues and Profits.**

122.    Comcast perpetrates this massive bait-and-switch scheme, which affects all of its over 2 million California video subscribers, in order to increase demand for its services and to increase its profits. Comcast hooks and traps customers into one-year or two-year contracts, with the intent of charging them more than promised and then, to add insult to injury, Comcast soon further raises the service price in the middle of the promised fixed-rate term via increases in the Fees.

123.    Comcast has increased the Fees by 800% since they were first introduced in 2014. The Fees now add as much as $12.00 per month to California customer bills, often accounting for more than 10% of the subscriber's total bill.

124.    Comcast will continue deceiving and cheating its customers with its Broadcast TV Fee and Regional Sports Fee scheme until it is forced by law to stop. The scheme is far too profitable. Plaintiffs estimate that Comcast earns approximately $2 billion per year from these hidden fees – over $200 million annually from its California customers alone.

## VII.    CHOICE OF LAW

125.    The law of California applies.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

126.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

127.    Comcast entered into valid contractual agreements with Plaintiffs.

128.    The essential terms of Comcast's contracts with Plaintiffs included that the promised and quoted price for their service was the actual price they would pay except for equipment charges and bona fide taxes and government-related fees.

129.    The essential terms of Comcast's contracts with Plaintiffs included that the promised and quoted price for service included all of Comcast's discretionary charges for the

channels that Comcast promised and advertised were already included in the advertised package price (e.g. ABC, CBS, NBC, FOX, and local sports channels).

130.    Comcast has breached its contracts with Plaintiffs by charging a higher amount for its service than it promised them it would charge, by double-charging for the broadcast television and local sports channels in the form of the deceptive and inadequately disclosed Broadcast TV Fee and Regional Sports Fee, and by failing to keep its promise of including all discretionary charges for those channels in the promised and quoted monthly price.

131.    The essential terms of Comcast's contracts with Plaintiffs included Comcast's obligation to provide services at the monthly promised rate for the contract's duration, and to not increase its discretionary charges during the duration of the contract. Plaintiffs agreed to commit themselves to long-term contracts with significant early termination penalties in reliance on Comcast's promise of a guaranteed and fixed lower price for service during the term of the contract.

132.    Comcast has breached its contracts with Plaintiffs by increasing its prices in the middle of their promised fixed-rate contracts via increases in the Broadcast TV Fee and the Regional Sports Fee, and by failing to keep its discretionary charges constant during the contract term.

133.    Plaintiffs gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their contracts with Comcast.

134.    Comcast's breaches of its contracts with Plaintiffs have caused Plaintiffs to suffer damages, and have caused Mr. Adkins to continue to suffer damages on an ongoing basis, in an amount to be proven at trial.

135.    Comcast's contractual breaches are ongoing. Absent an order from the Court ordering Comcast to perform as it is required under its contracts, Comcast will continue to breach its contracts to the detriment of Plaintiff Adkins.

## COUNT II
### Breach of the Covenant of Good Faith and Fair Dealing

136.    Plaintiffs reallege and incorporate by reference every allegation set forth in the

1    preceding paragraphs as though alleged in this Count.

2        137.    A covenant of good faith and fair dealing is implied in every contract, including

3    Comcast's contracts with Plaintiffs.

4        138.    The material terms of Comcast's contracts with Plaintiffs include Comcast's

5    obligation to provide its services at the promised monthly rate for the contract's duration.

6        139.    Where a contract vests one party with discretion, the duty of good faith and fair

7    dealing applies, and the party exercising the discretion must do so in a manner that satisfies the

8    objectively reasonable expectations of the other party. A party may not perform an agreement in a

9    manner that would frustrate the basic purpose of the agreement and/or deprive the other party of

10   its rights and benefits under the agreement.

11       140.    It was objectionably reasonable under the circumstances, based on Comcast's

12   misrepresentations and omissions, for Plaintiffs to expect that Comcast's advertised and promised

13   monthly service price was the actual price they would pay except for equipment charges and bona

14   fide taxes and government-related fees.

15       141.    It was objectionably reasonable under the circumstances for Plaintiffs to expect

16   that Comcast would not hide price increases in the form of deceptive and inadequately disclosed

17   charges which Comcast called the Broadcast TV Fee and the Regional Sports Fee.

18       142.    It was objectionably reasonable under the circumstances for Plaintiffs to expect

19   that Comcast would not increase its service price via increases in the Fees in the middle of their

20   minimum term contracts, contrary to its promise to charge a guaranteed, fixed monthly rate.

21       143.    It was objectionably reasonable under the circumstances for Plaintiffs to expect

22   that Comcast would not double-charge them for the broadcast TV and local sports channels that

23   Comcast had promised them were already included in the advertised and promised monthly

24   package price.

25       144.    Comcast has abused any and all power it has to impose the prices charged to

26   Plaintiffs. Moreover, Comcast's conduct alleged herein is inconsistent with the reasonable

27   expectations of Plaintiffs, and is inconsistent with what an objectively reasonable consumer

28   would have expected under the circumstances.

145.    Comcast has acted in a manner that frustrates a basic purpose of its contracts with Plaintiffs, and has deprived Plaintiffs of benefits and rights that they are entitled to under their contracts with Comcast.

146.    Plaintiffs gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required under their contracts with Comcast.

147.    By reason of Comcast's breach of the implied covenant of good faith and fair dealing, Plaintiffs suffered damages, and Mr. Adkins continues to suffer damages on an ongoing basis, in an amount to be proven at trial.

148.    Comcast's breaches of the implied covenant of good faith and fair dealing are ongoing. Injunctive relief is required to prevent Comcast from further breaching the implied covenant to the detriment of Plaintiff Adkins.

## COUNT III
### Intentional Misrepresentation

149.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

150.    Comcast's misrepresentations, non-disclosures, and omissions alleged herein were made with an intent to defraud and to induce reliance by Plaintiffs.

151.    Comcast intentionally misled Plaintiffs to believe it would charge them an advertised and promised flat monthly rate for television programming, while intending to charge a much higher rate via an inadequately disclosed and deceptive Broadcast TV Fee and Regional Sports Fee.

152.    Comcast intentionally misled Plaintiffs by promising them that the charges for the broadcast television and local sports channels were included in the advertised price, when Comcast in fact intended to double-charge them for the broadcast television and local sports channels in the form of the Fees.

153.    Comcast intentionally misled Plaintiffs by inducing them into signing long-term contracts with stiff early termination penalties by promising a lower fixed monthly rate, while in fact intending to increase their monthly rate mid-contract within a few months via increases in the

Fees.

154.    Comcast intentionally deceived Plaintiffs by omitting, hiding and/or disguising said Fees in its advertising and customer agreements, and by falsely implying and/or stating that the Fees were government-related charges.

155.    Plaintiffs reasonably and justifiably relied upon Comcast's material misrepresentations, non-disclosures, and omissions in purchasing their service contracts.

156.    As a result of the foregoing: (1) Plaintiffs have been injured and have lost money or property; (2) Plaintiff Adkins continues to be harmed on an ongoing basis; and (3) Plaintiffs are entitled to injunctive relief.

**COUNT IV**
**Violations of California's Unfair Competition Law**
**California Business and Professions Code § 17200 *et seq.***

157.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

158.    Comcast's practices, misrepresentations, and omissions alleged herein constitute unlawful, unfair, or fraudulent business practices in violation of California Business and Professions Code § 17200 *et seq*.

159.    Comcast perpetrates this massive bait-and-switch scheme in order to increase demand for its services and to increase its profits, to the detriment of its customers.

160.    Comcast intentionally misled Plaintiffs and California consumers to believe it would charge them an advertised and promised flat monthly rate for television programming, but in fact Comcast charged a much higher rate via an inadequately disclosed and deceptive Broadcast TV Fee and Regional Sports Fee.

161.    Comcast intentionally misled Plaintiffs and California consumers by promising them that the charges for the broadcast television and local sports channels were included in the advertised price, when in fact Comcast intended to double-charge them for the broadcast television and local sports channels in the form of the Fees.

162.    Comcast intentionally misled Plaintiffs and California consumers by inducing them into signing long-term contracts with stiff early termination penalties by promising a lower

fixed monthly rate, while in fact intending to increase their monthly rate mid-contract within a few months via increases in the Fees.

163.    Comcast intentionally deceived Plaintiffs and California consumers by omitting, hiding and/or disguising said Fees in its advertising and customer agreements, and by falsely implying and/or stating that the Fees were government-related charges.

164.    The misrepresentations and omissions by Comcast alleged herein were the type of representations and omissions that are regularly considered to be material, i.e., a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

165.    Plaintiffs reasonably relied upon Comcast's material misrepresentations and omissions in purchasing their service contracts.

166.    As a result of the foregoing, Plaintiffs and other California consumers: (1) have been injured and have lost money or property; (2) continue to be harmed on an ongoing basis; and (3) are entitled to restitution and injunctive relief.

167.    Unless restrained by this Court, Comcast will continue to engage in unfair, deceptive, and unlawful conduct, as alleged above, in violation of California Business and Professions Code § 17200 *et. seq.*, harming Plaintiffs and other California consumers.

**COUNT V**
**Violations of California Business and Professions Code § 17500 *et seq.* ("FAL")**

168.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

169.    Comcast has committed acts of untrue and misleading advertising, as defined by California Business and Professions Code § 17500 ("False Advertising Law" or "FAL"), by engaging in the acts and practices described herein with the intent to induce consumers to purchase its service plans.

170.    Comcast falsely advertised to Plaintiffs and California consumers that it would charge them a flat monthly rate for television programming, when in fact Comcast intended to charge them a much higher rate via an inadequately disclosed and deceptive Broadcast TV Fee

1    and Regional Sports Fee.

2        171.    Comcast falsely advertised to Plaintiffs and California consumers that the charges

3    for the broadcast TV and local sports channels were included in the advertised price, when in fact

4    Comcast intended to double-charge them for the broadcast television and local sports channels in

5    the form of the Fees.

6        172.    Comcast falsely advertised to Plaintiffs and California consumers that the long-

7    term contracts it advertised were at a fixed monthly rate, when in fact Comcast intended to

8    increase their monthly rate mid-contract within a few months via increases in the Fees.

9        173.    Comcast intentionally deceived Plaintiffs and California consumers by omitting,

10   hiding and/or disguising said Fees in its advertising and customer agreements, and by falsely

11   implying and/or stating that the Fees were government-related charges.

12       174.    Comcast's misrepresentations and omissions deceive or have a tendency to

13   deceive the general public.

14       175.    The misrepresentations and omissions by Comcast alleged herein were the type of

15   representations and omissions that are regularly considered to be material, i.e, a reasonable person

16   would attached importance to them and would be induced to act on the information in making

17   purchase decisions.

18       176.    Plaintiffs reasonably relied on Comcast's false advertising in purchasing their

19   service contracts.

20       177.    As a result of the foregoing, Plaintiffs and other California consumers: (1) have

21   been injured and have lost money or property; (2) continue to be harmed on an ongoing basis; and

22   (3) are entitled to restitution and injunctive relief.

23       178.    Unless restrained by this Court, Comcast will continue to engage in untrue and

24   misleading advertising, as alleged above, in violation of California Business and Professions

25   Code § 17500 *et seq.*, harming Plaintiffs and other California consumers.

26                          **COUNT VI**
       **Violations of California's Consumer Legal Remedies Act ("CLRA")**
27                **California Civil Code § 1750 *et seq.***

28       179.    Plaintiffs reallege and incorporate by reference every allegation set forth in the

preceding paragraphs as though alleged in this Count.

180.     Comcast is a "person," as defined by California Civil Code § 1761(c).

181.     Plaintiffs are "consumers," as defined by California Civil Code § 1761(d).

182.     The service plans marketed and sold by Comcast constitute "goods" and "services" as defined by California Civil Code § 1761(a) and (b).

183.     Plaintiffs' purchases of Comcast's services constitute "transactions," as defined by California Civil Code § 1761(e).

184.     Venue is proper under California Civil Code § 1780(d) because a substantial portion of the transactions at issue occurred in this county. Plaintiffs' declarations establishing that this Court has proper venue for this action are attached hereto as **Exhibit Y**.

185.     Comcast intentionally misled Plaintiffs and California consumers to believe it would charge them an advertised and promised flat monthly rate for television programming, but in fact Comcast charged a much higher rate via an inadequately disclosed and deceptive Broadcast TV Fee and Regional Sports Fee.

186.     Comcast intentionally misled Plaintiffs and California consumers by promising them that the charges for the broadcast TV and local sports channels were included in the advertised price, when Comcast in fact intended to double-charge them for the broadcast television and local sports channels in the form of the Fees.

187.     Comcast intentionally misled Plaintiffs and California consumers by inducing them into signing long-term contracts with stiff early termination penalties by promising a lower fixed monthly rate, while in fact intending to increase their monthly rate mid-contract within a few months via increases in the Fees.

188.     Comcast intentionally deceived Plaintiffs and California consumers by omitting, hiding and/or disguising said Fees in its advertising and customer agreements, and by falsely implying and/or stating that the Fees were government-related charges.

189.     Comcast's misrepresentations, active concealment, and failures to disclose violated the CLRA in ways including, but not limited to, the following:

a.     Comcast misrepresented that its service plans had characteristics, benefits,

1   or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

2           b.      Comcast advertised its services with an intent not to sell them as advertised

3   (Cal. Civ. Code § 1770(a)(9));

4           c.      Comcast made false or misleading statements of fact concerning reasons

5   for, existence of, or amounts of price reductions (Cal. Civ. Code § 1770(a)(13));

6           d.      Comcast misrepresented that its service plans conferred rights, remedies or

7   obligations that they did not have (Cal. Civ. Code § 1770(a)(14));

8           e.      Comcast misrepresented that its service plans were supplied in accordance

9   with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)); and

10          f.      Comcast inserted unconscionable provisions in its customer contracts (Cal.

11  Civ. Code § 1770(a)(19)).

12      190.    Comcast's misrepresentations and nondisclosures regarding its service plans were

13  material to Plaintiffs because Plaintiffs considered, and a reasonable person would have

14  considered, them important in deciding whether to purchase Comcast's service plans, and because

15  Comcast had a duty to disclose the truth.

16      191.    Plaintiffs reasonably relied upon Comcast's material misrepresentations and

17  nondisclosures, and had they known the truth, they would have acted differently.

18      192.    As a direct and proximate result of Comcast's material misrepresentations and

19  nondisclosures, Plaintiffs have suffered monetary damages and been irreparably harmed.

20      193.    Plaintiffs seek injunctive relief in the form of an order enjoining Comcast from

21  making such material misrepresentations and omissions, and to cease charging the Fees to

22  Plaintiffs and other California customers who are currently under Minimum Term Agreement

23  contracts which were procured via said material misrepresentations and omissions.

24      194.    In accordance with California Civil Code §1782(a), on December 24, 2015,

25  Plaintiffs' counsel served Comcast with notice of its CLRA violations on behalf of Plaintiff

26  Christopher Robertson by certified mail, return receipt requested. See **Exhibit U**. Comcast Senior

27  Vice President Thomas R. Nathan responded to the CLRA notice demand letter in a letter to

28

Plaintiffs' counsel dated February 25, 2016 in which Comcast denied liability and refused to provide any of the requested relief whatsoever. See **Exhibit C**.

195.    On October 8, 2016, Plaintiffs' counsel emailed to Comcast paralegal Claudia Salcedo a CLRA notice demand letter on behalf of Plaintiff Adkins addressed to Mr. Nathan. See **Exhibit Q**. Ms. Salcedo acknowledged receipt of the notice in a reply email on October 10, 2016. See **Exhibit Z**.

196.    Comcast did not respond to the second CLRA notice letter except to acknowledge its receipt.

197.    Comcast has failed to provide appropriate relief for its CLRA violations within 30 days of its receipt of Plaintiffs' demand notices. Accordingly, pursuant to Cal. Civ. Code §§1780 and 1782(b), Plaintiffs Christopher Robertson and Dan Adkins are entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

## COUNT VII
### Injunctive Relief

198.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

199.    If not enjoined by order of this Court, Comcast will continue to injure Plaintiffs and California consumers through the misconduct alleged herein.

200.    Plaintiffs seek the following injunctive relief:  (1) that Comcast be enjoined from advertising and promising a price for its services that does not include the applicable amounts currently described by Comcast as the Broadcast TV Fee and the Regional Sports Fee; (2) that Comcast be required to include all charges it imposes to reimburse itself for its contractual payments to the broadcast television stations and local sports channels in its advertised, promised, and stated price for its services, including in the top-line price for the service plans in its advertising and on its customer bills; (4) that Comcast be enjoined from falsely characterizing or implying that the Broadcast TV Fee and the Regional Sports Fee are taxes or government-related fees; and (5) that Comcast be enjoined from charging the Broadcast TV Fee and the Regional

Sports Fee to customers who are currently under Minimum Term Agreement contracts which were procured via the misconduct alleged in this Complaint.

201.   Plaintiffs and California consumers will be irreparably injured if Comcast continues in its present course of conduct.

202.   Pecuniary compensation will not afford adequate relief.

203.   The balance of the equities favors this Court's issuance of the relief requested by Plaintiff.

204.   The public interest and public policy favor this Court's issuance of the relief requested by Plaintiffs.

## COUNT VIII
### Declaratory Relief

205.   Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

206.   Plaintiffs are persons interested under the California Declaratory Judgment Act (California Code of Civil Procedure § 1060 et seq.), and, as such, desire a declaration of their rights or duties with respect to another, or in respect to property in this actual controversy relating to the legal rights and duties of the respective parties.

207.   Plaintiffs do not have a plain, speedy and/or adequate remedy in the ordinary course of law.

208.   Plaintiffs are entitled to the relief demanded, and the relief, or any part thereof, consists in declaratory relief to restrain the commission or continuance of the acts complained of.

209.   For example, and without limitation, Plaintiffs are entitled to the following declaratory relief: (1) a finding that Comcast has engaged in unfair, unlawful, and/or fraudulent business acts or practices in violation of California law; (2) that Comcast stop advertising and promising a price for its services that does not include the applicable amounts currently described by Comcast as the Broadcast TV Fee and the Regional Sports Fee; (3) that Comcast include all charges it imposes to reimburse itself for its contractual payments to the broadcast television stations and local sports channels in its advertised, promised, and stated price for its services,

1    including in the top-line price for the service plans in its advertising and on its customer bills; (4)

2    that Comcast stop falsely characterizing or implying that the Broadcast TV Fee and Regional

3    Sports Fee are taxes or government-related fees; and (5) that Comcast cease charging the

4    Broadcast TV Fee and Regional Sports Fee to customers who are currently under Minimum Term

5    Agreement contracts which were procured via the misconduct alleged in this Complaint.

6         210.    Plaintiffs and California consumers will be irreparably injured if Comcast

7    continues in its present course of conduct.

8         211.    Pecuniary compensation will not afford adequate relief.

9         212.    The balance of the equities favors this Court's issuance of the relief requested by

10   Plaintiffs.

11        213.    The public interest and public policy favor this Court's issuance of the relief

12   requested by Plaintiffs.

13                              **PRAYER FOR RELIEF**

14        Plaintiffs request that the Court order relief and enter judgment against Comcast as

15   follows:

16        1.    An order that Comcast is permanently enjoined from its misconduct as alleged

17   herein;

18        2.    An order that Comcast cease charging the Fees to customers who are currently

19   under Minimum Term Agreement contracts which were procured via the misconduct alleged

20   herein;

21        3.    A judgment awarding Plaintiffs restitution, including, without limitation,

22   restitutionary disgorgement of all profits and unjust enrichment that Comcast obtained as a result

23   of its misconduct as alleged;

24        4.    A judgment awarding Plaintiffs actual damages;

25        5.    A judgment awarding Plaintiffs punitive, exemplary and/or treble damages;

26        6.    Pre-judgment and post-judgment interest;

27        7.    Attorneys' fees to the extent allowed by law, including, without limitation,

28   attorneys' fees if authorized pursuant to Code of Civil Procedure §1021.5 (private attorney

general);

8.    Costs to the extent allowed by law; and

9.    All other and further relief as this Court deems necessary, just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  May 16, 2017                    Respectfully submitted,

By:_____
                Daniel M. Hattis

Daniel M. Hattis (SBN 232141)
HATTIS LAW
P.O. Box 1645
Bellevue, WA 98009
Telephone: (650) 980-1990
Facsimile: (425) 412-7171
Email: dan@hattislaw.com

Jason Skaggs (SBN 202190)
SKAGGS FAUCETTE LLP
430 Lytton Ave 2nd FL
Palo Alto, CA 94301
Telephone: (650) 617-3226
Email: jason@skaggsfaucette.com

Tony J. Tanke (SBN 74054)
LAW OFFICES OF TONY J. TANKE
2050 Lyndell Terrace, Suite 240
Davis, CA 95616
Telephone: (530) 758-4530
Email: appeals@tankelaw.com

Attorneys for Plaintiffs

THIRD AMENDED COMPLAINT
CASE NO. 3:16-CV-05969-VC