MICHAEL J. STORTZ (SBN 139386)
michael.stortz@dbr.com
MATTHEW J. ADLER (SBN 273147)
matthew.adler@dbr.com
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105-2235
Telephone:     (415) 591-7500
Facsimile:     (415) 591-7510

SEAMUS C. DUFFY (*pro hac vice*)
seamus.duffy@dbr.com
MICHAEL W. MCTIGUE JR. (*pro hac vice*)
michael.mctigue@dbr.com
MICHAEL P. DALY (*pro hac vice*)
michael.daly@dbr.com
MEREDITH C. SLAWE (*pro hac vice*)
meredith.slawe@dbr.com
DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA  19103-6996
Telephone:     (215) 988-2700
Facsimile:     (215) 988-2757

Attorneys for Defendants
COMCAST CORPORATION and COMCAST
CABLE COMMUNICATIONS, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAN ADKINS and CHRISTOPHER ROBERTSON,<br>individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMCAST CORPORATION; and COMCAST CABLE COMMUNICATIONS, LLC,<br><br>Defendants. | Case No. 3:16-cv-05969-VC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:   July 27, 2017<br>Time:   10:00 AM<br>Ctrm:   4<br>Judge:  Hon. Vince Chhabria |

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND & PROCEDURAL HISTORY ................................................. 2

III.  DISCUSSION ....................................................................................................... 2

    A.    Plaintiffs Have Not Stated A Claim For Breach Of Contract (Count 1)................ 2

    B.    Plaintiffs Have Not Stated A Claim For Breach Of An Implied Duty (Count 2) ............................................................................................................... 3

    C.    Plaintiffs Have Not Stated A Claim For Consumer Fraud (Counts 4 through 6) ............................................................................................................. 4

        1.    Mr. Adkins Lacks Standing To Sue for Consumer Fraud ......................... 4

        2.    Plaintiffs Fail to Show That a Reasonable Consumer Would Be Misled ................................................................................................................ 5

    D.    Plaintiffs Have Not Stated A Claim For Intentional Misrepresentation (Count 3) ............................................................................................................... 9

    E.    Plaintiff Robertson's Claims Are Not Pleaded with Particularity (Counts 3 through 6) ............................................................................................................. 11

    F.    Plaintiffs' Claims Are Barred By The Voluntary Payment Doctrine (All Counts) ............................................................................................................... 12

    G.    Plaintiffs Have Not Stated A Claim For Equitable Relief (Counts 3 through 8) ....................................................................................................................... 13

IV.   CONCLUSION ................................................................................................... 14

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

5
*Am. Oil Serv. v. Hope Oil Co.*,
  15 Cal. Rptr. 209 (Cal. Ct. App. 1961) ...................................................................12

6
*Bell Atlantic Corp. v. Twombly*,
7
  550 U.S. 544 (2007) ................................................................................................10

8
*Broberg v. Guardian Life Ins. Co. of Am.*,
  90 Cal. Rptr. 3d 225 (Cal. Ct. App. 2009) ...............................................................9
9

*Castagnola v. Hewlett-Packard Co.*,
10
  No. 11-5772, 2012 WL 2159385 (N.D. Cal. June 13, 2012) ....................................6

11
*Childs v. Microsoft Corp.*,
12
  489 F. App'x 224 (9th Cir. 2012) .........................................................................2-3

13
*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) .......................................................................6, 9, 10
14

*Durkee v. Ford Motor Co.*,
15
  No. 14-0617, 2014 WL 4352184 (N.D. Cal. Sept. 2, 2014) ...................................14

16
*Ebner v. Fresh, Inc.*,
17
  838 F.3d 958 (9th Cir. 2016) ....................................................................................4

18
*Freeman v. Priceline.com*,
  No. B242653, 2013 WL 5946069 (Cal. Ct. App. Nov. 7, 2013) (unpublished) .......6
19

*Freeman v. Time, Inc.*,
20
  68 F.3d 285 (9th Cir. 1995) ......................................................................................4

21
*Gardner v. Safeco Ins. Co. of Am.*,
22
  No. 14-2024, 2014 WL 2568895 (N.D. Cal. June 6, 2014) ....................................14

23
*Golden Eagle Ins. Co. v. Foremost Ins. Co.*,
  25 Cal. Rptr. 2d 242 (Cal. Ct. App. 1993) ...............................................................3
24

*Guz v. Bechtel Nat'l, Inc.*,
25
  8 P.3d 1089 (Cal. 2000) ............................................................................................4

26
*Janda v. T-Mobile USA, Inc.*,
  378 F. App'x 705 (9th Cir. 2010) ..........................................................................5-6
27

28

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009).................................................................................11

*Lowden v. T-Mobile USA, Inc.*,
   378 F. App'x 693 (9th Cir. 2010) ...............................................................................6

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992)...................................................................................................13

*Nguyen v. Nissan N. Am., Inc.*,
   No. 16-5591-LHK, 2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) ....................13, 14

*Noll v. eBay Inc.*,
   No. 11-4585, 2013 WL 2384250 (N.D. Cal. May 30, 2013)........................................6

*Philips v. Ford Motor Co.*,
   No. 14-2989, 2015 WL 4111448 (N.D. Cal. July 7, 2015).......................................14

*Plotkin v. Sajahtera, Inc.* (2003)
   131 Cal. Rptr. 2d 303 (Cal. Ct. App. 2003) ...............................................................6

*Prudential Home Mortg. Co. v. Superior Court*,
   78 Cal. Rptr. 2d 566 (Cal. Ct. App. 1998) ...............................................................13

*Rhynes v. Stryker Corp.*,
   No. 10-5619, 2011 WL 2149095 (N.D. Cal. May 31, 2011).....................................14

*Robinson Helicopter Co. v. Dana Corp.*,
   102 P.3d 268 (Cal. 2004) ...........................................................................................9

*Schwartz v. Comcast Corp.*,
   256 F. App'x 515 (3d Cir. 2007) ................................................................................3

*Scott v. Kuhlmann*,
   746 F.2d 1377 (9th Cir. 1984)...................................................................................13

*Speyer v. Avis Rent a Car Sys., Inc.*,
   415 F. Supp. 2d 1090 (S.D. Cal. 2005), *aff'd*, 242 F. App'x 474 (9th Cir. 2007) .....................6

*Steinman v. Malamed*,
   111 Cal. Rptr. 3d 304 (Cal. Ct. App. 2010) .............................................................12

*Tomek v. Apple, Inc.*,
   636 F. App'x 712 (9th Cir. 2016) ..............................................................................11

*W. Gulf Oil Co. v. Title Ins. & Tr. Co.*,
   206 P.2d 643 (Cal. Ct. App. 1949)............................................................................12

*Wolf v. Walt Disney Pictures & Television*,
   76 Cal. Rptr. 3d 585 (Cal. Ct. App. 2008) .................................................................4

STATUTES, RULES & REGULATIONS

Cal. Bus. & Prof. Code § 17204 ............................................................................4, 5

Cal. Civ. Code § 1589 ..............................................................................................3

47 C.F.R. § 76.922(f)(3) ..........................................................................................3

Fed. R. Civ. P. 9(b) ...................................................................................1, 11, 12

OTHER AUTHORITIES

*Implementation of Section of the Cable Television Consumer Protection and
    Competition Act of 1992:  Rate Regulation,*
    8 FCC Rcd. 5631 48 & n.1402 (1993) .....................................................3

Restatement (First) of Restitution § 71 (1937) ........................................ 12-13

## NOTICE OF MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on July 27, 2017 at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Vince Chhabria in Courtroom 4 of the above-entitled court, located at 450 Golden Gate Ave., 17th Floor, San Francisco, CA 94102, Defendants Comcast Corporation and Comcast Cable Communications, LLC will and hereby do move this court for an order dismissing Plaintiffs' Third Amended Complaint.

This motion seeks dismissal of the Third Amended Complaint on grounds that Plaintiffs have failed to state a claim on which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), and have failed to state with particularity their claims sounding in fraud, *see* Fed. R. Civ. P. 9(b).

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, and all papers and pleadings on file or deemed to be on file herein, and such argument as may be presented at the hearing.

Dated: June 9, 2017                                         DRINKER BIDDLE & REATH LLP


By: /s/ Michael J. Stortz
    Michael J. Stortz
    Matthew J. Adler

Attorneys for Defendants
COMCAST CORPORATION and COMCAST
CABLE COMMUNICATIONS, LLC

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.**

3    **INTRODUCTION**

4        This Court previously dismissed Plaintiffs' claims "because they ha[d] not alleged with

5    adequate specificity how they, in particular, were deceived about the fees at issue." Dkt. 64 at 1.

6    They have responded to that order in dramatically different ways. On the one hand, Mr. Adkins

7    has supplied detailed allegations regarding his ordering process—so much detail, in fact, that it is

8    now clear beyond peradventure that he was aware of all relevant facts regarding the Broadcast TV

9    and Regional Sports Fees (*i.e.*, their existence, their amount, and the fact that they were subject to

10   change during his Term Contract period) before even beginning the process of ordering, installing,

11   and activating service. In other words, he has pleaded himself out of court. On the other hand,

12   perhaps as a hedge against the dismissal of Mr. Adkins' claims, Mr. Robertson does not say what

13   disclosures he viewed, what contract terms he accepted, or, for that matter, ***how*** he signed up for

14   service. (He alleges that it may have been online, and then again that it may have been via a chat.

15   *See* TAC ¶ 66.) In other words, he has still not satisfied Rule 9(b).

16       But even from the bare facts Mr. Robertson alleges, it is clear that all of Plaintiffs' claims

17   should be dismissed. Their new intentional misrepresentation claim fails for the same reason that

18   their consumer-fraud actions do, and their claims for injunctive and declaratory relief founder on

19   the availability of an obvious and adequate remedy at law. As for their breach of contract claims,

20   Plaintiffs still allege that the two fees violated a Subscriber Agreement that expressly allowed

21   Comcast to assess "all charges associated with the Service(s), including, but not limited to . . .

22   permitted fees and cost recovery charges," and violated a Term Agreement that disclosed that

23   "Equipment, installation, taxes and fees, including Broadcast TV Fee (currently up to $6.50/mo.),

24   [and] Regional Sports Fee (currently up to $4.50/mo.) . . . are extra" and "subject to change

25   during and after the term of this Agreement." And as for their implied duty claims, they persist in

26   trying to use an implied duty to supplant their express agreements. In short, repeated revisions

27   and recent additions have not shored up their claims. Because another amendment would be

28   futile, their Third Amended Complaint ("TAC") should be dismissed with prejudice.

## II.

## BACKGROUND & PROCEDURAL HISTORY

Dan Adkins, Christopher Robertson, and six non-California Plaintiffs filed this action in October 2016.  They asserted breach-of-contract, good faith and fair dealing, unjust enrichment, and consumer fraud claims under the law of their home states.  Defendants moved to dismiss their Second Amended Complaint, pointing out that:  (1) this Court lacked personal jurisdiction over the claims of the non-California Plaintiffs; (2) this Court lacked personal jurisdiction over claims against Comcast Corporation, which has no suit-related contacts with the State of California; (3) the conduct at issue—charging and adjusting Broadcast TV and Regional Sports Fees—was expressly permitted by the parties' agreements; (4) Plaintiffs' good faith and fair dealing claims were impermissible attempts to re-write those agreements; (5) Plaintiffs had failed to demonstrate a likelihood that a reasonable consumer would be misled by the fee disclosures that had been presented to them; and (6) Plaintiffs were not entitled to equitable relief (whether in the form of an injunction, restitution, disgorgement, or otherwise) because they possessed an adequate remedy at law.  The Court heard argument and then: (1) dismissed the non-California Plaintiffs' claims for lack of personal jurisdiction; and (2) dismissed the California Plaintiffs' claims, albeit without prejudice, for failure to state a claim.  *See* Dkt. 64 at 1.[1]  Plaintiffs filed the TAC on May 16, 2017.

## III.

## DISCUSSION

### A.   Plaintiffs Have Not Stated A Claim For Breach Of Contract (Count 1)

Plaintiffs' breach of contract claims should be dismissed because nothing in the Subscriber Agreement or Term Agreement prohibits Comcast from charging the Broadcast TV Fee or Regional Sports Fee.  *See Childs v. Microsoft Corp.*, 489 F. App'x 224, 225 (9th Cir. 2012)

---

[1]   The Court denied the request to dismiss claims against Comcast Corporation for lack of personal jurisdiction, concluding that it was a party to Plaintiffs' Subscriber Agreements.  *See* Dkt. 64 at 1.  Comcast Corporation denies that it is a party to that agreement and hereby preserves its right to seek further review of that jurisdictional issue.  In light of the Court's ruling, however, Comcast Corporation joins here in seeking dismissal with prejudice of Plaintiffs' claims.

("Childs failed to state a claim for breach . . . because he did not cite a provision of that contract that Microsoft violated.").  On the contrary, the Subscriber Agreement states that subscribers "agree to pay all charges associated with the Service(s), including, but not limited to . . . permitted fees and cost recovery charges."  TAC Ex. A ¶ 2(a).  Because the FCC has held that retransmission consent costs may be passed through to subscribers,[2] it is indisputable that these fees are "permitted fees and cost recovery charges."  The Term Agreements are also clear, as they identify both the Broadcast TV Fee and Regional Sports Fee by name, explain that they "are extra" (i.e., above and beyond the base price), and note that they are "subject to change during and after the term of this Agreement."  TAC Ex. P ¶ 4.[3]  In short, Plaintiffs cannot identify any provision of any contract that was breached by anyone.[4]  This claim should therefore be dismissed.

**B.**     **Plaintiffs Have Not Stated A Claim For Breach Of An Implied Duty (Count 2)**

Plaintiffs' claim for breach of the implied duty of good faith and fair dealing should be dismissed because they would use that claim to rewrite their contracts.  The duty of good faith and fair dealing requires only that a party with discretion under a contract must exercise that discretion reasonably rather than arbitrarily, capriciously, or maliciously.  What it does ***not*** do is

---

[2]     *In re Implementation of Section of the Cable Television Consumer Protection and Competition Act of 1992:  Rate Regulation*, 8 FCC Rcd. 5631, 5967 ¶¶ 545-48 & n.1402 (1993); *see also* 47 C.F.R. § 76.922(f)(3) (listing "[r]etransmission consent fees" as an "external cost" that may be "passed-through" to subscribers).

[3]     Although Mr. Robertson claims that he did not receive his Term Agreement until months after his service was installed, he admits that he saw essentially the same ordering pages that Mr. Adkins did.  *See* TAC ¶ 60.  Those ordering pages included an order-submittal page with a hyperlink reference to a "Minimum Term Agreement" that informs subscribers that their services are subject to a minimum term agreement; and that failure to cancel the Term Agreement within 30 days of activation of their cable service will constitute acceptance of the Term Agreement's provisions.  TAC Exs. K, L.  Having been informed of the agreement's existence and told that receiving service for 30 days would manifest his assent, they cannot now suggest that they did not accept those agreements.  *See Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 25 Cal. Rptr. 2d 242, 251 (Cal. Ct. App. 1993); Cal. Civ. Code § 1589; *see also Schwartz v. Comcast Corp.*, 256 F. App'x 515, 518 (3d Cir. 2007) (awareness of the existence of an agreement, coupled with acceptance of service under that agreement, was sufficient to bind customer to that agreement).  Moreover, ***both*** Plaintiffs acknowledge that they were able to access their respective Term Agreements via "the Comcast customer web portal."  TAC ¶ 47 (Adkins) (footnote omitted); *accord id.* ¶ 86 (Robertson).

[4]     To the extent Plaintiffs seek to assert that any advertised prices are part of their "contract," that contention is foreclosed by their agreements' integration clauses.  *See* TAC Ex. A ¶ 15(a).

1  override the express terms of a contract or supply additional substantive obligations beyond those

2  stated in the contract itself.  *See, e.g.*, *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110 (Cal. 2000).

3  Yet that is precisely what Plaintiffs would do here.  All of the conduct that they cite in

4  support of this claim—requiring payment of charges above and beyond the base monthly price of

5  service, structuring those charges as discrete fees related to the carriage of broadcast channels and

6  regional sports programming, and increasing the fees during term contract periods—is expressly

7  addressed and permitted by the parties' contracts.  *See, e.g.*, TAC ¶¶ 140-45; Section III.A, *supra*.

8  As a matter of law, then, those allegations cannot support a claim for breach of this implied duty.[5]

9  **C.**   **Plaintiffs Have Not Stated A Claim For Consumer Fraud (Counts 4 through 6)**

10  To state a claim under California's consumer-fraud statutes, Plaintiffs must plead facts

11  showing that a reasonable consumer would have been misled by the representations in question,[6]

12  and that he "has suffered injury in fact and has lost money or property ***as a result of***" the

13  challenged practice.[7]  Here, Plaintiffs have not done and cannot do either, let alone both.

14  **1.**   **Mr. Adkins Lacks Standing To Sue for Consumer Fraud**

15  In the TAC, Mr. Adkins freely admits that he saw and read the "Pricing & Other Info."

16  disclosure before he even began the online ordering process for his Comcast cable package.

17  Specifically, he admits that he read through the "Pricing & Other Info." disclosure paragraph

18  displayed at Exhibit F.  *See* TAC ¶ 24 & Ex. F.  Indeed, Mr. Adkins goes so far as to admit that

19  he has read that entire disclosure (in order to find information included at the end of the paragraph)

20  and compared two different iterations of it to ensure that they were identical.  *Id.*  Having done so,

21  Mr. Adkins knew—before even adding a single item to his order—(1) that he would be charged a

---

[5]     In opposing the first Motion to Dismiss, Plaintiffs argued that they could use the covenant of good faith and fair dealing to rewrite their contracts because those contracts are illusory.  *See* Dkt. No. 59 at 12 (citing *Wolf v. Walt Disney Pictures & Television*, 76 Cal. Rptr. 3d 585, 598 (Cal. Ct. App. 2008)).  That argument fails, however, because whether a contract is illusory turns on whether it is "supported by adequate consideration," *Wolf*, 76 Cal. Rptr. 3d at 598, and Plaintiffs do not even purport to challenge the adequacy of consideration here.

[6]     *See, e.g.*, *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (UCL, CLRA, and FAL claims).

[7]     *See* Cal. Bus. & Prof. Code § 17204 (emphasis added).

"Broadcast TV Fee" and a "Regional Sports Fee"; (2) the approximate amount of the fees ($5.00 and $3.00, respectively); (3) that those fees were "extra;" and (4) that the amount of the fees was "subject to change **during and after the promo**" period. *Id.* Ex. F (emphasis added).  Given that disclosure, he has absolutely no basis for claiming that he "lost money or property **as a result of**" any alleged inadequacy in the existence, placement, or prominence of the disclosure. Cal. Bus. & Prof. Code § 17204 (emphasis added).

### 2.    Plaintiffs Fail to Show That a Reasonable Consumer Would Be Misled

Largely ignoring the significance of the many disclosures during the purchasing process, Plaintiffs instead focus on how the "base monthly total" price—*i.e.*, the price before taxes, fees, equipment charges, and one-time charges—is displayed on a few screens during that process. That base price is displayed in a "My Order Summary" box that appears on the right side of a few interstitial pages.  *See* TAC Exs. G-I.  In that box, there is a line item for "Monthly Total," which a pop-up defines as "the **base** monthly total of all recurring charges for the services you have selected."  TAC Ex. J (emphasis added).  That price, the pop-up further explains, "does not include tax or one-time charges (such as installation or Pay-Per-View fees) that may appear on individual bills." *Id.*

Plaintiffs contend that this description is misleading because it does not reference the Broadcast TV and Regional Sports Fees.  TAC ¶ 31.  That is wrong for several reasons.  First, even when viewed in isolation, the My Order Summary box and pop-up are not misleading because they present only the "**base**" monthly charge, not an all-in monthly total for service—a fact which is reinforced by the notation that taxes and various other charges are not included. TAC Ex. J.

Second, and more importantly, Plaintiffs' argument rests on cherry-picking isolated segments of the ordering process rather than analyzing the experience as a whole.  Such selective myopia is inconsistent with California law, which instead requires courts to evaluate the entire continuum of communications—in context—to determine whether they would be materially misleading to a **reasonable** consumer.  *See, e.g., Janda v. T-Mobile USA, Inc.*, 378 F. App'x 705, 707 (9th Cir. 2010) (affirming dismissal of CLRA, UCL and FAL claims because, although

1  certain fees were not included in the advertised price of service, those fees were disclosed in the
2  "terms and conditions" portion of customer's contract); *Castagnola v. Hewlett-Packard Co.*, No.
3  11-5772, 2012 WL 2159385, at *9-10 (N.D. Cal. June 13, 2012) (online offer was not deceptive,
4  despite not disclosing the price of the service on the face of the website, because there were
5  repeated references on the web site to an "offer details" link that a customer could click on to see
6  the fees); *Freeman v. Priceline.com*, No. B242653, 2013 WL 5946069, at *7 (Cal. Ct. App. Nov.
7  7, 2013) (unpublished) (rejecting claim that television ads were deceptive for failing to include
8  disclosures of additional fees beyond advertised price because the ads "in no way enable a
9  customer to bypass or otherwise avoid the multiple disclosures on Priceline's Web site"); *see also*
10 *Lowden v. T-Mobile USA, Inc.*, 378 F. App'x 693, 695 (9th Cir. 2010) (applying Washington's
11 "reasonable consumer" test to dismiss consumer fraud claims because the defendant's contract
12 "adequately disclosed that it would pass along regulatory fees . . . to its customers").[8]

13      Third, when the order summary box and associated information are considered as part of
14 the broader ordering process—as they must be under California law—it becomes clear that no
15 reasonable consumer could be misled as to the existence or nature of the Broadcast TV and
16 Regional Sports Fees.  As Defendants explained more fully in their first Motion to Dismiss, that
17 process is awash with disclosures, starting with Comcast's advertising materials, continuing

---

20 [8]     *See also Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (failure
21 to disclose that credit card had an annual fee held not to violate the FAL because consumers knew
there would be "numerous other costs of owning a credit card" and that the addition of an annual
fee would not so change the calculus for a reasonable consumer as to be deceptive); *Castagnola v.
22 Hewlett-Packard Co.*, No. 11-5772, 2012 WL 2159385, at *9-10 (N.D. Cal. June 13, 2012)
(online offer was not deceptive, despite not disclosing price of service on the face of the website,
23 because there were repeated references on the website to an "offer details" hyperlink that would
display the fees when clicked on); *Speyer v. Avis Rent a Car Sys., Inc.*, 415 F. Supp. 2d 1090,
24 1100 (S.D. Cal. 2005) (rejecting UCL challenge to cost recovery fee not reflected in base rate for
rental cars), *aff'd*, 242 F. App'x 474 (9th Cir. 2007); *Noll v. eBay Inc.*, No. 11-4585, 2013 WL
25 2384250, at *5 (N.D. Cal. May 30, 2013) (failure to note in the body of fee schedule that certain
fees would recur on a monthly basis held not deceptive because "[t]he disclosure appears at the
26 end of the Fee Schedules in a section entitled 'The fine print[,]' . . . [which] follows the fee tables,
appears in the same font as the rest of the fee schedule, bears a bolded title, and is relatively
27 short"); *cf. Plotkin v. Sajahtera, Inc.* (2003) 131 Cal. Rptr. 2d 303, 312 (Cal. Ct. App. 2003)
("there is no requirement [in the UCL] that reasonable notice has to be the best possible notice").

through the ordering process, and lasting throughout the subscriber's first 30 days of service, during which she can cancel her service without any cost or penalty.  *See generally* Dkt. 46 at 3-7.

As just noted, that process begins with advertising material that discloses the existence and amount of the fees and, most importantly for present purposes, that they are "extra."  *See, e.g.,* TAC Ex. S.  The online ordering process (which Plaintiffs utilized here) continues with a package-selection page where all available packages are laid out in rows, with each row containing a disclosure embedded in a "Pricing & Other Info." hyperlink that is located directly below the "Add to Cart" button.  *Id.* Ex. E.  That disclosure, which Mr. Adkins acknowledges having read, informs customers of the existence of the fees, their then-prevailing amount, and that they are "extra, and subject to change during and after the promo."  *Id.* Ex. F.  As Plaintiffs admit, that cable package-selection page, with the disclosure just described, comes ***before*** the webpage on which the "My Order Summary" box first appears.  *Id.* ¶ 28.[9]  Accordingly, by the time a prospective subscriber would have seen the "My Order Summary" box showing her base monthly price, she would already have received notice that the displayed base price was not all-inclusive.

Were that not enough, the cascade of disclosures continues through the remainder of the purchasing process.  For example, before submitting an order, a prospective subscriber must check a box indicating that she has "read and agree[d] to the Comcast Agreement for Residential Services" and has "read and agree[d] to the terms of the Minimum Term Agreement."  *Id.* Ex. K. [10]  The phrases "Comcast Agreement for Residential Services" and "Minimum Term

---

[9]   Plaintiffs' desire for a tunnel-vision focus on particular aspects of the ordering process is especially evident in their complaint about the lack of a Broadcast TV and Regional Sports Fee disclosure on the "TV Options" and "Internet Options" screens during that process.  TAC ¶¶ 28-29.  When those pages are considered in context, however, the reason for that is obvious:  those fees are not in any way related to the content of either page.  For example, the TV Options page allows a customer to choose how many TVs she would like to connect, and whether she would like to add premium channels like HBO or Showtime.  TAC Ex. J; *see also id.* Ex. G (same page, sans pop-up).  The TV Options page, in other words, does not allow customers to select (or modify their selection of) a TV package containing broadcast or regional sports stations.  *See* TAC Exs. G, J.  The Internet Options page is even less germane, as it allows customers to choose what modem/Wi-Fi equipment they will use to receive internet service.  *Id.* Ex. H.

[10]   The order submittal page provides additional, similar notices that the customer's bill will include additional fees and charges.  For example, there is a statement at the bottom of the page alerting customers that "[e]quipment, installation, taxes and fees, including regulatory recovery fees and other applicable charges extra."  TAC Ex. K.

Agreement" are both hyperlinks.  When one clicks on the "Comcast Agreement for Residential Services" hyperlink, a new window opens and displays the Subscriber Agreement, which provides (on the first page of the agreement) that the subscriber "agree[s] to pay all charges associated with the Service(s), including, but not limited to . . . permitted fees and cost recovery charges."  *Id.* Ex. A ¶ 2(a).  And when one clicks on the "Minimum Term Agreement" hyperlink, Plaintiffs allege that the hyperlink opens a page which tells the customer that she is subject to such an agreement that will go into effect within 30 days of service activation unless the customer cancels her service within that 30-day period, which the customer may do during that period "without incurring an early termination fee."  *Id.* Ex. L.[11]

The Term Agreement provides that, "Equipment, installation, taxes and fees, including Broadcast TV Fee (currently up to $6.50/mo.), Regional Sports Fee (currently up to $4.50/mo.) and if XFINITY Digital Voice is included, regulatory recovery fees and other applicable charges (e.g. per-call or international charges) are extra, such charges and fees are subject to change during and after the term of this Agreement."  TAC Ex. P (Term Agreement ¶ 4).  The Term Agreement also advises the subscriber that cancellation within 30 days after service activation will be without penalty, *id.* ¶ 2, and that, if the subscriber does ***not*** cancel service within 30 days, the subscriber will be billed at the rates specified in the Term Agreement, *id.* ¶ 1.

Finally, each subscriber receives the first monthly bill within that same 30-day cancellation period.  That bill shows the challenged fees (1) as additional charges above and beyond the base monthly service charge; and (2) broken out as individual line items in a section of the bill entitled, "Other charges and credits" (***not***, it should be noted, in the "Taxes and fees" section of the bill).  *See* TAC Ex. N. at 3; *id.* R at 3; *id.* Ex. T at 3; *id.* Ex. V at 2; *id.* Ex. W at 3.  That same page defines both of those fees:  "The Broadcast TV Fee recovers a portion of the

---

[11]     The TAC is curiously silent on what information appears if one clicks on a second "minimum term agreement" hyperlink on the order submittal page (located, in Exhibit K, just below "Starter XF Double Play" in the top-left section of the screen.  *Cf.* TAC ¶ 26 (noting that Mr. Adkins "decided to take screenshots . . . of nearly every page of the order process").

1    costs of retransmitting television broadcast signals," and the "Regional Sports Fee recovers a

2    portion of the costs to transmit certain regional sports networks."  *E.g.*, *id.* Ex. R at 3.

3         The sum total of these disclosures compels the conclusion that a reasonable consumer

4    would not be misled into thinking that the base price advertised in promotional materials, or

5    displayed in the "My Order Summary" box, is the all-in (or even the all-in-except-for-taxes) price

6    of cable service.  It follows that Plaintiffs' consumer fraud claims should be dismissed.

7    **D.     Plaintiffs Have Not Stated A Claim For Intentional Misrepresentation (Count 3)**

8         The elements of intentional misrepresentation are: "(1) a misrepresentation (false

9    representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to

10   defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."  *Robinson*

11   *Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004).  Plaintiffs' own allegations confirm

12   that they cannot satisfy this test.

13        For the reasons stated in Section III.C, *supra*, Plaintiffs cannot show the existence of any

14   actual misrepresentation or resulting damage.  Nor can they show that they ***justifiably*** relied on

15   the "representation" that there would be no add-ons to their base prices save taxes and other

16   government levies.  That is because, in "an action for fraud under California law, recovery shall

17   be denied '[i]f the conduct of the plaintiff [in relying upon a misrepresentation] in the light of his

18   own intelligence and information was manifestly unreasonable.'"  *Davis*, 691 F.3d at 1163

19   (quoting *Broberg v. Guardian Life Ins. Co. of Am.*, 90 Cal. Rptr. 3d 225, 232 (Cal. Ct. App. 2009)

20   (alterations in original).  Mr. Adkins, for example, admits that he saw, clicked on, read, and took

21   a screenshot of the detailed disclosures contained in the "Pricing & Other Info." link.  *See* TAC

22   ¶¶ 24, 27 & Ex. F.  Mr. Robertson is in a similar boat; although he does not admit to having read

23   the fee disclosures before purchasing service, he does concede that he received a direct-mail

24   advertisement containing the disclosure, *id.* ¶¶ 56-57 & Ex. S; that he went through the online

25   ordering process, *id.* ¶¶ 58-59 (which, as Mr. Adkins's experience shows, is littered with

26   disclosures of the fees, their current amounts, the fact that they are "extra," and that they are

27   "subject to change during and after" the period of any term contract); and that he received a

28   monthly bill (within a month of signing up for service), *id.* ¶ 70, which presented the fees in

separate line items in the "Other Charges & Credits" section of his bill (*not* in the "Taxes, Surcharges & Fees" section) and defined both fees. He offers no explanation for how, in the face of the foregoing, it would have been "justifiable" to maintain his alleged belief that all he would pay was a base price of $44.99 plus tax. Nor could he. *See Davis*, 691 F.3d at 1163 ("where, as here, the parties to an agreement deal at arm's length, it is not reasonable to fail to read a contract before signing it." (citing cases)).

Finally, Plaintiffs plead no facts showing either knowledge of falsity or intent to defraud. Instead, they rely on what amounts to a close cousin of *res ipsa loquitur*: Because Comcast's representations are, in their view, misleading, Comcast must have (1) known of their falsity and (2) intended for Plaintiffs and other prospective subscribers to rely on them. There are several problems with that reasoning. First, for the reasons noted immediately above and in Section III.C, the representations in question would not be materially misleading to a reasonable consumer. Second, the fact that a statement, viewed in isolation, might *confuse* a consumer does not automatically raise a plausible inference that a defendant *intended* to confuse a consumer. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasizing that complaints must state enough facts to "nudge" their claims "across the line from conceivable to plausible").

Such an inference would be particularly implausible here, given the number and variety of channels through which current and prospective subscribers are informed about the fees. Indeed, if Plaintiffs were correct that Defendants were attempting to dupe prospective customers by hiding the fees or passing them off as government levies, Defendants' efforts would rank as one of the worst-run frauds in history. For example, Plaintiffs acknowledge (as they must) that Comcast Cable's print advertising, TAC Ex. S, online-ordering process, *id.* Exs. E-F, Term Agreements, *id.* Exs. P, X, and billing statements, *id.* Exs. N, R, T, V, W, all disclose (1) the existence of the fees; (2) the then-prevailing amount of the fees; and (3) that the fees are "extra" charges above and beyond subscribers' base monthly package price.[12] Similarly indisputable is

---

[12] Moreover, although these matters are outside the record for purposes of this Motion, Defendants have also pointed out that: (i) Comcast Cable fully disclosed *both* fees when they were first deployed, sending notices of the fees to Local Franchising Authorities across the

that their contracts gave them the ability to terminate their service within the first 30 days (*i.e.*, after receiving ***all*** of the disclosures canvassed above) entirely without penalty.  *Id.* Exs. P, X. Nor, for that matter, can they gainsay the fact that the FCC has held that retransmission consent costs may be passed through to subscribers.[13]  Defendants, in other words, have provided numerous disclosures throughout the various phases of the customer experience.

Because Plaintiffs have not alleged any of the elements of intentional misrepresentation, let alone all of them, it follows that this claim should be dismissed.

### E.  Plaintiff Robertson's Claims Are Not Pleaded with Particularity (Counts 3 through 6)

Rule 9(b) requires that allegations sounding in fraud must be pleaded with particularity. In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Plaintiffs' UCL, FAL, CLRA, and misrepresentation claims are all subject to this requirement. *See Tomek v. Apple, Inc.*, 636 F. App'x 712, 713-14 (9th Cir. 2016); *Kearns*, 567 F.3d at 1125.

Plaintiffs' disparate responses to the Court's dismissal of the SAC aptly illustrate the need for and utility of the particularity requirement.  On the one hand, Mr. Adkins responded by pleading a host of additional facts, which—although they do not state a claim—do at least set forth the "who, what, when, where, and how" of the alleged conduct.  *Kearns*, 567 F.3d at 1124; *see generally* TAC ¶¶ 21-49 & Exs. A, E-N, P.  For example, Mr. Adkins acknowledges reading a disclosure of the challenged fees prior to even commencing the cable-ordering process.  *See* Sections III.C-D, *supra*; TAC ¶ 24 & Ex. F.  Mr. Robertson, on the other hand, has withheld that

---

country, Ex. L. to the Revised Declaration of Claudia Salcedo, Dkt. 51; (ii) the fees are also disclosed in rate cards sent to subscribers annually, *id.* Exs. G-H; (iii) subscribers are sent a personalized video walkthrough of their first bill that specifically calls out the fees in question, *id.* Ex. Q; and (iv) Comcast Cable's publicly available website contains several different webpages on which the fees are explained, *see* https://customer.xfinity.com/help-and-support/billing/understand-your-bill/ (stating in Section 9 that there will be "other fees" including "broadcast TV fees"); https://customer.xfinity.com/help-and-support/billing/most-common-taxes-fees-surcharges-on-your-bill (**Broadcast TV Fee.  The Broadcast TV Fee is an itemized fee that recovers a portion of the costs of retransmitting broadcast television signals.**" (emphasis in original)); *id.* (**Regional Sports Network Fee.  The Regional Sports Network Fee is an itemized fee that recovers a portion of the costs of distributing regional sports networks.**" (same)).

[13]      *See supra* note 2.

additional detail—a decision that both hints at what those details would reveal and that once again prevents him from satisfying Rule 9.  In terms of **what** he saw during the ordering process, he says only that "[t]he web pages [he] viewed during the online purchase process were ***substantially similar in format, style, and content*** to the pages viewed by Plaintiff Dan Adkins, differing primarily in the prices and the specific included features."  TAC ¶ 60 (emphasis added) (citation omitted).  But he does not say **what** disclosures were displayed on each of the pages during his signup process; **how**, if at all, he was forced to acknowledge or agree to them prior to signing up for service; nor even **how** he signed up for service, *see id.* ¶ 66 ("Mr. Robertson either placed the order himself via the online order submittal webpage after speaking with [a] chat agent, or the chat agent placed the order for him").  In short, Mr. Robertson must be held to the same burden as his co-plaintiff:  pleading with particularity the facts concerning the fraud he alleges.  Because he has failed to do so, his claims should be dismissed.  And because he has failed to do so despite a number of amendments (and despite guidance from the Court to detail his experiences in pleading the TAC), that dismissal should be with prejudice.

**F.**     **Plaintiffs' Claims Are Barred By The Voluntary Payment Doctrine (All Counts)**

Plaintiffs' claims are barred by the voluntary payment doctrine because, as the TAC confirms, they were fully aware of the fees' existence and amount before they paid them.

The voluntary payment doctrine provides that a "payment voluntarily made with knowledge of the facts affords no ground for an action to recover it back."  *Am. Oil Serv. v. Hope Oil Co.*, 15 Cal. Rptr. 209, 213 (Cal. Ct. App. 1961); *Steinman v. Malamed*, 111 Cal. Rptr. 3d 304, 307-11 (Cal. Ct. App. 2010); *W. Gulf Oil Co. v. Title Ins. & Tr. Co.*, 206 P.2d 643, 648 (Cal. Ct. App. 1949).  The rule rests on the recognition that "[t]o allow a person who has made payment of a disputed debt later to seek restitution from the creditor, would be to permit him, by postponing suit, to choose his own time and place for litigation and to change his position from that of a

1  defendant to that of a plaintiff, which would be unfair to the other party."  Restatement (First) of

2  Restitution § 71 cmt. b (1937).[14]

3       That opportunistic deferral of suit is exactly what Plaintiffs have done here.  Indeed, they

4  admit as much by alleging that, after studying their bills and learning (allegedly for the first time[15])

5  that they would be charged a Broadcast TV and Regional Sports Fee, TAC ¶¶ 44, 70, they

6  decided to "stand on the contract and to demand that Comcast honor the terms it had promised

7  [them]," *id.* ¶¶ 50, 73—not by protesting and refusing to pay the fees in question, but by paying

8  the fees and then filing suit to attempt to recoup them.  That is precisely the sort of "change [in]

9  position from that of a defendant to that of a plaintiff" that the voluntary payment doctrine seeks

10  to prevent.  Restatement (First) of Restitution § 71 cmt. b.[16]

11  **G.**     **Plaintiffs Have Not Stated A Claim For Equitable Relief (Counts 3 through 8)**

12       A fundamental prerequisite of a claim for equitable relief is that the plaintiff must lack an

13  adequate remedy at law.  *See, e.g.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381

14  (1992) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . .

15  when the moving party has an adequate remedy at law.").  That is true of any claim for equitable

16  relief, including claims for injunctive relief under the UCL and CLRA.  *See Prudential Home*

17  *Mortg. Co. v. Superior Court*, 78 Cal. Rptr. 2d 566, 573 (Cal. Ct. App. 1998); *Nguyen v. Nissan N.*

18  *Am., Inc.*, No. 16-5591, 2017 WL 1330602, at *4-5 (N.D. Cal. Apr. 11, 2017).

19  ---

[14]      Although the voluntary payment doctrine is an affirmative defense, like any affirmative

20  defense, *see Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984), it can be resolved on the pleadings if the relevant facts are clear from the face of the complaint.

21  [15]      *Contra* TAC ¶ 24 (acknowledging that Mr. Adkins read the Pricing & Other Info. disclosure in full—twice—on the first page of the ordering process); TAC Ex. F (reproducing

22  disclosures that appear after clicking on Pricing & Other Info. hyperlink).

23  [16]      Making matters worse, Plaintiffs also failed to avail themselves of their right to cancel their service without penalty within 30 days of service activation.  *See* TAC Ex. P ¶ 2 (giving

24  subscribers with Term Agreements 30 days in which to cancel service without penalty); *id.* ¶ 1 ("If you do not cancel this Agreement within 30 days of the date of service installation/activation, as applicable, you will be billed for the services at the rates specified under

25  the Offer."); https://customer.xfinity.com/help-and-support/account/comcast-customer-guarantee

26  (describing ability to cancel within 30 days without charge or penalty); *see also* TAC Ex. K (showing cancellation policy on Comcast cable order submittal page); *cf.* TAC Ex. A ¶ 9(b)

27  ("Unless you have signed a minimum term addendum, you may terminate this Agreement for any reason at any time . . . .").

28

1    Here, Plaintiffs do not plead the absence of an adequate legal remedy.  To the contrary,

2    their contract, implied-duty, fraud, and CLRA claims seek an entirely adequate form of relief:

3    money damages.  TAC ¶ 134 (contract), 147 (implied-duty), 156 (fraud), 197 (CLRA).  Courts in

4    this district have not hesitated to dismiss such claims where, as here, the plaintiffs have asserted

5    other claims that would, if successful, compensate them monetarily.[17]  Consequently, Counts 4

6    (UCL), 7 (injunctive relief), and 8 (declaratory relief) should be dismissed in their entirety, as

7    should Counts 5-6 to the extent they seek injunctive or other equitable relief.[18]

8                                        **IV.**

9                                   **CONCLUSION**

10    For the foregoing reasons, Comcast respectfully requests that its Motion be granted.

11

12    Dated:  June 9, 2017                      DRINKER BIDDLE & REATH LLP

13                                             By: /s/ Michael J. Stortz
                                                 _____
14                                                 Michael J. Stortz
                                                   Matthew J. Adler
15
                                             Attorneys for Defendants
16                                           COMCAST CORPORATION and COMCAST
                                             CABLE COMMUNICATIONS, LLC
17

18

19

20

21    ───────────────────────
     [17]    *See Nguyen*, 2017 WL 1330602, at *4-5 (dismissing injunctive-relief claims brought
22    under the UCL and CLRA because plaintiff's CLRA damages claim provided adequate remedy);
     *Philips v. Ford Motor Co.*, No. 14-2989, 2015 WL 4111448, at *16-17 (N.D. Cal. July 7, 2015);
23    *Gardner v. Safeco Ins. Co. of Am.*, No. 14-2024, 2014 WL 2568895, at *7 (N.D. Cal. June 6,
     2014) (dismissing UCL claim because plaintiffs' "claims for breach of contract and breach of the
24    implied covenant of good faith and fair dealing may provide an adequate remedy"); *Durkee v.
     Ford Motor Co.*, No. 14-0617, 2014 WL 4352184, at *3 (N.D. Cal. Sept. 2, 2014); *Rhynes v.
25    Stryker Corp.*, No. 10-5619, 2011 WL 2149095, at *3-4 (N.D. Cal. May 31, 2011) ("Plaintiffs'
     argument that they will have no adequate remedy at law if their other claims fail is unavailing.
26    Where the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable
     relief is unavailable." (emphasis in original)).
27    [18]    *See* TAC ¶ 177 (Count 5); *id.* ¶ 197 (Count 6).

28