UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN ADKINS, et al.,<br><br>        Plaintiffs,<br><br>      v.<br><br>COMCAST CORPORATION, et al.,<br><br>        Defendants. | Case No. 16-cv-05969-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS**<br><br>Re: Dkt. No. 76 |

        The motion to dismiss the third amended complaint is granted in part and denied in part.

        1.      The supplemental briefing submitted by the parties on the amount-in-controversy indicates that the requirement is satisfied based on the plaintiffs' prayer for attorneys' fees and punitive damages. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).

        2.      The motion to dismiss the breach of contract claim is denied. The plaintiffs have alleged the existence of a valid contract, which was created when Adkins and Robertson submitted their order for Comcast services through Comcast's website. It is plausible to infer from the complaint that, by clicking "Submit Your Order," Adkins and Robertson agreed to pay Comcast's advertised price, plus taxes and government-related fees, in exchange for the services Comcast offered them. It is also plausible to infer from the complaint that Comcast breached its agreements with the plaintiffs when it sent them bills charging them Broadcast TV and/or Regional Sports Fees (alleged to be neither taxes nor government-related fees) in excess of the agreed-upon price, and when it subsequently sought to raise the amount of the fees.

        Comcast's arguments for why this claim should be dismissed at the pleading stage are

premised on disputed issues of fact.  First, Comcast says that the order submission could not have created a contract because of the integration clause contained in Comcast's Subscriber Agreement, which is attached to the complaint as Exhibit A.  The integration clause states that "[t]his [Subscriber] Agreement and other documents incorporated by reference constitute the entire agreement and understanding between you and Comcast with respect to the subject matter of this Agreement . . . ."  FAC Ex. A.  While the Subscriber Agreement discusses a subscriber's agreement to pay the cost of services generally, it does not appear to contain any terms pertaining to any particular price the plaintiffs allege they agreed to pay for the services they ordered.  It is therefore questionable whether the alleged order-submission contract and the Subscriber Agreement pertain to the same subject matter.  *Cf. Sullivan v. Mass. Mut. Life Ins. Co.*, 611 F.2d 261, 264-65 (9th Cir. 1979).

Second, Comcast argues that the plaintiffs agreed to pay the Broadcast TV and Regional Sports Fees under the Subscriber Agreement and Minimum Term Agreement.  With respect to the Subscriber Agreement, Comcast's argument begs the question whether "permitted fees and cost recovery charges" includes the Broadcast TV and Regional Sports fees.  As to the Minimum Term Agreement, the plaintiffs plausibly allege that they never saw this agreement at the time they submitted their order for services and have never consented to it.  Whether the plaintiffs had access to this agreement at the time they submitted their orders for services, or whether they subsequently consented to it, are disputed factual questions more appropriate for summary judgment.

3. The plaintiffs' claim for breach of implied covenant of good faith and fair dealing is dismissed because the theory of breach the plaintiffs allege is the same as the breach of contract theory.  The claim is therefore superfluous.  *See Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 352 (2000).  Dismissal is without leave to amend because the plaintiffs have now had many chances to hone their factual allegations.

4. With respect to the intentional misrepresentation and consumer fraud claims, the plaintiffs have adequately alleged that a reasonable consumer would be misled.  Adkins and

Robertson have articulated the "who, what, when, where, and how" of Comcast's alleged misrepresentations. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). When viewing their allegations regarding the ordering process as a whole, it is plausible that a reasonable consumer would be misled to think that the price of the service will be Comcast's advertised price, plus taxes, government-related fees, and any one-time installation fees. In particular, according to the complaint and its attached exhibits, the order submission page displays the advertised price – in Adkins' case, $79.99 – and represents: "This is the base monthly total of all recurring charges for the services you have selected. It does not include tax or one-time charges (such as installation or Pay-Per-View fees) that may appear on individual bills." FAC Ex. J. The $5.00 Broadcast TV Fee and $3.00 Regional Sports Fee that Comcast included on Adkins' bill were recurring monthly charges that were not included in the $79.99 advertised price.

   Comcast's disclosure, at an earlier point in the ordering process, of the Broadcast TV and Regional Sports Fees is not sufficient to say as a matter of law that a reasonable consumer would not be misled. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008); *Diacakis v. Comcast Corp.*, No. 11-cv-03002, 2012 WL 43649, at *4 (N.D. Cal. Jan. 9, 2012). The "Pricing & Other Info" disclosure tells the customer they will be charged the "extra" fees and that such fees are "subject to change," but Comcast subsequently tells customers that the advertised price is the "base monthly total of all recurring charges." These statements point in different directions. *See Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217, 231 (Ct. App. 2013); *cf. Janda v. T-Mobile USA, Inc.*, 378 Fed. App'x 705, 709 (9th Cir. 2010); *Lowden v. T-Mobile USA, Inc.*, 378 Fed. App'x 693, 695 (9th Cir. 2010).

   5. The voluntary payment doctrine does not bar the plaintiffs' claims, because there are disputed issues of fact regarding whether the plaintiffs' payments were voluntary. Adkins and Robertson allege that immediately after receiving their bills, they demanded that Comcast remove the fees. *See Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 908-09 (N.D. Cal. 2011). Comcast asserts that it offers a 30-day money-back guarantee and that customers exercising that

option can get all their money back.  But the plaintiffs allege that they were not aware of any such guarantee.  FAC ¶ 50.  It's questionable whether the voluntary payment doctrine should apply at all in a case like this, where a consumer faces a choice between paying under protest, or refusing to pay and facing late fees and a negative item on his credit report.  But, in any event, it does not bar the plaintiffs' claims under the circumstances alleged here.

6. The defendants' motion to dismiss the claims seeking equitable relief is denied.  A few federal courts seem to have decided that claims for equitable relief should be dismissed at the pleading stage if the plaintiff manages to state a claim for relief that carries a remedy at law.  *See Munning v. Gap*, No. 16-cv-03804, 2017 WL 733104, at *5-6 (N.D. Cal. Feb. 24, 2017).  But this Court is aware of no basis in California or federal law for prohibiting the plaintiffs from pursuing their equitable claims in the alternative to legal remedies at the pleadings stage.  *See Cabrales v. Castle & Cooke Mortg., LLC*, No. 14-cv-01138, 2015 WL 3731552, at *3-4 (E.D. Cal. June 12, 2015).

7. At the hearing on this motion, Comcast's counsel suggested that the plaintiffs lack standing in federal court to seek the type of "public injunction" contemplated by the provisions of California law they invoke in this case.  Comcast is probably right about this:  if the plaintiffs wish to seek injunctive relief, they likely need to so in a separate state court action.  *See Garrison v. Whole Foods Mkt. Grp.*, No. 13-cv-05222, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014).  However, Comcast did not brief this issue, so the plaintiffs have not had a chance to address it, and the Court will not rule definitively on it here.  But the plaintiffs are now on notice that they likely do not have standing to seek injunctive relief as a remedy for the claims they assert in this case.

**IT IS SO ORDERED.**

Dated:  August 1, 2017

_____
VINCE CHHABRIA
United States District Judge