Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS LAW
P.O. Box 1645
Bellevue, WA 98009
Telephone: (650) 980-1990
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN ADKINS and<br>CHRISTOPHER ROBERTSON,<br><br>Plaintiffs,<br><br>v.<br><br>COMCAST CORPORATION and<br>COMCAST CABLE<br>COMMUNICATIONS, LLC,<br><br>Defendants. | Case No. 3:16-cv-05969-VC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION:**<br><br>**1. TO CONSOLIDATE;**<br><br>**2. FOR LEAVE TO AMEND AND FILE FIFTH AMENDED COMPLAINT; AND**<br><br>**3. TO VACATE OR CONTINUE TRIAL AND DISCOVERY DATES**<br><br><u>Hearing</u><br>Date:  December 21, 2017<br>Time: 10:00 a.m.<br>Courtroom:  2 – 17th Floor<br>Judge:  Hon. Vince Chhabria |

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND RELIEF REQUESTED……………………………………….. 1

II.    THE CASE AND ITS CIRCUITOUS PROCEDURAL HISTORY………………..……. 3

    A.    The Case ……………………………………………………………………….….... 3

    B.    Procedural History ……………………………………………………………..…... 4

III.    LEGAL DISCUSSION....………………………………………………………...…….. 7

    A.    The Court Should Consolidate the Federal Action With the Removed Action ...... 7

        1.    The Case For Some Form of Consolidation Is Overwhelming ……..…... 7

        2.    The Court Should Fully Merge the Removed Action into the
        Federal Action ……………………………………………..…………………9

    B.    The Court Should Grant Leave for the Plaintiffs to File the Fifth
        Amended Complaint in the Federal Action ........................................................... 10

    C.    The Court Should Vacate or Continue All Trial Dates and Discovery
        Deadlines .................................................................................................. 11

IV.    CONCLUSION ……........……………………………………………………...…….. 14

# TABLE OF AUTHORITIES

**CASES**

*Bristol-Myers Squibb Co. v. Superior Court of California*,
    137 S. Ct. 1773 (2017) ............................................................................... 5
*Davidson v. Kimberly-Clark Corp.*,
    --- F.3d ---, 2017 WL 4700093 (9th Cir. 2017) ........................................... 2, 6, 7, 12
*Garrison v. Whole Foods Mkt. Grp.*,
    No. 13-cv-05222, 2014 WL 2451290 (N.D Cal. June 2, 2014) ................................ 6
*Huene v. United States*,
    743 F.2d 703 (9th Cir. 1984) .......................................................................... 8
*In re: Air Crash at Lexington, Kentucky, August 27, 2006*,
    251 F.R.D. 258 (E.D. Ky 2008) ...................................................................... 9
*Intertex, Inc. v. Dri-Eaz Productions, Inc.*,
    2013 WL 2635028 (W.D. Wash. June 11, 2013) ............................................... 7, 9
*Johnson v. Manhattan Ry. Co.*,
    289 U.S. 479 (1933) ..................................................................................... 9
*Lantiq Deutschland GMBH v. Ralink Technology Corp.*,
    2012 WL 1536070 (N.D. Cal., Apr. 30, 2012) ................................................... 10
*Pierce v. County of Orange*,
    526 F.3d 1190 (9th Cir. 2008) ........................................................................ 7
*Ringwald v. Harris*,
    675 F.2d 768 (5th Cir. 1982) .......................................................................... 8
*Schnabel v. Lui*,
    302 F.3d 1023 (9th Cir. 2002) ........................................................................ 9
*Tivoli LLC v. Spa*,
    2016 WL 6138406 (C.D. Cal., Feb. 19, 2016) ..................................................... 14
*Travelers Indemnity Co. v. Longview Fibre Paper & Packaging, Inc.*,
    2007 WL 2916541 (W.D. Wash. Oct. 5, 2007) ................................................ 8, 15

**FEDERAL RULES**

Fed.R.Civ.P. 15 ................................................................................................. 10
Fed.R.Civ.P. 15(a) ............................................................................................. 10
Fed.R.Civ.P. 15(a)(3) ....................................................................................... v, 11
Fed.R.Civ.P. 16 ................................................................................................. 10
Fed.R.Civ.P. 16(b) ............................................................................................. 10
Fed.R.Civ.P. 16(b)(4) ......................................................................................... 14
Fed.R.Civ.P. 42(a) ........................................................................................... 7, 8

**STATE STATUTES**

California Consumers Legal Remedies Act ............................................................. 6
California False Advertising Law .......................................................................... 6
California Unfair Competition Law ....................................................................... 6

**OTHER**

Local Rule 3-12(g) ..................................................................................... 3, 11, 12
Manual of Complex Litigation (4th ed.), § 20.11 ..................................................... 10
United States Constitution Article III ........................................................ 2, 5, 6, 7, 12

# NOTICE

PLEASE TAKE NOTICE THAT, at 10:00 a.m., on Thursday, December 21, 2017, before Hon. Vincent Chhabria, in Courtroom 2 on the 17th Floor of the Phillip Burton Federal Building and United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, plaintiffs Dan Adkins and Christopher Robertson will, and hereby do, move the Court as follows:

1. The plaintiffs move for consolidation. The plaintiffs request that this civil action (the "Federal Action") and the newly removed civil action captioned *Charles Tillage v. Comcast Corporation*, Case No. 3:17-CV-06477-LB ("the Removed Action") be consolidated and completely merged for all further purposes, including a single trial and a single judgment, with all further filings to be made in the Federal Action.

2. The plaintiffs move for leave to amend their complaint. The plaintiffs request that the Court deem the plaintiffs' attached and proposed Fifth Amended Complaint as being filed and served as of the date of the Court's Order granting this Motion and that, pursuant to Fed.R.Civ.P. 15(a)(3), the defendants be granted 14 days to file an Answer or other response.

3. The plaintiffs move for the vacatur or continuance of all trial and discovery dates. The plaintiffs request that the Court vacate its scheduling Minute Entry of August 15, 2017 (Dkt. 93) or continue the dates in said Minute Entry by six to ten months.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the proposed Fifth Amended Complaint attached hereto as Exhibit 1, the accompanying declaration of counsel Daniel M. Hattis and its attendant exhibit, any Reply memorandum and its attached declarations and attendant exhibits, and the arguments and evidence adduced at hearing, as well as the Proposed Order submitted herewith.

| | | |
|---|---|---|
| 1 | Dated: November 9, 2017 | Respectfully submitted, |
| 2 | | By: _/s/ Daniel M. Hattis_ |
| 3 | | Daniel M. Hattis |
| 4 | | Daniel M. Hattis (SBN 232141) |
| | | Paul Karl Lukacs (SBN 197007) |
| 5 | | HATTIS LAW PLLC |
| | | P.O. Box 1645 |
| 6 | | Bellevue, WA 98009 |
| | | Telephone: (650) 980-1990 |
| 7 | | Facsimile: (425) 412-7171 |
| | | Email: dan@hattislaw.com |
| 8 | | Email: pkl@hattislaw.com |
| 9 | | Attorneys for Plaintiffs |

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION AND RELIEF REQUESTED

The defendants have used the removal procedure to greatly enlarge this controversy, and, as a consequence, the plaintiffs respectfully move for the following three orders:

1.   *First*, the plaintiffs move for consolidation. The plaintiffs request that this civil action (the "Federal Action") and the newly removed civil action captioned *Charles Tillage v. Comcast Corporation*, Case No. 3:17-CV-06477-LB ("the Removed Action") be consolidated and completely merged for all further purposes, including a single trial and a single judgment, with all further filings to be made in this Federal Action.

2.   *Second*, the plaintiffs move for leave to amend their complaint out of time. The plaintiffs (aware that this Court's deadline to seek leave to amend has passed) respectfully request that the Court deem the plaintiffs' attached and proposed Fifth Amended Complaint as being filed and served as of the date of the Court's Order granting this Motion and that, pursuant to Fed.R.Civ.P. 15(a)(3), the defendants be granted 14 days to file an Answer or other response.

3.   *Third*, the plaintiffs move for the vacatur or continuance of all trial and discovery dates. The plaintiffs request that the Court vacate its scheduling Minute Entry of August 15, 2017 (Dkt. 93) or continue the dates in said Minute Entry by six to ten months.

The plaintiffs are California consumers who have entered into allegedly "fixed-rate" contracts for cable television service with Defendants Comcast Corporation and Comcast Cable Communications, LLC (collectively, "Comcast"). The plaintiffs are suing Comcast because Comcast failed to adequately disclose the existence, amount and nature of a so-called Broadcast Television Fee and a so-called Regional Sports Fee in its advertising and in its other relevant communications with consumers.

Thus far, this dispute has been enshadowed by the jurisdictional question of whether a federal district court has subject matter jurisdiction to hear a representative proceeding in which a plaintiff, acting for the benefit of all Californians who have been harmed, seeks injunctive relief under the state's false advertising and consumer protection laws. This Court, of the same opinion

as a number of other federal trial judges, believed that, no, jurisdiction did not exist because a plaintiff's injury from false advertising was not redressable by an injunction and, therefore, no Article III standing existed.[1] In compliance with this Court's understanding of the law, the plaintiffs voluntarily withdrew the representative aspects of this litigation. The Court — left with a bare-bones lawsuit about two people's cable bills — set a suitably abbreviated discovery and trial schedule.[2] The plaintiffs, as this Court had suggested, moved down the street to the state courthouse and, with two new and additional plaintiffs, filed the representative aspects of their case in the San Francisco Superior Court in an action captioned *Charles Tillage v. Comcast Corp.,* S.F.S.C. Case No. CGC-17-561739 (filed Oct. 6, 2017).

Then the world changed. On October 20, 2017, the Ninth Circuit issued its ruling in *Davidson v. Kimberly-Clark Corp.*, --- F.3d ---, 2017 WL 4700093 (9th Cir. 2017), holding that representative proceedings for public injunctive relief can be maintained in federal court because such plaintiffs possess Article III standing.

Plaintiffs Adkins and Robertson (and their new co-plaintiffs Charles Tillage and Joseph Loomis) quickly filed a First Amended Complaint in state court which pled all of the facts relevant to the plaintiffs' claims which seemed important to the *Davidson* court. That First Amended Complaint is the operative complaint in the state court *Tillage* action. The *Tillage* First Amended Complaint is attached to the Declaration of Daniel M. Hattis filed herewith, at Exhibit 1 (**Hattis Decl., Exhibit 1**).

To no one's surprise, Comcast removed the *Tillage* action.

So here we are: The plaintiffs' representative proceedings (now resting on a firm jurisdictional foundation) have returned to the federal court where they started. The two civil actions — this original lawsuit (the "Federal Action") and the removed *Tillage* lawsuit (the

---

[1] Transcript of Hearing, July 27, 2017, at page 27:1-6; Order Granting in Part And Denying In Part The Motion To Dismiss, entered Aug. 1, 2017 (Dkt. 88).

[2] On August 15, 2017 — after this Court had expressed its doubts as to the existence of Article III standing, and after the plaintiffs had indicated that they would voluntarily withdraw their representative claims — the Court entered a scheduling order with the following principal dates: December 20, 2017 - close of fact discovery; April 5, 2018 – last day to hear dispositive motion; June 25, 2018 – final pretrial conference; July 9, 2018 – jury trial (Dkt. 93).

"Removed Action") — are near mirror images of each other, with similar grievances being aired about how the two identical Comcast defendants advertise and extract their questionable Fees (although *Tillage* adds two new plaintiffs). These two actions should be consolidated and fully merged into this Federal Action. To aid and effect that consolidation, the Court should grant leave for the plaintiffs to amend, with the Court accepting for filing the attached proposed Fifth Amended Complaint (attached hereto as **Exhibit 1**), which combines the parties and allegations of the operative Fourth Amended Complaint in this Federal Action (Dkt. 91) and the operative First Amended Complaint in the Removed Action (**Hattis Decl., Exhibit 1**).

Finally, the plaintiffs respectfully request that the trial- and discovery-related dates set when this civil action was about two people's cable bills be either vacated or continued for six to ten months. This is a whole new lawsuit, markedly different from what was before the Court when the schedule was set. A vacatur or continuance makes sense in light of the extraordinary circumstances at bar, and, as it happens, Local Rule 3-12(g) requires that the trial date be continued when a related case is brought to this Court during the ongoing course of another, earlier-filed, related case.

## II.  THE CASE AND ITS CIRCUITOUS PROCEDURAL HISTORY

### A.  The Case.

In 2014, Comcast began to add a Broadcast Television Fee to the invoices of cable television customers in the State of California.[3] In 2015 Comcast began to add a Regional Sports Fee to the invoices of cable television subscribers in the State of California. The Fees are not taxes or government fees. They are additional discretionary impositions invented by Comcast to pad its bottom line.

From the start, Comcast misled or deceived California consumers as to the existence of the Fees. Comcast's advertising of its prices failed to sufficiently disclose the existence of the Fees. It was possible for a consumer to go through an entire sign-up process without being informed that the Fees would be charged.

Comcast also misled or deceived customers as to the nature of the Fees. When Comcast

---

[3] The facts recited in this section are alleged in every permutation of the Complaint.

bothered to disclose the existence of the Fees, its disclosures were worded or presented in a way that was likely to mislead or deceive the ordinary consumer into believing that the Fees were government-imposed charges or taxes. In fact, Comcast customer service representatives have lied to customers by falsely stating that Fees were taxes and that Comcast had no authority to waive the Fees.

The economic effects of the Fees are three-fold. First, the customer ends up paying a monthly price for cable television which is substantially greater than the price that was advertised and the price which the customer agreed to pay. Second, Comcast double charges for broadcast television channels and regional sports channels; Comcast advertises these channels as being available in set-price cable packages, but then adds the Fees ostensibly to pay for those same channels. Third, the customer can never be certain of the price of cable television services because Comcast increases the Fees in the middle of supposedly "fixed-rate" contracts. (Comcast justifies these increases through the sophistry of claiming that the "price" has not increased — only the Fees have increased — so Comcast is therefore not raising the "price.")

### B.   Procedural History.

The plaintiffs filed the Complaint in this civil action on October 15, 2016 (Dkt. 1). The Initial Case Management Conference was held by telephone on January 17, 2017 (Dkt. 41).

The Complaint (Dkt. 1), the First Amended Complaint (Dkt. 20) and the Second Amended Complaint (Dkt. 45) alleged the claims of Californians who were suing Comcast under California law, e.g., for breach of contract, false advertising and unfair competition. The California plaintiffs brought their claims in representative proceedings which sought to provide a remedy (via a class action) to all Californians who had been harmed by Comcast's sharp practices.

The Complaint (Dkt. 1), the First Amended Complaint (Dkt. 20) and the Second Amended Complaint (Dkt. 45) also contained the claims of non-Californians who were alleging that Comcast's actions regarding the Fees were violative of the false advertising and consumer protection laws of the various states in which those plaintiffs resided (e.g., Colorado, Florida, Illinois, New Jersey, Ohio and Washington).

Comcast filed a motion to dismiss, challenging the claims made by the out-of-state

defendants (Dkt. 46). On April 25, 2017, the Court ruled that, "because the law regarding personal jurisdiction over the claims brought by the out-of-state plaintiffs is in flux, dismissal is with leave to amend"; the Court further ruled that the plaintiffs could seek leave to add back the out-of-state plaintiffs after the U.S. Supreme Court issued its ruling clarifying the law of specific jurisdiction in *Bristol-Myers Squibb Co. v. Superior Court of California*.[4]

On May 16, 2017, the plaintiffs filed their Third Amended Complaint (Dkt. 69), in which the out-of-state plaintiffs were no longer asserting any claims, but in which the California plaintiffs were continuing to assert many of the same claims which had been brought in the original Complaint, e.g., claims for breach of contract, violation of the Unfair Competition Law, violation of the False Advertising Law and violation of the Consumers Legal Remedies Act. As before, the California plaintiffs brought representative proceedings and sought to provide a remedy (via public injunctive relief) to all Californians who had been harmed by Comcast's sharp practices.

Comcast filed a motion to dismiss the Third Amended Complaint (Dkt. 76), and, on August 1, 2017, the Court largely denied the motion to dismiss, holding that the plaintiffs had sufficiently alleged claims for breach of contract, intentional misrepresentation and violation of the various California consumer laws (Dkt. 88).

However, the Court expressed serious doubts as to whether the representative requests for public injunctive relief could be maintained in an Article III court. The Court stated:

> On the injunctive relief question, if it's so important to them to get injunctive relief, then they can seek that in state court, right? I mean, it's just a question of standing to get injunctive relief, and they can — there's no standing here, so they can go seek injunctive relief in state court. All right.[5]

Several days later, the Court issued its formal order adjudicating the motion to dismiss, which stated in relevant part:

> At the hearing on this motion, Comcast's counsel suggested that the plaintiffs lack

---

[4] Order Granting Motion To Dismiss, entered April 25, 2017 (Dkt. 64). The U.S. Supreme Court ultimately issued its clarifying opinion in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), on June 19, 2017 — a day on which the plaintiffs' Third Amended Complaint was pending and about a week and a half after Comcast had challenged the Third Amended Complaint by filing another motion to dismiss (Dkt. 76, filed June 9, 2017).

[5] Transcript of Hearing, July 27, 2017, at page 27:1-6.

standing in federal court to seek the type of "public injunction" contemplated by the provisions of California law they invoke in this case. Comcast is probably right about this: if the plaintiffs wish to seek injunctive relief, they likely need to do so in a separate state court action. *See Garrison v. Whole Foods Mkt. Grp.*, No. 13-cv-05222, 2014 WL 2451290, at *5 (N.D Cal. June 2, 2014). However, Comcast did not brief this issue, so the plaintiffs have not had a chance to address it, and the Court will not rule definitively on it here. But the plaintiffs are now on notice that they likely do not have standing to seek injunctive relief as a remedy for the claims they assert in this case.[6]

In accord with the Court's ruling, the California plaintiffs filed on August 9, 2017, a motion for leave to file a Fourth Amended Complaint (Dkt. 91), which the Court deemed filed as of August 18, 2017 (Dkt. 93). In the Fourth Amended Complaint — which is now the operative complaint in this civil action — the California plaintiffs continue to allege their five principal claims against Comcast (breach of contract, intentional misrepresentation, Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act) but the plaintiffs do so on an individual, non-representative basis.

On August 15, 2017 — after the plaintiffs had informed the Court that they were voluntarily contracting their case to remove the representative aspects — the Court entered a Minute Entry in this civil action which set multiple trial- and discovery-related dates (Dkt. 93.). Among other dates, the Minute Entry set a fact discovery cut-off date of December 20, 2017, a final pre-trial conference date of June 25, 2018, and a trial date of July 9, 2018 (Dkt. 93). These dates made sense for a small case about two ripped-off consumers.

In accord with the Court's understanding of Article III, the two plaintiffs in this federal action (Adkins and Robertson) — now joined by two new plaintiffs (Charles Tillage and Joseph Loomis) — filed a complaint in the San Francisco Superior Court in early October 2017. *Charles Tillage v. Comcast Corp.,* San Francisco Superior Court Case No. CGC-17-561739 (filed Oct. 6, 2017). *See also* Plaintiffs' Notice of Pendency of Other Action (Dkt. 103).

The intent of the *Tillage* action was to maintain in state court the proceedings which this Court believed it could not maintain due to a lack of Article III standing.

Then, on October 20, 2017, the Ninth Circuit issued its ruling in *Davidson v. Kimberly-*

---

[6] Order Granting in Part And Denying In Part The Motion To Dismiss, entered Aug. 1, 2017 (Dkt. 88).

1  *Clark Corp.*, --- F.3d ---, 2017 WL 4700093 (9th Cir. 2017), holding that representative
2  proceedings for public injunctive relief can be maintained in federal court because such plaintiffs
3  did possess Article III standing. *Davidson* is now the law of the circuit, clarifying an issue on
4  which several district court judges had disagreed.

5  The plaintiffs quickly filed in state court a First Amended Complaint which pled all of the
6  facts relevant to the plaintiffs' claims which seemed important to the *Davidson* court. That First
7  Amended Complaint is the operative complaint in the state court *Tillage* action. See **Hattis Decl.,**
8  **Exhibit 1**, filed herewith.

9  To no one's surprise, Comcast removed the *Tillage* action.

10  After this circuitous journey involving two clarifications of law by a higher court, the
11  California plaintiffs are back where they began: asserting claims brought in a representative
12  proceeding which seek to provide a remedy to all Californians who have been harmed by
13  Comcast's unlawful practices.

**III.   LEGAL DISCUSSION**

   **A.   The Court Should Consolidate the Federal Action with the Removed Action.**

   **1.   The Case for Some Form of Consolidation Is Overwhelming.**

The two actions involve overlapping plaintiffs, identical defendants and identical counsel all debating the same laws and whether they apply to nearly identical facts. Now that the issue of Article III standing has been clarified in the Ninth Circuit, the two actions should be consolidated (ideally by ordering the full merger form of consolidation, discussed below).

The Court has "broad discretion" to consolidate cases. *Pierce v. County of Orange*, 526 F.3d 1190, 1203 (9th Cir. 2008). Federal Rule of Civil Procedure 42(a) reads: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Consolidation does not require the agreement of the parties, and a Court may grant a motion to consolidate over the opposition of the other side.[7]

---

[7] *Intertex, Inc. v. Dri-Eaz Productions, Inc.*, 2013 WL 2635028, *4 (W.D. Wash. June 11, 2013) (granting motion to consolidate over opposition).

Almost every factor which counsels in favor of consolidation exists in the situation at bar. The two actions share common issues of law (California's breach of contract, intentional misrepresentation and false advertising laws) and common issues of fact (Comcast's charging, increasing and failing to adequately disclose the Broadcast Television Fee and the Regional Sports Fee).[8] Two of the plaintiffs overlap (specifically Adkins and Robertson), the two sets of defendants are identical, the general posture of both cases is identical (with plaintiff consumers suing defendant Comcast), each side's counsel is identical, and everyone is fighting about the same thing (the Fees).[9] A Fifth Circuit decision considered the likelihood of whether the two sets of claims could have been filed originally as a single action;[10] in the case at bar, the two sets of claims *were* filed originally as a single action.[11]

Consolidation would save time and effort on the part of the Court and the parties.[12] The Court and its staff could close the file for the Related Action and place all subsequent rulings and orders in the Federal Action file. Without consolidation, the parties would be forced to file almost everything twice (once in each action) to protect the clients' interests. The mere presence of two open actions with overlapping subject matter would be an invitation to squabbling — and the Court will inevitably be asked to referee the disagreements which will arise as the two cases interact. Consolidation sidesteps this puddle.

Consolidation will not cause Comcast to incur any significant inconvenience, delay or expense.[13] And consolidation will protect witnesses from duplicative discovery.

The case for consolidation is overwhelming. The question is which form of consolidation

---

[8] Fed.R.Civ.P. 42(a) (consolidation based on "common issue of law or fact").

[9] *Travelers Indemnity Co. v. Longview Fibre Paper & Packaging, Inc.*, 2007 WL 2916541, *3 (W.D. Wash. Oct. 5, 2007) (granting consolidation after considering these factors).

[10] *Ringwald v. Harris*, 675 F.2d 768, 769 n.1 (5th Cir. 1982) ("[I]ndeed it appears likely these suits would have been filed as one action had it not been for the Mississippi division of law and equity courts.").

[11] Class Action Complaint, Docket No 1.

[12] *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984) ("The district court, in exercising its broad discretion to order consolidation of actions presenting a common issue of law or fact under Rule 42(a), weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause.").

[13] *Ibid.*

---

is best for this dispute.

### 2.     The Court Should Fully Merge the Removed Action Into the Federal Action.

The blanket term "consolidation" refers to three different types of aggregation, and the plaintiffs at bar strongly prefer the full merger form of consolidation over the retention-of-separate-character form of consolidation (although the plaintiffs would respectfully accept either). The Ninth Circuit has explained the three forms of consolidation:

> "Consolidation" as a term of legal procedure is generally used in three different contexts: (1) when several actions are stayed while one is tried, and the judgment in the case tried will be conclusive as to the others; (2) when several actions are combined and lose their separate identities, becoming a single action with a single judgment entered; and (3) when several actions are tried together, but each suit retains its separate character, with separate judgments entered.[14]

District courts have used the merger form of consolidation when "the complaints of the two actions are very similar,"[15] when "these suits essentially mirror each other,"[16] and when "[t]he actions were pending between the same parties and stated claims that might have been set out originally as separate counts in one complaint."[17] All of these situations are reflected in the case at bar.[18]

Consolidating the Related Action and the Federal Action in a manner which retains their separate character reduces the benefits of consolidation. Two actions would still be pending, and the parties would have to decide for every filing whether to file the document in one case or both

---

[14] *Schnabel v. Lui*, 302 F.3d 1023, 1035 (9th Cir. 2002).

[15] *Travelers Indemnity Co. v. Longview Fibre Paper & Packaging, Inc.*, 2007 WL 2916541, *3 (W.D. Wash. Oct. 5, 2007).

[16] *Intertex, Inc. v. Dri-Eaz Productions, Inc.*, 2013 WL 2635028, *4 (W.D. Wash. June 11, 2013).

[17] *In re: Air Crash at Lexington, Kentucky, August 27, 2006*, 251 F.R.D. 258, 261 (E.D. Ky 2008).

[18] Some authorities have tripped over the fact that a 1933 decision of the U.S. Supreme Court stated that consolidation "does not merge the suits into a single cause." *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496 (1933). The better-reasoned authorities — including the district courts cited in this Memorandum — have found that *Johnson* does not bar a full merger of actions because, among other reasons, *Johnson* was a pre-Rules decision interpreting a statute which was superseded by Rule 42. *See Schnabel v. Lui*, 302 F.3d 1023, 1035-1036 (9th Cir. 2002) (in which the Ninth Circuit reviewed the decisions of sister circuits, found that Ninth Circuit precedent "implicitly rejects some consequences of *Johnson*," but declined to resolve the issue).

cases. Separate-character consolidation may obligate the Court to designate a master file and to manage the actions in a detail which would not be necessary if the actions were simply merged.[19]

While the plaintiffs can certainly live with a Court decision to consolidate the actions in a way that retains their separate character, the plaintiffs strongly prefer that the two actions be merged. And the facts of the matter call out for such a merger.

**B.   The Court Should Grant Leave for the Plaintiffs to File the Fifth Amended Complaint in the Federal Action.**

The Court set a deadline of October 6, 2017, as the last day on which a party to this civil action could move to amend a pleading (Dkt. 93). Since plaintiffs Adkins and Robertson are bringing this motion after that date, plaintiffs must satisfy the good cause standard of a Rule 16 motion to amend a scheduling order as well as the liberal amendment standard of Rule 15. "[M]otions to amend the pleadings filed after the date set in the court's scheduling order must satisfy the more stringent 'good cause' showing required under Rule 16.

Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Lantiq Deutschland GMBH v. Ralink Technology Corp.*, 2012 WL 1536070, at *2 (N.D. Cal., Apr. 30, 2012) (citation omitted) (granting motion).

With regard to the plaintiffs' request that the Court grant them leave to file the attached Fifth Amended Complaint, the plaintiffs could not be more diligent. The plaintiffs are filing this motion to consolidate and amend within days of Comcast's removal of the Removed Action.

As to Rule 15, there is no evidence that the plaintiffs are acting in bad faith and there is no evidence of prejudice to defendants. The proposed Fifth Amended Complaint is nearly identical to the operative First Amended Complaint in the Removed Action and has overlaps with the operative Fourth Amended Complaint in the Federal Action. In other words, the Court, the

---

[19] "When cases are coordinated or consolidated, the court should enter an order establishing a master file for the litigation in the clerk's office, relieving the parties from multiple filings of the same pleadings, motions, notices, orders, and discovery materials, and providing that documents need not be filed separately in an individual case file unless uniquely applicable to that particular case." Manual of Complex Litigation (4th ed.), § 20.11.

counsel and the clients are all familiar with the acts, omissions and claims alleged in the Fifth Amendment Complaint. The proposed pleading contains no surprises and works no prejudice.

As a practical matter, if the Court consolidates the cases, the parties and the Court will need a single operative complaint from which to work. The Court should therefore grant the plaintiffs leave to file the Fifth Amended Complaint, deem the Fifth Amended Complaint filed and served as of the day of the Court's order, and, pursuant to Fed.R.Civ.P. 15(a)(3), grant Comcast 14 days from the date of the Court's order to file an Answer or other response.

### C. The Court Should Vacate or Continue All Trial Dates and Discovery Deadlines.

This Court's rule is clear: "Absent extraordinary circumstances, the Court will not continue a trial date." Standing Order For Civil Cases, ¶ 10.

These are extraordinary circumstances. In the light of these circumstances, the plaintiffs ask this Court to vacate or to continue for six to ten months all trial- and discovery-related dates set in this Court's scheduling order (Dkt. 93).

The Court is now presiding over a radically different lawsuit than was the case when the Court set the trial date and the discovery cutoff dates. When the Court entered its Minute Entry of August 15, 2017 (Dkt. 93) setting the trial and discovery schedule,[20] the Court had before it the Fourth Amended Complaint, a pleading in which two plaintiffs (Adkins and Robertson) alleged claims only for their individual damages (which, Comcast insists incorrectly, are limited to one month of Fees at the most). At that point, the case was arguably small beer.

But, with Comcast's removal of the Related Case, the Court is now presiding over a state-wide class action brought by four plaintiffs (Tillage, Loomis, Adkins and Robertson) seeking actual damages and public injunctive relief on behalf of all Californians who were misled or deceived by Comcast's advertising of the Fees. This is now a large and significant lawsuit (and it was Comcast's removal decision which made it so).

The Local Rules require that, when two cases are related (and the Federal Action and the

---

[20] The principal dates from that Minute Entry include: December 20, 2017 - close of fact discovery; April 5, 2018 – last day to hear dispositive motion; June 25, 2018 – final pretrial conference; July 9, 2018 – jury trial (Dkt. 93).

1  Removed Action are unquestionably related), a trial date will be continued. Local Rule 3-12(g)

2  reads, "For cases ordered related after the initial case management conference, unless the

3  assigned Judge otherwise orders, any deadlines established in the case management order shall

4  continue to govern, *except for the trial date, which will be rescheduled by the assigned Judge*."

5  (Emphasis added.) The Local Rule recognizes that, when a related case is filed or removed during

6  ongoing litigation, the parties need more time.

7        The plaintiffs would be prejudiced if they were forced to conclude all discovery by

8  December 20, 2017, and commence trial in the middle of next year based on insufficient

9  discovery. Now that the Removed Case is here, the plaintiffs need sufficient time — from six to

10 ten months — to conduct discovery which is adequate and proportional to the claims now

11 pending before this Court.

12       This situation is also extraordinary because the plaintiff's Complaint was amended and the

13 Related Case was filed in state court because of this Court's stated concern that the plaintiffs

14 lacked Article III standing to pursue representative proceedings for public injunctive relief. The

15 Ninth Circuit's intervening *Davidson* decision has clarified that Article III standing exists, which

16 has resulted in the *renvoi*-like return of the representative proceedings to this federal court. The

17 plaintiffs should not be punished for abiding by this Court's interpretation of Article III.

18       Comcast will not be prejudiced by a vacatur or continuance of the trial and discovery

19 cutoff dates. It was Comcast, after all, who voluntarily decided to bring the Removed Action to

20 this Court and thereby greatly expanded the scope of the issues before the Court. (And it is

21 Comcast which has delayed and stonewalled discovery to the point where two discovery motions

22 are pending and are to be referred to a magistrate judge. (Dkt. 111))

23       If the two actions are consolidated, the two new plaintiffs (Tillage and Loomis) are

24 entitled to adequate time for discovery and trial preparation. New plaintiffs Tillage and Loomis

25 cannot complete their discovery by December 20, and it would be grossly unfair for the Court to

26 force them to go to trial with discovery that had been tailored to different plaintiffs' needs. In

27 addition, Tillage and Loomis need to conduct class-wide discovery, while Adkins and Robertson

28 were previously limited to individual discovery (although they are entitled to organization-wide

discovery of Comcast's unlawful scheme going back to 2012).

The settling of the pleadings in this Federal Action has been protracted, and that has caused a delay in discovery. Although the action was filed in October 2016, Comcast did not file an Answer until almost a year later, in September 2017 (Dkt. 99). Now Comcast has unsettled the pleadings again by its removal.

The unsettled state of the pleadings caused discovery delays because this Court expressed reluctance about full-blown discovery before the pleadings are settled. *See* Minute Entry of Jan. 17, 2017 (Dkt. 41) ("The parties are cautioned that they will need to set an expeditious schedule to adjudicate the case *once the pleadings are settled*."); Transcript of Hearing on Motion To Dismiss, April 20, 2017, page 26:18-21 ("The Court: I'm going to refer this case to a magistrate for handling discovery disputes. [¶] Mr. Hattis: That would be great, Your Honor. [¶] The Court: *Assuming we get the pleadings settled*."). (Emphases added.)

Plaintiffs Adkins and Robertson have conducted discovery which is diligent in light of the Court's expressed concern about the parties engaging in full-tilt discovery before the pleadings were settled. Plaintiffs Adkins and Robertson served requests for production of documents on Comcast which resulted in the plaintiffs filing a motion to compel (Dkt. 108). The plaintiffs also filed a motion for a protective order to prohibit Comcast from invading the attorney-client privilege (Dkt. 100).

Since the pleadings were settled in September, Plaintiffs Adkins and Robertson have been moving forward with discovery. Among other things, additional written discovery has been served on Comcast. But a discovery period of September 5th (when the pleadings were, temporarily, settled) through December 20th (the current fact discovery cutoff date) is a discovery period of three-and-a-half months. But this fact discovery period is now far too short as a result of Comcast's removal of the Removed Action and the greatly expanded scope of the issues before the Court.

A few days ago, this Court referred the two pending discovery disputes to a magistrate. (Dkt. 111). Re-submitting and pushing those motions to a resolution will take additional time.

In this extraordinary set of circumstances, it would be manifestly unjust for the Court to

deny this motion for vacatur or continuance. The plaintiffs therefore request that the Court vacate its Minute Entry of August 15, 2017, or continue all trial- and discovery-related dates for six to ten months.[21]

### IV.   CONCLUSION

For the reasons stated, the plaintiffs respectfully request that that the Court grant the relief requested herein or grant other relief which the Court deems just and proper.

Dated:   November 9, 2017          Respectfully submitted,

By: _____
    Daniel M. Hattis

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS LAW
P.O. Box 1645
Bellevue, WA 98009
Telephone: (650) 980-1990
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Attorneys for Plaintiffs

---

[21] While the Court's Civil Standing Order requests a showing of "extraordinary circumstances" to continue a trial date — and the plaintiffs have met that standard — the "good cause" standard also has support in the Federal Rules and caselaw. "Courts considering a motion to continue a trial date established in a scheduling order follow the 'good cause' standard of Federal Rule of Civil Procedure Rule 16(b)(4)." *Tivoli LLC v. Spa*, 2016 WL 6138406, at *5 (C.D. Cal., Feb. 19, 2016). Plaintiffs meet this standard as well.