Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS LAW
P.O. Box 1645
Bellevue, WA 98009
Telephone: (650) 980-1990
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Jason Skaggs (SBN 202190)
SKAGGS FAUCETTE LLP
430 Lytton Ave 2nd FL
Palo Alto, CA 94301
Telephone: (650) 617-3226
Email: jason@skaggsfaucette.com

Tony J. Tanke (SBN 74054)
LAW OFFICES OF TONY J. TANKE
2050 Lyndell Terrace, Suite 240
Davis, CA 95616
Telephone: (530) 758-4530
Email: appeals@tankelaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN ADKINS and CHRISTOPHER ROBERTSON, <br><br> Plaintiffs, <br><br> v. <br><br> COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS, LLC, <br><br> Defendants. | Case No. 3:16-CV-05969-VC <br><br> **PLAINTIFFS' ADMINISTRATIVE MOTION FOR LIMITED RE-OPENING OF DISCOVERY** <br><br> [N.D. Cal. Civ. L.R. 7-11] |

**SUMMARY AND RELIEF REQUESTED**

Although fact discovery closed in this action on December 20, 2017, Defendants Comcast Corporation and Comcast Cable Communications LLC (collectively "Comcast") waited until earlier this week to produce important discovery, thereby necessitating this administrative motion for a limited re-opening of discovery and with Comcast paying the expenses. After months of evasion, Comcast produced on Monday, February 5, 2018, audio recordings of Plaintiff Christopher Robertson ordering by telephone the Comcast service at issue in this litigation. Comcast also last week served changes to the deposition transcript of its executive vice president Tom Karinshak, changes which substantially altered his testimony about the existence of the contracts and disclosures at issue and the manner in which Comcast preserved that evidence.

The timing of Comcast's production of the audio recordings is incredibly suspect. At all times in this litigation when it was in Comcast's interest for the audio recordings to be missing, the audio recordings were missing (or not found or whatever excuse Comcast will submit but refuses to currently tell us). Then, at exactly the point in the litigation when the absence of the audio recordings became a liability for Comcast (e.g., endangering its upcoming summary judgment motion in this action and warranting a class-wide preservation order in the related *Tillage* action), Comcast suddenly produces the recordings. The situation does not pass the smell test — and raises serious questions about Comcast's production of evidence throughout this action and the related *Tillage* action.

Consequently, Plaintiffs Dan Adkins and Christopher Robertson respectfully request that this Court:

a) order the re-opening of the deposition of Comcast employee Tom Karinshak to discuss the changes to his deposition, the topics of those changes, and Comcast evidence preservation;

b) order the deposition of at least one Comcast Custodian of Records/Rule 30(b)(6) designee who can testify about the manner in which Comcast preserves the audio recording of telephonic orders and also about the time and manner in which Comcast responded to the plaintiffs' requests for production of documents;

c) order that Comcast pay the costs of the resumed depositions, including the fees and

1 charges of the court reporter and the videographer and Plaintiffs' counsel's hourly rate in

2 preparing for, conducting and, if necessary, travelling to and from the depositions; and

3   d) order that these depositions either occur in the Seattle area (the location of the main

4 office of Plaintiffs' lead counsel) or that Comcast pay the travel and lodging expenses and the

5 travel time of Plaintiffs' lead counsel in relation to this re-opened discovery.[1]

6            **BACKGROUND**

7 **A.**  **The Requests for Production of the Audio Recordings**

8   Obviously, the audio recordings of Christopher Robertson ordering his Comcast services

9 (subsequent to his placing his online order) are important to this litigation. The plaintiffs believed

10 – and the belatedly produced recordings now prove — that Comcast's telephone agents did <u>not</u>

11 disclose to Robertson the existence of the Broadcast Television Fee or the Regional Sports Fee

12 (the gravamen of this lawsuit). Although these recordings were requested in February 2017 and

13 again in September 2017, Comcast produced them only this week, after the close of fact

14 discovery (which closed on Dec. 20, 2017).

15   On February 4, 2017, plaintiffs served RFP No. 7 on Comcast Corporation, demanding

16 "All Documents Concerning Plaintiffs' past or current Comcast customer accounts, including but

17 not limited to . . . b. All Communications between Comcast and Plaintiffs, including order

18 confirmation and/or order summary emails, online chats, ***and all recorded telephone***

19 ***conversations***[.]" Declaration of Daniel Hattis, Exhibit A (emphasis added). On September 9,

20 2017, plaintiffs served the identical RFP on both Comcast defendants. *See* RFP No. 7, Plaintiff's

21 Second Amended RFPS (Hattis Dec., Exhibit B).

22

23 [1] It is not 100% clear what procedure the Court prefers for a motion to re-open discovery. While discovery disputes in this action have been referred to Magistrate Judge Ryu (Dkt. 111), it

24 appears that motions to re-open discovery are addressed to the District Judge unless such motions were specifically referred to the Magistrate. *See Google Inc. v. American Blind & Wallpaper*

25 *Factory, Inc.*, 2006 WL 2578277, * 2 (N.D. Cal. Sept. 6, 2006) ("permission to conduct additional discovery shall be sought from Magistrate Judge Seeborg"). While the Court's Civil

26 Standing Order requests that discovery disputes be submitted using the joint letter format, the Standing Order implies that litigants should not use the letter format more than seven days after

27 the applicable discovery cutoff (¶ 17). In a decision issued within the last two weeks, this Court requested that a motion to re-open discovery be submitted as an administrative motion, so the

28 Plaintiffs are abiding by that most-recent instruction. *Reed v. Duree*, 2018 WL 582442, * 1, Case No. 16-cv-07041-VC (N.D. Cal. Jan. 26, 2018).

1    In response, both Comcast defendants stated that, without waiving their objections,

2    "Defendants will produce non-privileged documents in its possession pertaining to Plaintiffs' past

3    or current accounts…" Comcast Resp. to RFP No. 7 (dated Oct. 13, 2017) (Hattis Dec., Ex. B).

4    Between February 2017 and February 4, 2018, Comcast did not produce the recordings.

5    Hattis Dec., ¶ 7. Meanwhile, on January 30, 2018, the parties filed their Initial Joint Case

6    Management Conference Statement in the related *Tillage* action (*Tillage v. Comcast Corp.*, Case

7    No. 17-c-v 06477-VC). In that Statement, the plaintiffs noted the absence and presumed

8    destruction of the recordings after learning about their likely prior existence during the deposition

9    of Comcast Vice President Tom Karinshak, and, on that basis, requested a class-wide

10   preservation order and foreshadowed a denial of Comcast's upcoming summary judgment motion

11   in this action on the grounds that Comcast appeared to have destroyed potentially dispositive

12   evidence. *See* Initial Case Management Conference, *Tillage* action (Dkt. 32), p. 6:24-7:27.

13   Four court days after the filing of that Conference Statement, Comcast suddenly produced

14   the recordings, with no explanation or description. Email from M. Baker to D. Hattis, sent at 5:12

15   p.m. on Monday, February 5, 2018 ( Hattis Dec., Ex. C). Plaintiff's counsel immediately

16   demanded a telephonic meet and confer and provided an 8½-hour window of availability on

17   Tuesday, February 7, and a 6-hour window on Wednesday, February 8. Hattis Dec., ¶ 10.

18   Comcast refused to get on the phone. *Id.* Instead, Comcast provided one email which stated the

19   alleged dates and times of the audio recordings (contentions which need to be explored through

20   re-opened discovery, including that the last call recording appears to be cut off). Email from M.

21   Baker to D. Hattis, sent at 4:10 p.m. on Feb. 6, 2018 (Hattis Dec., Ex. D). Comcast also served

22   two letters requesting further clarity (where none was needed) and which reiterated Comcast's

23   routine argument that Plaintiffs were late to start discovery. *See* Letter from M Stortz to D. Hattis,

24   Feb. 7, 2018; Letter from M. Stortz to D Hattis, Feb. 6, 2018 (Hattis Dec., Exhibits E & F).

25   ***Incredibly, Comcast has provided no explanation of why the recordings were not***

26   ***produced earlier, why they were suddenly produced this week, and how many other responsive***

27   ***documents may have previously been unproduced but can now be found.*** The integrity of

28   Comcast's entire production is now in question, and the plaintiffs should be allowed to re-open

PLAINTIFFS' ADMIN. MOTION FOR
RE-OPENING OF DISCOVERY
CASE NO. 3:16-CV-05969-VC

1    discovery and ask more questions about these topics.

2    **B.    Comcast Vice President Tom Karinshak Changes To His Deposition**

3           On December 18, 2017, plaintiffs took the deposition of Tom Karinshak, Comcast's

4    executive vice president of customer service. The relevant pages of the deposition are pages 276-

5    280 (Hattis Dec., Ex. G). On February 1, 2018, Comcast served a set of changes to Karinshak's

6    deposition. Letter from S. Duffy to K. Jastrzembski, of Feb. 1, 2018 (Hattis Dec., Exhibit H). The

7    changes substantially altered his testimony about the existence of the contracts and disclosures at

8    issue and the manner in which Comcast preserved (or did not preserve) that evidence.

9           When asked whether the original version of the Minimum Term Agreement (MTA) was

10   mailed to plaintiff Robertson, Karinshak originally testified that "I believe it was emailed to him"

11   — testimony which he has ambiguously changed to "We have no record of it being sent to him."

12   When asked whether Comcast sent Robertson a copy of the MTA, Karinshak originally answered

13   "my understanding is that it was mailed to him" — an answer which Karinshak changed to "my

14   understanding is that we have no record of it being sent to him." When asked to clarify that

15   Comcast would have emailed the contract to Robertson, Karinshak originally answered "Correct."

16   — an answer he changed to "It should have been emailed to him."

17                                   **LEGAL ANALYSIS**

18          By failing to produce, until after the close of discovery, call recordings which undercut

19   Comcast's claims that the Fees were disclosed to plaintiff Robertson, and which undercut Mr.

20   Karinshak's deposition testimony that it would be "unusual" that Comcast phone agents would

21   not mention and disclose the Fees at the time of sign-up, Comcast has prevented the plaintiffs

22   from obtaining further relevant discovery including questioning Mr. Karinshak on the subject.

23   Meanwhile, Mr. Karinshak's changed testimony is intentionally ambiguous on the issue of what it

24   means that Comcast "has no record" of sending the MTA which "should have been" sent to

25   plaintiff Robertson. Even more importantly, Comcast, by its words and actions, has now raised

26   serious questions as to whether Comcast has properly preserved, searched and produced

27   documents. And Comcast won't explain what happened.

28          Pretrial deadlines may be modified for good cause. Fed.R.Civ.P. 16(b)(4). In determining

whether there is good cause to re-open discovery, courts consider six factors. *City of Pomona v. SQM North America Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017). The first factor is whether a trial is imminent; here, the trial date of July 9, 2018, is not imminent. The second factor is whether the motion is being opposed; this factor is neutral because Comcast will certainly oppose further discovery. The third factor is whether the non-moving party would be prejudiced; Comcast's compliance with discovery preservation and production rules is an obligation, not a prejudice. Comcast voluntarily changed Karinshak's testimony; it brought any prejudice on itself. The fourth factor is whether the moving party was diligent in obtaining discovery; the plaintiffs diligently requested the audio recordings in February 2017 and again in October 2017. The fifth factor is the foreseeability of the need for additional discovery; plaintiffs could not have foreseen that unproduced and presumably destroyed audio recordings would suddenly be produced or that a senior executive would change his testimony regarding something as elemental as whether an email on which Comcast bases its defense ever existed. The sixth factor is whether the discovery will lead to relevant evidence; the plaintiffs need to know the history of the audio recordings and the emails/contracts, Comcast's preservation practices, Comcast's search for responsive documents, and whether Comcast may be sitting on a trove of other unproduced responsive documents which were not found because of the same unexplained situation. And, it must be emphasized, Comcast's stubborn refusal to get on the phone and simply explain what happened is itself a reason to re-open formal discovery.

Moreover, discovery can be reopened when a witness changes his deposition testimony under Fed.R.Civ. 30(e) in a manner which renders the prior testimony useless or incomplete without additional testimony; in that event, the party making the changes is required to pay the costs associated with additional discovery. *Aldapa v. Fowler Packing Co.*, 2016 WL 8738176, *10 (E.D. Cal. March 18, 2016). Karinshak's changes open up a new vein of questions regarding what Comcast does and does not possess. Comcast should pay all costs associated with the re-opened deposition, which should occur on the West Coast.

Dated:  February 7, 2018

By: _____
        Daniel M. Hattis

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS LAW
P.O. Box 1645
Bellevue, WA 98009
Telephone: (650) 980-1990
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Jason Skaggs (SBN 202190)
SKAGGS FAUCETTE LLP
430 Lytton Ave 2nd FL
Palo Alto, CA 94301
Telephone: (650) 617-3226
Email: jason@skaggsfaucette.com

Tony J. Tanke (SBN 74054)
LAW OFFICES OF TONY J. TANKE
2050 Lyndell Terrace, Suite 240
Davis, CA 95616
Telephone: (530) 758-4530
Email: appeals@tankelaw.com

Attorneys for Plaintiffs and the Proposed Class